No. 24-3894

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALICIA NOLEN,

Plaintiff-Appellee,

v.

PEOPLECONNECT, INC.,

Defendant-Appellant.

On Appeal from December 14, 2023 Sealed Order
and May 20, 2024 Order Granting Class Certification
United States District Court,
Northern District of California
The Honorable Edward M. Chen
Case No. 3:20-cv-09203-EMC

EXCERPTS OF RECORD VOLUME 2 OF 5

Clifford W. Berlow
Debbie L. Berman
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
cberlow@jenner.com
dberman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant PeopleConnect, Inc.*

1    Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
2    JENNER & BLOCK LLP
455 Market Street, Suite 2100
3    San Francisco, California 94105
Telephone:   628 267-6800
4    Facsimile:    628 267-6859

5

6    *Attorneys for Defendant PeopleConnect, Inc.*

7    [Additional counsel listed on signature page]

8    Michael F. Ram (SBN 104805)
mram@fortthepeople.com
9    Marie N. Appel (SBN 187483)
mappel@forthepeople.com
10    MORGAN & MORGAN
COMPLEX LITIGATION GROUP
11    711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
12    Telephone: (415) 358-6913
Facsimile: (415) 358-6293
13

14    *Attorneys for Plaintiff and the Proposed Class*

15

16    [Additional Counsel Listed on Signature Page]

17                UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19                 SAN FRANCISCO DIVISION

20

21    ALICIA NOLEN, on behalf of herself and on
behalf of all others similarly situated,
22

23                   Plaintiff.

24        v.

25    PEOPLECONNECT, INC., a Delaware
Corporation,
26                 Defendant.

27

28

Case No. 3:20-cv-09203-EMC

The Honorable Edward M. Chen

**JOINT STATUS REPORT REGARDING
CLASS DEFINITION AND CLASS NOTICE**

---

Plaintiff Alicia Nolen ("Plaintiff"), and Defendant PeopleConnect, Inc. (collectively, "the Parties") in the above-captioned case, by and through their undersigned counsel, hereby submit this joint status report addressing (1) the class definition; (2) the plan for providing notice to class members of the Court's conditional certification order pursuant to Federal Rule of Civil Procedure 23(c)(2)(B); and (3) the language and format that would be used to provide notice to class members pursuant to Rule 23(c)(2)(B).

1.     In its Order conditionally granting Plaintiff Alicia Nolen's Motion for Class Certification, the Court directed the parties to meet and confer regarding a modified class definition and a plan to provide notice to class members pursuant to Rule 23(c)(2)(B). (Dkt. No. 256 at 43) ("Class Cert. Order").

2.     The Parties submitted an initial joint status report pursuant to the Court's Order, in which they reported to the Court that they had met and conferred regarding a modified class definition and plan for providing Rule 23(c)(2)(B) notice to class members, but had been unable to reach agreement. (Dkt. No. 262 at 2).

3.     On January 19, 2024, the Court entered an Order providing guidance regarding issues raised in the joint status report and directing the Parties to further meet and confer regarding the proposed class definition and plan for providing notice to class members pursuant to Rule 23(c)(2)(B), and directing the Parties to report their progress to the Court. (Dkt. No. 267).

4.     Since that time, the Parties have submitted joint status reports further updating the Court on the progress of their meet and confer efforts. (Dkt. Nos. 268, 270, 272).

5.     The Parties have now completed their meet and confer efforts. Although they have resolved many of the disagreements between them, they are at an impasse on the discrete issues identified below.

6.     To aid the Court in resolving their disagreements, the Parties have set forth their respective positions below.

**I.     Class Definition**

Based upon the Court's order conditionally granting class certification and the Court's subsequent order directing the Parties to further meet and confer, (Dkt. Nos. 256, 267), Plaintiff has proposed the following amended class definition:

*JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE*
3:20-cv-09203-EMC

All persons residing in the State of California who: (1) are not, and have never been, registered users of Classmates.com; (2) have never donated a yearbook to Classmates.com; (3) for whom a search of their name using the search bar on the Classmates.com website yields at least one record corresponding to the class member from a yearbook that Classmates.com first made publicly available on or after December 18, 2018.

Plaintiff believes this class definition satisfies Rule 23 for all of the reasons identified in their class certification motion papers and for the reasons identified in the Court's order conditionally certifying a class. *See* Dkt. Nos. 190, 228, 256, 261.

Defendant maintains Plaintiff's proposed class definition should not be certified pursuant to Federal Rule of Civil Procedure 23 for the same reasons it identified in its opposition to Plaintiff's motion for class certification and its sur reply in further opposition to Plaintiff's motion for class certification. *See* Dkt. Nos. 214, 215, 217, 232-2. Defendant is not waiving its objections to any class definition predicated on the theories of liability Plaintiff has pleaded in this case on those bases by not restating them herein. Rather, Defendant incorporates by reference all its previously expressed bases for opposing Plaintiff's original proposed class definition in opposing Plaintiff's amended proposed class definition, consistent with this Court's previous statement that all such arguments were preserved as to any class definition adopted by the Court pursuant to the meet and confer process it ordered regarding an amended class definition and that those arguments did not need to be restated. Dkt. No. 256 at 43.

In addition, Defendant believes Plaintiff's amended proposed class definition creates three new additional shortcomings that independently warrant denial of certification of the amended proposed class. Those three issues are detailed below with the parties' respective positions.

## A. The Parties Disagree Regarding The Third Element Of Plaintiff's Amended Class Definition.

The Court in its order conditionally certifying Plaintiff's proposed class determined that Plaintiff's previous proposed class definition was "arguably overbroad or vague" given Plaintiff's "concession" that her theories of liability were "largely dependent on a *search* being conducted using a person's *name*"

because "*the person's name is the critical part of a person being readily identifiable.*" (Dkt. 256 at 21) (emphases in original). The Court therefore directed Plaintiff to modify her proposed class definition to "limit the class to the use of a name or a name in conjunction with a photo" and to "clarify[] that it is a person's name that is searchable." (*Id.* at 22, 43).

In the Court's subsequent order following the Parties' initial status report on their meet and confer efforts, the Court indicated that Plaintiff's initial attempt at implementing its directive "likely need[s] some modification" because "it is not clear to the Court that 'searchable' needs to be defined and [Plaintiff's] definition of 'searchable' seems to get into a different issue (that of reasonable identifiability). It may also be helpful to clarify that a search is conducted, through use of a search bar, of a yearbook(s) made available on the Classmates.com website." (Dkt. 267 at 2).

In response to the Court's directives, Plaintiff has proposed the following as the third element of her amended proposed class definition:

> those "for whom a search of their name using the search bar on the Classmates.com
> website yields at least one record corresponding to the class member."

### 1.    Defendant's Position

The third element of Plaintiff's amended proposed class definition—that the class would include anyone "for whom a search of their name using the search bar on the Classmates.com website yields at least one record corresponding to the class member"—is defective for the same reasons as the previously proposed definition. That is, the amended proposed definition remains "overbroad or vague." Dkt. 256 at 21.

Initially, the amended proposed class definition is vague because the third element does not workably implement the definition of what Plaintiff in originally moving for class certification called being "searchable." *E.g.*, Dkt. No. 189-03 at 5. Just as in the previous definition, the only way to determine who is "searchable," and therefore is a member of the class, is to undergo a burdensome, individualized manual process for all class members, as PeopleConnect has previously explained to the Court. *See, e.g.*, Dkt. No. 232-2 at 6–8. Plaintiff still has not put forth a method to resolve this, let alone a method that satisfies the Seventh Amendment and the attendant principles of due process. At most, she agreed under

*JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE*
3:20-cv-09203-EMC

questioning from the Court at oral argument on the motion for class certification that "the burden [would be] on the class members to fill out a form and say, yeah, I was searchable." *See* Tr. at 48–49, *Nolen v. PeopleConnect*, No. 3:20-cv-09203 (Nov. 16, 2023).

Moreover, the amended proposed class definition is overbroad because it continues to necessarily include individuals who do not have meritorious claims. That a person's name is "searchable" does not mean a person can prevail under Section 3344. Rather, as this Court recognized in its order conditionally certifying a class, each class member must *also* prove by a preponderance of the evidence that he or she is identifiable as a unique individual solely from the information presented in a Classmates.com search result—which as the Court found is limited to a class member's name (during their school years), school attended, and years of attendance. Dkt. 267 at 20–21.[1] Although the Court found this information "usually" is enough to identify specific individuals, the Court also recognized that it is not always enough. *Id*. Yet the third element of Plaintiff's amended proposed class definition still does not exclude individuals from the class who are not identifiable from the information provided in a search result, regardless of whether there may be a record "corresponding" to that name.

While a class definition can encompass people who cannot ultimately prevail on the merits to some limited extent, the Ninth Circuit has held that there must be a "workable" plan at the time of certification to winnow such individuals from the class before final judgment. *See Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (holding that a court had to outline a "workable" winnowing plan at class certification where defendant established that at least 18 of 13,680 transactions (0.13%) could not give rise to liability). Plaintiff has not proposed *any* plan, let alone a workable one. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (explaining that a winnowing plan is not "workable" if it either deprives a defendant of a "meaningful opportunity to contest whether an individual" has a meritorious claim or relies upon an administrator's assessment of "forms completed by consumers concerning an element of their claims"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2020) ("[A]ny winnowing mechanism must be truncated enough to ensure that the common issues predominate, yet robust enough

---

[1] As PeopleConnect showed in opposing Plaintiff's motion for class certification, and as the Court found, the accompanying image scans of yearbook pages generally are too small to aid in identifying specific individuals. *See* Dkt. No. 256 at 21.

JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE
3:20-cv-09203-EMC

to preserve the defendants' Seventh Amendment and due process rights to contest every element."). Plaintiff's proposed trial plan states only that she "will" at some unknown future date "present a claims administration protocol for the Court's review and approval, which would govern post-judgment submission, processing, and resolution of claims with the goal of maximizing class member participation and making recovery simple and straightforward." Dkt. 199.

This is a major shortcoming of Plaintiff's proposal. The Court has acknowledged "there may be occasions in which people share the same name or have similar names, and therefore some individualized inquiries will be necessary." Dkt. 256 at 25. Moreover, the current identifiability of many individuals is undercut for the distinct reason that they have changed their names—whether entirely or by adopting a married name—since their school days. The individualized inquiry of identifiability will necessarily extend to every single class member. At a minimum, for each class member, an assessment will have to be made as to whether the name of another person in that yearbook is arguably "similar" to the name of another person in that same yearbook and then, for each such person, the Seventh Amendment requires that a jury resolve the ultimate issue of identifiability. *See id.*[2] And it is no answer to simply limit the proposed definition to those who are "identifiable," for that is merely a fail-safe class. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (defining fail-safe class as "one that is defined so narrowly as to preclude membership unless the liability of the defendant is established") (internal quotation omitted).

Accordingly, Plaintiff's proposed amended class definition remains "overbroad or vague" and thus is inappropriate for class certification. Dkt. 256 at 21.

### 2.     Plaintiff's Response

PeopleConnect argues Plaintiff's proposed Class definition is "vague" because it is not clear how it can be determined that a yearbook record on the Classmates.com website "correspond[s] to" a given person. On the contrary, as this Court wrote in its Order conditionally granting Class certification, "the person's name is the critical part of a person being readily identifiable," and "a person is usually readily

---

[2] Presumably, the claims of anyone with a name that is literally "the same" as the name of another person in that same yearbook would fail to prove identifiability as a matter of law. But if that is not the rule, then the claims of such individuals would be triable to a jury as well.

identifiable by their name, especially when viewed in the context of having attended a particular school in a particular year." Dkt. 256, at *21. Thus, the means for establishing "correspondence" between a yearbook record and a given Class member is straightforward. If the name, school, and yearbook year listed in a Classmates search result match the name, school, and attendance year of an individual, then that individual corresponds to the yearbook record. *See id.* To the extent PeopleConnect's objection is a semantic one – *i.e.* that the phrase "corresponding to" is vague as written – Plaintiff has no objection to including more precise explanatory language in the Class definition if the Court so desires. During the meet and confer process, Plaintiff asked PeopleConnect to propose revised language that would address the purported vagueness issue PeopleConnect identified. PeopleConnect did not offer any alternative language.

PeopleConnect also asserts that the proposed definition is "overbroad" because in some cases, multiple individuals may correspond to a given combination of name, school, and year of attendance. For example, there might be multiple people named "Maria Hernandez" who attended San Leandro High School in 1963 (example chosen at random). This Court ruled that PeopleConnect failed to show this issue is "so extensive or pervasive that commonality or predominance is threatened." Dkt. 256, at *25. PeopleConnect now attempts to re-litigate this Court's ruling by claiming there is no conceivable "workable" plan for resolving this issue prior to judgment. On the contrary, Plaintiff proposes the following workable plan. First, PeopleConnect will receive the opportunity to identify any instances in the relevant yearbook records in which it contends that "people had shared or similar names." *See id.* It is evident PeopleConnect can do this because it has already done so for Ms. Nolen's yearbook. *Id.* Second, Plaintiff will receive the opportunity to challenge any such purported instances. Plaintiff may challenge by, for example: showing that the purportedly "similar" names are actually variations on a single name corresponding to single person (as Plaintiff did in her Reply in Support of Class Certification with respect to one of Ms. Nolen's classmates, Dkt. 228, at *14–15); or showing that multiple individuals with the same name can be easily distinguished based on other information available in their searchable records on Classmates.com (*e.g.*, class year, school activity, and/or photograph). This Court may then make a final

JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE
3:20-cv-09203-EMC

determination as to whether the Class members in question are uniquely identifiable and therefore entitled to recover.

Accordingly, Plaintiff's proposed Class definition is neither vague nor overbroad, and addresses the issues this Court raised in its orders.

**B.** **The Parties Disagree Over The Lack Of An Exclusion In The Class Definition Of Individuals Who Signed Consent Forms Relating To The Use Of Their Likenesses.**

In opposing Plaintiff's motion for class certification, Defendant contended that there were three different ways class members could consent to the use of their likeness by Defendant and thus were not entitled to recover: (1) registered users of Classmates.com who consented to the use of their likeness at the time of registration; (2) those who donated yearbooks and consented as part of the donation process; and (3) individuals who consented to school districts and yearbook publishers. (*See* Dkt. No. 256 at 27–28). Plaintiff excluded from her original class definition individuals who were or are registered users of Classmates.com and, per the direction of the Court in its order conditionally certifying the class, has excluded from the amended class definition individuals who donated yearbooks to Classmates.com.

During the Parties' meet and confer efforts, Defendant requested that Plaintiff also include a similar exclusion for individuals who consented broadly to the presentation of their likenesses to schools or yearbook publishers, but Plaintiff has declined to do so as Plaintiff disagrees that any such exclusion is necessary or appropriate.

**1.** **Defendant's Position**

Under Plaintiff's amended proposed class definition, there would be a second group of class members who under the Court's conditional certification order would not have viable claims—those who consented to the presentation of their likenesses through written agreements with third parties. Despite the Ninth Circuit's guidance in *Van*, Plaintiff has not put forward a "workable" plan to winnow those class members before final judgment, as she has not put forward any plan at all. She must address that omission before the amended proposed class definition can be approved.

During the meet and confer process, Plaintiff insisted that consent cannot be provided to PeopleConnect via an agreement with a third party and thus declined to exclude such individuals from the

class. But this Court already rejected that view, explaining that Plaintiff "seems to miss the point being raised by PeopleConnect." Dkt. 256 at 34. Rather, the Court recognized that specific language in a consent agreement—such as those that "refer to assignees, transferees, or successors"[3]—may apply to PeopleConnect, and thus "there may be some individualized inquiries based on consents obtained by schools." *Id*. at 36. And though the Court indicated that reviewing each class member to determine the specific terms of any consent forms they may have signed would not be a "time-consuming determination" because it presents "a matter that can be resolved on a group basis – school by school rather than person by person," the point is that under *Van* it is Plaintiff's obligation to identify a "workable" method for evaluating every class member with respect to this issue.[4]

Plaintiff declined during the Parties' meet and confer efforts to include an exclusion in the amended proposed class definition for all those who consented through an agreement with a third party. But to the extent she would now propose a narrower exclusion or the Court would propose one itself, such as a definitional exclusion for anyone who consented in a third-party agreement who by operation of state law principles regarding third-party beneficiary status consented to PeopleConnect, that would not be workable. That is because there would be no way short of individual review to determine who is and who is not a member of the class under such an amorphous standard. Accordingly, because Plaintiff's position necessarily means that the class would include some individuals who cannot prevail on the merits, she must put forward a "workable" winnowing plan for those individuals before such a class may be certified.

### 2.    Plaintiff's Response

PeopleConnect's contention that Plaintiff's class definition requires an individual analysis of individual agreements regarding consent provided to third parties is in direct contradiction to the Court's Class Cert. Order, which found that PeopleConnect had not "offered any concrete evidence that yearbook

---

[3] To the extent the Court suggested that only where those express terms appear in a consent form could PeopleConnect claim to be a third-party beneficiary of that agreement, PeopleConnect would disagree that such third-party doctrines apply only in those circumstances. That issue, however, is not presently before the Court and may be addressed in the context of specific claims forms as the issue arises.

[4] At a minimum, because schools can change the content of the forms they require, it would at best be "year-by-year for each school"—i.e., yearbook-by-yearbook, rather than "school by school." That is potentially significant given that many schools have multiple yearbooks in the Classmates.com library.

publishers were given broad consents to use" or that "other third parties were given broad consents to use." Dkt. 256 at 34. Instead, what the Court recognized is that the limited third-party consent evidence PeopleConnect submitted, did not demonstrate that broad consents were obtained and, even if there was evidence that individualized inquiries were necessary based on consents obtained by schools, nothing in the record "indicate[s] that they would be extensive" so as to prohibit certification of the class. *Id.* at 36–37. Although the Court left the door open for PeopleConnect to raise this issue in the future should it obtain evidence to support its contention, it recognized that such a challenge would likely be futile in terms of affecting class certification because it could "be resolved on a group basis[.]" *Id.* ¶37.

This lack of evidence about purported consent from third-parties further underscores Plaintiff's point that PeopleConnect did not receive, or attempt to verify whether it had, consent to use Plaintiff's and the Class's yearbooks for a commercial purpose. And the question of whether such consent was received is a common question in any event.

Thus, nothing in the record or the Court's order mandates that the question of third-party consent be built into the class definition.

**C.    The Parties Disagree Over The Class Definition's Inclusion Of Individuals Who Appear Only In Yearbooks Originally Published Outside California.**

Finally, Defendant requested, based on its understanding of the scope of the class definition Plaintiff had previously proposed, that the third element of Plaintiff's amended proposed class definition be modified as follows:

**Plaintiff's Proposal: "**for whom a search of their name using the search bar on the Classmates.com website yields at least one record corresponding to the class member from a yearbook that Classmates.com first made publicly available on or after December 18, 2018."

**Defendant's Proposal: "**for whom a search of their name using the search bar on the Classmates.com website yields at least one record corresponding to the class member from

JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE
3:20-cv-09203-EMC

a <u>California</u> yearbook that Classmates.com first made publicly available on or after December 18, 2018."[5]

The effect of Defendant's proposed amendment would be to limit the class to individuals who appeared in yearbooks originally published in California, rather than in any of the other 49 states and the District of Columbia but at some time during the class period lived in California. Plaintiff disagrees that such an amendment is appropriate given that the Court already rejected this argument and found that a class of California residents is appropriate. Dkt. 256 at 42.

### 1. Defendant's Position

In moving to certify a class, Plaintiff limited her proposed class to those who had attended California schools. She made that clear in her reply brief where she attempted to defend the burden of resolving certain individualized issues within the class based the fact that "[t]here are a little over 1,000 *California* yearbooks." Dkt. 227 at 11 (emphasis added). That limitation also was central to the class size estimate submitted by Plaintiff. Specifically, Clifford Kupperberg explained in his declaration that "I started with the number of *California* yearbooks in PeopleConnect's database" and that he used "data from the *California* Department of Education" regarding "the average number of high school seniors in *California*." Dkt. 141 ¶¶ 11, 15. Now, however, Plaintiff wishes to abandon that limitation and expand the class to include those who attended non-California schools, but now are California residents. The Court should reject that expansion for two reasons.

Initially, expanding the class definition to reach the claims of individuals who attended school in other states creates additional complexity. For instance, as discussed above, the issue of whether PeopleConnect falls within the scope of consent agreements entered between individuals and third parties presents an issue of state contract law. It is one thing to resolve that issue based solely on California law. But expanding the class as Plaintiff proposes means these issues will arise under the laws of the states where these agreements were formed, which potentially implicates the laws of all fifty states. That additional complexity is unwarranted and inappropriate for a class. *See Stromberg v. Qualcomm Inc.*, 14

---

[5] As the Court noted in its conditional certification order, PeopleConnect disagrees that December 18, 2018 is the correct date for purposes of evaluating the statute of limitations. *See* Dkt. No. 256 at 3. The Court has indicated that this issue may be addressed at a later time. *See id.*

F.4th 1059, 1067–74 (9th Cir. 2021) (holding that common issues did not predominate because claims implicated laws of multiple states); *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *13 (N.D. Cal. June 2, 2021) (granting motion to strike class allegations where allegations made clear law of all 50 states would have to be applied to resolve the merits). Moreover, the sheer number of additional yearbooks to review as a result of Plaintiff's proposed expansion will magnify all the individualized issues PeopleConnect has identified to the Court.

Moreover, and at a minimum, the amended proposed definition creates significant extraterritoriality issues. "[U]nder California law, there is a presumption against extraterritorial application of California's statutes unless the Court can reasonably infer from the language of the statute, its purpose, or its history an intent to make the statute applicable beyond California's borders." *Franklin Data Ventures, Inc. v. Veristar, LLC*, 2022 WL 20273285, at * 2 (C.D. Cal. June 7, 2022) (citations omitted). The Ninth Circuit has held that Section 3344 does not apply extraterritorially. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 616–17 (9th Cir. 2010) (rejecting that "California's right of publicity" law applies extraterritorially). And Section 3344 would improperly be applied extraterritorially even if a person *now* resides in California. "[U]nder California law, the relevant inquiry for whether a state law is being applied extraterritorially is … whether 'the conduct which gives rise to liability … occurs in California." *Eng. v. Gen. Dynamics Mission Sys., Inc.*, No. EDCV18908JGBSHKX, 2019 WL 2619658, at *7 (C.D. Cal. May 8, 2019) (granting motion for summary judgment in part because "crucial elements" of a FEHA claim "occurred outside of California"), *aff'd* 808 F. App'x 529 (9th Cir. 2020) (quoting *Leibman v. Prupes*, 2015 WL 3823954, at *7 (C.D. Cal. June 18, 2015)).

Here, the Court has ruled that the harm prohibited by Section 3344 occurs *when* a yearbook is added to the Classmates.com library. Dkt. 177 at 6–7. Under the amended proposed definition, however, yearbooks that include individuals who are within the proposed class will have been added to the Classmates.com library *before* they became California residents. For those individuals, there was no connection to California when the purportedly actionable harm occurred.[6] One cannot create a nexus to

---

[6] The scanning and uploading of yearbooks by PeopleConnect does not occur in California.

1    California if that person moved to California only *after* the purportedly wrongful act occurred. So,
2    Plaintiff's amended proposed class definition is overbroad.

3                        **2.    Plaintiff's Response**

4          Plaintiff did not limit the class she sought to certify to those who appeared in California yearbooks.
5    To the contrary, Plaintiff moved for certification of a class of "All persons residing in the state of
6    California…" Dkt. 190. Nothing in the Court's Class Cert. Order suggests that its conditional grant of
7    class certification was limited to California residents who appear in California yearbooks, and the Court
8    did not request any modification of Plaintiff's class definition on this issue. *See* Dkt. 256.

9          As discussed above, the question of consent via third parties is irrelevant to the class definition,
10   where PeopleConnect has not presented evidence that any such consents address the conduct at issue in
11   this case. As a result, it has also not shown that other state's laws would be implicated by any purported
12   contracts such that any individualized issues would be present (although, even if other state laws were
13   implicated, those would be common questions). Similarly, there are no extraterritoriality concerns where
14   Class membership will be limited to California residents, and the Court had no concerns about confirming
15   residency. Dkt. 256 at 42. And the conduct giving rise to the liability is ongoing as PeopleConnect
16   continues to use Class members' names and photographs for commercial purposes. Again,
17   PeopleConnect's attempt to relitigate class certification is unpersuasive and Plaintiff's class definition
18   should be entered by the Court.

19   **II.    Process For Providing Class Notice**

20         Under Rule 23(c)(2)(B), notice to class members must be "the best notice that is practicable under
21   the circumstances." The Parties agree that individual notice is not feasible given the limited information
22   about class members available to the Parties. No list of class members exists. Nor do the Parties have
23   access to information that would allow them to identify the names and addresses of class members
24   "through reasonable efforts." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Accordingly,
25   under the circumstances, publication by notice is an appropriate method to direct notice to individual class
26   members. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2019 WL 1512265, at
27   *3–4 (N.D. Cal. Apr. 8, 2019); *see also Hughes v. Kore of Ind. Enterprise, Inc.*, 731 F.3d 672, 676–77

28

                                                    13

(7th Cir. 2013) ("The members of the class in this case can't be identified through *reasonable* effort, effort commensurate with the stakes …. When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted.").

The Parties agree that the publication notice program outlined in the Weisbrot Declaration and supporting exhibits is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Parties' disagreement with respect to the plan for providing Rule 23(c)(2)(B) notice to class members involves two remaining issues: (1) the status of the Classmates Terms of Service during the notice period; and (2) whether the proposed notice plan includes superfluous elements that are unnecessary for satisfying the requirements of Rule 23(c)(2)(B).

**A.** **The Parties Disagree Regarding Enforcement Of The Classmates Terms Of Service For New Registrants During The Notice Period.**

Plaintiff has limited her proposed class definition to those who "are not, and have never been, registered users of Classmates.com." Plaintiff has done so in part because individuals who agree to the Classmates Terms of Service as part of the registration process must agree to arbitrate their claims and not participate in class litigation against Defendant. Plaintiff has requested that PeopleConnect agree to the following: in the event Plaintiff and the Class prevail at trial after class notice goes out, potential class members who believe they inadvertently registered for a Classmates.com account between the notice date and the close of the opt-out period can submit an affidavit at the time they file a claim stating that their registration was made in the context of determining their class membership and they did not intend to give up their right to participate as a class member in this case. Defendant has refused to do so.

**1.** **Plaintiff's Position**

As the Court is aware, there has been significant litigation in this case surrounding PeopleConnect's assertion that registering on Classmates.com requires assent to PeopleConnect's Terms of Service, which bind the user to arbitration. As a result, Plaintiff has significant concerns that, upon receiving notice about certification of a class in this action, Class members will visit Classmates.com to determine whether their name and yearbook photograph appears on the website, inadvertently register for

an account and agree to the Terms of Use, and thereby be barred from proceeding as a Class member. To avoid the risk of taking away Class members' legal rights to participate in the Class without their knowledge, Plaintiffs propose that the Court order that Class members who believe they inadvertently registered for a Classmates.com account between the notice date and the close of the opt-out period be permitted to submit an affidavit stating that their registration was made in the context of determining their Class membership and they did not intend to give up their right to participate as a Class member in this case. This affidavit would be submitted as part of the claims process after any Class-wide judgment is entered against PeopleConnect in this case.

### 2.    Defendant's Response

Plaintiff's proposal is that the Court invalidate PeopleConnect's otherwise valid and enforceable contractual agreements for some subset of its users by fiat. As a preliminary matter, the Court already addressed Plaintiff's concern by directing that the Parties include in the long-form class notice language to the effect that "becoming a registered user of Classmates.com will take person outside of the class definition." Dkt. 267 at 3. The Parties have negotiated such language, *see* Weisbrot Declaration Ex. D, and nothing more is appropriate or required. In all events, Plaintiff's proposal is an inappropriate component of a plan for providing notice to class members under Rule 23(c)(2)(B), premature to the extent any individual class member would seek to contest the enforceability of the Terms of Service under principles of state contract law, and likely unconstitutional.

*First*, as was true of Plaintiff's earlier proposal that the Court order PeopleConnect to reconstruct the entire Classmates.com website so individuals could determine if they are searchable, *see* Dkt. 266 at 4–5, Plaintiff's proposal is not an appropriate part of a plan for providing class notice. The purpose of Rule 23(c)(2)(B) is only to provide potential class members with information about the lawsuit and an opportunity to opt out. *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2019 WL 1512265, at *4 (N.D. Cal. Apr. 8, 2019) (denying aspects of plaintiff's proposed notice plan that "would not provide any supplemental value in reaching class members"). Invalidating contractual agreements entered by individuals with PeopleConnect is wholly untethered from this purpose, and Plaintiff cites no

authority indicating that such an order is an appropriate component for delivering notice to potential class members.

*Second*, Plaintiff's proposal addresses the issue of so-called "inadvertent" registrants prematurely. Plaintiff has contended that a judgment may be entered in this case only on a "claims-made basis" using a "claims form." Tr. at 48–49, *Nolen v. PeopleConnect*, No. 3:20-cv-09203 (Nov. 16, 2023). Under that approach, a registered user who submits a claims form could, in theory and on an individualized basis, object to being excluded from the judgment based on an argument about the enforceability of the Terms of Service (although any such assertion would be meritless as a matter of applicable state contract law and, under the delegation clause that is part of the Terms of Service, would need to be addressed by an arbitrator, not the Court). But the point with respect to Plaintiff's immediate proposal is that she has not proffered any basis, either legally or factually, that would justify having the Court prospectively establish as a *per se* rule that the Terms of Service are not enforceable as to *anyone* who registers for a Classmates.com account and later submits a claims form.

*Third*, what Plaintiff is seeking is an order from the Court invalidating otherwise enforceable contractual agreements entered between PeopleConnect and third parties. *E.g.*, *Buckeye Check Cashing v. Cardenga*, 546 U.S. 440 (2006) (treating arbitration agreement as enforceable contract). That would impair the obligation of private-party contracts. There is substantial reason to believe that such an order is invalid under the Fifth Amendment and certainly no basis to believe doing so is within the scope of the authority conferred on courts by Rule 23(c)(2)(B).

**B.      The Parties Disagree About The Domain Name For The Notice Website**

Plaintiff's retained expert on issues relating to class action notice and claims administration, Angeion Group, LLC, proposed to the Parties six available domain names for the Notice website:

- o   CaliforniaClassmatesLitigation.com
- o   CaliforniaClassmatesClassAction.com
- o   CaliforniaNamePhotoSearchClassAction.com
- o   CAYearbookClassAction.com
- o   YearbookSearchClassAction.com

16

  ○ YearbookPhotoClassAction.com

  Plaintiff prefers either CaliforniaClassmatesLitigation.com or CaliforniaClassmatesClassAction.com, as Plaintiff believes these options most accurately identify the litigation and the website at issue for the provisionally certified class.

  Defendant prefers either CaliforniaNamePhotoSearchClassAction.com or CAYearbookClassAction.com because those options more accurately describe the actual causes of action at issue in this case. Moreover, use of the branded term "Classmates" in the domain names that Plaintiff prefers could create confusion for people looking for the notice website and for Classmates.com. Those domain names also do not reference the theory behind the claims themselves. That potential confusion is entirely unnecessary to achieving notice compliant with Rule 23(c)(2)(B).

  The Parties request the Court's guidance on this issue.

**III. Content Of Publication Notices And Related Documents**

  The Parties have met and conferred regarding the content of four documents that would be used in the proposed plan for publication notice: (1) a notice that would appear in online advertising; (2) a long-form notice that would appear on a website describing the class and opt-out procedure; and (3) a form that may be submitted by those who wish to opt out of the class. Portions of these documents may require revision depending on how the Court defines a class. The Parties have identified those sections of the materials and will meet and confer to finalize those sections based on the Court's ruling with respect to class definition. Those sections are highlighted in yellow in Weisbrot Declaration Exhibits D and E.

  The Parties are otherwise in agreement with respect to these materials, which are attached hereto as Weisbrot Declaration Exhibits B–E.

*Joint Status Report Regarding Class Definition and Class Notice*
3:20-cv-09203-EMC

Dated: May 8, 2024

By: /s/ Raina C. Borrelli
Raina C. Borrelli (*Pro Hac Vice*)
raina@turkestrauss.com
Sam Strauss (*Pro Hac Vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*Pro Hac Vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiff and the Proposed Class*

By: /s/ Debbie L. Berman
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
Clifford W. Berlow (*pro hac vice*)
cberlow@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: (628) 267-6800
Facsimile: (628) 267-6859

Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE
3:20-cv-09203-EMC

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

Dated: May 8, 2024                    /s/    _Debbie L. Berman_
                                              Debbie L. Berman

---

JOINT STATUS REPORT REGARDING CLASS DEFINITION AND CLASS NOTICE
3:20-cv-09203-EMC

2-ER-74



**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:    628 267-6800
Facsimile:    628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:    312 222-9350
Facsimile:    312 527-0484

*Attorneys for Defendant PeopleConnect, Inc.*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE TSENG, ALEXANDRA OVERTON and ALICIA NOLEN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>                    Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**ANSWER TO SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE § 3344, CAL. BUS. & PROF. CODE § 17200, AND CALIFORNIA UNJUST ENRICHMENT** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court granted summary judgment as to Plaintiff Wayne Tseng's individual claims on March 30, 2023, and Alexandra Overton voluntarily dismissed her individual claims in this action on April 27, 2023. As such, no answer to allegations regarding Mr. Tseng or Ms. Overton is required. Answering further, PeopleConnect states as follows:

1.      Plaintiffs WAYNE TSENG, ALEXANDRA OVERTON and ALICIA NOLEN, by and through their attorneys, make the following allegations on information and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

**ANSWER:**   As to Plaintiff Alicia Nolen, ("Plaintiff"), PeopleConnect lacks sufficient knowledge to form a belief as to the truth of the allegations in paragraph 1 that pertain to her and on that basis denies those allegations. As to former Plaintiffs Wayne Tseng and Alexandra Overton, no answer is required.

## INTRODUCTION

2.      Plaintiffs bring this class action complaint against PEOPLECONNECT, INC. ("Classmates") for knowingly misappropriating the names, photographs, and likenesses of Plaintiffs and the class; knowingly using those names, photographs, and likenesses to advertise its products and services, including subscription memberships to the website Classmates.com; and knowingly using those names, photographs, and likenesses on and in the website Classmates.com, without obtaining prior consent from Plaintiffs and the class.

**ANSWER:**   PeopleConnect admits that Plaintiff brings this Complaint styled as a putative class action against PeopleConnect. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 2.

3.      Classmates' business model relies on extracting personal information from school yearbooks, including names, photographs, schools attended, and other biographical information. Classmates aggregates the extracted information into digital records that identify specific individuals by name, photograph, and other personal information, and stores the digital records in a massive online database. Classmates provides free access to some of the personal information in its database in order to drive users to purchase a paid product – a monthly subscription to

1  Classmates.com that retails for up to $3 per month – and to gather registered users, from whom

2  Classmates profits by selling targeted ads.

3      **ANSWER:**   PeopleConnect denies the allegations of paragraph 3.

4      4.    According to the Classmates.com website, Classmates' Yearbook Collection

5  contains records copied from over 400 thousand yearbooks. While Classmates does not publish

6  figures about the total number of records in the Collection or a breakdown by state, it is likely the

7  Collection contains records corresponding to millions of Californians.

8      **ANSWER:**   PeopleConnect admits the Classmates.com website provides access to over

9  400,000 yearbooks. Unless expressly admitted here, PeopleConnect denies the remaining

10  allegations of paragraph 4.

11      5.    Classmates has not received consent from, given notice to, or provided

12  compensation to the millions of Californians whose names, photographs, biographical

13  information, and identities appear in its Classmates Yearbook Collection.

14      **ANSWER:**   The allegations of paragraph 5 consist of legal conclusions and as such, no

15  response is required. To the extent a response is required, PeopleConnect denies the allegations of

16  paragraph 5. Answering further, PeopleConnect denies that it must obtain consent from

17  Californians whose names, photographs, biographical information, and identities appear in its

18  Classmates Yearbook Collection or that those Californians are entitled to notice or compensation.

19      6.    The names, photographs, cities of residence, schools attended, likenesses, and

20  identities contained in the Classmates Yearbook Collection uniquely identify specific individuals.

21      **ANSWER:**   PeopleConnect denies the allegations of paragraph 6.

22      7.    Classmates knowingly uses the names, photographs, cities of residence, schools

23  attended, likenesses, and identities in its Classmates Yearbook Collection to advertise, sell, and

24  solicit the purchase of its "CM+" subscription membership, which retails for up to $3 per month.

25      **ANSWER:**   PeopleConnect denies the allegations of paragraph 7.

26      8.    Classmates knowingly uses the names, photographs, cities of residence, schools

27  attended, likenesses, and identities in its Classmates Yearbook Collection to advertise the free

28

version of its website, which is available to both unregistered users and registered non-paying users. Classmates derives profit from the free version of its website by (1) selling targeted ads; (2) driving users of the free version to purchase its paid products and services; and (3) on information and belief, selling the personal information it collects from registered and unregistered users to third parties.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 8.

9.    Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection on and in its products and services, by (1) selling access to the records to paying subscribers via its CM+ online membership plan; and (2) including these records on the free version of its website that is available to unregistered users and registered non-paying users, which Classmates distributes for free to the public as a means of advertising its services and attracting paying subscribers.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 9.

10.    By misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, Classmates has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, infringing their intellectual property without compensation, and disturbing their peace of mind. Classmates has also earned ill-gotten profits and been unjustly enriched.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 10.

11.    These practices, as further detailed in this complaint, violate the California right to publicity as codified in Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and California Unjust Enrichment law.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 11.

### JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, defendant

1  PeopleConnect Inc. is incorporated in Delaware and has its principal place of business in Seattle,

2  Washington. The class members are residents of California. (B) The proposed class consists of at

3  least 100 members. Classmates advertises that its Classmates Yearbook Collection comprises

4  records collected from "over 400,000 yearbooks." While Classmates does not publish statistics

5  concerning the total number of records in each yearbook, or a breakdown by state, a conservative

6  estimate would place the number of individual records corresponding to Californians in the

7  millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

8  Cal. Civ. Code § 3344 provides for damages equal to the greater of $750 per violation, the actual

9  damages suffered by Plaintiffs, or the profits earned by Defendants attributable to the unauthorized

10 use. Given millions of likely records in California, the amount in controversy is well over the

11 jurisdictional amount.

12     **ANSWER:**  The allegations contained in paragraph 12 consist of legal conclusions to

13 which no response is required. To the extent a response is required, PeopleConnect admits only

14 that the Complaint purports to allow the Court to exercise jurisdiction under 28 U.S.C. § 1332(d),

15 that PeopleConnect, Inc. is incorporated in Delaware and has its principal place of business in

16 Washington, and that the Classmates.com website provides access to hundreds of thousands of

17 yearbooks. PeopleConnect lacks knowledge or information sufficient to form a belief about the

18 citizenships of the Plaintiff and most members of the putative class. Unless expressly admitted

19 here, PeopleConnect denies the remaining allegations of paragraph 12.

20     13.     This Court has personal jurisdiction over the claims of Plaintiffs and the nonnamed

21 class members. Classmates maintains substantial connections to the state of California and this

22 district. Classmates maintains an office in Woodland Hills, California. Classmates advertises its

23 products and services to prospective customers in this state and district, provides its products and

24 services to existing customers in this state and district, and uses the misappropriated names,

25 photographs, likenesses, images, and identities of residents of this state and district as described in

26 this complaint.

27     **ANSWER:**  The allegations of paragraph 13 consist of a legal conclusion to which no

28

1  response is required and refer to a dismissed defendant unrelated to PeopleConnect, Inc., so no
2  response is required. To the extent a response is required, PeopleConnect admits that it conducts
3  business in California and otherwise denies the allegations of paragraph 13.

4      14.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the
5  events and conduct giving rise to the violations alleged in this complaint occurred in this district.
6  A substantial portion of the class members reside in this state and district. Named Plaintiffs
7  Lawrence Geoffrey Abraham, Alice Zhang, Wayne Tseng, and Jamaal Carney reside in this
8  district.

9      **ANSWER:**     Paragraph 14 consists of legal conclusions to which no response is required.
10 To the extent a response is required, PeopleConnect lacks sufficient knowledge to form a belief as
11 to the true residency of putative class members and on that basis denies those allegations. As
12 Plaintiffs Jamaal Carney, Alice Zhang, Lawrence Geoffrey Abraham, and Wayne Tseng have been
13 dismissed from this lawsuit, no answer to allegations regarding their true residency is required.
14 PeopleConnect denies the remaining allegations of paragraph 14.

15                              **INTRADISTRICT VENUE**

16     15.     Venue in this Division of the Northern District is proper because a substantial part
17 of the events or omissions which give rise to the claim occurred in San Francisco County and
18 because the named Plaintiffs live in this District.

19     **ANSWER:**     Paragraph 15 consists of a legal conclusion to which no response is required.
20 To the extent a response is required, PeopleConnect denies the allegations of paragraph 15.

21                                   **PARTIES**

22 **Defendant Classmates**

23     16.     Defendant PEOPLECONNECT, INC. is a Delaware corporation with its
24 headquarters in Seattle, Washington. It conducts business under the brand names
25 "Classmates.com," "Classmates," and other brand names associated with the various websites and
26 services it owns and operates. It conducts business throughout this district, California, and the
27 United States. PeopleConnect, Inc. owns and operates the website Classmates.com.

28

1    **ANSWER:**    PeopleConnect admits that PeopleConnect, Inc. is a Delaware corporation

2  with its headquarters in Washington and that it owns and operates Classmates.com. PeopleConnect

3  denies the remaining allegations of paragraph 16.

4  **Plaintiff Wayne Tseng**

5    17.    Plaintiff Wayne Tseng is a resident of El Sobrante, California, in Contra Costa

6  County. Mr. Tseng is not a subscriber of any Classmates products or services and is not subject to

7  any Terms of Service or any other agreement with Classmates.

8    **ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the

9  allegations of paragraph 17 is required.

10    18.    Mr. Tseng has never provided consent to Classmates, written or otherwise, for the

11  commercial use of his name, photograph, or likeness.

12    **ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the

13  allegations of paragraph 18 is required.

14    19.    Classmates has never notified, requested consent from, or provided compensation

15  to Mr. Tseng for its misappropriation and commercial exploitation of his name, photograph, and

16  likeness.

17    **ANSWER:**     As Mr. Tseng has been dismissed from this lawsuit, no answer to the

18  allegations of paragraph 19 is required.

19    20.    There is no agreement to arbitrate between Mr. Tseng and Classmates or

20  PeopleConnect. At no time has Mr. Tseng believed any agreement between himself and

21  Classmates or PeopleConnect exists or existed.

22    **ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the

23  allegations of paragraph 20 is required.

24    21.    Mr. Tseng hereby expressly repudiates any agreement to arbitrate that Classmates

25  or PeopleConnect may contend exists or existed.

26    **ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the

27  allegations of paragraph 21 is required.

28

22.     Mr. Tseng instructed his attorneys to pursue a claim against Classmates in federal court. Mr. Tseng has never authorized, and does not authorize, his attorneys to agree to arbitration on his behalf.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 22 is required.

23.     Mr. Tseng is not aware of any agreements between any of his attorneys and Classmates/PeopleConnect.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 23 is required.

24.     Mr. Tseng is not aware of any accounts on Classmates.com created by his attorneys.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 24 is required.

25.     Mr. Tseng did not instruct his attorneys to investigate the Classmates.com website. Mr. Tseng did not instruct his attorneys to register for an account or agree to a Terms of Service.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 25 is required.

26.     To confirm the presence of Mr. Tseng's photograph on Classmates.com and collect the single screenshot shown in the Complaint below, a non-attorney staff member of Turke & Strauss LLP searched for Mr. Tseng's name on the publicly available portion of the Classmates.com website. At the time she performed the search, the publicly available portion of the Classmates.com website did not require agreement to any TOS. The staff member never saw a TOS and did not agree to any TOS.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 26 is required.

27.     None of Mr. Tseng's attorneys or their staff visited any portion of the Classmates.com website that requires agreement to a TOS to gather information related to his claim.

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**ANSWER:**   As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 27 is required.

28.     All the information supporting Mr. Tseng's complaint is publicly available without agreeing to any TOS. That Mr. Tseng's photograph is on Classmates.com is verifiable by searching for his name on portions of the site that do not require agreeing to the TOS. The advertising flow Classmates uses to promote website subscriptions is described in detail in publicly available documents, including the initial Complaint filed in this case. That Classmates publicly displays a version of the advertising flow that incorporates Mr. Tseng's photograph is reasonably alleged on information and belief, because Classmates uses all student yearbook photographs in the same way.

**ANSWER:**   As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 28 is required.

**Plaintiff Alexandra Overton**

29.     Plaintiff Alexandra Overton is a resident of Ventura, California, in Ventura County. Ms. Overton is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 29 is required.

30.     Ms. Overton has never visited, used, or subscribed to the website Classmates.com.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 30 is required.

31.     Ms. Overton attended Villanova Preparatory School in Ojai, California, from which she graduated in 2019.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 31 is required.

32.     Ms. Overton's claims are functionally identical to the claims Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed before this Court on December 18, 2020. Ms.

9

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

1   Overton is a member of the Class Ms. Callahan and Mr. Abraham alleged in their complaint. *See*

2   Dkt. 2. Accordingly, the statute of limitations was tolled for Ms. Overton at least from the time

3   Ms. Callahan and Mr. Abraham filed their Complaint. Ms. Overton's claims are therefore timely.

4       **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

5   allegations of paragraph 32 is required.

6       33.   Even if tolling did not apply, Ms. Overton's claims would still be timely because

7   she could not have discovered her claim prior to December 18, 2020.

8       **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

9   allegations of paragraph 33 is required.

10      34.   Even if tolling did not apply, and even if the discovery rule did not apply, Ms.

11  Overton's claims would still be timely because, on information and belief, PeopleConnect first

12  uploaded her photograph to www.classmates.com less than two years prior to the date on which

13  Ms. Overton brought her claim.

14      **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

15  allegations of paragraph 34 is required.

16      35.   Prior to filing her Complaint, Ms. Overton requested through her counsel that

17  PeopleConnect inform her when it first uploaded her photograph. PeopleConnect refused to

18  provide her this information.

19      **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

20  allegations of paragraph 35 is required.

21      36.   Ms. Overton has never provided consent to Classmates, written or otherwise, for

22  the commercial use of her name, photograph, or identity.

23      **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

24  allegations of paragraph 36 is required.

25      37.   Classmates has never notified, requested consent from, or provided compensation

26  to Ms. Overton for its misappropriation and commercial exploitation of her name, photograph, and

27  identity.

28

1     **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

2 allegations of paragraph 37 is required.

3     38.   There is no agreement to arbitrate between Ms. Overton and PeopleConnect. Ms.

4 Overton has never visited the Classmates.com website and has never seen or agreed to any

5 PeopleConnect or Classmates Terms of Service. At no time has Ms. Overton believed any

6 agreement between herself and PeopleConnect exists or existed.

7     **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

8 allegations of paragraph 38 is required.

9     39.   Counsel on behalf of Ms. Overton sent a letter to PeopleConnect's counsel on

10 February 14, 2023. **Ex. 1**. Counsel wrote that "Ms. Overton and Ms. Nolen do not agree, and have

11 never agreed, to arbitrate their claims against PeopleConnect. Ms. Overton and Ms. Nolen

12 expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated

13 that "to ensure that PeopleConnect does not misrepresent or misunderstand Ms. Overton's, Ms.

14 Nolen's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Ms.

15 Overton and Ms. Nolen both signed" Acknowledgements attached to the letter. *Id*. (Emphasis in

16 original.).

17     **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to

18 allegations regarding an agreement to arbitrate is required. Answering further, paragraph 39

19 consists of legal conclusions to which no response is required. To the extent a response is required,

20 PeopleConnect admits only that counsel for Ms. Nolen sent a letter to PeopleConnect's counsel on

21 February 14, 2023. PeopleConnect denies the remaining allegations of paragraph 39.

22     40.   In her signed Acknowledgment attached to the February 14 letter, Ms. Overton

23 acknowledged and confirmed that: (1) she "expressly disclaims and repudiates any purported

24 agreement to arbitrate"; (2) she "has never seen or agreed to any terms of service or any other

25 agreement" with PeopleConnect; (3) she "has no knowledge of any terms, material or otherwise,

26 that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) she

27 "does not believe any agreement to arbitrate exists" between herself and PeopleConnect; (5) she

28

1    "does not believe [she] is bound by any agreement to arbitrate that may exist between

2    [PeopleConnect] and any other person," including her attorneys. **Ex. 2**.

3         **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

4    allegations of paragraph 40 is required.

5         41.    Ms. Overton also acknowledged and confirmed that she "instructed her [counsel]":

6    (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [her] behalf"; (2) [t]o pursue

7    this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect]

8    on [her] behalf that [she] does not affirm or ratify any agreement to arbitrate that might exist now,

9    that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o

10   inform [PeopleConnect] on [her] behalf that [she] expressly disaffirms, disavows, and repudiates

11   any agreement to arbitrate that might exist now, that might exist in the future, or that

12   [PeopleConnect] might claim exists or existed." *Id*.

13        **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

14   allegations of paragraph 41 is required.

15        42.    Ms. Overton hereby again disaffirms, disavows, and repudiates any agreement to

16   arbitrate.

17        **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

18   allegations of paragraph 42 is required.

19        43.    None of the allegations in this Complaint relating to PeopleConnect's use of Ms.

20   Overton's name and photograph to advertise are based on any information gathered from

21   www.classmates.com. Rather, Ms. Overton's allegations are based on the fact that PeopleConnect

22   incorporates each of the yearbook photographs in its database into advertisements for website

23   subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the

24   relevant functioning of its website appear in public filings available to Ms. Overton, including the

25   prior complaints filed in this case.

26        **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

27   allegations of paragraph 43 is required.

28

44.     Ms. Overton highly values her personal privacy and intellectual property. She highly values the ability to control and prevent the commercial use of her identity without consent.

**ANSWER:**     As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 44 is required.

45.     PeopleConnect uses Ms. Overton's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Ms. Overton it uses for this purpose, which it appropriated without her permission from his yearbook from Villanova Preparatory School.

**ANSWER:**     As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 45 is required.

46.     44. [*sic*] PeopleConnect incorporates Ms. Overton's photograph in advertisements for website subscriptions as described below. This allegation, and the succeeding allegations related to PeopleConnect's use of Ms. Overton's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

**ANSWER:**     As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 46 is required.

47.     PeopleConnect's legal posturing in this case forced Ms. Overton to prepare her Complaint without referring to any portion of the Classmates website that requires account creation. PeopleConnect has asserted that anyone who creates an account for any reason –including for the purpose of investigating a potential legal claim – has thereby expressly consented to PeopleConnect's use of their name and likeness to advertise. PeopleConnect has also asserted that any attorney or other agent who creates an account to investigate someone else's potential legal claim has also thereby expressly consented to PeopleConnect's use of their client's name and likeness on that client's behalf. As a result, according to PeopleConnect, neither Ms. Overton nor her counsel can visit any portion of the website that requires agreement to the Terms without

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

1   thereby sacrificing Ms. Overton's right to sue.

2   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

3   allegations of paragraph 47 is required.

4   48.   PeopleConnect provides a publicly accessible webpage on which users may search,

5   and have searched, by name and/or location for Ms. Overton and other Class members.

6   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

7   allegations of paragraph 48 is required.

8   49.   Users who searched for Ms. Overton received in response a list of results, which

9   include low-resolution photographs depicting Ms. Overton as a child.

10   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

11   allegations of paragraph 49 is required.

12   50.   Users who clicked on Ms. Overton's photographs seeking higher-resolution

13   versions, or who attempted to view more than a proscribed number of photographs, received a

14   pop-up message asking the user to register with the site and agree to the Terms of Service. The

15   user was required to interact with the pop-up to continue viewing Ms. Overton's photographs.

16   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

17   allegations of paragraph 50 is required.

18   51.   After a user agreed to the Terms and registered with the site, PeopleConnect

19   displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

20   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

21   allegations of paragraph 51 is required.

22   52.   PeopleConnect's sole purpose in using Ms. Overton's photograph, name, and

23   identity on the free version of its website is to solicit the purchase of paid subscriptions to

24   www.classmates.com.

25   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

26   allegations of paragraph 52 is required.

27   53.   Ms. Overton does not know how PeopleConnect obtained her photographs as a

28

1  child. On information and belief, it is likely PeopleConnect obtained her photographs by paying a
2  licensing fee to a third party in exchange for digitized copies of Ms. Overton's photographs and
3  the right to make commercial use of those copies.

4      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the
5  allegations of paragraph 53 is required.

6      54.    PeopleConnect misappropriated Ms. Overton photographs without permission
7  from Ms. Overton, the photographer who took her pictures, the authors who created her yearbooks,
8  or the publishers of her yearbooks.

9      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the
10  allegations of paragraph 54 is required.

11      55.    PeopleConnect does not hold a copyright in yearbooks from Ms. Overton's school,
12  nor does it have permission from the copyright holder the republish or distribute the yearbooks or
13  the photographs contained therein.

14      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the
15  allegations of paragraph 55 is required.

16      56.    Ms. Overton has intellectual property and privacy interests in her photographs,
17  name, likeness, and persona recognized by California statutory and common law. She has the right
18  to exclude anyone from making commercial use of her persona without her permission.

19      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the
20  allegations of paragraph 56 is required.

21      57.    PeopleConnect has injured Ms. Overton by taking her intellectual property without
22  compensation; by invading her privacy rights protected by statute; by unlawfully profiting from
23  its exploitation of her personal information; and by disturbing her peace of mind.

24      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the
25  allegations of paragraph 57 is required.

26      58.    Ms. Overton is upset and disturbed by PeopleConnect's commercial use of her
27  name, photograph, and persona without her consent. Ms. Overton believes her persona is rightly

28

1  hers to control. Ms. Overton does not support or endorse the website www.classmates.com. She

2  finds it offensive to her dignity that PeopleConnect is using her name and photograph without her

3  permission to advertise a product of which she does not approve.

4      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

5  allegations of paragraph 58 is required.

6      59.    PeopleConnect's illegal use of her name and photograph has left Ms. Overton

7  worried and uncertain about her inability to control how her name and personality are used.

8      **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

9  allegations of paragraph 59 is required.

10     60.    Ms. Overton is deeply uncomfortable in the knowledge that PeopleConnect is using

11  her name and photographs as a minor to promote a service she does not support.

12     **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

13  allegations of paragraph 60 is required.

14     61.    PeopleConnect deliberately concealed its commercial use of Ms. Overton's

15  photograph from Ms. Overton. She could not have discovered PeopleConnect's illegal use of her

16  name and photograph without the assistance of her counsel.

17     **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

18  allegations of paragraph 61 is required.

19     62.    PeopleConnect's advertisements incorporating Ms. Overton's name and likeness

20  do not solicit paid subscriptions until after the user has created an account agreed to the Terms.

21  Accordingly, Ms. Overton could not have discovered PeopleConnect's commercial use of her

22  name and photograph to advertise without creating an account on PeopleConnect and agreeing to

23  the Terms.

24     **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

25  allegations of paragraph 62 is required.

26     63.    Even had Ms. Overton visited the public portion of the Classmates.com website

27  and discovered the low-resolution versions of her photographs, she would not have created an

28

16

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

account or agreed to the Terms.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 63 is required.

64.   Account registration requires that the user share their name and email address with PeopleConnect. Ms. Overton did not and does not wish to share this information with PeopleConnect. Ms. Overton does not want PeopleConnect to profit from or use her personal information in any way. Nor does she trust that PeopleConnect would properly safeguard her name and email address.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 64 is required.

65.   Ms. Overton's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. See https://www.idstrong.com/sentinel/peopleconnect-data-breach/

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 65 is required.

66.   Account registration also requires that the user agree to the Terms. Although Ms. Overton has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Ms. Overton that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Ms. Overton visited www.classmates.com for the purpose of investigating a potential legal claim, she would not have agreed to any restrictions on her ability to bring suit. Accordingly, she would not have agreed to the Terms.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 66 is required.

67.   Because Ms. Overton would not have been willing to create an account on www.classmates.com, she could not have learned that PeopleConnect uses her low-resolution photographs to promote subscriptions. By placing the solicitation webpage behind the page

17

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

requiring account creation and agreement to the Terms, PeopleConnect concealed Ms. Overton's cause of action from Ms. Overton.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 67 is required.

68.   PeopleConnect also concealed Ms. Overton's cause of action from her counsel by deliberately impeding their investigation of her claim.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 68 is required.

69.   PeopleConnect's affirmative actions aimed at concealing Ms. Overton cause of action from her counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

**ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the allegations of paragraph 69 is required.

**Plaintiff Alicia Nolen**

70.   Plaintiff Alicia Nolen is a resident of Tulare, California, in Tulare County. Ms. Nolen is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to whether Ms. Nolen is a resident of Tulare, California, in Tulare County, or whether she is a subscriber of any Classmates products or services or whether she is subject to any of the Terms of Service and on that basis denies those allegations. PeopleConnect denies the remaining allegations of paragraph 70.

71.     Ms. Nolen has never visited, used, or subscribed to the website Classmates.com.

**ANSWER:**     PeopleConnect lacks sufficient knowledge to form a belief as to whether Ms. Nolen has visited, used, or subscribed to the Classmates website and on that basis denies the allegations in paragraph 71.

72.     Ms. Nolen attended Tulare Union High School in Tulare, California, from which she graduated in 2019.

**ANSWER:**     PeopleConnect believes that Ms. Nolen attended Tulare Union High School in Tulare, California. PeopleConnect lacks sufficient knowledge to form a belief as to whether, or when, she graduated and on that basis denies the remaining allegations.

73.     Ms. Nolen's claims are functionally identical to the claims Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed before this Court on December 18, 2020. Ms. Overton is a member of the Class Ms. Callahan and Mr. Abraham alleged in their complaint. *See* Dkt. 2. Accordingly, the statute of limitations was tolled for Ms. Nolen at least from the time Ms. Callahan and Mr. Abraham filed their Complaint. Ms. Nolen's claims are therefore timely.

**ANSWER:**     The allegations of paragraph 73 consist of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 73.

74.     Even if tolling did not apply, Ms. Nolen's claims would still be timely because she could not have discovered her claim prior to December 18, 2020.

**ANSWER:**     The allegation in paragraph 74 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegation in paragraph 74. Answering further, the allegation is incorrect as a matter of law and has already been rejected by the Court in its March 30, 2023 Order, which holds that the discovery exception to general rules of accrual did not apply. *See* Dkt. 177 at 7–13.

75.     Even if tolling did not apply, and even if the discovery rule did not apply, Ms. Nolen's claims would still be timely because, on information and belief, PeopleConnect first uploaded her photograph to www.classmates.com less than two years prior to the date on which

1  Ms. Nolen brought her claim.

2      **ANSWER:**   Paragraph 75 consists of a legal conclusion to which no response is required.

3  To the extent a response is required, PeopleConnect admits the 2016 Tulare Union High School

4  yearbook became available on Classmates.com on or after March 23, 2021. PeopleConnect denies

5  the remaining allegations of paragraph 75.

6      76.    Prior to filing her Complaint, Ms. Nolen requested through her counsel that

7  PeopleConnect inform her when it first uploaded her photograph. PeopleConnect refused to

8  provide her this information.

9      **ANSWER:**   PeopleConnect admits that Ms. Nolen requested through her counsel that

10  PeopleConnect inform her when it first uploaded her photograph. PeopleConnect denies the

11  remaining allegations of paragraph 76.

12      77.    Ms. Nolen has never provided consent to Classmates, written or otherwise, for the

13  commercial use of her name, photograph, or identity.

14      **ANSWER:**   Paragraph 77 consists of a legal conclusion to which no response is required.

15  To the extent a response is required, PeopleConnect denies the allegations of paragraph 77.

16      78.    Classmates has never notified, requested consent from, or provided compensation

17  to Ms. Nolen for its misappropriation and commercial exploitation of her name, photograph, and

18  identity.

19      **ANSWER:**   Paragraph 78 consists of a legal conclusion to which no response is required.

20  To the extent a response is required, PeopleConnect denies the allegations of paragraph 78.

21  Answering further, PeopleConnect denies that it must obtain consent from Californians whose

22  names, photographs, or likenesses appear in its Classmates Yearbook Collection or that those

23  Californians are entitled to notice or compensation.

24      79.    There is no agreement to arbitrate between Ms. Nolen and PeopleConnect. Ms.

25  Nolen has never visited the Classmates.com website and has never seen or agreed to any

26  PeopleConnect or Classmates Terms of Service. At no time has Ms. Nolen believed any agreement

27  between herself and PeopleConnect exists or existed.

28

1    **ANSWER:**   Paragraph 79 consists of a legal conclusion to which no response is required.

2  To the extent a response is required, PeopleConnect lacks sufficient knowledge to form a belief as

3  to whether there is an agreement to arbitrate between Ms. Nolen and Classmates or PeopleConnect

4  or whether Ms. Nolen believes there was any agreement between herself and Classmates or

5  PeopleConnect and on that basis denies those allegations. Answering further, PeopleConnect lacks

6  sufficient knowledge to form a belief as to whether Ms. Nolen has visited the Classmates.com

7  website or agreed to the Classmates Terms of Service and on that basis denies those allegations.

8    80.    Counsel on behalf of Ms. Nolen sent a letter to PeopleConnect's counsel on

9  February 14, 2023. **Ex. 3**. Counsel wrote that "Ms. Overton and Ms. Nolen do not agree, and have

10  never agreed, to arbitrate their claims against PeopleConnect. Ms. Overton and Ms. Nolen

11  expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated

12  that "to ensure that PeopleConnect does not misrepresent or misunderstand Ms. Overton's, Ms.

13  Nolen's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Ms.

14  Overton and Ms. Nolen both signed" Acknowledgements attached to the letter. *Id*. (Emphasis in

15  original.).

16    **ANSWER:**   Paragraph 80 consists of legal conclusions to which no response is required.

17  To the extent a response is required, PeopleConnect admits only that counsel for Ms. Nolen sent a

18  letter to PeopleConnect's counsel on February 14, 2023. Answering further, as Ms. Overton has

19  been dismissed from this lawsuit, no answer to allegations regarding an agreement to arbitrate is

20  required. PeopleConnect denies the remaining allegations of paragraph 80.

21    81.    In her signed Acknowledgment attached to the February 14 letter, Ms. Nolen

22  acknowledged and confirmed that: (1) she "expressly disclaims and repudiates any purported

23  agreement to arbitrate"; (2) she "has never seen or agreed to any terms of service or any other

24  agreement" with PeopleConnect; (3) she "has no knowledge of any terms, material or otherwise,

25  that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) she

26  "does not believe any agreement to arbitrate exists" between herself and PeopleConnect; (5) she

27  "does not believe [she] is bound by any agreement to arbitrate that may exist between

28

[PeopleConnect] and any other person," including her attorneys. **Ex. 4**.

**ANSWER:** Paragraph 81 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect admits only that an Acknowledgment was attached to the February 14 letter. PeopleConnect denies the remaining allegations of paragraph 81.

82. Ms. Nolen also acknowledged and confirmed that she "instructed her [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [her] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [her] behalf that [she] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [her] behalf that [she] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id*.

**ANSWER:** Paragraph 82 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect admits only that an Acknowledgment was attached to the February 14 letter. PeopleConnect denies the remaining allegations of paragraph 82.

83. Ms. Nolen hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

**ANSWER:** Paragraph 83 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 83. Answering further, PeopleConnect states that the Classmates.com TOS provides specific instructions that must be followed in order for an opt-out of the arbitration provisions in the TOS to be effective. Neither Ms. Nolen nor anyone acting on her behalf has done so. Moreover, Ms. Nolen cannot retain the benefit of such an agreement while purporting to repudiate it.

84. None of the allegations in this Complaint relating to PeopleConnect's use of Ms. Nolen's name and photograph are based on any information gathered from www.classmates.com.

Rather, Ms. Nolen's allegations are based on the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Ms. Nolen, including the prior complaints filed in this case.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to whether Ms. Nolen visited or used the Classmates website and on that basis denies those allegations. PeopleConnect denies the remaining allegations of paragraph 84.

85.   Ms. Nolen highly values her personal privacy and intellectual property. She highly values the ability to control and prevent the commercial use of her identity without consent.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 85.

86.   PeopleConnect uses Ms. Nolen's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Ms. Nolen it uses for this purpose, which it appropriated without her permission from his yearbook from Tulare Union High School.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 86.

87.   44. [*sic*] PeopleConnect incorporates Ms. Nolen's photograph in advertisements for website subscriptions as described below. This allegation, and the succeeding allegations related to PeopleConnect's use of Ms. Nolen's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 87.

88.   PeopleConnect's legal posturing in this case forced Ms. Nolen to prepare her Complaint without referring to any portion of the Classmates website that requires account creation. PeopleConnect has asserted that anyone who creates an account for any reason –including for the purpose of investigating a potential legal claim – has thereby expressly consented to

PeopleConnect's use of their name and likeness to advertise. PeopleConnect has also asserted that any attorney or other agent who creates an account to investigate someone else's potential legal claim has also thereby expressly consented to PeopleConnect's use of their client's name and likeness on that client's behalf. As a result, according to PeopleConnect, neither Ms. Nolen nor her counsel can visit any portion of the website that requires agreement to the Terms without thereby sacrificing Ms. Nolen's right to sue.

**ANSWER:** PeopleConnect lacks sufficient knowledge to form a belief as to the preparation of Ms. Nolen's Complaint and on that basis denies the allegation in the first sentence of paragraph 88. Answering further, PeopleConnect has argued in this and other courts that the Classmates.com Terms of Service and the contractual requirements contained therein are valid and enforceable, and that an agent who agrees to them may bind the principal. PeopleConnect denies the remaining allegations of paragraph 88.

89.    PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Ms. Nolen and other Class members.

**ANSWER:** PeopleConnect admits that it has a publicly available webpage accessible from subdomains of Classmates.com where users can perform searches. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 89.

90.    Users who searched for Ms. Nolen received in response a list of results, which include low-resolution photographs depicting Ms. Nolen as a child.

**ANSWER:** PeopleConnect denies the allegations of paragraph 90.

91.    Users who clicked on Ms. Nolen's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Nolen's photographs.

**ANSWER:** PeopleConnect denies the allegations of paragraph 91.

92.    After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

1       **ANSWER:**    PeopleConnect denies the allegations of paragraph 92.

2       93.    PeopleConnect's sole purpose in using Ms. Nolen's photograph, name, and identity

3 on the free version of its website is to solicit the purchase of paid subscriptions to

4 www.classmates.com.

5       **ANSWER:**    PeopleConnect denies the allegations of paragraph 93.

6       94.    Ms. Nolen does not know how PeopleConnect obtained her photographs as a child.

7 On information and belief, it is likely PeopleConnect obtained her photographs by paying a

8 licensing fee to a third party in exchange for digitized copies of Ms. Nolen's photographs and the

9 right to make commercial use of those copies.

10       **ANSWER:**    PeopleConnect lacks sufficient knowledge to form a belief as to whether

11 Ms. Nolen knows how Classmates obtained her name and photograph and on that basis denies the

12 allegation. PeopleConnect denies the remaining allegations of paragraph 94.

13       95.    PeopleConnect misappropriated Ms. Nolen photographs without permission from

14 Ms. Nolen, the photographer who took her pictures, the authors who created her yearbooks, or the

15 publishers of her yearbooks.

16       **ANSWER:**    PeopleConnect denies the allegations of paragraph 95. Answering further,

17 PeopleConnect denies that it is required to obtain permission from the yearbooks' authors, the

18 photographer who took Ms. Nolen's photograph, or the publishers of her yearbooks.

19 PeopleConnect often obtains consent from these individuals through various means.

20       96.    PeopleConnect does not hold a copyright in yearbooks from Ms. Nolen's school,

21 nor does it have permission from the copyright holder the republish or distribute the yearbooks or

22 the photographs contained therein.

23       **ANSWER:**    Paragraph 96 consists of legal conclusions to which no response is required.

24 To the extent a response is required, PeopleConnect denies the allegations of paragraph 96.

25 Answering further, PeopleConnect denies that it is required to obtain permission from the

26 copyright holder to republish or distribute the yearbooks or photographs contained therein.

27 PeopleConnect often obtains consent of these individuals through various means.

28

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

97.    Ms. Nolen has intellectual property and privacy interests in her photographs, name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

**ANSWER:**    Paragraph 97 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 97.

98.    PeopleConnect has injured Ms. Nolen by taking her intellectual property without compensation; by invading her privacy rights protected by statute; by unlawfully profiting from its exploitation of her personal information; and by disturbing her peace of mind.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 98.

99.    Ms. Nolen is upset and disturbed by PeopleConnect's commercial use of her name, photograph, and persona without her consent. Ms. Nolen believes her persona is rightly hers to control. Ms. Nolen does not support or endorse the website www.classmates.com. She finds it offensive to her dignity that PeopleConnect is using her name and photograph without her permission to advertise a product of which she does not approve.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 99.

100.    PeopleConnect's illegal use of her name and photograph has left Ms. Nolen worried and uncertain about her inability to control how her name and personality are used.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 100.

101.    Ms. Nolen is deeply uncomfortable in the knowledge that PeopleConnect is using her name and photographs as a minor to promote a service she does not support.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 101.

102.    PeopleConnect deliberately concealed its commercial use of Ms. Nolen's photograph from Ms. Nolen. She could not have discovered PeopleConnect's illegal use of her name and photograph without the assistance of her counsel.

**ANSWER:**    Paragraph 102 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 102.

26
ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

103.    PeopleConnect's advertisements incorporating Ms. Nolen's name and likeness do not solicit paid subscriptions until <u>after</u> the user has created an account agreed to the Terms. Accordingly, Ms. Nolen could not have discovered PeopleConnect's commercial use of her name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

**ANSWER:**    The second sentence of paragraph 103 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegation in the second sentence of paragraph 103. PeopleConnect denies the remaining allegations of paragraph 103.

104.    Even had Ms. Nolen visited the public portion of the Classmates.com website and discovered the low-resolution versions of her photographs, she would not have created an account or agreed to the Terms.

**ANSWER:**    PeopleConnect lacks sufficient knowledge to form a belief as to whether Ms. Nolen would have created a Classmates account or agreed to the Terms and on that basis denies the allegation.

105.    Account registration requires that the user share their name and email address with PeopleConnect. Ms. Nolen did not and does not wish to share this information with PeopleConnect. Ms. Nolen does not want PeopleConnect to profit from or use her personal information in any way. Nor does she trust that PeopleConnect would properly safeguard her name and email address.

**ANSWER:**    PeopleConnect admits that registering for an account on Classmates.com requires that the user provide a name and email address. PeopleConnect lacks sufficient knowledge to form a belief as to Ms. Nolen's feelings regarding the sharing of her personal information and on that basis denies those allegations. PeopleConnect denies the remaining allegations of paragraph 105.

106.    Ms. Nolen's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users

1   were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/

2       **ANSWER:**   PeopleConnect denies the allegations of paragraph 106.

3       107.   Account registration also requires that the user agree to the Terms. Although Ms.

4   Nolen has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs'

5   counsel have explained to Ms. Nolen that the Terms include a number of provisions designed to

6   impede a potential plaintiff from bringing suit in court. Had Ms. Nolen visited

7   www.classmates.com for the purpose of investigating a potential legal claim, she would not have

8   agreed to any restrictions on her ability to bring suit. Accordingly, she would not have agreed to

9   the Terms.

10       **ANSWER:**   PeopleConnect admits that registering for an account on Classmates.com

11   requires that the user agree to the Classmates.com Terms of Service. PeopleConnect lacks

12   sufficient knowledge to form a belief as to Plaintiffs' counsel's communications with Ms. Nolen,

13   whether Ms. Nolen has seen any PeopleConnect Terms, whether she knows what the Terms

14   contain, or whether Ms. Nolen would agree to the PeopleConnect Terms, and on that basis denies

15   those allegations. PeopleConnect denies the remaining allegations of paragraph 107.

16       108.   Because Ms. Nolen would not have been willing to create an account on

17   www.classmates.com, she could not have learned that PeopleConnect uses her low-resolution

18   photographs to promote subscriptions. By placing the solicitation webpage behind the page

19   requiring account creation and agreement to the Terms, PeopleConnect concealed Ms. Nolen's

20   cause of action from Ms. Nolen.

21       **ANSWER:**   Paragraph 108 consists of legal conclusions to which no response is

22   required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

23   108.

24       109.   PeopleConnect also concealed Ms. Nolen's cause of action from her counsel by

25   deliberately impeding their investigation of her claim.

26       **ANSWER:**   PeopleConnect denies the allegations of paragraph 109.

27       110.   PeopleConnect's affirmative actions aimed at concealing Ms. Nolen's cause of

28

action from her counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 110.

## NAMED PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Wayne Tseng**

111.   Plaintiff Wayne Tseng is a private individual who has no relationship with Classmates or PeopleConnect. He has never visited, used, or subscribed to Classmates.com.

**ANSWER:**   As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 111 is required.

112.   Mr. Tseng did not give consent to Classmates to use his photographs, likeness, name, or persona in any way. Had Classmates requested his consent, Mr. Tseng would not have provided it.

**ANSWER:**   As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 112 is required.

113.   Mr. Tseng highly values his personal privacy and his ability to control and prevent the commercial use of his likeness without his consent.

**ANSWER:**   As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 113 is required.

114.   Classmates uses Mr. Tseng's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Mr. Tseng it uses for this purpose, which it misappropriated without his permission from Mr. Tseng's yearbook from Albany High School in Albany, California.

**ANSWER:** As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 114 is required.

115. A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Mr. Tseng's photograph appears below. For Mr. Tseng's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Mr. Tseng's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.



**ANSWER:** As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 115 is required.

116. Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Mr. Tseng by name and location.

**ANSWER:** As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 116 is required.

117. Users who search for Mr. Tseng receive in response a list of results, which include a low-resolution version of the photograph depicting Mr. Tseng as a minor.

**ANSWER:** As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 117 is required.

118.    Users who click on Mr. Tseng's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Mr. Tseng's photograph.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 118 is required.

119.    Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 119 is required.

120.    Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Mr. Tseng's photograph.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 120 is required.

121.    As shown above, Classmates' uses Mr. Tseng's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 121 is required.

122.    Mr. Tseng does not know how Classmates obtained his name and photograph as a child. It appears to have been misappropriated from his high school yearbook.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 122 is required.

123.    On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Mr. Tseng's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 123 is required.

124.    On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Mr. Tseng's photograph, or the yearbook's copyright holder prior to incorporating Mr. Tseng's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Mr. Tseng's yearbook or his photograph.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 124 is required.

125.    Mr. Tseng has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his likeness without his consent.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 125 is required.

126.    Classmates has injured Mr. Tseng by profiting from its use of his name and likeness without compensating him; by misappropriating and infringing his intellectual property rights without compensation; by violating his statutorily protected right to control the commercial use of his name and likeness; and by disturbing his peace of mind.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the allegations of paragraph 126 is required.

127.    Classmates' illegal actions caused Mr. Tseng mental anguish and harmed his peace of mind. Upon learning about Classmates' actions, Mr. Tseng was upset and disturbed by Classmates' use of his name and photograph without his consent. Mr. Tseng believes his likeness is rightly his to control. Classmates' illegal use has left him worried and uncertain about his inability to control how his name and likeness is used. Mr. Tseng feels that Classmates' use of his photograph represents an alarming invasion of his privacy. Mr. Tseng feels deeply uncomfortable in the knowledge that Classmates is using his name and likeness to advertise a subscription product he does not endorse or approve of.

**ANSWER:**    As Mr. Tseng has been dismissed from this lawsuit, no answer to the

1    allegations of paragraph 127 is required.

2    **Plaintiff Alexandra Overton**

3    128.    Plaintiff Alexandra Overton is a private individual who has no relationship with

4    Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

5    **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

6    allegations of paragraph 128 is required.

7    129.    Ms. Overton did not give consent to Classmates to use her photographs, likeness,

8    name, or persona in any way. Had Classmates requested her consent, Ms. Overton would not have

9    provided it.

10   **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

11   allegations of paragraph 129 is required.

12   130.    Ms. Overton highly values her personal privacy and her ability to control and

13   prevent the commercial use of her likeness without her consent.

14   **ANSWER:**    As Ms. Overton has been dismissed from this lawsuit, no answer to the

15   allegations of paragraph 130 is required.

16   131.    Classmates uses Ms. Overton's yearbook photograph as a minor child in

17   advertisements promoting website subscriptions. Classmates possesses at least one photograph of

18   Ms. Overton it uses for this purpose, which it misappropriated without her permission from Ms.

19   Overton's yearbook from Villanova Preparatory School in Ojai, California.

20   **ANSWER:**     As Ms. Overton has been dismissed from this lawsuit, no answer to the

21   allegations of paragraph 131 is required.

22   132.    Ms. Overton is not able to include a screenshot showing the yearbook page from

23   which Classmates extracted her photograph because, at some point after Ms. Overton informed

24   Classmates of her claim and before her counsel prepared this Complaint, it appears Classmates

25   removed her yearbook from its website. Counsel anticipate discovery will reveal Classmates did

26   so for the express purpose of preventing Ms. Overton from investigating her claim and preparing

27   her Complaint.

28

---

33

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

1  **ANSWER:** As Ms. Overton has been dismissed from this lawsuit, no answer to the
2  allegations of paragraph 132 is required.

3  133. Classmates provides a publicly accessible landing page on which non-registered
4  users may search, and have searched, for Ms. Overton by name and location.

5  **ANSWER:** As Ms. Overton has been dismissed from this lawsuit, no answer to the
6  allegations of paragraph 133 is required.

7  134. Users who search for Ms. Overton receive in response a list of results, which
8  include a low-resolution version of the photograph depicting Ms. Overton as a minor.

9  **ANSWER:** As Ms. Overton has been dismissed from this lawsuit, no answer to the
10  allegations of paragraph 134 is required.

11  135. Users who click on Ms. Overton 's photograph seeking a high-resolution version
12  receive a pop-up message asking the user to register with Classmates.com "to view full-size
13  yearbooks." The user must interact with the pop-up to continue viewing Ms. Overton's
14  photograph.

15  **ANSWER:** As Ms. Overton has been dismissed from this lawsuit, no answer to the
16  allegations of paragraph 135 is required.

17  136. Once users have clicked "Submit" on the pop-up, Classmates displays a screen
18  soliciting the purchase of a paid subscription to Classmates.com.

19  **ANSWER:** As Ms. Overton has been dismissed from this lawsuit, no answer to the
20  allegations of paragraph 136 is required.

21  137. Classmates also displays banner ads promoting Classmates.com subscriptions
22  adjacent to the search results containing Ms. Overton's photograph.

23  **ANSWER:** As Ms. Overton has been dismissed from this lawsuit, no answer to the
24  allegations of paragraph 137 is required.

25  138. As shown above, Classmates' uses Ms. Overton's photograph, name, and likeness
26  in advertisements it displays publicly on the Internet for the commercial purpose of soliciting
27  subscriptions.

28

1    **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the
2    allegations of paragraph 138 is required.

3    139.   Ms. Overton does not know how Classmates obtained her name and photograph as
4    a child. It appears to have been misappropriated from her high school yearbook.

5    **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the
6    allegations of paragraph 139 is required.

7    140.   On information and belief, Classmates received no indication, and had no
8    reasonable belief, that the people who created Ms. Overton's yearbook intended the yearbook to
9    be published on the Internet or used to promote website subscriptions.

10   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the
11   allegations of paragraph 140 is required.

12   141.   On information and belief, Classmates did not obtain permission from the
13   yearbooks' authors, the photographer who took Ms. Overton's photograph, or the yearbook's
14   copyright holder prior to incorporating Ms. Overton's photograph and other photographs from the
15   yearbook in its advertisements. On information and belief, Classmates does not hold the copyright
16   in Ms. Overton's yearbook or her photograph.

17   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the
18   allegations of paragraph 141 is required.

19   142.   Ms. Overton has intellectual property and privacy interests in her name, likeness,
20   and persona recognized by California statutory and common law. She has the right to exclude
21   anyone from making commercial use of his likeness without his consent.

22   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the
23   allegations of paragraph 142 is required.

24   143.   Classmates has injured Ms. Overton by profiting from its use of her name and
25   likeness without compensating her; by misappropriating and infringing her intellectual property
26   rights without compensation; by violating her statutorily protected right to control the commercial
27   use of her name and likeness; and by disturbing her peace of mind.

28

1    **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

2    allegations of paragraph 143 is required.

3    144.    Classmates' illegal actions caused Ms. Overton mental anguish and harmed her

4    peace of mind. Upon learning about Classmates' actions, Ms. Overton was upset and disturbed by

5    Classmates' use of her name and photograph without her consent. Ms. Overton believes her

6    likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about

7    her inability to control how her name and likeness is used. Ms. Overton feels that Classmates' use

8    of his photograph represents an alarming invasion of her privacy. Ms. Overton feels deeply

9    uncomfortable in the knowledge that Classmates is using her name and likeness to advertise a

10   subscription product she does not endorse or approve of.

11   **ANSWER:**   As Ms. Overton has been dismissed from this lawsuit, no answer to the

12   allegations of paragraph 144 is required.

13   **Plaintiff Alicia Nolen**

14   145.    Plaintiff Alicia Nolen is a private individual who has no relationship with

15   Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

16   **ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to whether

17   Ms. Nolen has a relationship with Classmates or PeopleConnect and on that basis denies the

18   allegation. PeopleConnect denies the remaining allegations of paragraph 145.

19   146.    Ms. Nolen did not give consent to Classmates to use her photographs, likeness,

20   name, or persona in any way. Had Classmates requested her consent, Ms. Nolen would not have

21   provided it.

22   **ANSWER:**   The allegation in the first sentence of paragraph 146 consists of a legal

23   conclusion to which no response is required. To the extent a response is required, PeopleConnect

24   denies the allegation in the first sentence of paragraph 146. PeopleConnect lacks sufficient

25   knowledge to form a belief as to the allegation in the second sentence of paragraph 146 of whether

26   Ms. Nolen would have provided consent to Classmates and on that basis denies the allegation.

27   147.    Ms. Nolen highly values her personal privacy and her ability to control and prevent

28

36

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

1  the commercial use of her likeness without her consent.

2  **ANSWER:**   PeopleConnect denies the allegations of paragraph 147.

3  148.   Classmates uses Ms. Nolen's yearbook photograph as a minor child in

4  advertisements promoting website subscriptions. Classmates possesses at least one photograph of

5  Ms. Nolen it uses for this purpose, which it misappropriated without her permission from Ms.

6  Nolen's yearbook from Tulare Union High School in Tulare, California.

7  **ANSWER:**   PeopleConnect denies the allegations of paragraph 148.

8  149.   A screenshot taken from Classmates.com showing the yearbook page from which

9  Classmates extracted Ms. Nolen's photograph appears below. For Ms. Nolen's privacy and the

10 privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it

11 appears on the Classmates website, Ms. Nolen's name and likeness are plainly visible and

12 identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from

13 a part of the Classmates.com website that does not require assent to the TOS to access. The staff

14 member did not see a TOS and did not agree to a TOS.

15

16

17                            

18

19

20

21

22 **ANSWER:**   PeopleConnect admits that the screenshot depicted in paragraph 149 could

23 have been captured from the Classmates website. Answering further, PeopleConnect lacks

24 sufficient knowledge to form a belief as to whether the screenshot was collected by a staff member

25 at Turke & Strauss from a part of the Classmates website that does not require assent to the TOS

26 to access or whether the staff member did not see and did not agree to a TOS and on that basis

27 denies those allegations. Unless expressly admitted here, PeopleConnect denies the remaining

28

allegations of paragraph 149. PeopleConnect also states that Ms. Nolen's counsel could have only taken a low-resolution screenshot, regardless of whether the low-resolution format was done in the interest of Ms. Nolen's privacy or the privacy of others. Individuals who do not have an account on the Classmates.com website and have not agreed to the website's TOS can only access the first four to five pages of the yearbook in high-resolution format. They can only see the rest of the images in that yearbook in a low-resolution format.

150.    Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Ms. Nolen by name and location.

**ANSWER:**    PeopleConnect admits that it has a publicly available webpage accessible from subdomains of Classmates.com where users can perform searches. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 150.

151.    Users who search for Ms. Nolen receive in response a list of results, which include a low-resolution version of the photograph depicting Ms. Nolen as a minor.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 151.

152.    Users who click on Ms. Nolen 's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Ms. Nolen's photograph.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 152.

153.    Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 153.

154.    Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Nolen's photograph.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 154.

155.    Classmates uses Ms. Nolen's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 155.

156.   Ms. Nolen does not know how Classmates obtained her name and photograph as a child. It appears to have been misappropriated from her high school yearbook.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to whether Ms. Nolen knows how Classmates obtained her name and photograph and on that basis denies the allegations of paragraph 156.

157.   On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Ms. Nolen's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 157.

158.   On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Ms. Nolen's photograph, or the yearbook's copyright holder prior to incorporating Ms. Nolen's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Ms. Nolen's yearbook or her photograph.

**ANSWER:**   Paragraph 158 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 158. Answering further, PeopleConnect denies that it is required to obtain permission from the yearbooks' authors, the photographer who took Ms. Nolen's photograph, or the yearbook's copyright holder, or hold the copyright in Ms. Nolen's yearbook or photograph.

159.   Ms. Nolen has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of his likeness without his consent.

**ANSWER:**   Paragraph 159 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 159.

160.   Classmates has injured Ms. Nolen by profiting from its use of her name and likeness without compensating her; by misappropriating and infringing her intellectual property rights

1  without compensation; by violating her statutorily protected right to control the commercial use of
2  her name and likeness; and by disturbing her peace of mind.

3  **ANSWER:**   PeopleConnect denies the allegations of paragraph 160.

4  161.   Classmates' illegal actions caused Ms. Nolen mental anguish and harmed her peace
5  of mind. Upon learning about Classmates' actions, Ms. Nolen was upset and disturbed by
6  Classmates' use of her name and photograph without her consent. Ms. Nolen believes her likeness
7  is rightly hers to control. Classmates' illegal use has left her worried and uncertain about her
8  inability to control how her name and likeness is used. Ms. Nolen feels that Classmates' use of his
9  photograph represents an alarming invasion of her privacy. Ms. Nolen feels deeply uncomfortable
10  in the knowledge that Classmates is using her name and likeness to advertise a subscription product
11  she does not endorse or approve of.

12  **ANSWER:**   PeopleConnect denies the allegations of paragraph 161.

13  **STATEMENT OF COMMON FACTS**

14  162.   Classmates' business model relies on collecting personal information from
15  hundreds of thousands of school yearbooks. Classmates scans yearbooks into a digital format, then
16  extracts personal information including names, photographs, schools attended, years of attendance,
17  cities of residence, and biographical details. Classmates aggregates the extracted information into
18  digital records associated with specific individuals. Classmates then uses the records to advertise
19  and sell its products and services. Those products and services include memberships to the website
20  Classmates.com, which Classmates sells for up to $3 per month.

21  **ANSWER:**   PeopleConnect denies the allegations of paragraph 162.

22  163.   According to the Classmates.com website, Classmates' Yearbook Collection
23  contains records copied from over 400 thousand yearbooks. While Classmates does not publish
24  figures about the total number of records in the Collection or a breakdown by state, it is likely the
25  class includes millions of Californians whose names, photographs, and likenesses appear in the
26  Classmates Yearbook Collection.

27  **ANSWER:**   PeopleConnect admits the Classmates.com website provides access to over
28

40

400,000 yearbooks. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 163.

164.    Classmates did not ask consent from, given notice to, or provide compensation to Plaintiffs or the class before using their names, photographs, and biographical information.

**ANSWER:**    The allegations of paragraph 123 consist of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 123. Answering further, to the extent Plaintiff refers to information contained in yearbook previews, PeopleConnect denies any characterization that the information is "their[s]" as it implies ownership over publicly available information, which cannot be owned as a matter of law. PeopleConnect further denies that consent or notice is necessary or that Plaintiff is entitled to any sum of money and, therefore, denies the allegations of paragraph 164.

165.    The names, photographs, cities of residence, likeness, and identities that Classmates aggregates into individual records uniquely identify specific individuals.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 165.

166.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its products and services, including (1) its "CM+" subscription membership; and (2) the free version of its website, from which Classmates profits by selling targeted advertisements and driving users to its paid products and subscriptions.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 166.

167.    Classmates employs a variety of advertising techniques through which it exploits the names, photographs, and likenesses of Plaintiffs and the class, many of which are detailed in the Plaintiff-specific portion of this complaint. Across all of the advertising techniques it uses, Classmates seeks to translate its users' interest in seeing pictures of and learning personal details about Plaintiffs and the class, into the purchase of a Classmates product or service (or the use of a website from which Classmates drives profit).

**ANSWER:**    PeopleConnect denies the allegations of paragraph 167.

168.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs

41

and the Class on and in its products and services by including the records it has created about Plaintiffs and the Class on its website.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 168.

169.   On information and belief, Classmates makes no attempt to contact or gain the consent of the people whose names, photographs, likenesses, biographical information, and identities it uses to advertise website subscriptions.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 169. Answering further, PeopleConnect denies that it must obtain consent from Californians whose names, photographs, and biographical information appear in its Classmates Yearbook Collection.

170.   On information and belief, Classmates has received no indication that the authors, publishers, or copyright holders of the yearbooks in its database intended the yearbooks to be published on the Internet or used to promote paid subscriptions.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 170.

171.   The vast majority of people whose personal information Classmates has digitally extracted and aggregated in its Classmates Yearbook Collection have no business relationship with Classmates, are not Classmates subscribers, and are not subject to a Terms of Service or any other agreement with Classmates.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 171.

172.   Through its actions, Classmates has caused harm to Plaintiffs and the Class by depriving them the fair economic value of their likenesses; violating their exclusive rights to control their likenesses; infringing their intellectual property without compensation; and disturbing their peace of mind. Classmates has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, and likenesses of Plaintiffs and the class.

**ANSWER:**   Paragraph 172 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 172.

173.   Classmates knowing misappropriation of names, likenesses, photographs, and other

42

personal information, and use of those names, likenesses, photographs, and other personal information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and California Unjust Enrichment law.

**ANSWER:** Paragraph 173 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 173.

## CLASS ALLEGATIONS

174.    Plaintiffs bring this complaint on behalf of themselves and a Class of all California residents who (a) are not currently subscribers of any Classmates services, (b) have never donated a yearbook to Classmates, and (c) whose names, photographs, and/or likenesses were extracted from yearbooks by Classmates and placed on the Classmates website as part of its Yearbook Collection, without Classmates obtaining their consent. Excluded from the class are (a) Plaintiffs' counsel; (b) Classmates, its officers and directors, counsel, successors and assigns; (c) any entity in which Classmates has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

**ANSWER:** PeopleConnect admits only that Plaintiff purports to bring this complaint on behalf of a class and that Plaintiff claims to define this class as set forth in paragraph 174. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 174.

175.    The members of the proposed class are so numerous that joinder of individual claims is impracticable. Classmates represents that its Yearbook Collection contains records from over 400,000 yearbooks in the United States. Each yearbook contains the names and likeness of hundreds, sometimes thousands of individuals. Even accounting for the fact that only a portion of the yearbooks are from California, that some individuals in Classmates' database are deceased or no longer reside in California, and that the class excludes current Classmates subscribers (Classmates has about 4 million subscribers worldwide), the class likely numbers in the millions.

**ANSWER:** Paragraph 175 consists of a legal conclusion to which no response is

43

1  required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

2  175.

3      176.    There are significant questions of fact and law common to the members of the class.

4  These issues include:

5          a.    Whether Classmates' extraction and aggregation of personal information

6              about Plaintiffs and the class members, including names, yearbook

7              photographs, yearbook years, cities of residence, schools attended, and

8              interest and hobbies, in its Classmates Yearbook Collection, and selling of

9              that information via paid subscription plans, constitute the knowing use of

10             another's name, photograph, or likeness, in any manner, on or in products,

11             merchandise or goods within the meaning of Cal. Civ. Code § 3344;

12         b.    Whether Classmates' extraction and aggregation of personal information

13             about Plaintiffs and the class members, including names, yearbook

14             photographs, yearbook years, cities of residence, schools attended, and

15             interests and hobbies, and use of that information in the advertising

16             techniques described in this complaint, constitutes the knowing use of

17             another's name, photograph, or likeness for purposes of advertising or

18             selling, or soliciting purchases of products, merchandise, goods or services,

19             within the meaning of Cal. Civ. Code § 3344;

20         c.    Whether Plaintiffs and the class consented to the use of their names,

21             photographs, and likenesses in Classmates products and advertisements;

22         d.    Whether Classmates' use of names, photographs, and likeness constitutes a

23             use in connection with news or public affairs for which consent is not

24             required;

25         e.    Whether Classmates' conduct as described in this complaint violated

26             California's Unfair Competition Law;

27

28

f.     Whether Classmates was unjustly enriched as a result of the conduct described in this complaint; and

g.     Whether Plaintiffs and members of the class are entitled to injunctive, declaratory and monetary relief as a result of Classmates' conduct as described in this complaint.

**ANSWER:**   Paragraph 176 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 176, including subparts a through g.

177.   Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by Classmates misappropriation and misuse of their names, likenesses, photographs, and other personal information.

**ANSWER:**   Paragraph 177 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 177.

178.   The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the class, and they are represented by qualified counsel experienced in class action litigation of this nature.

**ANSWER:**   Paragraph 178 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 178.

179.   A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual

1  litigation would greatly increase the time and expense needed to resolve a dispute concerning

2  Classmates' common actions towards an entire group. Class action procedures allow for the

3  benefits of unitary adjudication, economy of scale, and comprehensive supervision of the

4  controversy by a single court.

5      **ANSWER:**   Paragraph 179 consists of a legal conclusion to which no response is

6  required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

7  179.

8      180.   The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal

9  Rules of Civil Procedure. Classmates has acted on ground generally applicable to the proposed

10 class, such that final injunctive and declaratory relief is appropriate with respect to the class as a

11 whole.

12     **ANSWER:**   Paragraph 180 consists of a legal conclusion to which no response is

13 required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

14 180.

15     181.   The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of

16 law and fact common to class members predominate over questions affecting individual members,

17 and a class action is superior to other available methods for fairly and efficiency adjudicating the

18 controversy.

19     **ANSWER:**   Paragraph 181 consists of a legal conclusion to which no response is

20 required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

21 181.

22                              **FIRST CAUSE OF ACTION**
                              **(Cal. Civ. Code § 3344)**

23     182.   Plaintiffs incorporate by reference the allegations contained in all preceding

24 paragraphs of this complaint.

25     **ANSWER:**   PeopleConnect admits that Plaintiff purports to incorporate by reference the

26 allegations contained in all preceding paragraphs of this complaint, and PeopleConnect repeats

27 and incorporates by reference its responses to each of the preceding paragraphs as if fully set out

28

1    here.

2    183.    California's Right of Publicity Statute, California Civil Code § 3344, prohibits and

3    provides damages for the knowing misappropriation of a name, voice, signature, photograph, or

4    likeness in advertising or soliciting without prior consent.

5    **ANSWER:**    Paragraph 183 does not contain allegations of fact and, as such, no response

6    is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

7    183 as an incomplete description of the statute. PeopleConnect refers to that statute for its true

8    meaning and effect.

9    184.    By engaging in the forgoing acts and omissions, Classmates knowingly used class

10   members' names, photographs, and likenesses in its products and services for the purpose of

11   advertising and selling its services, without class members' consent.

12   **ANSWER:**    Paragraph 184 consists of legal conclusions to which no response is

13   required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

14   184.

15   185.    Each use of a class member's name, photograph, or likeness is a separate and

16   distinct violation of California Civil Code § 3344 giving rise to damages.

17   **ANSWER:**    Paragraph 185 consists of legal conclusions to which no response is

18   required. To the extent a response is required, PeopleConnect denies the allegations of paragraph

19   185.

20   186.    Plaintiffs seek declaratory, injunctive, and monetary damages for themselves and

21   on behalf of each member of the proposed class as provided for in California Civil Code § 3344,

22   including statutory damages equal to the greater of $750 per violation, actual damages, or profits

23   from Classmates' illegal actions, punitive damages, and the award of attorneys' fees and costs in

24   the event Plaintiffs prevail in this action.

25   **ANSWER:**    PeopleConnect admits that Plaintiff purports to seek declaratory, injunctive,

26   and monetary damages for themselves and on behalf of each member of the proposed class, but

27   denies that such relief is appropriate.

28

47
ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

187.    Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294. The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 187. Answering further, there is only one Defendant in this above-captioned case, PeopleConnect.

**SECOND CAUSE OF ACTION**
**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

188.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

**ANSWER:**    No response is required to paragraph 188 to the extent this cause of action is "based on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a response is required, PeopleConnect denies such allegations. For remaining allegations, PeopleConnect admits that Plaintiff purports to incorporate by reference the allegations contained in all preceding paragraphs of this complaint, and PeopleConnect repeats and incorporates by reference its responses to each of the preceding paragraphs as if fully set out here.

189.    Classmates has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq.* ("UCL").

**ANSWER:**    No response is required to paragraph 189 to the extent this cause of action is "based on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a response is required, PeopleConnect denies such allegations. PeopleConnect denies the remaining allegations of paragraph 189.

190.    As described in this complaint, Classmates' misappropriation and use without consent of Plaintiffs' and class members' names, photographs, likenesses, and personal information is a violation of California's Right to Publicity Statute, Cal. Civ. Code § 3344.

1   **ANSWER:**   No response is required to paragraph 190 to the extent this cause of action

2   is "based on unfairness," because the Court found the "17200 claim based on unfairness waived."

3   To the extent a response is required, PeopleConnect denies such allegations. PeopleConnect denies

4   the remaining allegations of paragraph 190.

5   191.   By engaging in the conduct described in this complaint and violating California

6   law, Classmates engaged in and continues to engage in "unlawful" business acts and practices

7   prohibited by the UCL.

8   **ANSWER:**   No response is required to paragraph 191 to the extent this cause of action

9   is "based on unfairness," because the Court found the "17200 claim based on unfairness waived."

10   To the extent a response is required, PeopleConnect denies such allegations. PeopleConnect denies

11   the remaining allegations of paragraph 191.

12   192.   As a result of Classmates' actions, Plaintiffs and the class have been injured.

13   Plaintiffs and members of the class each lost the economic value of their likenesses, their exclusive

14   right to control their likenesses, their right to the value of their intellectual property, and their right

15   to freedom from intrusion on their peace of mind. Plaintiffs and members of the class also lost the

16   right to refuse consent and protect their privacy, as guaranteed by California law.

17   **ANSWER:**   No response is required to paragraph 192 to the extent this cause of action

18   is "based on unfairness," because the Court found the "17200 claim based on unfairness waived."

19   To the extent a response is required, PeopleConnect denies such allegations. PeopleConnect denies

20   the remaining allegations of paragraph 192.

21

22   **THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**

23   193.   Plaintiffs incorporate by reference the allegations contained in all preceding

24   paragraphs of this complaint.

25   **ANSWER:**   PeopleConnect admits that Plaintiff purports to incorporate by reference the

26   allegations contained in all preceding paragraphs of this complaint, and PeopleConnect repeats

27   and incorporates by reference its responses to each of the preceding paragraphs as if fully set out

28

1    here.

2    194.    Plaintiffs and members of the class have conferred an unwarranted benefit on
3    Classmates. Classmates' business model centers around using personal information that rightfully
4    belongs to Plaintiffs and members of the class to sell its products and services. Classmates uses
5    the personal information it misappropriated without consent. Each "CM+" subscription sold to
6    users who then gain access to records that rightfully belong to class members, and all advertising
7    revenue collected from the delivery of ads on pages displaying records that rightfully belong to
8    class members, represents an unwarranted benefit conferred upon Classmates by the class.

9        **ANSWER:**    PeopleConnect denies the allegations of paragraph 194.

10    195.    Under principles of equity and good conscience, Classmates should not be
11    permitted to retain the benefits it gained by its actions.

12        **ANSWER:**    PeopleConnect denies the allegations of paragraph 195.

13    196.    Plaintiffs and members of the class have suffered loss as a direct result of
14    Classmates' conduct.

15        **ANSWER:**    PeopleConnect denies the allegations of paragraph 196.

16    197.    Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class
17    members, seek the imposition of a constructive trust and restitution of proceeds Classmates
18    received as a result of the conduct described in this complaint, as well as an award of attorneys'
19    fees, costs, and interest pursuant to Cal. Civ. Proc. Code § 1021.5.

20        **ANSWER:**    PeopleConnect admits that Plaintiffs purport to seek the imposition of a
21    constructive trust and restitution and attorneys' fees, cost, and interest, on behalf of the entire
22    proposed class, but denies that such relief is appropriate.

23                                **PRAYER FOR RELIEF**

24    198.    WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situation,
25    hereby demand judgment against Defendant Classmates as follows:

26        (a)    For an order certifying the proposed class and appointing Plaintiffs and their
27                counsel to represent the class;

28

50

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

(b)    For a declaration that Classmates' acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of California law;

(c)    For preliminary and permanent injunctive relief enjoining and preventing Classmates from continuing to operate its Classmates website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(d)    For an order enjoining Classmates from continuing the unlawful and unfair conduct described in this complaint;

(e)    For restitution for Plaintiffs and members the class for the value that Defendants derived from misappropriating their likenesses;

(f)    For an award of damages, including without limitation damages for actual harm, profits earned by Classmates, and statutory damages;

(g)    For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(h)    For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

**ANSWER:**    PeopleConnect denies that Plaintiff is entitled to any relief, including class certification or any of the other requested relief. PeopleConnect denies any remaining allegations not previously addressed in this Answer.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

**ANSWER**:    PeopleConnect admits only that Plaintiff has requested a jury trial. PeopleConnect demands a jury trial for all individual and Class claims so triable.

## STATEMENT OF AFFIRMATIVE AND OTHER DEFENSES

PeopleConnect incorporates by reference the above answers as though fully set forth herein

and, in further answer to the Complaint, asserts the following affirmative and other defenses, which do not relieve the Plaintiff of the burden of proof for each and every element of their claims, for damages to which Plaintiff alleges they are entitled, or for any other matter upon which Plaintiff bears the burden of proof as a matter of law. PeopleConnect does not intend to characterize any particular defense as "affirmative." Additional facts and evidence in support of the following defenses will be developed during discovery and presented in a motion for summary judgment and/or opposition to any motion by Plaintiff for class certification.

### FIRST DEFENSE (STATUTES OF LIMITATIONS)

1.      Certain proposed class members' claims are barred in whole or in part by the applicable statutes of limitations.

2.      A two-year statute of limitations applies to Plaintiff's right of publicity claim under § 3344 and unjust enrichment claim. Cal. Code Civ. Proc. § 339(1).

3.      Plaintiff filed her Complaint on March 23, 2023.

4.      Certain proposed class members' right of publicity claims are time-barred if their claims accrued at least by March 23, 2021, including if yearbooks containing their names and photographs first appeared on Classmates.com at least by March 23, 2021.

5.      Classmates.com has included yearbooks since 2010. Individuals, including certain proposed class members, knew or should have known that yearbooks containing their names and photographs appeared on the website.

6.      As a consequence, certain proposed class members' claims are time-barred, including because yearbooks containing their names and photographs were added to and available on Classmates.com more than two years before Plaintiff filed her Complaint.

### SECOND DEFENSE (LACK OF ACTIONABLE INJURY AND STATUTORY STANDING)

7.      Plaintiff's and proposed class members' claims are barred in whole or in part because Plaintiff and purported class members have suffered no actionable injury, including the loss of money or property.

**THIRD DEFENSE (UNJUST ENRICHMENT)**

8.      Plaintiff's and proposed class members' claims are barred in whole or in part because Plaintiff would be unjustly enriched by any recovery from PeopleConnect.

9.      Plaintiff and proposed class members seek relief from PeopleConnect in the form of actual damages, statutory damages, and profits as a result of PeopleConnect's alleged use of their names and images on Classmates.com.

10.     PeopleConnect has conferred substantial benefits on Plaintiff and proposed class members.

11.     Through its website Classmates.com, PeopleConnect provides access to a collection of over 400,000 yearbooks from across the country. This collection provides substantial personal benefit to individuals in that it allows individuals to look up their old yearbooks or yearbooks of their friends and relatives, relive old memories, and reconnect with former schoolmates.

12.     The collection also provides substantial benefit to the public at large. Yearbooks serve an important function as primary-source documents memorializing a community's activity in a given year and inform the works of historians, archivists, journalists, genealogists and other scholars.

13.     PeopleConnect also provides substantial benefits to users who register on Classmates.com. These users are given access to tools that enable them to communicate with old schoolmates, share memories, and plan reunions among other features. Each of these features provide substantial benefit to Plaintiff and proposed class members who use Classmates.com.

14.     Awarding Plaintiff and the proposed class members, including Plaintiff and proposed class members who have used Classmates.com, the relief they seek would be unjust in light of the substantial benefits PeopleConnect has conferred upon them.

**FOURTH DEFENSE (§ 3344(D) EXEMPTION)**

15.     Plaintiff's and proposed class members' claims are barred in whole or in part by California Civil Code Section 3344 ("§ 3344")'s "public affairs" statutory exemption. Cal Civ.

1  Code § 3344(d).

2      16.    Classmates.com provides access to a collection of over 400,000 yearbooks from
3  across the country.

4      17.    PeopleConnect presents the yearbooks for educational, amusement, and
5  enlightenment purposes.

6      18.    Through its online collection of high school yearbooks, PeopleConnect makes
7  available information related to real-life events that are an area of interest to many people, from
8  looking up relatives and family members to reliving long lost memories.

9      19.    Yearbooks serve an important function as primary-source documents
10  memorializing a community's activity in a given year and inform the works of historians,
11  archivists, genealogists, journalists, and other scholars.

12      20.    The public's interest in the information on Classmates.com is also reflected by the
13  fact that news outlets report on yearbooks and their content.

14      21.    Accordingly, Plaintiff's and proposed class members' claims premised on the
15  information PeopleConnect publishes in its online yearbook collection are barred by the "public
16  affairs" exception of § 3344.

17                              **FIFTH DEFENSE (CONSENT)**

18      22.    Plaintiff's and proposed class members' claims are barred in whole or in part
19  because they consented to the use of their identities in yearbooks in various ways.

20      23.    Plaintiff and certain proposed class members may have provided a blanket consent
21  to their schools, either directly or through their guardians, regarding the use of their information
22  and any photographs taken of them related to school.

23      24.    Plaintiff and certain proposed class members also may have provided a blanket
24  consent to the yearbook publishers, either directly or through their guardians, in order for their
25  names and their photographs to be included in the yearbook at the time they sat for the yearbook
26  photographs.

27      25.    Plaintiff and certain proposed class members also may have consented to the use of

28

54

ANSWER TO SECOND AMENDED COMPLAINT<br>Case No. 3:20-cv-09023-EMC

their information through their use of third-party websites, many of which contain terms of service that require consent to the unlimited use of any information available on or provided to the website.

26.     Plaintiff and proposed class members may have also registered for an account, donated yearbooks, or used Classmates.com on or after September 1, 2021, thereby consenting to the use of their information on the website by searching for themselves on the website or authorizing another person to search for them.

**SIXTH DEFENSE (LACHES)**

27.     Certain proposed class members' claims are barred in whole or in part by the doctrine of laches.

28.     Plaintiff filed her Complaint on March 23, 2023, in which she alleged that PeopleConnect uses her name and photographs on Classmates.com without her consent.

29.     Classmates.com has included yearbooks since 2010.

30.     Certain proposed class members, knew or should have known that yearbooks containing their names and photographs appeared on Classmates.com for years prior to the filing of the Complaint.

31.     Certain proposed class members unreasonably and inexcusably delayed in seeking relief or asserting any claims related to the use of their names and images on Classmates.com.

32.     PeopleConnect has been prejudiced by certain proposed class members' unreasonable delay in asserting their claims, including because relevant evidence has been lost, such as testimony that may no longer be available because memories have faded.

33.     Under the circumstances, laches bars certain proposed class members' claims because it would be inequitable to allow them to recover anything in light of their unreasonable delay and prejudice to PeopleConnect.

**SEVENTH DEFENSE (FIRST AMENDMENT)**

34.     Plaintiff's and proposed class members' claims are barred in whole or in part by the First Amendment and Fourteenth Amendment of the U.S. Constitution.

35.     Classmates.com provides access to a collection of over 400,000 yearbooks from

1    across the country.

2    36.    The publication of yearbooks, including publicly available information, is

3    newsworthy, informational, noncommercial speech that is entitled to First Amendment protection,

4    regardless of whether the yearbooks are sold for profit.

5    37.    PeopleConnect's online collection of yearbooks serves both informative and

6    cultural purposes, making available information related to real-life events that are an area of

7    interest to many people, from looking up relatives and family members to reliving long lost

8    memories.

9    38.    PeopleConnect's online collection of yearbooks allows for dissemination of

10   information among the general public and school communities.

11   39.    Yearbooks serve an important function as primary-source documents

12   memorializing a community's activity in a given year and inform the works of historians,

13   archivists, genealogists, journalists, and other scholars.

14                        **EIGHTH DEFENSE (OVERBREADTH)**

15   40.    Plaintiff's and proposed class members' claims are barred in whole or in part by

16   the First and Fourteenth Amendments of the U.S. Constitution because Plaintiff's theories of

17   liability are unconstitutionally overbroad in that they prohibit constitutionally protected speech,

18   including publicly available, newsworthy information about people.

19   41.    Classmates.com provides access to a collection of over 400,000 yearbooks from

20   across the country.

21   42.    Plaintiff alleges that PeopleConnect has violated § 3344 by maintaining this

22   collection of yearbooks and purportedly displaying Plaintiff's and proposed class members' names

23   and photographs on Classmates.com without their consent.

24   43.    PeopleConnect's online collection of yearbooks serves both informative and

25   cultural purposes that are protected by the First Amendment, making available information related

26   to real-life events that are an area of interest to many people, from looking up relatives and family

27   members, to reliving long lost memories.

28

44.   PeopleConnect's online collection of yearbooks allows for dissemination of information among the general public and school communities, which is core speech protected by the First Amendment.

45.   Yearbooks serve an important function as primary-source documents memorializing a community's activity in a given year and inform the works of historians, archivists, genealogists, journalists, and other scholars.

**NINTH DEFENSE (STATUTORY DAMAGES BARRED)**

46.   Plaintiff's and proposed class members' claims are barred in whole or in part because the statutory damages provision of § 3344 violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution in that statutory damages are excessive, severe, and wholly disproportionate to the harm allegedly suffered by Plaintiff and/or any putative class member.

**TENTH DEFENSE (PUNITIVE DAMAGES BARRED)**

47.   Plaintiff's and proposed class members' claim for punitive damages is barred in whole or in part because it would violate PeopleConnect's guarantees of due process, equal protection, protection against excessive fines, and protection against multiple punishments under the U.S. Constitution. An award of punitive damages in this case would grossly exceed any legitimate interest in punishment and deterrence for the publication of publicly available, newsworthy information.

**ELEVENTH DEFENSE (COMMUNICATIONS DECENCY ACT)**

48.   Plaintiff's and proposed class members' claims are barred in whole or in part by the Communications Decency Act, 47 U.S.C. § 230, because PeopleConnect is an interactive computer service provider that is immune from liability for the information about people available through its website. In addition, PeopleConnect displays information about people created by and provided by third party data providers.

**TWELFTH DEFENSE (COPYRIGHT ACT)**

49.   Plaintiff's and proposed class members' claims are preempted in whole or in part

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

by the Copyright Act because yearbooks are copyrightable works, and federal copyright law would be the exclusive means of redress if Plaintiff allegedly suffered a harm from their dissemination.

### THIRTEENTH DEFENSE (DORMANT COMMERCE CLAUSE)

50.     Article I, Section 8, Clause 3 of the United States Constitution bars Plaintiff's claims in whole or in part.

51.     PeopleConnect is incorporated in Delaware with its principal place of business in Bellevue, Washington.

52.     Users of Classmates.com are located in every state.

53.     Because the yearbook collection on Classmates.com is available through the internet, PeopleConnect transmits information across state lines through the internet every hour of every day.

54.     The online collection of yearbooks includes yearbooks from schools in every state.

55.     Plaintiff's theories of liability would regulate conduct relating to the design and technical operation of an internet website occurring entirely outside of California.

56.     Plaintiff's theories of liability would regulate the transmission of information occurring in whole or in part outside of California.

57.     Plaintiff's theories of liability would prevent users located in states other than California from accessing the complete collection of yearbooks on Classmates.com.

58.     Plaintiff's theories of liability would substantially burden interstate commerce in excess of any putative local benefits.

### FOURTEENTH DEFENSE (EXTRATERRITORIALITY DOCTRINE)

59.     Plaintiff's and proposed class members' claims are barred in whole or in part by California's extraterritoriality doctrine.

60.     PeopleConnect is incorporated in Delaware with its principal place of business in Bellevue, Washington.

61.     Users of Classmates.com are located in every state.

62.     Plaintiff's theories of liability would regulate conduct relating to the design and

technical operation of an internet website occurring entirely outside of California.

63.     Plaintiff's theories of liability would regulate the transmission of information occurring entirely outside of California.

64.     Plaintiff's theories of liability would prevent users located in states other than California from accessing the complete collection of yearbooks on Classmates.com.

**FIFTEENTH DEFENSE (OPT-OUT)**

65.     The injunctive relief sought by Plaintiff and proposed class members is barred because they cannot establish irreparable harm.

66.     A person can request their name or photograph be suppressed from Classmates.com by phone or by sending a letter or email to PeopleConnect.

67.     PeopleConnect also will suppress names and photographs from Classmates.com if it is aware of a request to do so that was posted on certain third-party websites, such as on the Better Business Bureau's website, and the request provided enough information to facilitate the suppression.

68.     Once received, PeopleConnect honors all requests to suppress names and images from Classmates.com.

**SIXTEENTH DEFENSE (INCIDENTAL USE)**

69.     Plaintiff's and proposed class members' claims are barred by §3344(c) because the use of their names, images, and likenesses on Classmates.com is incidental and not essential to the website.

70.     Plaintiff's and proposed class members' names and images that appear in the yearbooks displayed on Classmates.com have no unique value that would result in commercial profit to PeopleConnect. The full collection of yearbooks on Classmates.com can be searched and viewed by any registered Classmates.com user, regardless of whether they have a free or paid membership.

71.     The names and images of Plaintiff and proposed class members are also not prominently displayed on Classmates.com. For example, names, images, or likenesses of specific

1  individuals are only viewable on Classmates.com if a user specifically searches for them or views

2  a specific yearbook page on which that information appears.

3  **SEVENTEENTH DEFENSE (CLASS ACTION INAPPROPRIATE)**

4  72.   The proposed putative class fails to meet the requirements of Fed. R. Civ. P. 23 and

5  thus this lawsuit cannot be maintained as a class action.

6  **EIGHTEENTH DEFENSE (ARBITRATION)**

7  73.   Plaintiff's and certain proposed class members' claims may be barred by an

8  arbitration provision that prohibits Plaintiff's claims from being brought in this forum.

9  74.   Classmates.com is governed by a Terms of Service (the "TOS").

10  75.   The TOS is accessible to each user of Classmates.com via a hyperlink in the

11  website's persistent footer and on the non-registered user homepage.

12  76.   When a user of Classmates.com registers for an account on the website, they are

13  directed to a screen which states the following: "By clicking Submit, you agree to the Terms of

14  Service and Privacy Policy." The phrase "Terms of Service" is hyperlinked to a copy of the current

15  TOS.

16  77.   The TOS informs users that by accessing and using Classmates.com, they agree to

17  the TOS.

18  78.   Since January 10, 2014, the TOS has included an arbitration provision that requires

19  a Classmates.com user and PeopleConnect to arbitrate their claims relating to the website.

20  79.   Users of Classmates.com may opt out of the arbitration provision by following the

21  procedure set forth in the TOS. The current version of the opt-out provision provides:

22  ARBITRATION OPT-OUT. You have the right to opt-out, for yourself and on behalf
   of anyone for whom you are acting as an agent, and not be bound by this arbitration
23  provision by sending written notice of your decision to opt-out to: PeopleConnect, Inc.
   dba Classmates.com Arbitration Opt-Out, 1687 114th Ave SE, Suite 200, Bellevue, WA
24  98004. If opting out for yourself, this notice must be sent within thirty (30) days of your
   first use of the Services or, if you are already a user of the Services upon initial posting
25  of this arbitration provision, within thirty (30) days of our email notice to you of this
   arbitration provision. If opting out as an agent for another user, this notice must be sent
26  within (30) days of that other user's first use of the Services or, if already a user of the
27  Services upon initial posting of this arbitration provision, within thirty (30) days of our

28

60

email notice to them of this arbitration provision. Any opt out exercised, by you for yourself or as the agent for another, within thirty (30) days of our email notice of this arbitration provision, shall only apply to claims that have arisen since the posting of this arbitration provision.

The opt-out notice must state that you do not agree to this agreement to arbitrate and must include your name, address, phone number and email address(es) used to register with or use the Services, as well as the name, address, phone number and email address(es) of any person for whom you are opting out as their agent. You and any persons for whom you are opting out as an agent on their behalf must sign the opt-out notice for it be effective. Any opt-out not received within the applicable thirty (30) day period set forth above will not be valid.

If you opt-out of the agreement to arbitrate, you and the PeopleConnect Entities agree that any Disputes will be resolved by a state or federal court located in King County, Washington, and you consent to the jurisdiction and venue of such court. Further, if you opt out of the agreement to arbitrate, you will remain bound by the Separate Class Action Waiver set forth below

80.     Plaintiff and certain proposed class members are bound by the arbitration provision in the TOS and cannot pursue their claims in this forum if they or their agents agreed to the TOS by registering for a Classmates.com account or using the website on or after January 10, 2014 and did not opt out of arbitration.

### NINETEENTH DEFENSE (WAIVER)

81.     Plaintiff's and certain proposed class members' claims may be barred by waiver because they have intentionally relinquished their purported rights to relief against PeopleConnect.

82.     Classmates.com is governed by the TOS.

83.     The TOS is accessible to each user of Classmates.com via a hyperlink in the website's persistent footer and on the non-registered user homepage.

84.     When a user of Classmates.com registers for an account on the website, they are directed to a screen which states the following: "By clicking Submit, you agree to the Terms of Service and Privacy Policy." The phrase "Terms of Service" is hyperlinked to a copy of the current TOS.

85.     The TOS informs users that by accessing and using Classmates.com, they agree to the TOS.

86.     Plaintiff's and certain proposed class members' claims against PeopleConnect are barred by waiver if they intentionally relinquished their rights by agreeing to the TOS.

87.     Since September 1, 2021, the TOS has included a section stating that a Classmates.com user expressly consents to the use and display of their information on the website if they search for themselves on Classmates.com or if they authorized another person to search for them on Classmates.com.

88.     Plaintiff and certain purported class members voluntarily relinquished any purported right to assert claims against PeopleConnect based on the alleged use of their names and images on Classmates.com by expressly consenting to that use if they registered for a Classmates.com account or used the website on or after September 1, 2021, and searched for themselves on Classmates.com or authorized another person to search for them on Classmates.com.

89.     Plaintiff and certain proposed class members voluntarily relinquished any purported right to assert claims against PeopleConnect based on the alleged use of their names and images on Classmates.com if they provided a blanket consent to their schools, either directly or through their guardians, regarding the use of their information and any photographs taken of them related to school.

90.     Plaintiff and certain proposed class members voluntarily relinquished any purported right to assert claims against PeopleConnect based on the alleged use of their names and images on Classmates.com if they provided a blanket consent to the yearbook publishers, either directly or through their guardians, in order for their names and images to be included in the yearbook at the time they sat for the yearbook photographs.

91.     Plaintiff and certain proposed class members could have voluntarily relinquished any purported right to assert claims against PeopleConnect based on the alleged use of their information on Classmates.com through their use of third-party websites, many of which contain terms of service that require consent to the unlimited use of any information available on or provided to the website.

**TWENTIETH DEFENSE (CLASS ACTION BAR)**

92.    Plaintiff's and certain proposed class members' claims may be barred by a class action waiver to the extent they purport to bring class claims.

93.    Classmates.com is governed by the TOS.

94.    The TOS is accessible to each user of Classmates.com via a hyperlink in the website's persistent footer and on the non-registered user homepage.

95.    When a user of Classmates.com registers for an account on the website, they are directed to a screen which states the following: "By clicking Submit, you agree to the Terms of Service and Privacy Policy." The phrase "Terms of Service" is hyperlinked to a copy of the current TOS.

96.    Since January 10, 2014, the TOS has included a class action waiver, under which users agree to pursue claims against PeopleConnect only in an individual capacity and not as a plaintiff or class member in any purported class action or representative proceeding.

97.    Plaintiff and certain purported class members cannot assert class claims against PeopleConnect if they agreed to the TOS by registering for a Classmates.com account or using the website on or after January 10, 2014.

98.    Thus, if they agreed to the TOS on or after January 10, 2014, Plaintiff's and certain proposed class members' claims must be brought solely in their individual capacities and may not be brought in a representative or consolidated capacity.

WHEREFORE, PeopleConnect respectfully requests that this Court enter judgment in its favor and against Plaintiff, dismiss the claims against PeopleConnect with prejudice, award all costs, expenses, and attorneys' fees to PeopleConnect as the prevailing party under Cal. Civ. Code § 3344(a), and grant PeopleConnect such other relief as the Court deems just and appropriate.

Dated: July 14, 2023

JENNER & BLOCK LLP

By: /s/*Debbie L. Berman*

Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone:     312 222-9350
Facsimile:     312 527-0484

Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:     628 267-6800
Facsimile:     628 267-6859

Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:     213 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

64

ANSWER TO SECOND AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

2-ER-138

1

2

3

4                              UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7   ALICIA NOLEN,                          Case No. 20-cv-09203-EMC

8                 Plaintiff,

9          v.                              **ORDER DENYING DEFENDANT'S
                                           MOTION TO COMPEL
10  PEOPLECONNECT, INC.,                   ARBITRATION AND DISMISS**

11                Defendant.               Docket No. 180

12

13

14                    **I.       INTRODUCTION**

15          Defendant PeopleConnect moves for an order dismissing Plaintiff's claims.[1]  Plaintiff filed

16  a class action suit against Defendant for (1) violating California's Right of Publicity Statute,

17  California Civil Code § 3344; (2) violating California's Unfair Competition Law ("UCL"),

18  California Business and Professions Code § 17200 (the unlawful prong); and (3) unjust

19  enrichment under California common law.  These claims stem from Defendant's non-consensual

20  use of Plaintiff's likeness for the purpose of advertising.  Defendant, however, contends that

21  Plaintiff did not plead an actionable claim because she did not properly allege that Defendant used

22  her image.  Having considered the parties' briefs and accompanying submissions, as well as the

23  oral argument of counsel, the Court hereby **DENIES** the motion to dismiss.

24  ///

25  ///

26

27  ───────────────

28  [1] Defendant also moves to compel former Plaintiff Alexandra Overton to arbitrate her claims.
    Because Ms. Overton has since voluntarily dismissed her claims, the Court denies Defendant's
    motion to compel arbitration as moot.  *See* Docket No. 183 (notice of voluntary dismissal).

United States District Court
Northern District of California

## II.     FACTUAL AND PROCEDURAL BACKGROUND

PeopleConnect is a company that collects yearbooks, scans the yearbooks, and extracts information from the yearbooks (such as names, photographs, schools attended, and so forth) to be put into a database. *See* Docket No. 172 (Second Amended Complaint ("SAC")) ¶ 162.[2]  It "aggregates the extracted information into digital records associated with specific individuals," and then the digital records are exploited commercially—to promote and sell PeopleConnect's products—but without the individuals' consent. *Id.*  PeopleConnect sells products through its website (Classmates.com).  The products sold on the website are (1) reprinted yearbooks and (2) a subscription membership. *Id.* ¶¶ 4, 7.

This motion involves the Second Amended Complaint in this action.  Plaintiffs filed their First Amended Complaint ("FAC") after the Court dismissed Plaintiffs' former intrusion upon seclusion claim, UCL (unfair prong) claim, and all claims as they related to the sales of reprinted yearbooks. *See* Docket Nos. 76, 132 (FAC).  Plaintiffs, correctly anticipating that their claims were time-barred, filed the SAC to add two new named Plaintiffs: Ms. Alexandra Overton and Ms. Alicia Nolen.  Docket No. 177; SAC.  Ms. Overton voluntarily dismissed her claims, leaving only Ms. Nolen as named Plaintiff.  Docket No. 183.

## III.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

---

[2] The Court extensively discussed the factual and procedural history in its previous orders. *See* Docket Nos. 76, 177.

1    *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

2    simply recite the elements of a cause of action [and] must contain sufficient allegations of

3    underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

4    *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

5    990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

6    content that allows the court to draw the reasonable inference that the Defendant is liable for the

7    misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

8    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

9    unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

10                                   **IV.**      **DISCUSSION**

11            To state a misappropriation of likeness claim under the common law, a plaintiff must

12    allege: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name

13    or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4)

14    resulting injury." *Eastwood v. Superior Ct.*, 149 Cal. App. 3d 409, 417, 198 Cal. Rptr. 342, 347

15    (Ct. App. 1983); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017)

16    (same).  A § 3344 claim consists of the same elements, but also requires allegations of (5)

17    "*knowing* use of the plaintiff's name, photograph or likeness for purposes of advertising or

18    solicitation of purchases," and (6) "[a] 'direct' connection . . . between the use and the commercial

19    purpose." *Eastwood*, 149 Cal. App. 3d at 417 (emphasis added); *see also Maloney*, 853 F.3d at

20    1008, n.2 (same).  Specifically, § 3344 states:

> (a) Any person who knowingly uses another's name, voice,
> signature, photograph, or likeness, in any manner, on or in products,
> merchandise, or goods, or for purposes of advertising or selling, or
> soliciting purchases of, products, merchandise, goods or services,
> without such person's prior consent . . . shall be liable for any
> damages sustained by the person or persons injured as a result
> thereof. . . . (e) The use of a name, voice, signature, photograph, or
> likeness in a commercial medium shall not constitute a use for
> which consent is required under subdivision (a) solely because the
> material containing such use is commercially sponsored or contains
> paid advertising. Rather it shall be a question of fact whether or not
> the use of the person's name, voice, signature, photograph, or
> likeness was so directly connected with the commercial sponsorship
> or with the paid advertising as to constitute a use for which consent
> is required under subdivision (a).

United States District Court
Northern District of California

1    Cal. Civ. Code § 3344.

2        Plaintiff alleged that Defendant used her image without consent to solicit users to register

3    for their site and sign up for paid subscriptions.  For example, Plaintiff alleged that Defendant

4    non-consensually used her image on their website and that when users searched for her name on

5    their site or clicked on her image, they were shown various commercial advertisements.  *See* SAC

6    ¶¶ 145-161.  Plaintiff alleged that this use of her image in Defendant's advertising flow violated

7    her right of publicity.  *Id.* ¶¶ 182-87.

8        Defendant's motion to dismiss focuses on a narrow issue: whether Plaintiff Nolen

9    adequately alleged that Defendant used her image for the purpose of advertising.  *See* Docket No.

10   180 (Def.'s Mot. to Compel and Dismiss ("Mot.")) at 12.  Defendant argues that Plaintiff's

11   "theory of liability fails because it does not require that her name or photographs have ever been

12   displayed in what the Second Amended Complaint calls an 'advertising technique[].'"  Docket No.

13   185 (Reply in Supp. of Defs.' Mot. to Dismiss ("Reply")) at 2.  Simply put, Defendant argues that

14   their use of Plaintiff's image does not constitute a use for the purpose of advertising under § 3344

15   until her image is visually displayed (*e.g.*, through pixels on a user's computer monitor) in

16   connection with an advertisement following a user's search.  *See id.* at 1 (stating that a publication

17   in advertising must be more than a "mere possibility of a future display in an advertisement").

18   Although Defendant states otherwise, they are arguing for a *de facto* requirement of third-party

19   viewership for certain § 3344 claims—essentially, even if users *could* interact with Plaintiff's

20   images as part of an advertising flow, Plaintiff's claims fail because she never alleges that any user

21   ever *actually* viewed them in this way, and thus they were not visually used in a commercial

22   advertisement.  *See* Mot. at 11 ("[T]he theory of liability Plaintiffs have pleaded—that

23   PeopleConnect violates Section 3344 by hosting their school yearbooks on Classmates.com, even

24   if the photographs from those yearbooks never are shown to anyone, let alone shown to someone

25   as part of a so-called advertisement—is not viable as a matter of law."); Reply at 2 (contending

26   that Plaintiff's claims fail "regardless of what anyone saw").

27        The Court disagrees: Defendant commercially used Plaintiff's image the moment the

28   image became a publicly accessible part of Defendant's advertising flow.  To hold otherwise

4

1  would impose a visual display requirement that is at odds with the single publication rule of claim

2  accrual and that has no basis in the text or purpose of § 3344. Moreover, even if Plaintiff's image

3  needed to have been visually displayed in Defendant's advertising flow following a user's search

4  in order for it to have been used for a commercial purpose, Plaintiff's claims would still survive

5  since she adequately alleged such a display.[3]

6  A.    Determining When An Image Is Commercially Used

7       Defendant argues that Plaintiff is wrong for contending that "she may prevail merely by

8  identifying an 'online advertising flow' on Classmates.com, even if her name or photographs were

9  never displayed in that flow." Reply at 7. Defendant is attempting to argue that until users click

10  on Plaintiff's image such that Defendant's advertisements appear, there has been no published

11  advertisement using Plaintiff's image. This argument fails because (1) it is nonsensical to treat

12  date of publication separately from date of first commercial use and (2) the text and purpose of §

13  3344 precludes any definition of commercial use requiring the visual display and third-party

14  viewing of the commercially used image.

15      1.    Images are Commercially Used Upon Publication

16       The internet is not Schrödinger's cat, only existing once it has been seen. Webpages do not

17  rest up in the ether until a viewer's click jolts them into being; rather, a webpage is published once

18  it is publicly accessible. *See Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1130 (9th Cir.

19  2006) (noting, when determining whether to apply the single publication rule, that state courts,

20  including in California, "have generally concluded [in the context of defamation claims] that the

21  posting of information on the web should be treated in the same manner as the publication of

22  traditional media"); *Guzman v. Shewry*, 552 F.3d 941, 956 (9th Cir. 2009) ("Because members of

23  the public can access information in the [database], [the agency's] reporting of [plaintiff's]

24  suspension to the [database] would constitute publication that deprives him of a protected liberty

25  interest."); *Reno v. ACLU*, 521 U.S. 844, 852-53 (1997) ("[T]he Web consists of a vast number of

26

27  [3] Defendant asserts that Plaintiff's UCL and unjust enrichment claims are derivative of her § 3344 claims and that if the § 3344 claim fails the other claims should fail, too. Mot. at 12 n.4.

28  Accordingly, because Plaintiff's § 3344 claim survives, her UCL and unjust enrichment claims survive, too.

United States District Court
Northern District of California

5

1     documents stored in different computers all over the world. Some of these documents are simply

2     files containing information. . . . The Web is thus comparable, from the readers' viewpoint, to both

3     a vast library including millions of readily available and indexed publications and a sprawling

4     mall offering goods and services.").

5           Indeed, the Court, at *Defendant's exhortation*, applied the single publication rule to bar the

6     claim of former Plaintiff Wayne Tseng.  *See* Docket No. 177.  The Court held that Plaintiff

7     Tseng's claim accrued "when his image became publicly available on the Classmates.com

8     website."  *Id.* at 7.  Information is deemed published even if some predicate act is required to

9     access it, such as going to a library, getting through a paywall, or performing an online search.

10    *See Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 890, 173 P.3d 1004 (2007)

11    (finding an oral report published despite the fact that it was distributed to only a few libraries

12    since, "the single-publication rule applies . . . to publications like that in the present case that are

13    given only limited circulation and, thus, are not generally distributed to the public"); *Royal*

14    *Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*, No. 2:20-cv-04093-SB-PLA(x), 2020 WL

15    8225666, at *4 (C.D. Cal. Dec. 18, 2020), *rev'd and remanded on other grounds*, No. 21-55048,

16    2022 WL 16832812 (9th Cir. Nov. 9, 2022) (describing certain articles as "published" that "were

17    made on [defendant's] website, which has some of its content behind a nonpublic paywall");

18    *Universal Ent. Corp. v. Aruze Gaming Am.*, Inc., No. 2:18-CV-00585-RFB-NJK, 2020 WL

19    8771657, at *1 (D. Nev. Dec. 9, 2020) (noting that plaintiff "discovered *behind a paywall* a third

20    public online news article *published* in November 2018" (emphasis added); *Bonilla v.*

21    *Ancestry.com Operations Inc.*, No. 20 C 7390, 2022 WL 4291359, at *3 (N.D. Ill. Sept. 16, 2022)

22    (applying the single-publication rule and declining to apply the continuing violation doctrine

23    where plaintiff claimed defendant "republishes his image by actively generat[ing] each

24    advertisement in response to a query by a specific user seeking information about [plaintiff]"

25    (internal citation and quotation omitted)).  Thus, Defendant published Plaintiff's image even

26    though accessing it requires a predicate search (something inherent to anything on the Internet –

27    the viewer must be directed to a URL).

28           As Plaintiff argues, it would be unjust and absurd for Plaintiff's cause of action to

*United States District Court*
*Northern District of California*

6

accrue—and potentially expire—before she could bring a claim, a possibility that is endemic to Defendant's proposed construct.  *See* Docket No. 184 (Pls.' Opp'n to Def.'s Mot. to Compel and Dismiss ("Opp'n")) at 6-7.  As a "cause of action accrues when the claim is complete with all of its elements," *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (quoting *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528 (2006), *as modified on denial of reh'g* (Oct. 12, 2006)), Defendant cannot argue that the statute of limitations accrued in one breath and that Plaintiff's claims are not yet ripe in the next.  Like in the real word, Defendant cannot have its virtual cake and eat it too.

Moreover, to hold that images are only commercially used once they are actually seen by a consumer makes little practical sense.  It would be as if an image within a newspaper advertisement were not commercially used until a customer paid their quarter, unlocked the newsrack, opened the paper, began reading, opened the page containing the relevant circular, and saw it.  Defendant's construct makes even less sense in the age of the Internet.  As noted above, a webpage openly published on the Internet still requires a viewer to click on its URL before it may be seen.  The notion that there is no publication or commercial "use" upon placing the image on the open Internet ignores the terms and purpose of  Cal. Civ. Code § 3344, which is predicated upon "knowing[] use[] . . . for purposes of advertising."  The point of using Plaintiff's image for advertising is to try to enhance Defendant's business revenues by increasing the odds of sales.  Here, Defendant uses Plaintiff's image as bait, betting on the *chances* that Plaintiff's image will be seen by *some* viewers, some of whom will be thereby induced to further click and subscribe to Defendant's product.  So viewed, appropriation is not contingent on the ultimate success Defendant's campaign (actual viewership and resulting sales).

    2.     § 3344 Has No Requirement That A Commercial Image Be Visually Displayed Or Viewed By Third Parties

        a.     Text and Purpose of § 3344

Plaintiff's image was "used" for a commercial purpose.  The plain meaning of "use" as defined in Black's Law Dictionary is "[t]o make use of, to convert to one's service, to avail one's self of, to employ."  *Use, Black's Law Dictionary* (Revised 4th ed. 1968).  As discussed above,

1    Plaintiff's image was used essentially as bait, to attract potential viewers and turn them into

2    customers.  Whether it succeeded or not, the image was used for the purpose of increasing

3    Defendant's sales.  Defendant has not provided a California case where actual third-party

4    viewership has been deemed an integral part of a § 3344 claim.  *See, e.g.*, *Eastwood*, 149 Cal.

5    App. 3d at 418 (analyzing whether plaintiffs sufficiently pled a § 3344 claim without reference to

6    third-party viewership).

7         This lack of analysis is understandable, not only because Defendant's argument defies the

8    common sense definition of "use" for commercial purposes and the meaning of advertising, but

9    also because, as this Court previously stated regarding the purpose of § 3344:

> [t]he gist of the cause of action in a privacy case is not injury to the
> character or reputation, but a direct wrong of a personal character
> resulting in injury to the feelings without regard to any effect which
> the publication may have on the property, business, pecuniary
> interest, or the standing of the individual in the community. . . . *The
> right of privacy concerns one's own peace of mind* . . . .

14   Docket No. 76 at 25 (emphasis added) (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal. App.

15   4th 988, 1002 (2008) (quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 826 (1971

16   Reg. Sess.) June 14, 1971, p. 1.)); *see also Miller*, 159 Cal. App. 4th at 1005 ("Here, the harm

17   Miller suffered, and which section 3344(a)'s minimum statutory damages were intended to

18   remedy, was the alleged injury to his mental feelings and peace of mind . . . .").  Such harm "is

19   mental and subjective."  *Miller*, 159 Cal. App. 4th at 1005  (quoting *Dora v. Frontline Video, Inc.*,

20   15 Cal. App.4th 536, 541-42 (1993)); *see also Merriam-Webster Online Dictionary*,

21   https://www.merriam-webster.com/dictionary/peaceofmind (last visited June 20, 2023) (defining

22   peace of mind as "a feeling of being safe or protected").  § 3344 claims concern the anguish and

23   helplessness individuals feel when their privacy is stripped away and their image published for

24   commercial purposes without their consent.  Visual display and third-party viewership do not

25   negate this anguish.  The loss of agency and control over her image, not only the visual display,

26   causes Plaintiff harm.

27        Other state courts with similar right of publicity statutes have addressed the third-party

28   viewership issue and unequivocally held that third-party viewership is not an element of a right of

8

publicity claim.  The Illinois Right of Publicity Act [IRPA] governs right of publicity claims in

Illinois.  Much like § 3344, the IRPA is related to the common law claim of appropriation of

likeness.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) ("The

remedies provided for under California Civil Code § 3344 complement the common law cause of

action; they do not replace or codify the common law."); *Lukis v. Whitepages Inc.*, 549 F. Supp.

3d 798, 805 (N.D. Ill. 2021) ("[T]he Seventh Circuit and the Appellate Court of Illinois

unsurprisingly have recognized the continuity between the common law and the IRPA.").  The

IRPA states that "[a] person may not use an individual's identity for commercial purposes during

the individual's lifetime without having obtained previous written consent from the appropriate

person or persons . . . ."  765 Ill. Comp. Stat. Ann. 1075/30.  "Commercial purpose" is defined as

"the public use or holding out of an individual's identity . . . for purposes of advertising or

promoting products."  765 Ill. Comp. Stat. Ann. 1075/5.  Illinois courts have held that while

"*public* use" requires some sort of "disseminat[ion] to the public," to "'hold out' is 'to make out to

be: represent.'"  *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶¶ 21-22, 987

N.E.2d 923, 930 (emphasis added) (quoting *Webster's Third New International Dictionary* 1079

(1993)).  Thus, in the context of the IRPA, holding out merely requires "the representation [] of an

individual's identity on or in connection with certain [commercial] activities."  *Id.* (stating that the

IRPA "prohibits the holding out—meaning the representation—of an individual's identity . . . .

The 'holding out' must have occurred, *inter alia*, on or in connection with the offering for sale or

sale of a product, merchandise, goods, or services.").  Following from this definition, "the IRPA . .

. does not impose a viewership requirement. Rather, the pertinent liability issues are whether

[defendant] held out a putative class member's identity to sell subscriptions, and whether such use

served a commercial purpose. It follows that a putative class member may recover *regardless of

whether any user ultimately viewed the website's registration page after searching for that

putative class member*."  *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at

*11 (N.D. Ill. Mar. 31, 2022) (emphasis added);[4] *see also Lukis v. Whitepages Inc.*, 542 F. Supp.

---

[4] The *Fischer* court did not certify the "Search Results Class."  *See Fischer*, 2022 WL 971479, at
*12.  Defendant claims that the court held that actual publication under Illinois law "meant a class

United States District Court
Northern District of California

1    3d 831, 836-38 (N.D. Ill. 2020) (rejecting the proposition that defendants did not commercially

2    use plaintiff's information under the IRPA where users could (1) search for plaintiff's name, (2)

3    generate a free preview of plaintiff's information from which plaintiff "*could be* uniquely

4    identified," and (3) be shown connected advertisements for other services (emphasis added)).  This

5    Court sees no material distinction between "use" under § 3344 and "hold out" under the IRPA.

6           The language of the Ohio Right of Publicity Law [ORPL] even more closely tracks the

7    language of § 3344.  The ORPL states that "a person shall not use any aspect of an individual's

8    persona for a commercial purpose."  Ohio Rev. Code Ann. § 2741.02(A).  "'Commercial purpose'

9    means the use of or reference to an aspect of an individual's persona . . . [f]or advertising or

10   soliciting the purchase of products, merchandise, goods, services, or other commercial activities

11   . . . ."  *Id.* § 2741.01(B).  Like § 3344, the ORPL is related to the common law tort of

12   misappropriation of likeness.  *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 929, n.15 (6th Cir.

13   2003) ("In 1999, the right of publicity was codified in the provisions of Ohio Revised Code

14   Chapter 2741.").  In *Knapke v. PeopleConnect Inc*, the court rejected the exact same argument that

15   PeopleConnect makes here:

16               Classmates argues that Knapke has not alleged a "use" of her
                 persona in violation of the Law because she has not alleged that
17               anyone else has seen this same image. Classmates relies on common
                 law claims that require some allegation that members of the public
18               saw the offending image. Classmates fails to explain why this
                 element from common law false light claims should be imputed into
19               the Right of Publicity Law. While courts may look to common law
                 claims to help understand the Right of Publicity Law, none has
20               imputed a new element into the Law from common law tort. The
                 Court finds no valid basis to write a new provision into the Right of
21               Publicity Law. And accepting the allegations of the Complaint as
                 true, Knapke has alleged a "use" of her image—she alleges that she
22               discovered Classmates using her image to market its products and
                 services on the internet, which is available to the public at large.
23               This satisfies her burden under the Law.

24

25   ──────────────────

     could be composed only of those whose likenesses actually appear on 'static' webpages, as
26   opposed to those whose likenesses could be displayed based on user searches."  Reply at 5.
     *Fischer*, however, stands for no such proposition; rather, the court held that the Search Results
27   Class failed to meet the superiority requirement of Rule 23(b) since plaintiff's methodology only
     identified individuals who currently appeared in defendant's background reports, not individuals
28   who had appeared in the past, as required by the proposed class definition.  *See Fischer*, 2022 WL
     971479, at *12.

                                                    10

United States District Court
Northern District of California

1    *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021), *vacated and*

2    *remanded on other grounds sub nom. Knapke v. PeopleConnect, Inc*, 38 F.4th 824 (9th Cir. 2022)

3    (internal citations omitted).  Although that decision was vacated on other grounds,[5] the Court finds

4    its logic persuasive; there is no reason to write a new provision into § 3344.

5           Therefore, even if an advertisement connected to Plaintiff's image were never generated by

6    users, the fact that the advertisement *could* be generated at any point by any person is the

7    gravamen of Plaintiff's complaint.  This is what is reflected in § 3344's lack of visual display and

8    third-party viewership requirements, and it is what is reflected in the Court's decision.

9                   b.     Cases Cited By Defendant Are Inapposite

10          Defendant provides no cases that convince the Court otherwise.  Defendant spills much ink

11   discussing one case, *Cross v. Facebook, Inc.*, which simply holds that, to be liable, the defendant

12   must be the entity who uses a plaintiff's image.  In *Cross*, the plaintiff sued Facebook under §

13   3344 and alleged that Facebook ran advertisements adjacent to Facebook pages run by third

14   parties who had incorporated plaintiff's image onto their page without plaintiff's consent.  *Cross*

15   *v. Facebook, Inc.*, 14 Cal. App. 5th 190, 197, 222 Cal. Rptr. 3d 250, 257 (2017).  The court

16   dismissed plaintiff's claims and held that "[t]he gravamen of [plaintiff's] complaint is that

17   Facebook displayed unrelated ads from Facebook advertisers adjacent to the content that allegedly

18   used [plaintiff's] name and likeness—content, [plaintiff] concedes, created by third-party users.

19   He has not, and cannot, offer any evidence that Facebook used his name or likeness in any way."

20   *Id.* at 210.  Thus, as Plaintiff notes, *Cross* "turn[s] on the identity of the publisher—not the

21   viewer."  Opp'n at 4.  Plaintiff indisputably alleged that it is Defendant, *not* a third-party entity

22   who is using Plaintiff's image in their advertisements, and that these advertisements benefit

23   Defendant.  *See* SAC ¶ 93.  *Cross* is inapposite to Defendant's "use" argument.  So is *Perfect 10,*

24   *Inc. v. Google, Inc.*, to which Defendant cites and which stands for the same proposition as *Cross*.

---

26   [5] The Ninth Circuit found that "Washington law, not Ohio law, governs the threshold question of
     arbitrability" and that more discovery was needed to determine if plaintiffs were bound to

27   arbitration.  *Knapke*, 38 F.4th at 828.  However, regarding PeopleConnect's argument that
     Defendant failed to state a claim under the ORPL (as well as other arguments not brought up on

28   appeal), the court notes that the "district court rejected each of these arguments, and these issues
     are not before us on appeal."  *Id.* at 830, n.2.

11

1    *See Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM SHX, 2010 WL 9479060, at *13 (C.D.

2    Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) (finding that plaintiff was unlikely to

3    succeed on the merits of their § 3344 claims where Google hosted, but did not publish, webpages

4    containing individuals' likenesses, since "'[c]ontributing' to someone's violation of something is

5    not the same as actually 'violating' it").

6          Several further cases to which Defendant cites simply state that images are not

7    commercially used where hypothetical viewers would only see them *after* the connected product is

8    purchased.  *See, e.g.*, *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 895

9    (1974) (finding the use of an image within a textbook was not sufficiently connected to the

10   textbook's sale); *Huston v. Hearst Commc'ns, Inc*, 53 F.4th 1097, 1099 (7th Cir. 2022) (similarly

11   holding that "any use or holding out [of plaintiff's identity] must either accompany an offer to sell

12   or precede the sale, but it cannot follow the sale").  However, the timing of the Classmates.com

13   advertisements is not at issue here, as Plaintiff alleged that Defendant's use of her likeness

14   accompanied their advertisements.  *See* SAC ¶ 161.  Plaintiff's image was a predicate to the

15   further acts of the viewer in purchasing the subscription from Defendant.  Nor does it matter that

16   Plaintiff's image only appears after a user commences a search.  *See Spindler v. Seamless*

17   *Contacts*, Inc., No. 4:22-CV-00787-KAW, 2022 WL 16985678, at *5 (N.D. Cal. Oct. 24, 2022),

18   *appeal pending*, No. 22-16772 (9th. Cir.) (finding that "Plaintiff's name or likeness appearing in a

19   string of search results on the same page as a paywall option" can constitute an unlawful

20   advertisement).  Much like how material that is only accessible behind a paywall, in a select few

21   libraries, or after an antecedent search can still be considered published, the fact that Plaintiff's

22   likeness can only be found on Classmates.com after a predicate search does preclude her image

23   from being connected to an unlawful advertisement.  It still played a role in the expected flow

24   from advertising to the ultimate sale.

25         Defendant's most on-point case, while out of circuit, involves facts similar to the case at

26   bar.  In *Fry v. Ancestry.com Operations Inc*, plaintiff alleged that Ancestry.com used his name and

27   school yearbook photo without his consent "to advertise its subscription-based genealogy

28   website."  *Fry v. Ancestry.com Operations Inc.*, No. 3:22-CV-140 JD, 2023 WL 2631387, at *3

12

1   (N.D. Ind. Mar. 24, 2023).  The advertising flow in which Mr. Fry's image was used is similar to

2   Classmates.com's advertising flow:

> When a person visits Ancestry.com, a public landing page allows
> the visitor to search by name and location for any person. The
> Ancestry website then delivers a list of yearbook photos it believes
> may correspond to the person of interest. The results page also
> includes a pop-up window that says, "There's more to see" about the
> person of interest and encourages the visitor to "Sign Up Now."
> Clicking through the pop-up takes the visitor to a webpage where
> they can select a paid subscription plan and begin their free trial.

8   *Id.* at *1.  As with Ms. Nolen's image, Mr. Fry's image requires an antecedent user search before

9   it is displayed.  *See id.* at *2 ("Mr. Fry is not a subscriber or user of Ancestry, but his Indiana high

10  school yearbook photos are available for view on Ancestry to those who have searched for him.").

11  And, similar to what occurred here, a question arose regarding whether any individuals actually

12  searched for Mr. Fry's image on Ancestry.com.  *See id.* at *5.

13       The relevant statute in *Fry* was Indiana's Right of Publicity Statute [IRPS], which states

14  that "[a] person may not use an aspect of a personality's right of publicity for a commercial

15  purpose during the personality's lifetime."  Ind. Code Ann. § 32-36-1-8.  "'[C]ommercial purpose'

16  means the use of an aspect of a personality's right of publicity . . . . [f]or advertising or soliciting

17  purchases of products, merchandise, goods, services, or for promoting commercial activities."  *Id.*

18  § 32-36-1-2.

19       The *Fry* court denied defendant's motion to dismiss but, *in dicta*, postulated that plaintiff

20  neither had standing to bring his claim nor satisfied the elements of the IRPS.  *See id.* at *5-6 ("It

21  is silly to complain at length that one is devastated by the *unauthorized* use of his yearbook photo

22  to sell a product where *he orchestrated the use* [by his attorneys, who may have been the only

23  individuals who searched for and saw his photo on Ancestry.com,] and the injury may not have

24  occurred but for his initiative.").  *Fry*'s standing analysis, however, is inapposite.  There, "Mr. Fry

25  ha[d] stated the injury is the psychological stress caused by worrying that his likeness may be

26  used, not the risk itself."  *Fry*, 2023 WL 2631387, at *5.  Given this, the court cautioned that

27  "[p]laintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their

28  fears of hypothetical future harm that is not certainly impending.'"  *Id.* (quoting *Clapper v.*

13

1    *Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

2    In contrast, Plaintiff's claims do not result solely from an attorney manufactured event.  As

3    alleged under § 3344 here, the commercial use of Plaintiff's publicly accessible image stems in

4    part from the loss of control over her image.  *See* SAC ¶ 161 (alleging that Plaintiff "believes her

5    likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about

6    her inability to control how her name and likeness is used. Ms. Nolen feels that Classmates' use of

7    his photograph represents an alarming invasion of her privacy").  Such an injury is sufficient to

8    establish standing; "[o]ur circuit has specifically affirmed findings of concrete injury, and standing

9    to sue, when plaintiffs were deprived of procedures that protected privacy interests without any

10   attendant embarrassment, job loss, stress or other additional injury."  *Patel v. Facebook Inc.*, 290

11   F. Supp. 3d 948, 954 (N.D. Cal. 2018); *see also Spindler*, 2022 WL 16985678, at *4 ("Plaintiff

12   identifies four injuries: (1) misappropriation of his intellectual property (in the form of likenesses,

13   names, and other information); (2) that Defendant unjustly profited from his likeness; (3) the

14   denial of the right to control commercial use of his name and persona; and (4) mental and

15   emotional injury. Courts in this district have overwhelmingly found that plaintiffs in similar

16   circumstances had sufficiently pleaded a cognizable injury. Here, the undersigned finds that

17   Plaintiff's four identified injuries satisfy the injury in fact requirement . . . ." (internal citation

18   omitted)).  Thus, the *Fry* court's standing analysis regarding plaintiff's claim for psychological

19   distress is not persuasive.[6]

20   To be sure, the *Fry* court does go through a brief statutory analysis of the IRPS. In this

21   analysis—which bleeds into the court's discussion on standing—the court states that:

22   > [Plaintiff] argues that this action is distinct from [the] *TransUnion*
23   > [case on standing] because unlike defamation, misappropriation
     > does not depend on disclosure to a third party, so there is no need for
24   > his photo to have been actually used. This misses the mark; while
     > there is no disclosure requirement, both the statute and the common
25   > law require the *use* of a person's likeness; there is no liability for
     > mere possession of a person's photo. *See* Ind. Code § 32-36-1-8(a).
26   > And it is difficult to think of a use "for advertising" or "on or in
     > connection with a product" that does not involve disclosure to some

27

28   ───────────────
     [6] Additionally, this Court has already held the Plaintiff has standing for her economic loss claim.
     *See* Docket No. 76 at 22-24.

14

third party; Mr. Fry certainly has not alleged one. *See* Ind. Code § 32-36-1-2. So, while the Court does not intend to subject Mr. Fry's claims to a defamation analysis, his claim is like all others in that *something* must have actually happened (other than the decision to sue) before liability can accrue. *See Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) ("as otherwise the federal courts would be flooded with cases based not on proof of harm but on an implausible and at worst trivial risk of harm").

*Fry*, 2023 WL 2631387, at *6. Although the language of the IRPS is similar to the language of § 3344, the Court is not convinced by *Fry*'s cursory analysis. This analysis, made in *dicta*, cites no precedent regarding the IRPS or similar statutes and appears to rely upon incorrect suppositions. Here, as in *Fry*, *something* did in fact allegedly happen (other than the decision to sue): Plaintiff's image was published by Defendant without her consent as part of an advertising flow. This publication rose above "mere possession" and is enough to establish a commercial use under § 3344.[7]

Other cases Defendant cites are completely inapposite and are also out of circuit. *See, e.g.*, *Jackson v. Playboy Enters., Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983) (*Knapke*, 553 F. Supp. 3d at 876, explicitly declined to apply this common law case to the ORPL); *Gautier v. Pro-Football, Inc.*, 106 N.Y.S.2d 553, 555-56 (N.Y. App. Div. 1951) *aff'd*, 107 N.E.2d 485 (N.Y. 1952) (discussing the strength of the connection between advertisements and plaintiff's intellectual property, an issue which this Court has already decided is a question of fact in Docket No. 76 at 27).

Thus, Defendant commercially used Plaintiff's image the moment the public was able to access it in connection with its accompanying advertisements.

B.   Plaintiff's Allegations Of Third-Party Viewership

In any event, Plaintiff did in fact allege that third parties viewed her image and the associated advertisements. Plaintiff stated that:

PeopleConnect provides a publicly accessible webpage on which users may search, *and have searched*, by name and/or location for Ms. Nolen and other Class members. Users who searched for Ms. Nolen received in response a list of results, which include low-resolution photographs depicting Ms. Nolen as a child. Users who

---

[7] Similarly, Fry's image was published by Ancestry.com in their advertising flow, which should have been enough to establish use under the IRPS.

15

United States District Court
Northern District of California

> clicked on Ms. Nolen's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Nolen's photographs. After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

SAC ¶¶ 89-92 (emphasis added).  Plaintiff Nolen explicitly stated that users "have searched, by name and/or location for Ms. Nolen," that Defendant displayed an image of Ms. Nolen to those users, and that some number of those users further engaged with the website such that they caused Defendant's advertisements to appear as pop-up messages on their screens.  Defendant argues that Plaintiff's allegation is a "compound statement" that fails to specify whether "have searched" refers to Plaintiff or to the other class members.  However, reading the complaint literally, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that "have searched" refers to both Plaintiff and to all other class members.

Defendant maintains that Plaintiff's allegations of third-party viewership are contradictory since she elsewhere claims, among other similar statement, that her allegations "are not based on direct observation of the Classmates.com website."  Reply at 8 (quoting SAC ¶ 87).  But, as Plaintiff explained during oral argument, Plaintiff did not make these statements when discussing how she knew that third parties viewed her image; rather, Plaintiff made these statements to reinforce that counsel and Ms. Nolen took no actions that would subject Ms. Nolen to binding arbitration.  Plaintiff's statements that Ms. Nolen and her counsel did not personally view the Classmates.com website do not contradict her claim that third parties viewed her image and the connected advertisements.

Defendant further challenges Plaintiff's statements as conclusory.  *Id.*  However, Plaintiff's allegations regarding users' searches are specific statements of predicate facts, *not* ultimate facts or legal conclusions.  This is enough to make Plaintiff's claims plausible.  *See Ashcroft*, 556 U.S. at 678 (stating that claims must be supported by enough factual allegations to be plausible and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Defendant finally argues that although Plaintiff referenced users searching for her, she did

16

United States District Court
Northern District of California

1  not reference users searching on the "Free Member search engine" and thus cannot bring claims

2  for the banner ads specifically associated with this search engine. Reply at 13. However, the term

3  "search" used by Plaintiff is capacious enough to include many types of searches. *See* SAC ¶ 89

4  ("PeopleConnect provides a publicly accessible webpage on which users may search, and have

5  searched . . . ."). Plaintiff also alleged that "Classmates also displays banner ads promoting

6  Classmates.com subscriptions adjacent to the *search* results containing Ms. Nolen's photograph."

7  SAC ¶ 154 (emphasis added). From this, the Court draws a reasonable inference that Ms. Nolen's

8  allegations state that users searched for her on the Free Member search engine and saw her image

9  in connection with the banner ads associated with the Free Member search engine.

10        Thus, drawing all inferences in the light most favorable to Plaintiff, the SAC adequately

11  alleged that third parties searched for Ms. Nolen's image and then viewed it in connection with

12  Defendant's advertisements for Classmates.com. Plaintiff therefore alleged third-party viewership

13  of her image and its visual display in connection with Defendant's solicitations. While such a

14  pleading is unnecessary in this Court's view, it is sufficient. Plaintiff only needed to plead that

15  Defendant published her image in connection with their advertising flow, which she did. Plaintiff

16  thus adequately pled her claim.

17               **V.**      **CONCLUSION**

18        For the foregoing reasons, the Court denies Defendant's motion to dismiss.

19        This order disposes of Docket No. 180.

20

21        **IT IS SO ORDERED**.

22

23  Dated: June 30, 2023

24

25

26                                 EDWARD M. CHEN
                               United States District Judge

27

28

United States District Court
Northern District of California

17

1  Michael F. Ram (SBN 104805)
   mram@forthepeople.com
2  Marie N. Appel (SBN 187483)
   mappel@forthepeople.com
3  MORGAN & MORGAN
4  COMPLEX LITIGATION GROUP
   711 Van Ness Avenue, Suite 500
5  San Francisco, CA 94102
   Telephone: (415) 358-6913
6  Telephone: (415) 358-6293

7  *Attorneys for Plaintiff and the Proposed Class*

8  [Additional Counsel Listed on Signature Page]

9

10           **THE UNITED STATES DISTRICT COURT**

11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13  ALICIA NOLEN, individually and on behalf     Case No.: 3:20-cv-09203-EMC
14  of all others similarly situated,
                                                 **PLAINTIFF'S PROPOSED TRIAL**
15                     Plaintiff,                **PLAN**

16  vs.                                          Complaint Filed:  Dec. 18, 2020

17  PEOPLECONNECT, INC., a Delaware              Judge Edward M. Chen
18  Corporation,

19                     Defendant.

20

21

22

23

24

25

26

27

_____

PLAINTIFF'S PROPOSED TRIAL PLAN (Case No. 3:20-cv-09203-EMC)

**2-ER-156**

## I.   INTRODUCTION

Plaintiff respectfully submits this Trial Plan in support of her amended class certification motion. Plaintiff seeks certification of a Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3), or in the alternative, under Rule 23(c)(4), defined as:

> All persons residing in the State of California who are not registered users of Classmates.com and whose names and yearbook photographs are or were searchable on the Classmates.com website, where at least one such yearbook photograph became searchable for the first time on or after December 18, 2018.

Plaintiff seeks certification of this class for the purposes of asserting three state law claims related to Defendant's use of Plaintiff's and the Class's names, childhood photographs, and personal information without their consent to advertise subscriptions to its website, Classmates.com. Based on this conduct, Plaintiff moves for certification under Rules 23(b)(3) and 23(b)(2) of their California statutory right of publicity (Cal. Civ. Code § 3344), Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §17200 *et seq.*,) and unjust enrichment claims, seeking statutory damages, other monetary relief, and injunctive relief.

This Trial Plan provides a roadmap to aid the Court in assessing how a trial can be conducted in an efficient and manageable manner. It includes information regarding how Plaintiff intends, subject to the Court's guidance, to present her claims and seek relief at trial in a way that is consistent with the requirements of Rule 23.

## II.   SCOPE AND LENGTH OF TRIAL

The § 3344 and unjust enrichment claims are tried to the jury. The UCL claims are tried to the Court. Plaintiff proposes that all issues be tried together in a single trial with the jury first deciding § 3344 and unjust enrichment and then the Court ruling on the UCL injunction. Subject to the Court's guidance and rulings, Plaintiff would seek to present testimony from the named Plaintiff, Plaintiff's accounting expert, and certain PeopleConnect employees and other witnesses. The length of the trial will depend in part on the extent to which the parties can streamline the presentation through various stipulations and also any case that PeopleConnect wishes to present.

Excluding jury selection, Plaintiff's current estimate is that trial can be completed in approximately five court days. Subject to the Court's availability, Plaintiff is prepared to proceed to trial as early as January 2024.

## III.    STIPULATED FACTS

For many elements of Plaintiff's claims, Plaintiff believes that the parties can streamline the trial by stipulating to certain facts. Those stipulated facts could include, for example: (1) the flow of the Classmates website; (2) that PeopleConnect does not obtain consent from each yearbook photograph subject to use their photograph on Classmates.com and to advertise Classmates.com subscriptions; and (3) that PeopleConnect obtains revenue through subscription purchases to Classmates.com.

## IV.    PROCEDURES TO SIMPLIFY TRIAL PRESENTATION

The parties will prepare for trial consistent with Your Honor's Guidelines for Trial in Civil Cases and endeavor to proceed efficiently and cooperatively.

## V.    COMMON ISSUES AND EVIDENCE

There are five key common questions in this case:

- Whether PeopleConnect used Class members' names and likenesses to advertise website subscriptions in an advertising flow identical or substantially similar to the flow shown in the Complaint;

- Whether PeopleConnect's regular practices and policies include obtaining consent from Class members prior to using their names and likenesses;

- Whether PeopleConnect ascribes economic value to and derives an economic benefit from its commercial use of Class members' names and likenesses;

- Whether the provision for statutory damages in Cal. Civ. Code § 3344 entitles each Class member to $750 for each of their yearbook photographs PeopleConnect used to advertise Classmates memberships;

- Whether Class members are entitled to injunctive relief, including but not limited to changes to the Classmates website that would de-associate the display of Class members' names and yearbook photographs from solicitations for the purpose of a website subscription or require PeopleConnect to obtain informed consent.

2

PLAINTIFF'S PROPOSED TRIAL PLAN (Case No. 3:20-cv-09203-EMC)

2-ER-158

1  Each of these questions will be answered with common proof. First, Plaintiff will present
2  the flow of the Classmates.com website to demonstrate that Plaintiff's and Class members'
3  photographs are used to advertise subscriptions to Classmates.com. Second, Plaintiff will present
4  evidence, both through testimony from PeopleConnect employees and from the Plaintiff, as well
5  as through documents produced by PeopleConnect, showing that PeopleConnect does not obtain
6  consent from Class members prior to using their name and likeness on Classmates.com. Third,
7  Plaintiff will show that PeopleConnect ascribes economic value to Plaintiff's and Class members'
8  names and likeness through documents showing that PeopleConnect licenses and purchases
9  yearbooks to display on Classmates.com because it obtains subscription revenue for doing so and
10 that PeopleConnect licenses yearbook access to other third parties for which it obtains licensing
11 revenue. Fourth, as a result of this foregoing common evidence, Plaintiff and the Class members
12 are each entitled to statutory damages of $750 for each yearbook photograph illegally used by
13 PeopleConnect. The total number of class members can be determined by PeopleConnect's
14 records and expert testimony.  Finally, Plaintiff will show through testimony from PeopleConnect
15 employees and documents produced by PeopleConnect that PeopleConnect continues to use
16 Plaintiff' and Class members' names and likenesses to advertise subscriptions to Classmates.com
17 today, thus entitling them to injunctive relief.

18 **VI.    NOTICE PROGRAM AND POST-JUDGMENT ADMINISTRATION**

19 With respect to any aggregate award against PeopleConnect, Plaintiff will employ a
20 generally applicable, class-wide methodology to divide any recovery among Class Members. The
21 statutory damages available under § 3344 will provide a framework for distribution of any
22 recovery. Plaintiff will present a claims administration protocol for the Court's review and
23 approval, which would govern post-judgment submission, processing, and resolution of claims
24 with the goal of maximizing class member participation and making recovery simple and
25 straightforward.

26

27

**VII.    CONCLUSION**

As set out in this Trial Plan, Plaintiff respectfully seeks the opportunity to use common, class-wide evidence to establish liability and damages, where trying this matter as a class action is consistent with Rule 23's requirements and the due process rights of the parties while assuring a streamlined and efficient trial.

Dated: June 8, 2023                 By:  */s/ Raina C. Borrelli*
                                                  Raina Borrelli (*pro hac vice*)
                                                  raina@turkestrauss.com
                                                  Sam Strauss (*pro hac vice*)
                                                  sam@turkestrauss.com
                                                  TURKE & STRAUSS LLP
                                                  613 Williamson St., Suite 201
                                                  Madison, Wisconsin 53703-3515
                                                  Telephone: (608) 237-1775
                                                  Facsimile: (608) 509 4423

                                                  Michael F. Ram (SBN 104805)
                                                  mram@forthepeople.com
                                                  Marie N. Appel (SBN 187483)
                                                  mappel@forthepeople.com
                                                  MORGAN & MORGAN
                                                  COMPLEX LITIGATION GROUP
                                                  711 Van Ness Avenue, Suite 500
                                                  San Francisco, CA 94102
                                                  Telephone: (415) 358-6913
                                                  Facsimile: (415) 358-6923

                                                  Benjamin R. Osborn (*pro hac vice*)
                                                  ben@benosbornlaw.com
                                                  LAW OFFICE OF BENJAMIN R. OSBORN
                                                  102 Bergen St.
                                                  Brooklyn, NY 11201
                                                  Telephone: (347) 645-0464

                                                  *Attorneys for Plaintiff and the Proposed Class*

4

1

**CERTIFICATE OF SERVICE**

2        I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk

3    of the Court using the CM/ECF system, which will send notification of such filing to counsel of

4    record via the ECF system.

5        DATED this 8th day of June, 2023.

6

7                           By:  */s/ Raina C. Borrelli*

8                             Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com

9                           TURKE & STRAUSS LLP
613 Williamson St., Suite 201

10                        Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775

11                        Facsimile: (608) 509 4423

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

5

---

PLAINTIFF'S PROPOSED TRIAL PLAN (Case No. 3:20-cv-09203-EMC)

**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:     628 267-6800
Facsimile:      628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:     312 222-9350
Facsimile:      312 527-0484

**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:      213 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA NOLEN, on behalf of herself and all others similarly situated, | Case No. 3:20-cv-09203-EMC |
| Plaintiff. | **DECLARATION OF BENJAMIN T. HALBIG** |
| v. | |
| PEOPLECONNECT, INC., a Delaware Corporation, | |
| Defendant. | |

I, Benjamin T. Halbig, hereby declare:

1.      I am a Partner at Jenner & Block LLP in its San Francisco, California office, and I am counsel for PeopleConnect, Inc. ("PeopleConnect") in this litigation. I have personal knowledge of the facts set forth herein.

2.      Attached to this Declaration as Exhibits 1–4 are copies of past and current consent forms from the San Diego Unified School District, Long Beach Unified School District, Tulare Joint Union High School District, and Fresno Unified School District, provided to those acting under my direction, by those school districts located in the state of California in response to requests made under the Freedom of Information Act.

3.      Attached to this Declaration as Exhibit 5 is a copy of a 2021-2022 and a 2020-2021 photo and media release consent form from the Fresno Unified School District that I obtained from the publicly available websites of schools in the Fresno Unified School District on July 1, 2023, at https://hoover.fresnounified.org/wp-content/uploads/Annual-Notifications-Packet-2021.pdf and https://roeding.fresnounified.org/wp-content/uploads/2020-21-Consent-Notification-Opt-Out-Letter.pdf, respectively.

4.      Attached to this Declaration as Exhibit 6 is a copy of a photo and media release consent form from the Los Angeles Unified School District that I obtained from the Los Angeles Unified School District's publicly available website on July 1, 2023, at https://www.lausd.org/cms/lib/CA01000043/Centricity/domain/110/pdfs/2021%20Media%20Waiver%20English.pdf.

5.      Attached to this Declaration as Exhibit 7 is a copy of a permission slip and consent form for a summer program operated by Villanova Preparatory School in Ojai, California that I obtained directly from the Villanova Preparatory School's publicly available website on July 1, 2023, at https://www.villanovaprep.org/cms/lib/CA02225255/Centricity/Domain/200/Permission%20Slip%2023.pdf.

6.      Attached to this Declaration as Exhibit 8 are true and accurate excerpts from the transcript of Plaintiff Alicia R. Nolen's May 25, 2023, deposition in this matter.

7.      Attached to this Declaration as Exhibit 9 is a true and accurate copy of Plaintiff Nolen's

1

DECLARATION OF BENJAMIN T. HALBIG – 3:20-cv-09203-EMC

Answers and Objections to PeopleConnect's First Set of Requests for Admission dated April 6, 2023.

8.     Attached to this Declaration as Exhibit 10 is a copy of Facebook's Terms of Service that I obtained directly from Facebook's publicly available website on May 18, 2023, at https://www.facebook.com/terms.php.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I executed this declaration on July 5, 2023, in Bar Harbor, Maine.



_____

Benjamin T. Halbig

DECLARATION OF BENJAMIN T. HALBIG – 3:20-cv-09203-EMC

**In the Matter Of:**

ALICIA NOLEN Vs. PEOPLECONNECT

3:20-cv-09203-EMC

**ALICIA R. NOLEN**

*May 25, 2023*

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      1

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4

 5   ALICIA NOLEN, on behalf of herself

 6   And all others similarly situated,

 7          Plaintiff,

 8      Vs.                    CASE NO. 3:20-cv-09203-EMC

 9   PEOPLECONNECT, INC., a Delaware

10   Corporation,

11          Defendant.

12   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

13

14            VIDEOTAPED DEPOSITION OF

15             ALICIA RENEE NOLEN

16

17                May 25, 2023

18                12:05 P.M.

19

20            4 EMBARDACERO CENTER

21         EMBARCADERO CONFERENCE CENTER

22          SAN FRANCISCO, CALIFORNIA

23

24

25      Vanessa Harskamp, RPR, CRC, CRR, CSR No. 5679
```



800.211.DEPO (3376)
EsquireSolutions.com

2-ER-166

ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                           2

```
 1                     APPEARANCES OF COUNSEL

 2

 3    For the Plaintiff:

 4         TURKE & STRAUSS LLP
           SAMUEL JOSEPH STRAUSS, ESQ.
 5         sam@turkestrauss.com
           613 Williamson St.
 6         Suite 201
           Madison, Wisconsin 53703
 7         608.237.1775

 8

           MORGAN & MORGAN
 9         MICHAEL FRANCIS RAM, ESQ.
           mram@forthepeople.com
10         ABRAHAM BARKHORDAR, Law Clerk
           711 Van Ness Avenue
11         Suite 500
           San Francisco, CA 94102
12         415.358.6913

13

      For the Defendant:
14
           JENNER & BLOCK LLP
15         BENJAMIN T. HALBIG, ESQ.
           bhalbig@jenner.com
16         455 Market Street
           Suite 2100
17         San Francisco, California 94105
           628.267.6800
18         628.267.6859 Fax

19

           JENNER & BLOCK LLP
20         HOWARD SUSKIN, ESQ.
           hsuskin@jenner.com
21         SANDRA ASCENCIO, Summer Associate
           353 North Clark Street
22         Chicago, Illinois 60654
           312.222.9350
23         312.527.0484 Fax

24    Also present:

25         ANTONIO WOODWARD, Videographer
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 68 of 181

ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    13

1    else besides Tulare?

2         A.    No.

3         Q.    Ms. Nolen, did you attend high school?

4         A.    Yes.

5         Q.    Where did you attend high school?

6         A.    Tulare Union High School.

7         Q.    Did you attend Tulare Union High School for

8    all four years of high school?

9         A.    Yes.

10        Q.    Did you graduate?

11        A.    Yes.

12        Q.    What year did you graduate?

13        A.    2019.

14        Q.    Do you remember what month?

15        A.    June.  I want to say June 5th.

16        Q.    So your senior year was the 2018 to 2019

17   school year?

18        A.    Yes.

19        Q.    And then your junior year would have been the

20   2017 to 2018 school year?

21        A.    Yes.

22        Q.    Your sophomore year would have been the 2016

23   to 2017 school year?

24        A.    Yes.

25        Q.    And your freshman year would have been the



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    14

1   2015 to 2016 school year?

2       A.   Yes.

3       Q.   Who were your closest friends in high school?

4       A.   I'm not too sure.

5       Q.   Did you have many friends in high school?

6            MR. STRAUSS:  I object to the form of the

7   question.  You may answer it.

8            THE WITNESS:  Yes, I did have friends in high

9   school.

10  BY MR. HALBIG:

11      Q.   Do you remember any of your friends from your

12  freshman year?

13      A.   No, I do not.

14      Q.   Is there anyone from high school that you have

15  a notable memory of?

16      A.   Just one person.

17      Q.   Who is that person?

18      A.   Alicia Aguila.

19      Q.   How do you spell Ms. Aguila's name?

20      A.   A-L-I-C-I-A, and then A-G-U-L, I want to say

21  I-A.

22      Q.   Was Ms. Aguila in your high school class?

23      A.   Yes.

24      Q.   What was notable about Ms. Aguila?

25      A.   What do you mean by that?



ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                             15

```
 1        Q.    I asked you before if there was anyone that
 2   was notable that you remembered from your high school
 3   class and you identified Ms. Aguila?
 4        A.    She was my best friend.
 5        Q.    She was your best friend?
 6        A.    Yes.
 7        Q.    Was Ms. Aguila in school with you for all four
 8   years?
 9        A.    Yes.
10        Q.    So she was in school with you freshman year?
11        A.    Yes.
12        Q.    Your sophomore year she was also in school
13   with you?
14        A.    Yes.
15        Q.    Junior year?
16        A.    Yes.
17        Q.    And senior year?
18        A.    Yes.
19        Q.    Any other individuals from your high school
20   class that you can remember?
21        A.    No.
22        Q.    Ms. Nolen, were you active in school?
23              Did you go to school every day?
24        A.    Yes.
25        Q.    Were you -- did you participate in any clubs?
```



ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                          16

1        A.    No.  I just played softball.

2        Q.    You played softball.

3              Did you play softball all four years?

4        A.    No, just my freshman year.

5        Q.    Just your freshman year.

6              Was there like a junior varsity and varsity

7    team?

8        A.    Yes, and I want to say a freshman and

9    sophomore team.

10       Q.    And which team were you on?

11       A.    The freshman and sophomore.

12       Q.    How many people were on the freshman and

13   sophomore team?

14       A.    I'm not too sure.

15       Q.    Do you remember the names of anyone that was

16   on the team with you?

17       A.    Just Alicia is all I know.

18       Q.    Just Alicia.  And that would be Alicia Aguila?

19       A.    Yes.

20       Q.    Any other individuals from the softball team

21   that you can recall other than Ms. Aguila?

22       A.    No.

23       Q.    Other than the softball team your freshman

24   year, any other clubs or activities or sports teams that

25   you were involved in?



ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                          33

1   bringing against PeopleConnect?

2          MR. STRAUSS: Object to the form of the

3   question.  You may answer it.

4          THE WITNESS:  I don't know how to describe it.

5   BY MR. HALBIG:

6       Q.   Okay.  Let me try to rephrase.

7          You are suing PeopleConnect in this case; you

8   understand that?

9       A.   Yes.

10      Q.   Can you tell me what specifically

11  PeopleConnect did wrong?

12      A.   They used my information, my childhood

13  pictures from the yearbook without my permission.

14      Q.   Okay.  So how -- can you describe to me how

15  PeopleConnect has used your childhood pictures?

16      A.   No, I cannot describe that.

17      Q.   Okay.  Do you have any proof of how

18  PeopleConnect has used your childhood pictures?

19      A.   No, I do not.

20      Q.   Okay.  Have you ever used Classmates.com?

21      A.   No, I haven't.

22      Q.   Are you aware that you can create an account

23  on Classmates.com?

24      A.   I am aware of that.

25      Q.   Have you ever created a Classmates.com



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 73 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    34

1   account?

2        A.   No, I haven't.

3        Q.   I guess how are you aware that class -- that

4   you can create an account in Classmates.com?

5        A.   Through Mr. Strauss.

6        Q.   Do you know anyone who has ever used

7   Classmates.com?

8        A.   No, I do not.

9        Q.   Do you know anyone who has ever created an

10  account on Classmates.com?

11       A.   No.

12       Q.   Have you ever asked someone to create an

13  account on Classmates.com for you?

14       A.   No.

15       Q.   Have you ever asked someone to look you up on

16  Classmates.com?

17       A.   No.

18       Q.   Do you know if anyone has ever looked you up

19  on Classmates.com?

20       A.   No, I do not.

21       Q.   Ms. Nolen, you said that your claims in this

22  case relate to your childhood photo being -- and your

23  yearbook being on Classmates.com?

24       A.   (Witness nods head).

25       Q.   Do you know what yearbooks that you appear in



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 74 of 181

ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                          35

```
 1   are on Classmates.com?
 2        A.   No, I do not.
 3        Q.   Do you know where Classmates gets its
 4   yearbooks from?
 5        A.   No.
 6        Q.   Do you know if your yearbook is on
 7   Classmates.com?
 8        A.   No, I do not.
 9        Q.   Other than Mr. Strauss, who do you consider to
10   be your attorneys in this case?
11        A.   I'm not quite too sure.
12        Q.   Have you ever heard the name Benjamin Osborn
13   before?
14        A.   I'm not too sure, and I -- yeah, I'm not too
15   sure.
16        Q.   So you do not recognize the name Benjamin
17   Osborn, sitting here today?
18        A.   It sound familiar, but I'm not too sure.
19        Q.   So you don't know one way or the other if he
20   is your lawyer?
21        A.   I'm sure.
22        Q.   Sorry, I think that wasn't a clear question,
23   or that wasn't a clear answer.
24        A.   Oh, I'm sorry.
25        Q.   Do you know one way or the other if Benjamin
```



ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        52

1      A.   I want to say it's more than one person's -- I
2   kind of know, not too much of it.
3      Q.   Tell me to the best of your ability what your
4   understanding of a class action is.
5      A.   I don't know how to explain it.
6      Q.   Ms. Nolen, do you understand that you are
7   attempting to serve as a representative for a class of
8   individuals in this lawsuit?
9      A.   Yes.
10      Q.   Okay.  Can you describe to me what it means to
11   be a representative of a class of individuals in this
12   lawsuit?
13      A.   I'm speaking for myself and other
14   Californians.
15      Q.   And who is in the class here?
16      A.   I am not too sure.
17      Q.   So you don't have an understanding of the
18   group of individuals in the class that you are trying to
19   represent?
20           MR. STRAUSS:  I object to the form of the
21   question.  You may answer it.
22           THE WITNESS:  I just know it is Californians.
23   BY MR. HALBIG:
24      Q.   Anything more specific than Californians?
25      A.   No.



ALICIA R. NOLEN                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                               53

1      Q.   Why did you agree to be a representative for
2   the class in this case?
3      A.   Because I wanted to.
4      Q.   Why did you want to?
5      A.   Because my information is being used without
6   my permission.
7      Q.   What do you want out of the case for yourself?
8           MR. STRAUSS:  Object to the form of the
9   question.  You may answer it.
10          THE WITNESS:  For Classmates to stop using
11  mine and other people's information on their website.
12  BY MR. HALBIG:
13     Q.   And that would be what information?
14     A.   Any information that they are using.
15     Q.   What else do you want?
16     A.   For them to pay out everybody that their
17  information is being used.
18     Q.   What do you mean by "pay out"?
19     A.   I don't know how to put it into my own words.
20     Q.   What do you mean, your own words?
21     A.   Instead of using like the main definition of
22  something else, like the actual.  So like pretty much
23  our information is being used, so not just mine, other
24  people's, and we want them to -- well, I want them to
25  stop using our information and pretty much...



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                  54

1      Q.    You've mentioned a definition.  Are you

2   getting a definition from somewhere?

3      A.    No.  I'm just trying to put it into my own

4   words, put it the way I know, and I don't know how to.

5      Q.    Ms. Nolen, would you drop this lawsuit if you

6   got the relief that you are seeking for, for yourself?

7           MR. STRAUSS:  Object to the form of the

8   question.  You may answer it.

9           THE WITNESS:  No.

10  BY MR. HALBIG:

11     Q.    Do you expect Classmates or PeopleConnect to

12  compensate you?

13          MR. STRAUSS:  Object to the form of the

14  question.  You may answer it.

15          THE WITNESS:  No.

16  BY MR. HALBIG:

17     Q.    Do you expect to be compensated for your

18  service as the representative for the class?

19     A.    No.

20     Q.    Have you received any compensation for serving

21  as class representative?

22     A.    No.

23     Q.    Going back to -- because you used this word

24  before, like "pay out."  Do you expect there to be some

25  sort of monetary payment to you and other members of the



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 78 of 181

ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      55

1   class in this case?

2        A.   No.

3        Q.   I want to talk about your involvement in this

4   case so far.

5             You mentioned that you had an initial call

6   with Mr. Strauss about a day after you received Exhibit

7   1 that we were just looking at, and you can set Exhibit

8   1 aside.

9             But do you know how long that phone call was

10  that you had with Mr. Strauss, that first phone call?

11       A.   No, I'm not too sure.

12       Q.   Was it more than an hour?

13       A.   I don't recall.

14       Q.   Do you know if it was more than half an hour?

15       A.   I want to say yes, but I'm not -- I'm not

16  quite too sure.

17       Q.   Was there anyone else involved in that call

18  besides Mr. Strauss?

19       A.   No, just his assistant transferring me over to

20  him.

21       Q.   Are you aware that your counsel has filed a

22  complaint on your behalf in this lawsuit?

23       A.   Yes.

24       Q.   You mentioned that you reviewed the complaint

25  in preparation for today's deposition; correct?



ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                             56

```
 1        A.    Yes.

 2        Q.    Had you seen a copy of the complaint before

 3   then?

 4        A.    Yes.

 5        Q.    When did you first see it?

 6        A.    A few months ago, I want to say.

 7        Q.    Do you know if that was before or after that

 8   it was filed?

 9        A.    I want to say before it was filed.

10        Q.    Did you review the complaint?

11        A.    Yes.

12        Q.    About how much time did you spend reviewing

13   it?

14        A.    Took me about 45 minutes to read it.

15        Q.    And that was, to the best of your

16   understanding, that was before it was filed?

17        A.    I want to say yes.

18        Q.    Did you provide any feedback on the complaint?

19        A.    No, everything was good.

20        Q.    So no comments, edits, suggestions?

21        A.    No.

22              MR. HALBIG:   I'm going to hand the reporter

23   what we'll have marked as Defendant's Exhibit 2.

24              (Thereupon, Defendant's Exhibit 2 was marked

25              for identification)
```



ALICIA R. NOLEN                                           May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                     94

1          MR. HALBIG:  It hasn't, but we are using it

2   right now.

3          MR. STRAUSS:  So I don't know if you want to

4   go off the record.  Maybe we should go off the record.

5          MR. HALBIG:  Sure.

6          THE VIDEOGRAPHER:  The time is 2:52 p.m.  End

7   of media number 2.  We are going off the record.

8          (Discussion off the record)

9          THE VIDEOGRAPHER:  The time is 2:54 p.m.,

10  beginning of media number 3.  We are back on the record.

11         MR. STRAUSS:  So, Counsel, as we talked about

12  off the record, Plaintiffs are making an objection, and

13  we'll object to form to every question regarding every

14  exhibit that you show that has not been produced in this

15  litigation that relates to the website.

16         And I want to memorialize on the record that

17  Defense counsel has cut off Plaintiff's counsels' access

18  or use of the website and have taken the position in

19  this litigation that should a Plaintiff view the website

20  that it would, in fact, bind them to the terms and

21  conditions, including mandatory arbitration.

22         To the extent that this is a fair

23  characterization, I'd like for you to confirm.  We agree

24  that every question that you ask regarding these

25  exhibits I'm objecting to, but out of respect for you,



2-ER-180

ALICIA R. NOLEN                                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                              95

1   I'll just make one standing objection and you'll agree

2   that it applies to all of the questions.

3            MR. HALBIG:  Yeah, that's fine.  And I'll just

4   say for the record that the next set of exhibits that I

5   am showing the witness are all from the portion of the

6   website that is accessible to anyone who doesn't have an

7   account, so any visitors to the website, so these are

8   viewable to anyone.

9            MR. STRAUSS:  Okay.  That's noted.  Great.

10  BY MR. HALBIG:

11       Q.   Okay.  Ms. Nolen, I'll just sort of situate

12  you before I start to ask you some questions.

13            So Classmates.com makes the first five or so

14  pages available to visitors, meaning individuals who do

15  not have an account on Classmates.com.  We are going to

16  be going through those first five pages.

17            So starting with what's been marked as Exhibit

18  No. 11, do you see in the top left-hand corner of this

19  page that it says, "2016 Tulare Union High School"?

20       A.   Yes.

21       Q.   And the first page is the cover of that

22  yearbook.  Any reason to doubt that this is the cover of

23  your freshman year yearbook?

24       A.   No.

25       Q.   And there's no photographs of living



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    96

```
 1   individuals on this page; correct?

 2       A.   No.

 3       Q.   And no names listed; right?

 4       A.   (Witness nods head)

 5       Q.   Okay.  Great.

 6            MR. STRAUSS:  I just want to put on the record

 7   that we don't necessarily agree to the characterization

 8   of the website as you described it.  I just want to

 9   memorialize that, that is the characterization that you

10   are making of the website, we don't have it in front of

11   us, but...

12            MR. HALBIG:  I'm going to hand you another

13   document which I'll ask to have marked as Defendant's

14   Exhibit 12.

15            (Thereupon, Defendant's Exhibit 12 was marked

16            for identification)

17   BY MR. HALBIG:

18       Q.   Ms. Nolen, this is a screen shot of the inside

19   cover of that same yearbook as it appears to visitors on

20   Classmates.com.  Any reason to doubt that this is the

21   images of the inside cover of that same yearbook from

22   your freshman year?

23       A.   No.

24       Q.   And there are no photographs on this page,

25   right?
```

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                  97

```
 1        A.    No.

 2        Q.    Do you recognize any names on this page?

 3        A.    No.

 4        Q.    You can set that aside.

 5             MR. HALBIG:  I'll have the court reporter mark

 6   this next document that I'm handing to you as

 7   Defendant's Exhibit 13.

 8             (Thereupon, Defendant's Exhibit 13 was marked

 9             for identification)

10   BY MR. HALBIG:

11        Q.    Ms. Nolen, this is a screen shot of the next

12   two-paged spread from your yearbook, so the first actual

13   two pages of the yearbook as it appears to a visitor,

14   meaning a non -- someone who is not a member of

15   Classmates.com.  Do you see any photographs of

16   individuals on this page?

17        A.    No.

18             MR. STRAUSS:  Just a standing objection.  I

19   object to the form of the question.  You may answer it.

20             THE WITNESS:  No.

21   BY MR. HALBIG:

22        Q.    So no individuals depicted on this page?

23        A.    No.

24        Q.    Do you recognize any names on this page?

25        A.    Besides the teacher's name.
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    98

1      Q.    Which teacher are you referring to?

2      A.    Ms. Tapley.

3      Q.    Who is Ms. Tapley?

4      A.    She was just one of the teachers at the

5  school.

6      Q.    And on the left-hand side of the this page you

7  see some notes?

8      A.    Yes.

9      Q.    Do those notes mean anything to you?

10          MR. STRAUSS: Object to the form of the

11  question.  You may answer it.

12          THE WITNESS:  No.

13  BY MR. HALBIG:

14     Q.    Do you know the individuals who wrote those

15  notes?

16     A.    No.

17          MR. HALBIG:  I'm going to hand you what I'll

18  ask the court reporter to mark as Defendant's Exhibit

19  14.

20          (Thereupon, Defendant's Exhibit 14 was marked

21          for identification)

22  MR. HALBIG:

23     Q.    Ms. Nolen, I'll represent to you that this is

24  a screen shot of the next two-paged spread of your

25  freshman year yearbook from Tulare Union High School as

Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 85 of 181

ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      99

1   it appears to a visitor on Classmates.com, and this

2   appears after the screen shot that we just took a look

3   at.  Do you recognize any of individuals depicted on

4   this page?

5           MR. STRAUSS:  In addition to our standing

6   objection, I object to the form of the question.

7           You may answer, Ms. Nolen.

8           THE WITNESS:  I only see one person, but I do

9   not know their name.

10  BY MR. HALBIG:

11      Q.   Okay.  Can you tell me where on this page you

12  identify that person?

13      A.   It's going to be where it says, "28

14  Portraits," and it going to be from the top left to the

15  right one next to it.

16      Q.   So next to "28 Portraits," the top row of that

17  row of four people?

18      A.   Yes.  It's going to be the second person.

19      Q.   Okay.  And that is the young woman with long

20  hair and a blue shirt?

21      A.   Yes.

22      Q.   How are you able to identify that individual?

23      A.   I just went to school with her.  We had a

24  couple of classes together.

25      Q.   Do you remember her name?



ALICIA R. NOLEN                                             May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      100

1      A.   No, I do not.

2      Q.   How are you able to identify her?

3      A.   I just remember --

4           MR. STRAUSS:  Object to the form of the

5    question.

6           THE WITNESS:  I just remember by her face.

7    BY MR. HALBIG:

8      Q.   Just so we can have an accurate record, I'm

9    going to hand you a sticker, and I'll ask that for this

10   exhibit that you put a little sticker above her so it

11   doesn't obscure her face or any of the individuals.

12          Other than that individual in that row, do you

13   recognize anyone else on this page?

14     A.   Maybe the one next to her to the top left, but

15   I can't remember.

16     Q.   The young man with black hair and the gray

17   shirt directly to her left?

18     A.   Yes.

19     Q.   Okay.  Do you remember his name?

20     A.   No, I do not.

21     Q.   Is there anyone else on this page that you are

22   able to recognize?  And I'm talking about the entirety

23   of the Exhibit 14.

24     A.   I want to say going down to where it says, "90

25   Academics," it's going to be the girl with the red shirt



ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      101

 1  with the Indian on it.

 2      Q.   Okay.  I'm going to hand you another -- if you

 3  wouldn't mind just putting a red sticker maybe below

 4  her?

 5      A.   All right.

 6      Q.   And actually, before I start asking you

 7  questions about that, besides the two individuals that

 8  you recognize next to "28 Portraits," anyone else that

 9  you can identify from that row, either at the top or the

10  bottom?

11      A.   No.

12      Q.   Okay.  The going down to the young woman with

13  the -- is that a Redskin shirt?

14      A.   Yes.

15      Q.   Who is she?

16      A.   Alicia is one of her friends.

17      Q.   So she was friends with your friend Alicia --

18      A.   Aguila.

19      Q.   -- Aguila?

20      A.   Yes.

21      Q.   Do you remember her name?

22      A.   No, I do not.

23      Q.   Anyone else in that row next to "90

24  Academics"?

25      A.   No.



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                  102

1        Q.    Okay.  How about on the right-hand side of the

2   page?

3            Do you recognize anyone on that side of the

4   page?

5        A.    I have heard the name Michaela, but I have

6   never seen her.

7        Q.    Who is Michaela?

8        A.    Right here next to the "188 adds."

9        Q.    "188 adds."  So where is she?

10       A.    At the bottom right-hand corner, right here.

11   I think it is her whole package.

12       Q.    Okay.  And how are you able to identify

13   Michaela?

14       A.    Yes.

15       Q.    How are you able to identify her there?

16       A.    I just remember it being in the yearbook and

17   she was in cheerleading.

18       Q.    Can you put another sticker next to her so it

19   doesn't obscure?  Okay.

20            Other than -- other than Michaela, do you

21   recognize anyone else on the right-hand side of the

22   page?

23       A.    No.

24       Q.    Okay.

25       A.    And I want to say Michaela is one of my



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    103

1   teacher's daughters.

2       Q.   Were you able -- had you seen Michaela before

3   you saw this picture?

4       A.   I couldn't remember, but I do remember the

5   picture like of her because they put it everywhere.

6       Q.   Okay.  So other than the individuals that

7   we've just talked about, is there anyone else on this

8   page that you can recognize?

9       A.   No.

10      Q.   Any names that you can recognize on this page

11  other than Michaela's?

12      A.   Christian Weber.

13      Q.   And who is Christian Weber?

14      A.   One of the teacher's sons.  I went to school

15  with him my freshman year.

16      Q.   And where does his name appear?

17      A.   Right here, next to Michaela.

18      Q.   To the left?

19      A.   Yes, to the left.

20      Q.   On the bottom right-hand corner of this

21  exhibit?

22      A.   Yes.

23      Q.   Any other names that you can recognize on this

24  exhibit?

25      A.   No.



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   104

1      Q.   So no one else that you can identify on this

2   exhibit besides the people that we've just identified?

3      A.   No.

4      Q.   So going back over to the portrait side on the

5   bottom row of that section on the -- sorry, the left-

6   hand side of the page, middle row, "28 Portraits," the

7   individuals that are listed there, there are four of

8   them.  Do you see the third one from the left is a young

9   woman with blue hair?

10     A.   Yes.

11     Q.   Do you recognize who that is?

12     A.   No, I do not.

13     Q.   How about in the top right-hand corner next to

14  "116 Sports," the tennis player; do you recognize her?

15     A.   No, I do not.

16          MR. HALBIG:  I'm going to set this one aside.

17          I'm going to hand the court reporter what I'll

18  have marked as Exhibit 15.

19          (Thereupon, Defendant's Exhibit 15 was marked

20          for identification)

21  BY MR. HALBIG:

22     Q.   Ms. Nolen, this is the next two-paged spread

23  from the same yearbook as it appears on Classmates.com,

24          I'll represent to you that these are the last

25  pages of the yearbook that a visitor can see a full

ALICIA R. NOLEN                                           May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      105

1   resolution image of before being prompted to register

2   for an account.

3          Do you recognize anyone on these two pages?

4      A.   Ms. Tapley.

5      Q.   And how are you able to identify Ms. Tapley?

6      A.   She was one of the teachers at Union.

7      Q.   Did you ever have her?

8      A.   No, but I did go in her class one day.

9      Q.   Okay.  And there appear to be several

10  photographs of Ms. Tapley here; correct?

11     A.   Yes.

12     Q.   Other than Ms. Tapley, are you able to --

13  strike that.

14         Other than Ms. Tapley, do you recognize anyone

15  else depicted on this two-paged spread?

16     A.   No, I believe they are all her pictures.

17     Q.   So you don't recognize anyone else that's

18  depicted in any of those pictures?

19     A.   No.

20     Q.   Other than Ms. Tapley, do you recognize any

21  other names on this exhibit?

22     A.   No.

23     Q.   You can set that aside.

24         Ms. Nolen, as I indicated on the record, the

25  last image I showed you is the last page from the 2016



ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                       106

1   Tulare Union High School yearbook from 2016 that a

2   visitor can see the full resolution screen shot of.  The

3   remainder you can only see in a thumbnail grid view.

4          So what I'm going to show you next are screen

5   captures from that same yearbook as they are shown to a

6   visitor on Classmates.com.  Again, these are screen

7   shots of material that can be presented to a visitor who

8   is not registered for an account on the website.

9          MR. STRAUSS:  And again I just want to

10  memorialize on the record both that these documents have

11  not been produced in this litigation, and the Defendant

12  has cut Plaintiff's counsel's access off to the website,

13  and so we have a standing objection to every response to

14  any of the following questions.

15         MR. HALBIG:  This will be marked as Exhibit

16  16.

17         (Thereupon, Defendant's Exhibit 16 was marked

18         for identification)

19  BY MR. HALBIG:

20    Q.   So Ms. Nolen, I'm going to situate you to this

21  exhibit.  So what I have just handed you and what's been

22  marked as Exhibit 16 is a printout with the entirety of

23  the thumbnail screen shots from the 2016 Tulare Union

24  High School yearbook as they appear to visitors on

25  Classmates.com, and as with all the rest of the exhibits



ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                          107

1  that I have been handing you, this has been printed out

2  on 11-by-17 inch paper.

3          And what I'd like you to do is to page through

4  this.  It goes left to right and then down a row.  And

5  starting with the first page, and stop me if you see

6  anyone that you recognize and tell me exactly which

7  thumbnail you are looking at.

8          If you get to the bottom of the page and you

9  don't recognize anyone, let me know and we can go on to

10 the next page.  And just to let you know, there's three

11 full rows here of thumbnail screen shots.  The fourth

12 row is partially cut off, but on the second page you'll

13 see that there is the full screen shot there.

14         So stop when you get to the end of the third

15 row on the first page, then we can go on to the second

16 page and look at that row.

17     A.   Okay.  So right there on the second row, the

18 first picture.

19     Q.   Okay.

20     A.   The person with the jersey on, hugging the

21 girl.

22     Q.   The person with the jersey on hugging the

23 girl; okay.  Who is that?

24     A.   His name is Devon Black -- Blackstone.

25     Q.   And I would just ask that you put a marker



ALICIA R. NOLEN                                             May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      108

```
 1  maybe to the left of that so we can identify that's

 2  where.

 3       A.   Mark, okay.

 4       Q.   And how do you know Mr. Blackstone?

 5            MR. STRAUSS:  Object to the form of the

 6  question.  You may answer it.

 7            THE WITNESS:  Dazhane's ex-boyfriend.

 8  BY MR. HALBIG:

 9       Q.   And how are you able to identify him in that

10  photo?

11       A.   The way his glasses are.

12       Q.   Do you recognize the young woman that appears

13  to be embracing him in that photo?

14       A.   I want to say that is his girlfriend now.

15       Q.   Who is that?

16       A.   I do not know her name.

17       Q.   And how are you able to identify her?

18       A.   I have them on Facebook.

19            Well, I have him on Facebook.

20       Q.   So how are you able to identify the girlfriend

21  in that picture?

22            MR. STRAUSS:  Object to the form of the

23  question.  You may answer it.

24            THE WITNESS:  I just remember her face.

25  BY MR. HALBIG:
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   109

1       Q.    Okay.  Anyone else in that thumbnail that you

2   recognize, other than the two of them?

3       A.    No.

4       Q.    Just for the record, you don't recall that

5   young woman's name?

6       A.    No, I do not.

7       Q.    Okay.  You can keep on going and stop when you

8   identify the next person.

9       A.    I don't see anybody else.

10      Q.    On this page?

11      A.    No.

12      Q.    Okay.  So other than the two individuals that

13  you identified that we put -- that you put the green

14  sticker next to, no one else on the first page of this

15  that you can identify?

16      A.    No.

17      Q.    Okay.  Let's go to page 2 of Exhibit 16, and

18  the same exercise on this page.  Left to right.  Stop me

19  when you identify someone that you recognize.

20      A.    Nobody else.  I do not see anybody that I

21  recognize.

22      Q.    So you don't recognize anybody on page 2?

23      A.    No.

24      Q.    Okay.  Do you recognize any names?

25      A.    No, I cannot see them.



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 96 of 181

ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      110

1        Q.    You are not able to see any names on page 2 of
2    Exhibit 16?
3        A.    No.
4        Q.    Let's go to page 3 of Exhibit 16.   The same
5    exercise here.   Please start left to right, starting at
6    the top row and then go down, continue throughout, and
7    stopping when you see someone that you recognize.
8        A.    I can't see anybody.
9        Q.    So you are not able to identify anyone's --
10   anyone's photograph from this page?
11       A.    No.
12       Q.    Are you able to read any names on this page?
13       A.    No.
14       Q.    And page 3, Ms. Nolen, the second column,
15   third row down, you see that it says "Freshman Class of
16   2019"?
17       A.    Yes, I see that.
18       Q.    And that is your class; correct?
19       A.    Yes.
20       Q.    And you were in the freshman class 20 of 19 --
21   sorry -- freshman class of 2019 in this yearbook; right?
22       A.    Yes.
23       Q.    And you are not able to make out anyone in
24   this class here?
25       A.    No, I can't see anything.



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   111

1        Q.   Okay.  Let's go to page 4.  Same exercise.
2   Please go left to right, down a row, and stop me when
3   you get to the end of the third row.  And let me know if
4   you identify any individuals, if you are able to
5   identify any individuals or identify any names.
6        A.   I mean, I can see a picture of my cooking
7   teacher.
8        Q.   Okay.  Can you please direct me to exactly
9   which thumbnail you are by identifying the row and the
10  column?
11       A.   It's going to be the third row down, on the
12  third row to your right.
13       Q.   Okay.
14       A.   It's going to be to the bottom right corner.
15       Q.   The bottom right corner?
16       A.   Yes.  And she is wearing a red shirt.
17       Q.   Okay.  She is wearing a red shirt.  I'm going
18  to maybe hand you a red pen, if you wouldn't mind just
19  circling her.
20            So you have identified the individual that you
21  have identified as your cooking teacher?
22       A.   Yes.
23       Q.   And what is your cooking teacher's name?
24       A.   Ms. Andrews.
25       Q.   Can you tell me how you were able to identify



ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                       112

1  her?

2       A.   Her hair and then the way she looks.

3       Q.   Okay.  Anyone else in that number nail?

4       A.   No.

5       Q.   Okay.  Anyone else on this page that you are

6  able to identify?

7       A.   No.

8       Q.   Any names that you are able to make out?

9       A.   No.

10      Q.   Okay.  Let's go to page 5 of Exhibit 16, and

11 the same exercise here, left to right, and then top to

12 bottom, let me know when I get to the end.  I guess stop

13 me if you recognize anyone; otherwise, let me know when

14 we get to the end of the third row.

15      A.   I don't see anyone I know.

16      Q.   So you are not able to make out anyone that

17 you know from the photographs on this page?

18      A.   No.

19      Q.   Are you able to recognize any names on this

20 page?

21      A.   No.

22      Q.   Let's go to page 6 of Exhibit 16.  Same

23 exercise here, left to right, top to bottom.  Stop me

24 when you see a name that you recognize.  Otherwise, let

25 me know when you reach the end of row 3.



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 99 of 181

ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                          113

```
 1        A.    No, I don't see anyone.

 2        Q.    Okay.  Let's go to page 7 of Exhibit 16.

 3              Please engage in the same exercise that we've

 4   been doing for the other pages of this exhibit.  Start

 5   left to right, top to bottom.  Stop me when you

 6   recognize either the photograph of someone that you know

 7   or a name that you know.

 8        A.    I can't make out the picture, so I can't say I

 9   know.

10        Q.    You can't make out the pictures.  What do you

11   mean by that?

12        A.    I can't see if that's somebody I know.

13        Q.    You are pointing to one in particular?

14        A.    Yeah, it's going to be on the second row,

15   third one over.

16        Q.    Second row, third one over?

17              Who is the person that you think that you can

18   see in that picture?

19        A.    I think his name is Bryce.

20        Q.    Here, I'll give you my pen again, and if you

21   could just circle his name?

22              Or, I'm sorry, his photograph, rather?

23              And you said that you don't know for sure

24   because his picture is --

25        A.    It's blurred, I can't really tell.  That's the
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 100 of 181

ALICIA R. NOLEN                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT           114

```
 1   only person I kind of make out on here.

 2        Q.   Anyone else?

 3        A.   No.  I don't see anybody else.  I know the

 4   name James Paul.

 5        Q.   And where is the name James Paul on this

 6   exhibit?

 7        A.   It's going to be on the third row, all the way

 8   at the end, so it's going to be the fifth picture.

 9        Q.   Can you circle Mr. Paul's name?

10             I'll just let you keep that pen.

11        A.   All right.

12             MR. STRAUSS:  Kindness.

13             THE WITNESS:  That's all I see.

14   BY MR. HALBIG:

15        Q.   Okay.  Who is James Paul?

16        A.   I want to say he was friends with Christian

17   Weber.

18        Q.   Would you recognize Mr. Paul's face if you saw

19   it?

20        A.   Probably, yes.

21        Q.   Are you able to recognize his face --

22        A.   I can't.

23        Q.   -- in the photograph?

24        A.   I can't see that well on here.  But I do

25   remember, most everybody had that jacket, but I do
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 101 of 181

ALICIA R. NOLEN                                                        May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                             115

```
 1   remember the name.
 2        Q.   Is there anything about the face of that
 3   individual directly below the name James Paul that makes
 4   you recognize him as James Paul?
 5        A.   The hair and the stance.
 6        Q.   Anyone other than James Paul or the person
 7   that you believe may be Bryce on this page that you can
 8   recognize?
 9        A.   No.
10        Q.   Okay.  Let's go to the next page, which is
11   page 8 of Exhibit 16.  The same exercise, left to right,
12   then top to bottom.  Stop me when you see a name or a
13   photograph that you recognize.
14        A.   No, I don't recognize anybody on here.
15        Q.   So no one on -- you don't see any faces that
16   you recognize on page 8 of Exhibit 16?
17        A.   No.
18        Q.   Any names that you recognize on page 8 of
19   Exhibit 16?
20        A.   I do recognize it's going to be on the top
21   row, the third one, I kind of recognize the name, I just
22   want make out if it says "Kelly."
23        Q.   Can you circle that name for me?
24        A.   Yes.
25        Q.   And what do you think that name is?
```



ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    116

1        A.    It's her name, but I don't recognize her.  I

2   just remember the name.

3        Q.    And what was the name?  Kelly?

4        A.    Yes.

5        Q.    Do you recognize the last name?

6        A.    I can't really see the last name.

7        Q.    Other than the name that you just circled, any

8   other names that you can see on this page that you

9   recognize?

10       A.    No.

11       Q.    Please turn to the ninth page of this exhibit.

12  It's the last page of the exhibit.  This just has a

13  little bit of the last row cut off, so the top two rows

14  here are what was on page 8.

15            You can start wherever you want, but the

16  second row there is not -- is the one that is not cut

17  off, so you can start there and go all the way to the

18  bottom, left to right, top to bottom, and let me know

19  when you see a face or a name that you recognize.

20       A.    No, I do not.

21       Q.    So Ms. Nolen, other than the photographs and

22  names that you either put a sticker next to or circled

23  for me, you were not able to recognize any other names

24  or photographs in Exhibit 16; correct?

25       A.    No.  Oh, well, yeah; correct.



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 103 of 181

ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        117

1      Q.   Can you maybe just go -- before you set that
2  aside, go back to the sixth page of Exhibit 16.
3           And Ms. Nolen, you testified previously that
4  you were on the freshman and sophomore softball team
5  your freshman year?
6      A.   Yes.
7      Q.   And your friend Alicia Aguilar -- Aguila was
8  also on that team.
9      A.   Yes.
10     Q.   And your cousin, whose name I'm blanking on,
11 was on the varsity team that year for softball?
12     A.   She was on the JV team.
13     Q.   She was on the JV team.  Ms. Nolen, taking a
14 look at the thumbnail in the second row, third from the
15 left, you see "No Place Like Home Base" on the top left-
16 hand corner of that?
17     A.   Am I on the right page?
18          MR. STRAUSS:  And I don't see, are we looking
19 at different pages?
20          MR. HALBIG:  Yeah, let me double check that I
21 have --
22          THE WITNESS:  Because I'm on the Virgil Green
23 Day.
24          MR. STRAUSS:  Yeah, I see Virgil Green.
25          MR. HALBIG:  Oh, I apologize.  I apologize.



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 104 of 181

ALICIA R. NOLEN                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                           118

```
 1            THE WITNESS:  Yes, I do see the pictures.

 2            MR. STRAUSS:  Yes.

 3   BY MR. HALBIG:

 4      Q.    Let me make sure that I'm on the right page

 5   here.  All right.

 6            I'm looking at -- I think this is page 6 that

 7   should say "Goal" on the top left-hand corner?

 8      A.    Yeah.

 9      Q.    Okay.  Do you see that?

10            So looking at the second row there of

11   thumbnails, the third thumbnail --

12      A.    Yes.

13      Q.    -- from the left.

14            Do you see in that, that thumbnail that says,

15   "No Place Like Home" on the top left-hand corner of that

16   thumbnail?

17      A.    Yes.

18      Q.    Okay.  Do you -- are you able to identify

19   anyone in this thumbnail, either on the left hand or

20   right-hand side?

21      A.    It's on the left or right?

22      Q.    Let's start with the left.

23            Do you recognize anyone on the left hand?

24      A.    This one is the freshman and sophomore team,

25   but I don't recognize -- I can't see anybody in it.
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    119

1      Q.    Okay.  How about the right one, right-hand
2  side?

3      A.    The one in the middle is the JV varsity, and
4  then the one on the right side is the varsity team.

5      Q.    Do you recognize any individuals on the JV
6  varsity team?

7      A.    I can't see.

8      Q.    How about the varsity team?

9      A.    I'm not too sure.  I do know the picture.  Her
10  name was Bailey.  That's all I remember, the name, but I
11  don't know if that's her or not.

12      Q.    Okay.  So you are not able to -- from this --
13  these thumbnails that we are looking at right now, you
14  are not able to make out any specific individual on the
15  team?

16          MR. STRAUSS:  In addition to our standing
17  objection, I object to the form of the question.

18          You may answer it.

19          THE WITNESS:  No.

20  BY MR. HALBIG:

21      Q.    And any names on this thumbnail?

22      A.    Not that I can see.

23      Q.    How about the next thumbnail over, the fourth
24  thumbnail from the left, the second row; do you see that
25  it says, "More Than a Game, Go Hard or Go Home"?



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 106 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   120

1        A.    Yes.

2        Q.    Do you recognize any specific individual in

3   either of these two thumbnails?

4        A.    No.

5        Q.    Any names that you recognize in either of

6   these two thumbnails?

7        A.    No.

8              MR. HALBIG:  Okay.  You can set Exhibit 16

9   aside, and we can go off the record for a quick second.

10             THE VIDEOGRAPHER:  The time is 3:32 p.m.  We

11  are going off the record.

12             (Recess)

13             (Michael Ram and Abraham Barkhordar of Morgan

14             & Morgan are now present)

15             THE VIDEOGRAPHER:  The time is 4:10 p.m.  We

16  are back on the record.

17  BY MR. HALBIG:

18       Q.    Ms. Nolen, I'm now going to ask you to direct

19  your attention to the monitor screen that is in front of

20  you.

21             Just for the record, I represent that this is

22  a 22-inch screen, 10 ADP resolution, 60 hertz format.

23             Are you able to see that screen?

24       A.    Yes.

25       Q.    Okay.  What I have pulled up on that screen is



ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                         121

1   the thumbnail screen shots of the 2016 Tulare Union High

2   School yearbook that we were just looking at screen

3   shots of in Exhibit 16.

4          For the record, I will be operating the page

5   from my laptop and capturing my actions in screen share.

6   I will then be asking you questions about what appears

7   on the screen.

8          So I'm going to initiate the screen share and,

9   for the record, the time that I have as I'm starting the

10  screen share is 4:11 p.m.  All right.

11         Now I'm starting the screen share now.

12         Okay.  Ms. Nolen, can you see what's on the

13  screen in front of you?

14     A.   Yes.

15     Q.   Okay.  And does this appear to be similar to

16  the screen shots that we were just taking a look at in

17  Exhibit 16?

18     A.   Yes.

19         MR. STRAUSS:  Ms. Nolen, before you answer,

20  I'm just going to make a standing objection to all these

21  questions so that we don't have to object, just as we

22  did before the deposition, so that we aren't making

23  multiple objections between each question.

24         We want to -- Plaintiff's want to memorialize

25  that Defendants have cut off Plaintiff's access to the



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      122

1   website.

2           We further want to memorialize that Defendants

3   refused to answer questions regarding the website during

4   Ms. Tabola's 30(b)(6) deposition.

5           We want to further memorialize that Ms. Nolen

6   has already testified that she has never been to the

7   website.

8           Also, Ms. Nolen doesn't have control of the

9   computer and is not able to zoom in and out as she may

10  wish had she had access to the website or control.

11          And with that, you may answer the question.

12          THE WITNESS:  Yes.

13          MR. STRAUSS:  Then we agree that that

14  objection I won't make again, but will just be for all

15  questions regarding any exhibits on the computer.

16          MR. HALBIG:  Okay.

17          MR. STRAUSS:  Did you confirm that?

18          MR. HALBIG:  Yes, that's fine with me.

19          And I am just going to say for the record,

20  Ms. Nolen, or for the record, this is a portion of the

21  website that counsel has equal access to.  This is all

22  publicly available to any individual who visits

23  Classmates.com.

24          So with that in mind, Ms. Court Reporter,

25  could you please repeat the question that I had asked?



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 109 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   123

```
1              (The record was read back:
2                   Q.  Okay.  And does this appear to
3           be similar to the screen shots that we
4           were just taking a look at in Exhibit
5           16?)
6              THE WITNESS:  Yes.
7   BY MR. HALBIG:
8       Q.   Ms. Nolen, are you able to identify anyone --
9   are you able to see the images any better or differently
10  than what was just appearing in Exhibit 16?
11      A.   Just a little bit better.
12      Q.   Is there anyone that -- besides the
13  individuals that you circled and placed a sticker next
14  to -- that you are able to identify in this version that
15  you are seeing on your screen?
16      A.   Not that I can see.
17      Q.   Okay.  I can scroll down.  So I'm going to
18  move my -- can you see my cursor right there?
19      A.   Yes.
20      Q.   Okay.  I'm going to move my cursor left to
21  right on the first row.
22              Stop me if you can identify anyone other than
23  the individuals that you previously identified in
24  Exhibit 16.
25              Anyone in that first row?
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                               124

```
 1      A.    No.

 2      Q.    Okay.  The second row?

 3      A.    And you said not anybody that I have already;

 4  correct?

 5      Q.    Correct.  If you have already identified them,

 6  you don't need to identify them again.

 7      A.    Okay.

 8      Q.    Third row?

 9      A.    No.

10      Q.    Okay.  Scroll down.

11            So this is the fourth row.

12            Anyone on the fourth row?

13      A.    No.

14      Q.    Fifth row?

15      A.    No.

16      Q.    Sixth row?

17      A.    No.

18      Q.    And, again, I'm scrolling down.

19            Seventh row?

20      A.    No.

21      Q.    Eighth row?

22      A.    No.

23      Q.    Ninth row?

24      A.    No.

25      Q.    And, again, I'm scrolling down.
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 111 of 181

ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                         125

1          Tenth row?

2     A.    No.

3     Q.    11th row?

4     A.    No.

5     Q.    12th row?

6     A.    No.

7     Q.    And, again, I'm scrolling down.

8          13th row, starting with the thumbnail that has

9    "Athletics" in the top left-hand corner?

10    A.    No.

11    Q.    14th row?

12    A.    No.

13    Q.    15th row?

14    A.    No.

15    Q.    I'm going to scroll down again.

16          16th row?

17    A.    No.

18    Q.    17th row?

19    A.    No.

20    Q.    18th row?

21    A.    No.

22    Q.    19th row?

23    A.    No.

24    Q.    20th row?

25    A.    No.



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   126

```
 1        Q.    21st row?

 2        A.    No.

 3        Q.    22nd row?

 4        A.    No.

 5        Q.    23rd row?

 6        A.    No.

 7        Q.    24th row?

 8        A.    No.

 9        Q.    25th row?

10        A.    No.

11        Q.    26th row?

12        A.    No.

13        Q.    Ms. Nolen, would you like me to go back to any

14   of the screen shots in this page?

15        A.    No.

16        Q.    Okay.  And were you able to identify any other

17   individual's photos or names besides the ones that you

18   identified for me in Exhibit 16?

19        A.    No.

20        MR. HALBIG:  I'm going to end this screen

21   share and represent for the record that it is 4:20 p.m.

22        MR. STRAUSS:  And I just want to memorialize

23   for the record that Ms. Nolen was not able to zoom in on

24   any images because she didn't have control of the

25   computer during her review of that exhibit.
```

Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 113 of 181

ALICIA R. NOLEN                                         May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                127

```
 1  BY MR. HALBIG:

 2       Q.   Ms. Nolen, would it help to zoom in on any of

 3  the images?

 4            MR. STRAUSS:  Object to the form of the

 5  question.

 6            THE WITNESS:  I'm not too sure.

 7            (Thereupon, Defendant's Exhibit 17 marked for

 8            identification)

 9  BY MR. HALBIG:

10       Q.   Okay.  Ms. Nolen, I'm going to do another

11  screen share, and I'm going to represent for the record

12  that I'm starting this screen share at 4:21 p.m.

13            Okay, Ms. Nolen, do you see that I have gone

14  to the portion of the screen where at the top row,

15  second column, it appears to say, "Freshman Class of

16  2019"?

17       A.   Yes.

18       Q.   And that is your class; correct?

19       A.   Yes.

20       Q.   Okay.  I'm going to zoom in to 250 percent on

21  my browser and go back to the portion that we were just

22  looking at.  Okay.

23            Do you see on the right-hand side of the page,

24  zoomed in at 250 percent, that appears to say, "Freshman

25  Class of 2019"?
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                               128

```
1         A.    Yes.

2         Q.    Okay.  Looking at the screen shot on -- or the

3    thumbnail on the right-hand side of the page at this

4    point, do you recognize any individuals?

5         A.    Maybe the girl in the middle.

6         Q.    And is that the young woman whose cursor I

7    have right now?

8         A.    Yes.

9         Q.    And who is that?

10        A.    I want to say her name is Emily.

11        Q.    And how are you able to identify her?

12        A.    I had her in one of my classes.

13        Q.    Any distinctive marks?

14        A.    She does that pose.

15        Q.    Anything else?

16        A.    Her hair.

17        Q.    How about the young man in the top right-hand

18   corner --

19        A.    No, I do not.

20        Q.    -- of that?  Next to him on the left-hand

21   side, are you able to identify any of the individuals in

22   that picture --

23        A.    No.

24        Q.    -- where my cursor is right now?

25              Are you able to identify how many people are
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 115 of 181

ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                       129

```
 1   in that picture?
 2       A.   No.
 3       Q.   Okay.  Other than Emily, anyone else that you
 4   are able to identify?
 5       A.   No.
 6       Q.   Anyone else that you recognize?
 7       A.   Not that I can see.
 8       Q.   Okay.  I'm going to scroll down to the next
 9   couple of pages which appear to be -- appear to be class
10   photos from your freshman class.
11            Starting with the thumbnail sketch on the
12   left-hand side of the page, are you able to identify any
13   of the individuals in this thumbnail?
14       A.   No.
15       Q.   How about the right-hand side where my cursor
16   is now?
17       A.   Maybe the girl on the bottom left corner.
18       Q.   The girl on the bottom left corner, so here?
19       A.   Well, I mean on the right side.
20       Q.   On the right side.
21       A.   The left corner right here, I want to say.
22       Q.   So where my cursor is now?
23       A.   No, the one next to it.
24       Q.   Next to her?
25       A.   No, on this side.
```



ALICIA R. NOLEN                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                          130

1      Q.   Oh, here?

2      A.   Over here (indicating).  It's going to be on

3  the next page.

4      Q.   Oh, on the next page?

5      A.   Yeah.

6      Q.   So no one on the left-hand thumbnail?

7      A.   Right.

8      Q.   But on the right-hand thumbnail, the girl in

9  the bottom left-hand corner of this?

10     A.   Yes.

11     Q.   Where my cursor is now.  Who is that?

12     A.   I'm not too sure of her name, but she was in

13 like one of the clubs that would perform in front of

14 everybody.

15     Q.   And how are you able to identify her?

16     A.   Her hair.  She did cheerleading, I think.

17     Q.   Anyone else on the right-hand thumbnail that

18 you can identify?

19     A.   No.

20     Q.   Are you able to identify anyone in the class

21 photos?  Meaning the smaller pictures in the center of

22 each thumbnail?

23     A.   No.

24     Q.   Okay.  Anyone else on the screen that you can

25 identify?



ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      131

 1      A.   No.

 2      Q.   I'm going to scroll down to the next two

 3 pages.  Again, this is the Freshman Class of 2019,

 4 zoomed in at 250 percent.  Starting with the left-hand

 5 thumbnail, is there anyone on this left-hand thumbnail

 6 that you are able to identify?

 7      A.   No.

 8      Q.   How about the right-hand thumbnail?

 9      A.   No.

10      Q.   And Ms. Nolen; do you see that there appear to

11 be names in the white column on the far left-hand side

12 and far right-hand side of each thumbnail here?

13      A.   Yes.

14      Q.   Are you able to read those names?

15      A.   No, I am not.

16      Q.   And let me scroll up to the first two

17 thumbnail sketches from the -- or thumbnail images from

18 the freshman class.

19           Again, these names on the far left hand and

20 far right-hand thumbnail images, are you able to read

21 any of those names?

22      A.   No.

23      Q.   I'll scroll down to the last picture from your

24 freshman class photos.

25           Are you able to identify anyone in the left-



ALICIA R. NOLEN                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                            132

```
 1   hand thumbnail?
 2        A.   No.
 3        Q.   Anyone on the right-hand thumbnail that you
 4   can identify?
 5        A.   One of my teachers, but that's it.
 6        Q.   And where is your teacher?
 7        A.   He is going to be right under the paragraph at
 8   the bottom with the red shirt.
 9        Q.   So where my cursor is right now?
10        A.   (Witness nods head).
11        Q.   Who is that teacher?
12        A.   Mr. Kellogg.
13        Q.   And how are you able to identify Mr. Kellogg?
14        A.   The way he dresses and stands.
15        Q.   Is there anyone else besides Mr. Kellogg that
16   you can identify in either of these two thumbnails?
17        A.   No.
18             MR. HALBIG:  I'll stop the share.
19             And, again, I'll be marking those and
20   submitting both of those exhibits to the court reporter
21   as Exhibits 17 and 18, respectively.  Okay.
22             (Thereupon, Defendant's Exhibit 18
23             marked for identification)
24             MR. HALBIG:  Can we go off the record for a
25   second?
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 119 of 181

ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    133

```
 1            THE VIDEOGRAPHER:  Sure.  The time is
 2   4:28 p.m.
 3            We are going off the record.
 4            (Recess)
 5            THE VIDEOGRAPHER:  The time is 4:30 p.m.
 6            We are back on the record.
 7   BY MR. HALBIG:
 8       Q.   Ms. Nolen, you previously testified that your
 9   best friend in high school, her name was Alicia Aguila
10   or Ag --
11       A.   Aguila.
12       Q.   Was it A-G-U-I-L-A?
13       A.   I think so, yes.  I'm not too sure how to
14   spell her last name.
15            MR. HALBIG:  I'll hand you what I'm going to
16   ask the court reporter to mark as Defendant's Exhibit
17   20.
18            THE COURT REPORTER:  19
19            MR. HALBIG:  I'm sorry, Exhibit 19.
20            (Thereupon, Defendant's Exhibit 19 marked for
21            identification)
22   BY MR. HALBIG:
23       Q.   Ms. Nolen, what I have handed you and the next
24   series of screen shots that I'm going to ask you about
25   are screen shots of certain pages on Classmates.com as
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 120 of 181

ALICIA R. NOLEN                                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                            134

1  they can be presented to free members who are registered

2  to create free accounts at the website.

3         So what I have shown you right now is a search

4  result for Alicia Aguila, A-L-I-C-I-A, A-G-U-I-L-A.

5         Ms. Nolen, do you have any reason to believe

6  that's not the correct spelling of the individual that

7  you previously identified as your best friend in high

8  school?

9         MR. STRAUSS:  I object to the form of the

10 question.

11        THE WITNESS:  What was the question again?

12 BY MR. HALBIG:

13    Q.   Sorry.  I just spelled the name Alicia Aguila,

14 A-L-I-C-I-A, A-G-U-I-L-A.

15        Do you have any reason to believe that that's

16 not how your best friend in high school spelled her

17 name?

18    A.   Her last name, and I want to say yes.

19    Q.   Okay.  And is that how you spell her first

20 name?

21    A.   Yes.

22    Q.   Okay.  Do you see on the page in front of you

23 there appears to be a search bar?

24    A.   Yes.

25    Q.   And do you see that the name "Alicia Aguila"



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 121 of 181

ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      135

```
 1   as I just spelled it is typed into that search bar?
 2           MR. STRAUSS:  Object to the form of the
 3   question.  You may answer.
 4           THE WITNESS:  Yes.
 5   BY MR. HALBIG:
 6      Q.   Does that appear to be the correct spelling of
 7   the individual who was your best friend in high school?
 8      A.   I want to say yes.
 9      Q.   Okay.  Ms. Nolen, if you go down below that
10   search bar that I just identified, do you see that there
11   appear to be a number of different search results in
12   that, directly below that, starting with "2016 yearbook,
13   page 164"?
14           MR. STRAUSS:  Object to the form of the
15   question.  You may answer it.
16           THE WITNESS:  Yes.
17   BY MR. HALBIG:
18      Q.   And do you see that there is a thumbnail
19   screen shot next to that?
20           MR. STRAUSS:  Object to the form of the
21   question.  You may answer.
22           THE WITNESS:  Yes.
23   BY MR. HALBIG:
24      Q.   Are you able to identify Ms. Aguila in that
25   thumbnail?
```



ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                       136

```
 1              MR. STRAUSS:  Object to the form of the
 2   question.  You may answer.
 3              THE WITNESS:  No.
 4              MR. HALBIG:  Are you able to identify anyone
 5   in that thumbnail?
 6              THE WITNESS:  No.  Sorry.
 7   BY MR. HALBIG:
 8      Q.   Okay.  Going down to the next row below that,
 9   do you see where it says, "2016 yearbook, page 129"?
10      A.   Yes.
11      Q.   Again, are you able to recognize Alicia Aguila
12   in that thumbnail next to that search result?
13              MR. STRAUSS:  Object to the form of the
14   question.  You may answer it.
15              THE WITNESS:  No.
16   BY MR. HALBIG:
17      Q.   Are you able to identify anyone in that
18   thumbnail?
19              MR. STRAUSS:  Same objection.  You may answer
20   it.
21              THE WITNESS:  No.
22   BY MR. HALBIG:
23      Q.   Are you able to identify any names in that
24   thumbnail?
25      A.   Yes.
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 123 of 181

ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        137

```
 1              MR. STRAUSS:  Same objection.  You may answer
 2    it.
 3              THE WITNESS:  Yes.
 4    BY MR. HALBIG:
 5        Q.   Okay.  What names are you able to identify in
 6    that thumbnail?
 7        A.   Coleman and Cory Richardson.
 8        Q.   Okay.  And where on that thumbnail do you see
 9    Coleman, the name Coleman?
10        A.   Right there under Alicia's name on -- where it
11    says "page 129."
12        Q.   Got it.  But so you see that in the text
13    directly below --
14        A.   Yes.
15        Q.   -- the "2016 yearbook, page 129"; do you see
16    that name?
17        A.   Yes.
18        Q.   I'm talking about the --
19        A.   Thumbnail.
20        Q.   -- thumbnail photo that is directly next to
21    that text.
22        A.   Okay.
23        Q.   Do you see -- are you able to make out any
24    names in that thumbnail photo?
25              MR. STRAUSS:  Object to the form of the
```

ALICIA R. NOLEN                                         May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                              138

```
 1   question.
 2            I also note that, Counsel, it appears to be
 3   related to a different school.  It references
 4   Albuquerque Academy yearbook.
 5            MR. HALBIG:  I'm going to have the witness
 6   answer the question.
 7            MR. STRAUSS:  You may answer the question.
 8            THE WITNESS:  No.
 9   BY MR. HALBIG:
10       Q.   How about the next -- the next search result
11   down?
12            Are you able to -- do you see where it says,
13   "2016 yearbook, page 166"?
14       A.   Yes.
15       Q.   And do you see that there is a thumbnail next
16   to that?
17       A.   Yes.
18       Q.   Are you able to identify any individuals in
19   that photograph in that thumbnail?
20            MR. STRAUSS:  Object to the form of the
21   question.  You may answer it.
22            THE WITNESS:  No.
23   BY MR. HALBIG:
24       Q.   Are you able to identify any names in that
25   thumbnail photo?
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 125 of 181

ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                       139

```
 1           MR. STRAUSS:  Object to the form of the
 2    question.  You may answer it.
 3           THE WITNESS:  No.
 4    BY MR. HALBIG:
 5       Q.   Ms. Nolen, below the blue text that we were
 6    just reading that says, "2016 yearbook," in each search
 7    result that we just looked at on Exhibit 19; do you see
 8    that there are some texts that says, "Tulare Union High
 9    School"?
10           MR. STRAUSS:  Object to the form of the
11    question.  You may answer it.
12           THE WITNESS:  Yes.
13    BY MR. HALBIG:
14       Q.   And that's for each of the three search
15    results that we were just talking about?
16       A.   Yes.
17       Q.   Correct?  So any reason to believe that these
18    are not thumbnail images from your high school, Tulare
19    Union High School?
20           MR. STRAUSS:  Object to the form of the
21    question.  You may answer it.
22           THE WITNESS:  No.
23    BY MR. HALBIG:
24       Q.   Okay.  If you can move on to the second page
25    of Exhibit 19.  See that the first full screen shot --
```



ALICIA R. NOLEN                                           May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   140

1  I'm sorry, the first full search result that you can see

2  that's not cut off in the big blue text says, "2016

3  yearbook, page 165"?

4          MR. STRAUSS:  Object to the form of the

5  question.  You may answer that.

6          THE WITNESS:  Yes.

7  BY MR. HALBIG:

8      Q.   In that thumbnail sketch directly to the left

9  of that text, are you able to identify Alicia Aguila?

10         MR. STRAUSS:  Object to the form of the

11  question.  You may answer it.

12         THE WITNESS:  No.

13  BY MR. HALBIG:

14     Q.   Are you able to identify any individuals in

15  that thumbnail?

16         MR. STRAUSS:  Object to the form of the

17  question.  You may answer it.

18         THE WITNESS:  No.

19  BY MR. HALBIG:

20     Q.   Are you able to read out any names?

21         MR. STRAUSS:  Object to the form of the

22  question.  You may answer it.

23         THE WITNESS:  In the picture?

24         MR. HALBIG:  In the picture.

25         THE WITNESS:  No.



ALICIA R. NOLEN                                               May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        141

```
 1  BY MR. HALBIG:
 2      Q.   Going down to the next search result; do you
 3  see that it says, "2016 yearbook, page 220"?
 4      A.   Yes.
 5      Q.   And on the left hand, or directly to the left
 6  of that text by that search result, do you see that
 7  there is another thumbnail sketch?
 8           MR. STRAUSS:  Object to the form of the
 9  question.  You may answer it.
10           THE WITNESS:  Yes.
11  BY MR. HALBIG:
12      Q.   Do you see that there appears to be -- that
13  appears to be an index from the yearbook?
14           MR. STRAUSS:  Same objection.  You may answer
15  it.
16           THE WITNESS:  Yes.
17  BY MR. HALBIG:
18      Q.   Are you able to read any names in the
19  thumbnail that's depicted next to that search result?
20           MR. STRAUSS:  Same objection.  You may answer
21  it.
22           THE WITNESS:  No.
23  BY MR. HALBIG:
24      Q.   And you'd agree that there do not appear to be
25  any photographs of individuals in that thumbnail sketch?
```



ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      142

```
 1          MR. STRAUSS:  Same objection.  You may answer

 2   it.

 3          THE WITNESS:  Yes.

 4   BY MR. HALBIG:

 5      Q.   Okay.  The last search result on this page,

 6   "2016 yearbook, page 155," on to the left of that search

 7   result, again there is a thumbnail image.  Are you able

 8   to identify Alicia Aguila in that thumbnail image?

 9          MR. STRAUSS:  Object to the form of the

10   question.  You may answer it.

11          THE WITNESS:  No.

12   BY MR. HALBIG:

13      Q.   Are you able to identify anyone else in that

14   image?

15          MR. STRAUSS:  Same objection.  You may answer

16   it.

17          THE WITNESS:  No.

18   BY MR. HALBIG:

19      Q.   Are you able to make out any names in that

20   image?

21          MR. STRAUSS:  Same objection.  You may answer

22   it.

23          THE WITNESS:  No.

24          MR. HALBIG:  This one we can skip, the third

25   page of this exhibit.
```

Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 129 of 181

ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      151

```
1        A.   Yes.

2        Q.   Does that accurately reflect your relationship

3   status as you've given that to Facebook?

4        A.   Yes.

5        Q.   And that also indicates that you joined in

6   October of 2016.  Any reason to believe that that is not

7   an accurate statement of when you created your Facebook

8   account?

9        A.   I believe it's -- that's accurate.

10        Q.   Ms. Nolen, on both the -- your profile picture

11   is publicly available to anyone on Facebook; right?

12        A.   I want to say yes.

13        Q.   And then your cover photo is also publicly

14   available to anyone on Facebook?

15        A.   I'm not too sure.

16        Q.   Any reason to believe that it is not publicly

17   available?

18             MR. STRAUSS:  Object to the form of the

19   question.  You may answer, Ms. Nolen.

20             THE WITNESS:  No.

21             MR. HALBIG:  You can set that exhibit aside.

22             I'm going to hand another document to the

23   court reporter that I'll have marked as Exhibit 21.

24             (Thereupon, Defendant's Exhibit 21 was marked

25             for identification)
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 130 of 181

ALICIA R. NOLEN                                           May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                152

 1          MR. STRAUSS:  Ben, are you going to share the

 2  exhibit?

 3          MR. HALBIG:  Yes.

 4  BY MR. HALBIG:

 5      Q.   Ms. Nolen, do you recognize that, what is in

 6  the document that I have just marked as Exhibit 21?

 7      A.   Yes.

 8      Q.   And can you tell me what this is?

 9      A.   It's a picture that I took of me and my little

10  cousin.

11      Q.   Directly above that picture, do you see that

12  there's some text that says, "Alicia Nolen updated her

13  cover photo"?

14      A.   Yes.

15      Q.   And directly below that text it says,

16  "November 4th, 2016"?

17      A.   Yes.

18      Q.   And next to that there's a little globe icon?

19      A.   Yes.

20      Q.   Sorry, just to make a clean answer for the

21  record, next to that there is a globe icon?

22      A.   Yes.

23      Q.   Are you familiar with what that globe icon

24  means on Facebook?

25      A.   I want to say it means public.



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 131 of 181

ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    153

1      Q.    Okay.  And that means that anyone can see that

2   photo; right?

3      A.    Yes.

4      Q.    Okay.  Ms. Nolen, the November 4th, 2016,

5   date, that appears to be the date that you posted this

6   picture to your Facebook profile; correct?

7      A.    I want to say yes.

8      Q.    Okay.  Do you know how old you were on

9   November 4th, 2016?

10     A.    I want to say I was either 13 or 14.  I want

11  to say I was 14.

12     Q.    Do you know when this picture was taken?

13     A.    In 2016.

14     Q.    And this is a photo that you posted to your

15  Facebook?

16     A.    Yes.

17     Q.    How old was your cousin in this picture?

18     A.    I'm not too sure.

19     Q.    I'm sorry, what was your cousin's name again?

20     A.    Her name is Alexis.

21     Q.    Was Alexis younger than you in this photo?

22     A.    Yes.

23     Q.    How much younger than you is Alexis?

24     A.    Maybe like ten, 11 years younger than me.

25     Q.    So if you were 13 or 14 in this picture, that



ALICIA R. NOLEN                                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                             154

 1  would have made her two or three?

 2      A.   I want to say yes.

 3      Q.   Did you ask Alexis's permission before you

 4  posted this photo?

 5      A.   I asked her parent.

 6      Q.   Who is her parent?

 7      A.   Her name is Raquel, and her dad's name is

 8  Josh.  Joshua.

 9      Q.   Do you see that there is some comments below

10  your picture?

11      A.   Yes.

12      Q.   The middle one appears to be from you, but do

13  you see the top one?

14      A.   Yes.

15      Q.   Who is that from?

16      A.   That's my older sister.

17      Q.   And then the comment below?

18           Tammy Michelle Goff?

19      A.   That is my aunt.

20           MR. HALBIG:  I'm going to hand you what I'm

21  going to have marked as Exhibit 22.

22           (Thereupon, Defendant's Exhibit 22 was marked

23           for identification)

24  BY MR. HALBIG:

25      Q.   Ms. Nolen, do you recognize what I have placed



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 133 of 181

ALICIA R. NOLEN                                            May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    155

```
 1   in front of you as Exhibit 22?

 2        A.   Yes.

 3        Q.   And what is this?

 4        A.   It's a picture of myself.

 5        Q.   And this appears to be a profile picture that

 6   you posted to your Facebook; correct?

 7        A.   Yes.

 8        Q.   And you see that little global icon on the

 9   second line of text at the top of the page?

10        A.   Yes.

11        Q.   And do you understand that this is a publicly

12   available photo?

13        A.   Yes.

14        Q.   Ms. Nolen, did you post this photo to your

15   Facebook yourself?

16        A.   Yes.

17        Q.   And it appears that you posted this on

18   November 11th, 2016?

19        A.   I believe so.

20        Q.   Is that roughly when this picture was taken?

21        A.   I want to say yes.

22        Q.   Okay.  How old were you when this picture was

23   taken?

24        A.   I was about 13, 14.

25        Q.   Do you see this is a comment on this photo?
```



ALICIA R. NOLEN                                           May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    156

1      A.   Yes.

2      Q.   From Ester Fernandez.  Who is Ester Fernandez?

3      A.   I want to say we went to Union together.

4      Q.   Was she your Facebook friend?

5      A.   I want to say yes.

6      Q.   You can set that aside.

7           Ms. Nolen, you had to agree to terms of use to

8  create your Facebook account; correct?

9      A.   Yes.

10     Q.   And you also had to agree to the terms of use

11 to continue using your Facebook; correct?

12          MR. STRAUSS:  Object to the form of the

13 question.  You may answer it.

14          THE WITNESS:  Yes.

15 BY MR. HALBIG:

16     Q.   I'm going to move on to your Instagram.  How

17 long have you had your Instagram account?

18     A.   I want to say I recovered the Instagram

19 account in 2017.

20     Q.   What do you mean by that?

21     A.   My mom found the account in my name and she

22 asked if I used it.

23          I wasn't the one that registered or made it,

24 so we recovered it and changed all passwords.

25     Q.   So someone hacked into your Instagram?



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 135 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    157

1      A.   Well, somebody just made an account in my name

2  with my information.

3      Q.   Were you using Instagram prior to 2017?

4      A.   I want to say no.

5      Q.   And since 2017, has anyone else used your

6  Instagram account?

7      A.   No.

8      Q.   How many Instagram accounts do you have?

9      A.   I want to say I have two, but they are joint

10  accounts.

11      Q.   Okay.  What's the user name on the first

12  account?

13      A.   I'm not too sure on the user name.

14          I have everything saved so I don't know.

15      Q.   Okay.  Do you remember the name of the second

16  account?

17      A.   I want to say it was called a nail page.  I

18  want to say it's Alicia_nailpage.

19      Q.   Today is your -- do you understand that you

20  can have a public or a private account on Instagram?

21      A.   Yes.

22      Q.   And is your account public or private?

23      A.   I'm not too sure.

24      Q.   Do you have any understanding of who can see

25  your Instagram posts?



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 136 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   158

1        A.   I want to say friends, and if people follow me

2    or try to follow me, then when they look me up then they

3    follow me, but I'm not too sure who all can see it.

4        Q.   Do you understand that when you have a private

5    Instagram account you have to approve followers?

6        A.   Yes.

7        Q.   Do you recall ever having to approve

8    followers?

9        A.   I don't think so.

10       Q.   But you do have followers?

11       A.   Yes.

12       Q.   So if you don't recall ever having to approve

13   followers, would that mean that you have a public

14   account?

15       A.   I believe so.

16       Q.   Okay.  So it sounds like you have a public

17   account on Instagram; correct?

18       A.   Correct.

19            MR. HALBIG:  Ms. Nolen, I'm going to have the

20   court reporter mark and hand you what I'm going to have

21   marked as Exhibit 23 for Defendants.

22            (Thereupon, Defendant's Exhibit 23 was marked

23            for identification)

24   BY MR. HALBIG:

25       Q.   Ms. Nolen, can you identify for me what I have



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 137 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                               159

```
 1   just identified for you as Defendant's Exhibit 23?
 2        A.   A picture I posted on Instagram, along with
 3   the comment.
 4        Q.   And does this picture refresh your
 5   recollection as to what your first Instagram handle or
 6   account name is?
 7        A.   Yes.
 8        Q.   And what is that account name?
 9        A.   Alicia_Nolen16.
10        Q.   So this is a picture that you posted?
11        A.   Yes.
12        Q.   Who took this picture?
13        A.   Me.
14        Q.   And do you know when this picture was taken?
15        A.   Either my junior or senior year, maybe.  I'm
16   not too sure.
17        Q.   Do you see that it appears to have been posted
18   on March 18th, 2019?
19        A.   Okay.  So my senior year, yes.
20        Q.   How old were you when this picture was posted?
21        A.   17.
22        Q.   Who is the other person in this photo with
23   you?
24        A.   My nephew.
25        Q.   What is his name?
```



ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      160

```
 1        A.   Dominic.

 2        Q.   Would you mind spelling that?

 3        A.   Well, we call him DJ for short, if that's --

 4        Q.   DJ.  Okay.

 5             And what is DJ's last name?

 6        A.   Aldridge.

 7        Q.   Can you spell that?

 8        A.   No, I don't know how to spell that.

 9        Q.   How old is he in this photo?

10        A.   He is about two years old.

11        Q.   Do you get his or his parents' permission to

12   post this photo?

13        A.   Yes, his mom was right next to me, actually.

14        Q.   Okay.  And does she know that this photo is

15   publicly available?

16        A.   Yes.

17             MR. HALBIG:  I'm going to hand you another

18   document that will be Exhibit 24 for defendant

19   PeopleConnect.

20             (Thereupon, Defendant's Exhibit 24 was marked

21             for identification)

22   BY MR. HALBIG:

23        Q.   Ms. Nolen, do you -- can you identify for me

24   what is on Exhibit 24 that I just handed to you?

25        A.   Excuse me.  A picture I posted.
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 139 of 181

ALICIA R. NOLEN                                        May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                              161

1     Q.   And this is another picture from your

2  Instagram?

3     A.   Yes.

4     Q.   Who took this photo?

5     A.   I did.

6     Q.   And you also posted this to your Instagram?

7     A.   Yes.

8     Q.   Who is in this photo?

9     A.   My little cousin.

10    Q.   And that's you behind your little cousin?

11    A.   Yes.

12    Q.   Okay.  And what is your little cousin's name?

13    A.   Zy'Mere.

14    Q.   Can you spell that for me?

15    A.   Z-Y apostrophe M-E-R-E.

16    Q.   And this appears to have been posted to your

17  Instagram on January 14th, 2019?

18    A.   Yes.

19    Q.   And, again, to the same account,

20  Alicia_Nolen16?

21    A.   Yes.

22    Q.   How old were you when this picture was taken?

23    A.   I want to say 17.

24    Q.   And how old was Zy'Mere?

25    A.   I want to say he was two or three years old.



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   162

1      Q.   Did you get his permission or his parents'
2  permission to post this photograph?
3      A.   Yes, his mom was sitting right next to me.
4      Q.   What is his mom's name?
5      A.   Dazhe.
6      Q.   And how do you spell that?
7      A.   D-A-H-Z-A, I think, or E.
8      Q.   And did Dazhe know that -- does Dazhe know
9  this photograph was publicly available?
10     A.   I want to say yes.
11     Q.   Can we get Dazhe's last name?
12     A.   Davis.  That's Naynay's twin, or Dazhane's
13 twin.
14     Q.   Can we get her address?
15     A.   I don't know where she lives.
16     Q.   Does she live in Tulare?
17     A.   No.  I think she lives in Arizona.
18     Q.   So if we asked Dazhe Davis if she knew that
19 this photograph was publicly available, you are
20 confident that she would say yes?
21     A.   I'm pretty sure.
22     Q.   How about for Exhibit 23?
23          Your nephew Dominic, if we asked his parents
24 if they were aware that you had posted this photo and
25 had agreed to give their consent, you would feel pretty



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 141 of 181

ALICIA R. NOLEN                                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                           173

```
1        Q.   So you don't know one way or the other if you
2   sought permission to use a song that you understood to
3   be copyrighted?
4             MR. STRAUSS:  Object to the form of the
5   question.  You can answer it.
6             THE WITNESS:  I'm not too sure.
7   BY MR. HALBIG:
8        Q.   So you, sitting here today, do you recall ever
9   asking anyone permission to use that song in your video?
10       A.   No.
11       Q.   Okay.  Why didn't you seek anyone's
12  permission?
13            MR. STRAUSS:  Object to the form of the
14  question.  You may answer it.
15            THE WITNESS:  Because TikTok allows you to use
16  videos or music and anything that you use on there.
17  BY MR. HALBIG:
18       Q.   What is your understanding of that based on?
19       A.   It is just songs that they provide you when
20  you record a video and you are able to add it to it.
21       Q.   But did you do anything to confirm that you
22  actually had permission to use that song in your video?
23            MR. STRAUSS:  Object to the form of the
24  question.  You may answer it.
25            THE WITNESS:  No.
```



ALICIA R. NOLEN                                             May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      174

```
1   BY MR. HALBIG:
2        Q.   Let's move on to Snapchat.  How long have you
3   had your Snapchat account for?
4        A.   I want to say since either 2016 or 2017.
5        Q.   How often do you use Snapchat?
6        A.   Maybe like once or twice a day.
7        Q.   What do you use Snapchat for?
8        A.   To message friends and family and then to take
9   videos and...
10       Q.   What do you take videos of?
11            MR. STRAUSS:  Object to the form of the
12  question.  You may answer it.
13            THE WITNESS:  Random stuff, if I go on trips I
14  take pictures of stuff, of myself, of my nieces and
15  nephews, boyfriend, family.
16  BY MR. HALBIG:
17       Q.   Do you have a profile picture on Snapchat?
18       A.   Not a profile picture.
19       Q.   Do you have like a little Bitmoji character?
20       A.   Yes.
21       Q.   Who can see that that Bitmoji character, maybe
22  it is called an Avatar?
23       A.   I want to say anybody that searches out my
24  name.
25       Q.   What is your Snapchat user name?
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 143 of 181

ALICIA R. NOLEN                                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                           175

```
 1        A.   I want to say Alicia162401.  I'm not quite too
 2   sure.
 3        Q.   And you said that you send videos of yourself
 4   to your friends?
 5        A.   Like from -- like TikToks and stuff, but I do
 6   take videos and stuff on Snapchat.
 7        Q.   On Snapchat?
 8        A.   Yeah.
 9        Q.   How many -- roughly how many people do you
10   send those videos to of yourself?
11        A.   I post them.  I don't send them to anybody.
12        Q.   And who can see those videos?
13        A.   I want to say anybody that's on my friends
14   list.
15        Q.   How many people are on your friends list?
16        A.   I'm not too sure.
17        Q.   More than ten?
18        A.   Yes.  More than ten.
19        Q.   More than 50?
20        A.   Probably.  I'm not too sure.
21        Q.   More than 100?
22        A.   I do not know.
23        Q.   Do you know everyone that's on your friends
24   list?
25             Do you know them personally?
```



ALICIA R. NOLEN                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                            189

1        Q.    Bumble?

2        A.    I'm not too sure.

3        Q.    Yelp?

4        A.    I don't think I have created an account

5   before.

6        Q.    Have you ever posted a review to Yelp?

7        A.    I don't think so.

8        Q.    Do you have a WhatsApp account?

9        A.    A WhatsApp?  Maybe.  I'm not too sure.  I

10   really don't know.

11        Q.    For your YouTube account, do you remember when

12   you created that?

13        A.    I really -- I don't.

14        Q.    And you said that you use that account

15   primarily to listen to music?

16        A.    Yes.

17        Q.    Anything else?

18        A.    To watch some YouTube videos, but I listened

19   to music, mainly.

20        Q.    When you created that account, did you share

21   any information about yourself?

22              MR. STRAUSS:  Object to the form of the

23   question.  You may answer it.

24              THE WITNESS:  I'm not too sure.

25   BY MR. HALBIG:



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                          190

1      Q.   Do you know if you shared your name or address

2  to create your account?

3      A.   I probably shared my name and my e-mail and my

4  phone number.

5      Q.   And you had to agree to YouTube's terms of

6  service; right?

7      A.   Yes.

8      Q.   And you have to agree to YouTube's terms of

9  service to continue using your YouTube account?

10         MR. STRAUSS:  Object to the form of the

11  question.  You may answer it.

12         THE WITNESS:  I'm not too sure.

13  BY MR. HALBIG:

14     Q.   Any reason to believe that you don't have to

15  continue to agree to YouTube's terms of service to

16  continue using your account?

17         MR. STRAUSS:  Same objection.  You may answer.

18         THE WITNESS:  I don't know.

19  BY MR. HALBIG:

20     Q.   Ms. Nolen, have you been injured by

21  PeopleConnect?

22     A.   Yes.

23     Q.   How?

24     A.   My information is being used without my

25  permission.



ALICIA R. NOLEN                                         May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                              191

```
1        Q.    Okay.  How specifically has that injured you?

2        A.    Mentally.

3        Q.    So mentally?

4        A.    Yes.

5        Q.    What else?

6        A.    I want to say mentally.

7        Q.    So no other kind of injury other than mental

8   injury?

9              MR. STRAUSS:  Object to the form of the

10  question.  You may answer it.

11             THE WITNESS:  Yes.

12  BY MR. HALBIG:

13       Q.    Do you have any specific symptoms?

14       A.    When I found out I had really bad anxiety and

15  panic attacks.

16       Q.    And can you describe those panic attacks to

17  me?

18       A.    My heart would start racing.  I get shortness

19  of breath.

20       Q.    Have you seen a doctor for that?

21       A.    No, I have not.

22       Q.    Have you received any kind of counseling?

23       A.    No, I haven't.

24       Q.    Taken any medication?

25       A.    No.
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                               192

```
 1        Q.    Received any other kind of medical treatment?

 2        A.    No.

 3        Q.    Did you talk to anyone about those symptoms?

 4              MR. STRAUSS:  Object to the form of the

 5   question.  You may answer it.

 6              THE WITNESS:  Besides my mother and my

 7   boyfriend?

 8   BY MR. HALBIG:

 9        Q.    Okay.  Your mother and your boyfriend?

10        A.    Yeah.

11        Q.    And when did you talk to them about your

12   symptoms?

13        A.    When I found out about Classmates.

14        Q.    And when did you -- what was the conversation

15   with your mother?  When did that take place?

16        A.    It wasn't a conversation.  She just calmed me

17   down and helped me get through it.

18        Q.    And did you text with her about it?

19        A.    No.  I met with her in person.

20        Q.    In person?

21              And did you talk to her about what the source

22   of your anxiety was?

23        A.    No, I just told her I was having a panic

24   attack.

25        Q.    And do you remember when that conversation
```



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 148 of 181

ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                      193

```
1   took place?
2           MR. STRAUSS: Object to the form of the
3   question.  You may answer it.
4           THE WITNESS:  I'm not too sure.
5   BY MR. HALBIG:
6       Q.   So you don't remember when that conversation
7   took place?
8       A.   No.
9       Q.   Do you remember where that conversation took
10  place?
11      A.   At her home.
12      Q.   What time of day was it?
13      A.   I don't know.
14      Q.   And what is your mom's first and last name
15  again?
16      A.   Deveni Browning Oliver.
17      Q.   And what is her address?
18      A.   637 West Owens.
19      Q.   Any other conversations that you had with your
20  mother about that mental injury?
21      A.   No.
22      Q.   Have you talked about it since with her?
23      A.   I do not know.
24      Q.   And you never received any kind of diagnosis
25  for the symptoms that you were experiencing?
```



Case 3:20-cv-09203-EMC    Document 211    Filed 07/06/23    Page 149 of 181

ALICIA R. NOLEN                                    May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                      194

```
1        A.    No.

2        Q.    Why not?

3        A.    I didn't seek any medical attention.

4        Q.    Why didn't you seek any medical attention?

5        A.    I'm not too sure.

6        Q.    All right.  You also said that you talked

7  about your mental injury with your boyfriend?

8        A.    Yes.

9        Q.    And his name is Luke Jenkins?

10       A.    Yes.

11       Q.    When did you have that conversation with

12  Mr. Jenkins?

13       A.    I'm not too sure.

14       Q.    Was it before or after the conversation with

15  your mom?

16       A.    I want to say it was before.

17       Q.    And where did that conversation take place?

18       A.    At her home.

19       Q.    Do you remember what time of day it was?

20       A.    No, I do not.

21       Q.    Was there anyone else present?

22       A.    No, just me and him.

23       Q.    Has he -- how long was that conversation?

24       A.    I'm not too sure.

25       Q.    Was it before or after you received the letter
```



ALICIA R. NOLEN                                      May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                           195

 1  from Mr. Strauss?

 2       A.   I want to say it was after.

 3       Q.   Was it before or after you had confirmed that

 4  your yearbook was on the website?

 5       A.   I'm not too sure.

 6       Q.   Same question about your mom.

 7            And just for the record, was the letter that

 8  you received from Mr. Strauss, was that sent to your

 9  mom's house or your house?

10       A.   My mom's.  All my mail goes to my mom's house.

11       Q.   And the conversation that you had with her,

12  you indicated that she had opened the letter before you

13  read it; correct?

14       A.   Yes.  She said I got a letter in.

15       Q.   Was that conversation -- was she present when

16  you read the letter?

17       A.   I'm not too sure.

18       Q.   Do you know if that conversation was -- with

19  your mother, was immediately after you read the letter?

20       A.   I'm not too sure.

21       Q.   What was the substance of your conversation

22  with your boyfriend about the mental injury?

23       A.   I just told him I couldn't breathe, and he sat

24  with me and he talked me down and calmed me down.

25       Q.   And you can't remember when that happened?



Case 3:20-cv-09203-EMC   Document 211   Filed 07/06/23   Page 151 of 181

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                    196

```
1        A.    No, I can't.

2        Q.    Do you often have trouble breathing?

3        A.    No.

4        Q.    Do you often have anxiety?

5        A.    Yes, I do.

6        Q.    Okay.  And describe the symptoms of your

7   anxiety.

8        A.    It kind of feels like I'm -- feels like

9   claustrophobia kind of.

10        Q.    How long have you experienced symptoms of

11   anxiety?

12        A.    Since I was in high school.

13        Q.    Sorry, we have to -- I know we are getting

14   towards the end of the day, so...

15            MR. STRAUSS:  But you guys have been amazing

16   at not talking over each other.

17            You both should be commended, so well done.

18   BY MR. HALBIG:

19        Q.    All right.  So let me read that again so we

20   have a clean record.

21            Ms. Nolen, how long have you experienced

22   symptoms of anxiety?

23        A.    Since I have been in high school.

24        Q.    And what are the symptoms of the anxiety that

25   you have suffered?
```



ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        197

```
 1        A.    Like I said, it's kind of like claustrophobia.
 2              Not being able to breathe.
 3              I feel like the wall is closing in on me.
 4        Q.    And anything else other than claustrophobia
 5   and not being able to breathe and feeling like the wall
 6   is closing in on you?
 7        A.    A pit in my stomach.
 8        Q.    Anything else?
 9        A.    Weakness.
10        Q.    What else?
11        A.    I want to say that's all.
12        Q.    That's all?
13        A.    I want to say yes.
14        Q.    So nothing else that you can recall?
15        A.    Nothing that I can recall.
16        Q.    And you said that you've suffered those
17   symptoms pretty much since high school?
18        A.    Yeah.
19        Q.    Have the symptoms stayed the same or changed
20   over time?
21        A.    It changes.
22        Q.    Okay.  How have they changed?
23        A.    It's not as bad as it was in high school.
24        Q.    So when did it change?
25        A.    I want to say when I graduated.
```



ALICIA R. NOLEN                                                May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        198

1        Q.   But after high school can you describe how

2   your symptoms changed, and describe through the present?

3        A.   The empty pit in my stomach, it wasn't as

4   strong as it was when I was in high school.

5             Weakness, it wasn't as strong.

6             I want to say the shortness of breath and the

7   claustrophobia is still the same.

8        Q.   Okay.  So you graduated high school in 2019?

9        A.   Yes.

10       Q.   And it's now 2023?

11       A.   Yes.

12       Q.   Other than those symptoms, have the other ones

13   remained the same?

14       A.   Yes.

15       Q.   Okay.  And since you graduated, has anything

16   changed?

17       A.   I'm not too sure.

18       Q.   So sitting here today, you can't think of

19   anything that's changed in your experience of anxiety

20   from high school until today?

21       A.   Besides the empty pit and the weakness.

22       Q.   What I'm trying to ask you is:

23             The anxiety that you felt, these symptoms have

24   all remained the same since you graduated from high

25   school until today; correct?



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                   199

```
 1        A.    Correct.

 2        Q.    And no one besides your mom and your boyfriend

 3   that you talked to about your mental injury; correct?

 4        A.    Yes.

 5        Q.    You said that mental injury is the only kind

 6   of injury that you suffered.

 7              So no other physical injuries?

 8        A.    What do you mean by physical?

 9        Q.    Any, besides how you feel, anything to your

10   body?

11        A.    Just the weakness.  That's it.

12        Q.    That's part of the anxiety that we talked

13   about?

14        A.    Yeah.

15        Q.    So nothing else in terms of injury that have

16   been caused by PeopleConnect?

17              MR. STRAUSS:  Object to the form of the

18   question.  You may answer it.

19              THE WITNESS:  Correct.

20   BY MR. HALBIG:

21        Q.    Ms. Nolen, have you lost my money from

22   PeopleConnect?

23              MR. STRAUSS:  Object to the form of the

24   question.  You may answer it.

25              THE WITNESS:  I'm not too sure.
```



ALICIA R. NOLEN                                              May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                        200

```
 1  BY MR. HALBIG:
 2       Q.   Have you lost any property from PeopleConnect?
 3            MR. STRAUSS:  The same objection.  You may
 4  answer it.
 5            THE WITNESS:  I want to say my pictures and
 6  information is my property.
 7  BY MR. HALBIG:
 8       Q.   And how much money would you say that's worth?
 9            MR. STRAUSS:  Object to the form of the
10  question.  You may answer it.
11            THE WITNESS:  I'm not too sure.
12  BY MR. HALBIG:
13       Q.   Have you suffered any kind of out-of-pocket
14  costs?
15            MR. STRAUSS:  Object to the form of the
16  question.  You may answer it.
17            THE WITNESS:  I'm not too sure.
18  BY MR. HALBIG:
19       Q.   So are you aware of any costs that you've had
20  to incur as a result of PeopleConnect's actions that you
21  allege in this case?
22            MR. STRAUSS:  Same objection.  You may answer
23  it.
24            THE WITNESS:  I don't think so.
25  BY MR. HALBIG:
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                  201

1      Q.   So, no, you are not aware of any costs?

2           MR. STRAUSS:  Same objection.  You may answer

3    it.

4           THE WITNESS:  No.

5    BY MR. HALBIG:

6      Q.   Has anyone demanded that you have to pay

7    anything?

8      A.   No.

9      Q.   Has anyone sent you a bill?

10     A.   No.

11          MR. STRAUSS:  Can we go off the record?

12          MR. HALBIG:  Sure.

13          MR. STRAUSS:  I just want to say -- sorry.

14          THE VIDEOGRAPHER:  The time is 6:16 p.m.  We

15   are going off the record.

16          (Recess)

17          THE VIDEOGRAPHER:  The time is 6:17 p.m.  We

18   are back on the record.

19   BY MR. HALBIG:

20     Q.   Ms. Nolen, besides the conversations with your

21   boyfriend and your mother about your mental injury that

22   we talked about, your anxiety, do you have any other

23   proof of that?  Any documentation?

24     A.   No.

25     Q.   Have you written any notes to yourself?  Any



ALICIA R. NOLEN                                                   May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                         202

```
 1  diary entries?

 2      A.   No.

 3      Q.   Have you ever taken any medication for your

 4  anxiety?

 5      A.   No.

 6      Q.   Have you ever seen a doctor for your anxiety?

 7      A.   No.

 8      Q.   Have you ever sought any counseling for your

 9  anxiety?

10      A.   No.

11      Q.   Have you ever sought any other kind of medical

12  treatment for your anxiety?

13      A.   No.

14      Q.   And you said that PeopleConnect has taken your

15  property, and I just wanted to get a little bit more

16  detail on that.

17          So what specific property, just again, did

18  they take?

19          MR. STRAUSS:  Object to the form of the

20  question.  You may answer it.

21          THE WITNESS:  They used my pictures from my

22  childhood and my name, and any other information.

23  BY MR. HALBIG:

24      Q.   And how specifically did PeopleConnect take

25  that property from you?
```

ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                                203

```
 1          MR. STRAUSS:  Object to the form of the
 2   question.  You may answer it, Ms. Nolen.
 3          THE WITNESS:  Because I had no idea that my
 4   pictures were being used, or my name.
 5   BY MR. HALBIG:
 6      Q.   What do you think that property was worth in
 7   dollar amounts?
 8          MR. STRAUSS:  Object to the form of the
 9   question.  You may answer it.
10          THE WITNESS:  I wouldn't know.
11   BY MR. HALBIG:
12      Q.   So you have no idea sitting here today?
13      A.   No.
14      Q.   Have you ever sold your picture before?
15      A.   What do you mean, sold?
16      Q.   Like have you ever given your picture to
17   someone in exchange for money?
18      A.   I don't think so.
19      Q.   That's a "yes" or "no" question.
20      A.   No.
21      Q.   Have you ever sold your name to someone?
22      A.   No.
23          MR. STRAUSS:  Object to the form of the
24   question.  You can answer it.
25   BY MR. HALBIG:
```



ALICIA R. NOLEN                                          May 25, 2023
ALICIA NOLEN Vs. PEOPLECONNECT                               212

```
 1              REPORTER'S CERTIFICATION

 2

 3         I, Vanessa Harskamp, Certified Shorthand

 4   Reporter in and for the State of California, do hereby

 5   certify:

 6              That the foregoing witness was by me duly

 7   sworn; that the deposition was then taken before me at

 8   the time and place herein set forth; that the testimony

 9   and proceedings were reported stenographically by me and

10   later transcribed into typewritten form under my

11   direction; that the foregoing is a true record of the

12   testimony and proceedings taken at that time.

13              I further certify that I am not related to any

14   of the parties to this action by blood or marriage, and

15   that I am in no way interested in the outcome of this

16   matter.

17              IN WITNESS WHEREOF, I have subscribed my name

18   this 30th day of May, 2023.

19

20

21

22         Vanessa Harskamp

23         _____

24         VANESSA HARSKAMP, RPR, CRR, CRC, CSR NO. 5679

25
```



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

2-ER-259

Michael F. Ram (SBN 104805)
mram@fortthepeople.com
Marie N. Appel (SBN 187483)
mappel@fortthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA OVERTON and ALICIA NOLEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>        Defendant. | Case No.: 3:20-cv-09203-EMC<br><br>**NOTICE OF DISMISSAL WITHOUT PREJUDICE OF PLAINTIFF ALEXANDRA OVERTON** |

    PLEASE TAKE NOTICE that Plaintiff Alexandra Overton, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), voluntarily dismisses her claims in this action in their entirety without prejudice, with each party to bear its own attorney's fees and costs.

Dated: April 27, 2023            By: */s/ Raina C. Borrelli*
                                     Raina Borrelli (*pro hac vice*)
                                     raina@turkestrauss.com
                                     Sam Strauss (*pro hac vice*)
                                     sam@turkestrauss.com

---

TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*pro hac vice*)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiffs and the Proposed Class*

NOTICE OF DISMISSAL WITH PREJUDICE OF PLAINTIFF LAWRENCE GEOFFREY ABRAHAM
Case No: 3:20-cv-09203 – 2

2-ER-261

1

## CERTIFICATE OF SERVICE

2          I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system, which will send notification of such filing to

4   counsel of record via the ECF system.

5          DATED this 27th day of April, 2023.

6

7                                      By:  */s/ Raina C. Borrelli*
                                           Raina Borrelli (*pro hac vice*)
8                                          raina@turkestrauss.com
                                           TURKE & STRAUSS LLP
9                                          613 Williamson St., Suite 201
                                           Madison, Wisconsin 53703-3515
10                                         Telephone: (608) 237-1775
                                           Facsimile: (608) 509-4423
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

NOTICE OF DISMISSAL WITH PREJUDICE OF PLAINTIFF LAWRENCE GEOFFREY ABRAHAM
Case No: 3:20-cv-09203 – 3