No. 24-3894

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ALICIA NOLEN,

Plaintiff-Appellee,

v.

PEOPLECONNECT, INC.,

Defendant-Appellant.

---

On Appeal from December 14, 2023 Sealed Order
and May 20, 2024 Order Granting Class Certification
United States District Court,
Northern District of California
The Honorable Edward M. Chen
Case No. 3:20-cv-09203-EMC

---

### EXCERPTS OF RECORD VOLUME 3 OF 5

---

Clifford W. Berlow
Debbie L. Berman
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
cberlow@jenner.com
dberman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant PeopleConnect, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE TSENG, et al., | Case No. 20-cv-09203-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| PEOPLECONNECT, INC., | Docket No. 155 |
| Defendant. | |

### I.   INTRODUCTION

Defendant PeopleConnect moves for an order entering judgment on the pleadings against Plaintiff Wayne Tseng.  Defendant alleges that Plaintiff's claims are time-barred.  Plaintiff filed suit against Defendant for (1) violating California's Right of Publicity Statute, California Civil Code § 3344; (2) violating California's Unfair Competition Law, California Business and Professions Code § 17200 (the unlawful prong); and (3) unjust enrichment under California common law.  These claims stem from Defendant's non-consensual commercial use of Plaintiff's likeness.  Plaintiff seeks injunctive relief, restitution, damages, and attorney's fees.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby converts Defendant's motion for judgment on the pleadings to a motion for summary judgment and **GRANTS** the motion for summary judgment.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

Former Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed a complaint against PeopleConnect on December 18, 2020.  Compl.  PeopleConnect is a company that collects yearbooks, scans the yearbooks, and extracts information from the yearbooks (such as names,

United States District Court
Northern District of California

1   photographs, schools attended, and so forth) to be put into a database.  *See id*. ¶ 53.  It "aggregates

2   the extracted information into digital records associated with specific individuals," and then the

3   digital records are exploited commercially – to promote and sell PeopleConnect's products – but

4   without the individuals' consent.  *Id*.  PeopleConnect sells products through its website

5   (Classmates.com).  The products sold on the website are (1) reprinted yearbooks and (2) a

6   subscription membership.  *Id*. ¶¶ 4, 7.

7       The initial complaint alleged claims against PeopleConnect for (1) violating California's

8   Right of Publicity Statute, California Civil Code § 3344; (2) violating California's Unfair

9   Competition Law, California Business and Professions Code § 17200 (both the unlawful and

10  unfair prongs); (3) intrusion upon seclusion under California common law; and (4) unjust

11  enrichment under California common law.  *Id.* ¶¶ 73-96.

12      PeopleConnect moved to dismiss the Complaint, which the Court granted in part and

13  denied in part.  Docket Nos. 26, 76.  The Court wholly dismissed the intrusion upon seclusion

14  claim and found the unfair prong of the Unfair Competition Law claim waived.  Docket No. 76 at

15  29, 32.  The Court found that the Copyright Act preempted the portion of the § 3344, § 17200, and

16  unjust enrichment claims that related to the sales of reprinted yearbooks.  *Id.* at 20-21.  The Court

17  dismissed these claims as they related to the reprinted yearbooks, but allowed the portions of the §

18  3344, § 17200, and unjust enrichment claims that related to the sales of subscription memberships

19  to proceed.  *Id.* at 20-21, 29, 33.

20      Plaintiff Wayne Tseng joined the case on August 4, 2022, when he filed the first amended

21  complaint ("FAC").  Plaintiff Tseng is now the sole remaining named plaintiff, as the other named

22  plaintiffs from the complaint and amended complaint have voluntarily dismissed their claims.  *See*

23  Docket Nos. 151, 153.  In the amended complaint, Plaintiff alleges claims against PeopleConnect

24  for (1) violating California's Right of Publicity Statute, California Civil Code § 3344; (2) violating

25  California's Unfair Competition Law, California Business and Professions Code § 17200

26  (unlawful prong); and (3) unjust enrichment under California common law.  FAC ¶¶ 141-156.

27  Neither Plaintiff nor Defendant dispute that California law governs Plaintiff's claims.  *See*

28  *generally id.*; Mot.; Opp'n; Reply (all analyzing California law).

United States District Court
Northern District of California

2

Plaintiff Tseng gives examples of how Defendant has allegedly exploited his name, likeness, and so forth for commercial purposes.  For example, Plaintiff alleges that Defendant has at least one digital record related to him that come from a yearbook.  *See* FAC ¶ 88.  Users of Classmates.com can search for Plaintiff's name from a publicly accessible page.  *See id.* ¶ 91.  The search results provide a low-resolution image of Plaintiff as a minor.  *See id.* ¶ 92.  "Users who click on Mr. Tseng's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com 'to view full-size yearbooks.'  The user must interact with the pop-up to continue viewing Mr. Tseng's photograph." *Id.* ¶ 93.  "Once users have clicked 'Submit' on the pop-up, [thus registering for an account and agreeing to the Classmates.com Terms of Service,] Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com." *Id.* ¶¶ 59-61, 94.

According to Plaintiff, "[b]y misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, [PeopleConnect] has harmed Plaintiff[] and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, infringing their intellectual property without compensation, and disturbing their peace of mind. [PeopleConnect] has also earned ill-gotten profits and been unjustly enriched." *Id.* ¶ 10.

In Defendant's answer to the amended complaint, they raise the affirmative defense that Plaintiff's § 3344 and unjust enrichment claims are untimely under the applicable two-year statutes of limitations.  Docket No. 154 at 44-45.  Plaintiff's images were added to the Classmates.com library and became publicly accessible on June 14, 2014, more than five years before either the complaint or amended complaint were filed.  *Id.* at 44; Docket No. 164 ¶ 12.

### III.     LEGAL STANDARD

A.     Converting a 12(c) Motion into a Motion for Summary Judgment

Defendant moves for judgment on the pleadings.  Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial."  Fed. R. Civ. P. 12.  A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard

United States District Court
Northern District of California

3

1    applies. *Cafasso v. General Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).

2    "However, if a party presents evidence outside the pleadings and the court does not exclude that

3    evidence, then 'the motion must be treated as one for summary judgment under Rule 56.'" *Bain v.*

4    *United Healthcare Inc.*, No. 15-CV-03305-EMC, 2016 WL 4529495, at *5 (N.D. Cal. Aug. 30,

5    2016) (quoting Fed. R. Civ. P. 12(d)).

6        In their motion for judgment on the pleadings, Defendant presents evidence outside of the

7    pleadings. *See, e.g.*, Docket No. 155 at 2 (relying on an internal chart they produced during

8    discovery to determine when Defendant added Plaintiff's image to Classmates.com); *id.*

9    (discussing a 30(b)(6) deposition); Reply at 9 n.8 (discussing articles that outline

10   Classmates.com's advertising flow).[1]  In response, Plaintiff moves for the Court to either exclude

11   the evidence on which Defendant relies or to convert their 12(c) motion to a motion for summary

12   judgment. Opp'n at 4.  Defendant opposes this, arguing that there is "'no issue of material fact in

13   dispute,' and judgment on the pleadings should enter."  Reply at 11 (quoting *Yetter v. Ford Motor*

14   *Co.*, 428 F. Supp. 3d 210, 219 (N.D. Cal. 2019)).  Defendant's position is without merit, as *Yetter*

15   merely lays out the standard for granting a 12(c) motion and does not consider when converting

16   such a motion to a motion for summary judgment is appropriate.  *See Yetter*, 428 Supp. 3d at 219.

17       In support of its motion, Defendant refers to an internal chart, a 30(b)(6) deposition, and

18   articles regarding advertising flow.  Defendant has also referenced material outside the pleadings

19   in support of their reply to Plaintiff's opposition.  *See* Docket No. 167, 167-1 (containing the

20   declaration of Debbie L. Berman and accompanying exhibit).  Before converting a motion for

21   judgment on the pleadings into a motion for summary judgment, the Court must provide the

22

23   _____

[1] Although the parties do not discuss this, there are two methods whereby extraneous material is
24   allowed in a Rule 12 motion.  First, material a court judicially notices is allowed.  *See Cohen v.*
     *Apple Inc.*, No. C 19-05322 WHA, 2020 WL 619790, at *1 (N.D. Cal. Feb. 10, 2020).  This
25   material must be "'*not subject to reasonable dispute*' because it 'can be accurately and readily
     determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fred.
26   R. Evid. 201(b) (emphasis added by *Cohen*)).  The Court cannot now determine whether, for
     example, Defendant's internal chart is beyond dispute, and so cannot judicially notice all of
27   Defendant's extraneous material.  Second, a court can incorporate by reference material from
     documents that plaintiffs omitted from their complaints while selectively referring to other
28   portions of the same document.  *Id.*  Since some material, such as the internal chart, was produced
     for the first-time during discovery, incorporation by reference is inappropriate here.

United States District Court
Northern District of California

parties with "a reasonable opportunity to present all the material that is pertinent to the motion."

Fed. R. Civ. P. 12(d).  Defendant has thus been given a reasonable opportunity to submit pertinent

material.   Plaintiff moves to convert the Rule 12(c) motion into one for summary judgment and

also submits evidence outside the pleadings along with his motion.  *See* Opp'n; Docket No. 163,

163-1 to 163-18 Exs. A-R (containing the declaration of Raina C. Borelli and eighteen related

exhibits); Docket No. 164 (containing the declaration of Plaintiff Wayne Tseng).  Plaintiff not

only had an opportunity to respond to the pertinent material Defendant references, but Plaintiff

also affirms some of it.  *See* Docket No. 164 ¶ 12 (affirming the contents of Defendant's internal

chart by stating "Counsel inform me that Classmates claims it first uploaded my photographs to its

website in January 2014"[2]); *McKinney v. Berryhill*, No. C17-5584-JCC, 2017 WL 6760676, at *1

n.1 (W.D. Wash. Dec. 29, 2017) ("The defendant had an opportunity to reply to the claimant's

response but chose not to do so.  As such, the Court finds the parties have had a reasonable

opportunity to present all the material that is pertinent to the motion.").

> Accordingly, the Court finds it proper to grant Plaintiff's request and convert Defendant's
motion for judgment on the pleadings to a motion for summary judgment (the "Motion").  *See
Bain*, 2016 WL 4529495, at *5 (converting a Rule 12(c) motion to a motion for summary
judgment after plaintiffs "submitted evidence outside the pleadings along with their motion").
Each party has been given a chance to respond and submit evidence.

B.     <u>Motion For Summary Judgment Legal Standard</u>

> Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment
[to a moving party] if the movant shows that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is
genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.
*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a
scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could
reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

United States District Court
Northern District of California

---

[2] Because the *June* 2014 upload date stated by Defendant occurs later and is therefore more favorable to the non-moving party, *i.e.*, Plaintiff, this is the date to which the Court refers.

5

1  must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

2  are to be drawn in the nonmovant's favor.  *See id.* at 255.[3]

3      Where a defendant moves for summary judgment based on a claim for which the plaintiff

4  bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a

5  showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

6  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.  **DISCUSSION**

8      In their motion for summary judgment, Defendant argues that Plaintiff's claims are time-

9  barred.  Plaintiff opposes this, arguing that 1) the discovery rule delayed the accrual of his claims,

10  2) the fraudulent concealment doctrine tolled the applicable statutes of limitations, and 3)

11  regardless of if Plaintiff's claims are time-barred, the Court should find Defendant's Terms of

12  Service unconscionable.  The Court addresses these arguments below.

13  A.    Claim Accrual

14      The parties do not dispute that under California law the statutes of limitations period for

15  Plaintiff's § 3344 and unjust enrichment claims are each two years.  Opp'n at 3, 5; Mot. at 4; *see*

16  *also Christoff v. Nestle USA*, Inc., 47 Cal. 4th 468, 476 n.7, 483, 213 P.3d 132, 136 n.7, 141

17  (2009) (affirming appellate court's application of a two-year statute of limitations to plaintiff's §

18  3344 claim); *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (noting that under

19  California law a two-year statute of limitations period applied to plaintiff's unjust enrichment

20  claim).  Although Plaintiff's UCL "unlawfulness claim is derivative of the § 3344 claim," the

21  applicable statute of limitations for his UCL claim is four years.  Docket No. 76 at 29; *see Aryeh v.*

22  *Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192, 292 P.3d 871, 876 (2013) (noting that the UCL has

23  a four-year statute of limitations period); *RA Med. Sys., Inc. v. PhotoMedex, Inc.*, 373 F. App'x

24  784, 786 (9th Cir. 2010) (noting that under California law the UCL "four-year statute of

---

[3] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

6

1    limitations 'applies even if the borrowed statute has a shorter limitations statute.'" (quoting *Blanks*

2    *v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 364, 89 Cal. Rptr. 3d 710, 731 (2009))).

3         The parties do not dispute that the single-publication rule applies to Plaintiff's claims.

4    Opp'n at 18 (stating that "[t]he appeals court recognized that the discovery rule is not inconsistent

5    with the single publication rule"); Mot. at 4; *see also Christoff*, 47 Cal. 4th at 137, 141 (affirming

6    appellate court's ruling that the single-publication rule applied to plaintiff's "cause of action for

7    unauthorized commercial use of his likeness").  Under the single-publication rule, claims accrue

8    (and statutes of limitations begin to run) when the relevant material is first made publicly

9    available.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012); Cal. Civ. Code § 3425.3

10   (West) (statute codifying the single-publication rule).  Were the single-publication rule to apply

11   without equitable exceptions, Plaintiff's claims would accrue on June 14, 2014, when his image

12   became publicly available on the Classmates.com website.  Docket No. 154 ¶¶ 6-8.  A 2014

13   accrual would put Plaintiff's claims well beyond the two-year or four-year statutes of limitations.

14        However, there are two equitable exceptions to the single-publication rule that could

15   potentially toll or delay that start of the statutes of limitations: the discovery rule and the

16   fraudulent concealment doctrine.  Should either of these exceptions apply, Plaintiff's claims would

17   accrue in or be tolled until December 2020, when the initial complaint in this matter was filed.

18   Compl.  Plaintiff claims that he only gained constructive knowledge of his claims at this time.

19   Opp'n at 16, 20.  Plaintiff filed his first amended complaint on August 4, 2022.  FAC.  Should the

20   discovery rule apply, Plaintiff's claims would be timely since he would have filed his claim within

21   two years of the time he contends he was put on constructive notice of Defendant's non-

22   consensual commercial use of his image.[4]

23   B.   Discovery Rule

24        1.   Right of Publicity and Unjust Enrichment Claims

25        Plaintiff argues that his Right of Publicity and unjust enrichment claims are subject to the

26

27   _____

28   [4] Plaintiff claims that his first amended complaint, filed on August 4, 2022, relates back to the
     initial complaint; however, whether the first amended complaint relates back does not affect if
     Plaintiff's claims are time-barred, and the Court will not analyze the issue at this time.

7

1    discovery rule exception.  The discovery rule is an exception to the general rules of accrual.  *See*

2    *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807, 110 P.3d 914, 920 (2005).  It generally

3    delays when the statutes of limitations start running "until the plaintiff has, or should have, inquiry

4    notice of the cause of action. . . . [P]laintiffs are charged with presumptive knowledge of an injury

5    if they have 'information of circumstances to put [them] *on inquiry*' or if they have '*the*

6    *opportunity to obtain knowledge* from sources open to [their] investigation.'"  *Id.* at 807-08

7    (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896–97, 705 P.2d 886, 888 (1985)) (internal

8    quotation marks omitted).  To rely on the discovery rule, a plaintiff must plead facts showing "(1)

9    the time and manner of discovery *and* (2) the inability to have made earlier discovery despite

10   reasonable diligence."  *Id.* at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151,

11   86 Cal. Rptr. 2d 645 (1999), *as modified* (July 14, 1999)).  The discovery rule is rooted in an

12   equitable basis: "that a plaintiff should not forfeit a cause of action based on a confidential

13   communication that he or she had no reasonable basis for discovering."  *Shively v. Bozanich*, 31

14   Cal. 4th 1230, 1253, 80 P.3d 676, 690 (2003), *as modified* (Dec. 22, 2003).

15          However, when claims are governed by the single-publication rule, California courts

16   strongly disfavor the application of the discovery rule exception.  *See Christoff*, 47 Cal. 4th at

17   482–83 ("[C]ourts uniformly have *rejected* the application of the discovery rule to libels published

18   in books, magazines, and newspapers, pointing out that application of the discovery rule would

19   undermine the protection provided by the single-publication rule." (quoting *Shively*, 31 Cal. 4th at

20   1250)).  Courts only apply the discovery rule to material governed by the single-publication rule

21   when the material is "published in an inherently secretive manner" or is "inherently

22   undiscoverable."  *Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 894, 173 P.3d

23   1004 (2007) (in the context of defamation); *Shively*, 31 Cal. 4th at 1237 (in the context of

24   defamation); *see Christoff*, 47 Cal. 4th at 482-83 (stating "[t]he same logic [used to analyze the

25   application of the discovery rule to a defamation claim] applies to a product label" at issue in a §

26   3344 claim); *see also Jones v. Reekes*, No. F082499, 2022 WL 594117, at *8 (Cal. Ct. App. Feb.

27   28, 2022) (using a "neither secret nor inherently undiscoverable" standard); *NBCUniversal Media,*

28   *LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1235, 171 Cal. Rptr. 3d 1, 11 (2014) (using the

8

1  "secretive" standard); *Jones v. Tozzi*, No. 1:05-CV-0148 OWW DLB, 2006 WL 1582311, at \*13

2  (E.D. Cal. June 2, 2006) (same).  Courts also consider whether a party had a "'cause to seek

3  access,' that is, a reason to suspect wrongdoing on the part of" the publishing party.  *Reekes*, 2022

4  WL 594117, at \*9 (quoting *Shively*, 31 Cal. 4th at 1249).  Defendant's use of Plaintiff's image was

5  neither secret nor inherently undiscoverable, and Plaintiff had cause to seek access to how

6  Defendant was using his image after users agreed to the Terms of Service.

7  Plaintiff admits that his image has been publicly accessible on Classmates.com since 2014.

8  Opp'n. at 6, 10; Docket No. 164 ¶ 12.  True, users had to click on his image and agree to

9  Defendant's Terms of Service before Defendant solicited them to purchase a Classmates.com

10  membership.  FAC ¶¶ 59-61, 93-94.  Plaintiff thus claims that he only had a meaningful ability to

11  discover Defendant's use of his image to solicit paid subscriptions on December 18, 2020, when

12  the initial complaint in this matter was filed and entered the public record.  Opp'n at 3, 18-19.

13  However, even without clicking his image and agreeing to Defendant's Terms of Service,

14  Defendant's use of Plaintiff's image to solicit unpaid registrations, advertise Classmates.com, and

15  induce viewers to subscribe to access the Yearbook was evident and clearly done for a commercial

16  purpose.  *See* FAC ¶¶ 3, 8 (noting that Classmates.com "gather[s] registered users, from whom

17  Classmates profits by selling targeted ads" and that Defendant profits "from selling the personal

18  information it collects from registered and unregistered users to third parties.").  Defendant's use

19  of Plaintiff's image was neither secretive nor inherently undiscoverable.

20  Even if the public use of Plaintiff's image in the solicitation for the Yearbook subscription

21  were not enough, the fact that Plaintiff and the public had to take steps such as agreeing to terms

22  of service in order to fully access the offending material (the high-resolution photo of the Plaintiff)

23  and understand precisely the product being sold, the discovery rule would not apply.  An

24  additional step does not render Defendant's commercial use of Plaintiff's likeness inherently

25  secretive.  *See Reekes*, 2022 WL 594117, at \*9 (finding that Facebook post was not published in

26  an inherently secretive manner); *Glassdoor, Inc. v. Andra Grp., LP*, 575 S.W.3d 523, 530 (Tex.

27  2019) (declining to apply the discovery rule to a defamation claim regarding reviews on Glassdoor

28  that were behind the site's terms and conditions).  That there were no express challenges to the

United States District Court
Northern District of California

9

terms and conditions in *Reekes* and *Glassdoor* and thus there was no discussion about the role of those terms and conditions is immaterial.  In *Reekes*, although defendant had blocked plaintiff from the Facebook account that she had used to make the communication at issue, the court did not apply the discovery rule—partly because "the blockage was easily circumvented with reasonable and proper diligence."  2022 WL 594117 at *9.

Moreover, there was at least one publicly available source that described what happened with Classmates.com images.  An online article written in 2009 "include[es] screenshots of the [Classmates.com] website showing purported banner advertisements," "explain[s] that once a user registers for a free account, the website 'leads the [user] to a membership form[,]' and [states] that '[o]nce you've filled out that information, you'll be prompted to purchase a membership package.'"  Reply at 9 n.8 (quoting Jonathan Strickland, *How Classmates.com Works*, How Stuff Works, (Oct. 12, 2009), https://computer.howstuffworks.com/internet/social-networking/networks/classmates-com.htm.  There were also at least three additional public online sources stating that Classmates.com sells subscription memberships.  *See Id.*; Kim Peterson, *No. 2 Internet Service Provider Buying Classmates Online*, Seattle Times, (Oct. 26, 2004), https://web.archive.org/web/20071104005039/http://archives.seattletimes.nwsource.com/cgi-bin/texis.cgi/web/vortex/display?slug=classmates26&date=20041026 (reporting that Classmates.com's "Core business" is "[s]elling subscriptions to people looking to connect with past acquaintances"); Classmates.com, *What Is A Classmates+ Membership?*, https://help.classmates.com/hc/en-us/articles/115002034072-What-types-of-memberships-are-available (describing benefits of a paid membership); Docket No. 163-17, Ex. Q at 2 (Defendant's Terms of Service, circa 2014, detailing provisions concerning "Paid Services").  Since Defendant publicly used Plaintiff's image, Plaintiff had presumptive knowledge of that use.  Plaintiff thus had presumptive knowledge that immediately after users registered for free accounts subsequent to viewing photos such as his, Defendant solicited them to purchase paid memberships.  Defendant's manner of use of Plaintiff's photo was knowable and not secretive for purposes of the discovery rule.

Furthermore, seeing his image used to invite viewers to accept Defendant's Terms of Service gave Plaintiff cause to seek access to how Defendant was using his image.  In *Shively*, plaintiff had no cause to seek access because he had no ability to learn about an offending publication placed in a confidential file.  *See Shively*, 31 Cal. 4th at 687.  Conversely, in *Goldman*, plaintiff had cause to seek access because he "had access to the document from the time it was published."  *Goldman*, 42 Cal. 4th at 895.  Plaintiff's circumstance is like the one in *Goldman*, as Plaintiff had access to his image on Classmates.com immediately following its publication and thus had cause to seek access to how Defendant was using it. Defendant's use of the Terms of Service to prevent Plaintiff from observing how Defendant used his image after users registered gave Plaintiff even further cause to seek access. *See Reekes*, 2022 WL 594117, at *9 (describing how the Facebook block should have given Plaintiff "a reason to suspect wrongdoing on the part of" Defendant and thus gave him cause to seek access to the offending page).

The narrowness of the discovery rule in the context of the single publication rule is illustrated by *Goldman*.  In *Goldman*, the Court declined to apply the discovery rule in a defamation case where only ten copies of an oral history were disseminated to libraries, one library restricted access to three of the copies, and the record did not reflect the restriction policies of the other libraries.  42 Cal. 4th at 888-89; *id.* at 896-97 (Kennard, J., concurring in part and dissenting in part).  "California has been extremely clear that this narrow version of the discovery rule does not apply to materials available to the public, no matter how small or limited the circulation." *Jacobs v. J. Publ'g Co.*, No. 1:21-CV-00690-MV-SCY, 2022 WL 1554737, at *8 (D.N.M. May 17, 2022), *report and recommendation adopted*, No. 1:21-CV-00690-MV-SCY, 2022 WL 2751718 (D.N.M. July 14, 2022); *cf. Manguso v. Oceanside Unified Sch. Dist.*, 88 Cal. App. 3d 725, 727, 152 Cal. Rptr. 27, 28 (Ct. App. 1979) (applying the discovery rule where the *only* copy of the relevant letter was stored in plaintiff's *confidential* personnel file).[5]

---

[5] Plaintiff cites to a decision where the Illinois Supreme Court applied the discovery rule to claims involving a credit report that was distributed to an indeterminate number of a credit agency's subscribers; however, this almost fifty-year old case decided under *Illinois* law is inapposite. *See* Opp'n at 19; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 137–38, 334 N.E.2d 160, 164–65 (1975).

United States District Court
Northern District of California

1    Defendant did not use Plaintiff's image to solicit paid subscriptions in an inherently

2    secretive manner, and Plaintiff had cause to seek access to how his image was being used after

3    users agreed to Defendant's Terms of Service.  Plaintiff's presumptive knowledge of his claims

4    began in June 2014, since at that time he could both view his image on Classmates.com and access

5    the *How Stuff Works* article outlining Classmates.com's advertising flow.  The Court finds that the

6    discovery rule does not apply to Plaintiff's Right of Publicity and unjust enrichment claims.

7        2.    Unfair Competition Law Claim

8        Plaintiff contends that even if the discovery rule does not apply to his Right of Publicity

9    and unjust enrichment claims, the rule should apply to his UCL claim.  It is true that the discovery

10   rule *can* apply to UCL claims, but it does not apply to all UCL claims.  *See Aryeh*, 55 Cal. 4th at

11   1195 ("That a cause of action is labeled a UCL claim is not dispositive; instead, 'the nature of the

12   right sued upon' and the circumstances attending its invocation control the point of accrual."

13   (quoting *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718, 355 P.2d 643 (1960)) (internal citations

14   omitted)); *Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 WL 1738352, at *16 (N.D. Cal.

15   Apr. 10, 2015) ("[T]he *Aryeh* Court held only that the UCL does not categorically *forbid* the

16   application of equitable exceptions like the discovery rule under appropriate circumstances. . . . [it]

17   did not hold that the UCL *requires* application of particular equitable exceptions to every cause of

18   action." (internal citation omitted)).

19       Where, as in the instant action, unlawful prong of the Unfair Competition Law is at issue,

20   "the UCL is a chameleon. . . . [U]nder the unlawful prong, the UCL '"borrows" violations of other

21   laws and treats them as unlawful practices that the unfair competition law makes independently

22   actionable.'"  *Aryeh,* 55 Cal. 4th at 1196 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles

23   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 539–40 (1999)) (internal quotation marks

24   omitted).  Here, Plaintiff's UCL "unlawfulness claim is derivative of the § 3344 claim."  Docket

25   No. 76 at 29.  As discussed above, the discovery rule does not apply to Plaintiff's § 3344 claim.

26   Plaintiff gives no reason—nor is any reason apparent—why the discovery rule should apply to

27   Plaintiff's UCL claim when it does not apply to Plaintiff's § 3344 claim upon which the UCL is

28   derived.  *See Crown Chevrolet v. Gen. Motors, LLC*, 637 F. App'x 446, 447 (9th Cir. 2016)

12

1    (stating that plaintiff "concedes that the statute of limitations for its [UCL] claim is tied to the

2    limitations period for its RICO claim.  Because [plaintiff's] RICO claim is barred by the statute of

3    limitations, the district court did not err in dismissing the UCL claim as well." (citing *Aryeh*, 55

4    Cal. 4th at 1195-96)).

5           The discovery rule does not apply to Plaintiff's UCL claim.

6    C.     Fraudulent Concealment

7           Regardless of when Plaintiff's claims accrued, Plaintiff argues that, because Defendant

8    fraudulently concealed Plaintiff's claims, the statutes of limitations were tolled until December

9    2020, when the initial complaint in this matter was filed.  Opp'n at 5-6.  Since Plaintiff did not

10   rely on any affirmative misrepresentations supposedly made by Defendant, the Court finds that the

11   doctrine of fraudulent concealment is inapplicable to Plaintiff's claims.

12          A plaintiff may toll a statute of limitations if they prove that the defendant fraudulently

13   concealed plaintiff's cause of action.  *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL

14   2552266, at *3 (N.D. Cal. June 4, 2018) (quoting *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.

15   4th 623, 744 (2007)).  Any "tolling will last as long as a plaintiff's reliance on the

16   misrepresentations is reasonable." *Id.* (quoting *Grisham*, 40 Cal. 4th at 744).

17              "[W]hen a plaintiff alleges the fraudulent concealment of a cause of
                action, the same pleading and proof is required as in fraud cases: the
18              plaintiff must show (1) the substantive elements of fraud, and (2) an
                excuse for late discovery of the facts."  The second element requires
19              the plaintiff to allege "(1) when the fraud was discovered; (2) the
                circumstances under which it was discovered; and (3) that the
20              plaintiff was not at fault for failing to discover it or had no actual or
                presumptive knowledge of facts sufficient to put him on inquiry."
21              "Fraudulent concealment tolling must be pled with particularity
                under Fed. R. Civ. P. 9(b)."
22

23   *Id.* (quoting *Cmty. Cause v. Boatwright*, 124 Cal. App. 3d 888, 900, 177 Cal. Rptr. 657, 664 (Ct.

24   App. 1981); *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal.

25   Mar. 12, 2014)*, order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL

26   12649204 (N.D. Cal. Apr. 15, 2014)) (internal citations omitted).  In California, a plaintiff alleging

27   fraud must prove "(a) misrepresentation (false representation, concealment, or nondisclosure); (b)

28   knowledge of falsity (or scienter); (c) intent to defraud i.e., to induce reliance; (d) justifiable

13

1    reliance; and (e) resulting damage." *Wheeler v. Am. Fam. Home Ins. Co.*, No. 20-CV-01502-JSW,

2    2022 WL 4624863, at *9 (N.D. Cal. Sept. 30, 2022) (quoting *Lazar v. Super. Ct.*, 12 Cal. 4th 631,

3    638, 49 Cal. Rptr.2d 377, 909 P.2d 981 (1996)).

4         Plaintiff contends that Defendant took two affirmative acts to conceal Plaintiff's claims

5    from him: (1) "[S]ince this lawsuit was filed in December 2020, PeopleConnect has engaged in a

6    campaign of suppression, misrepresentation, and threats, designed to prevent Plaintiff, his counsel,

7    and other members of the Class from visiting the website to discover their claims," and (2)

8    Defendant hid their commercial use of Plaintiff's image behind an allegedly unconscionable

9    Terms of Service. Opp'n at 6, 11-16. Plaintiff claims to have had no knowledge of his claims or

10   ability to learn of his claims until this case was filed in December 2020, and states that his counsel

11   acted diligently in uncovering his claims. *Id.* at 16.

12        Plaintiff's first contention occurs too late. If Plaintiff's claims were not tolled, the statutes

13   of limitations would run in 2016 and 2018, two and four years after Plaintiff's image became

14   publicly accessible on Classmates.com. Because Defendant's alleged campaign against Plaintiff

15   did not begin until 2020, it could not toll the statutes of limitations for claims that were by then

16   already time-barred. *See B-K Lighting, Inc. v. Fresno Valves & Casting*, No. CV 06-02825, 2008

17   WL 11338299, at *5 n.20 (C.D. Cal. Jan. 7, 2008) (finding fraudulent concealment doctrine

18   inapplicable where "the only active conduct alleged occurred after the statute of limitations had

19   already run"); *Berube v. Homesales, Inc.*, No. H041422, 2015 WL 5697655, at *5 (Cal. App. Sept.

20   29, 2015) (same).

21        As to Plaintiff's second contention, he does not show justifiable reliance. Even assuming,

22   *arguendo*, that Defendant's Terms of Service constituted a knowing misrepresentation intended to

23   induce Plaintiff's reliance and that Plaintiff was not at fault for failing to discover his claims,[6]

24   Plaintiff still does not claim that he justifiably relied on Plaintiff's misrepresentation in delaying

25   suit. For Plaintiff to have justifiably relied on Defendant's Terms of Service, he would have had

26

27   _____

28   [6] Plaintiff's presumptive knowledge of his claims in the context of the discovery rule does not
     necessarily mean he would have presumptive knowledge in the context of the fraudulent
     concealment doctrine.

14

to, at minimum, (1) know of his image's use on Classmates.com, (2) know that after clicking on his image he would have to agree to Defendant's Terms of Service to proceed further into the site, (3) decline to proceed further into the site because of the Terms of Service, and (4) thus not see that, after users agreed to the Terms of Service, Defendant solicited them to purchase paid subscriptions to Classmates.com.[7]  Instead, Plaintiff acknowledges that he "never visited the website www.classmates.com" and has "never seen or agreed to any Classmates Terms of Service."  Docket No. 164 at ¶¶ 3-4.  Without ever visiting Classmates.com or seeing its Terms of Service, it is impossible for Plaintiff to have relied on those Terms.

Therefore, the fraudulent concealment doctrine to toll the statutes of limitations.  Because neither the discovery rule nor fraudulent concealment doctrine apply to Plaintiff's claims, the Court finds them time-barred.

## V.  **CONCLUSION**

For the foregoing reasons the Court converts Defendant's motion for judgment on the pleadings to a motion for summary judgment and grants the motion for summary judgment. Plaintiff Tseng's claims are time-barred.  The case may otherwise proceed as to the claims of newly added Plaintiffs subject to whatever defenses Defendant may have.

This order disposes of Docket No. 155.

**IT IS SO ORDERED**.

Dated: March 30, 2023

_____
EDWARD M. CHEN
United States District Judge

---

[7] The Court again sets aside Defendant's use of Plaintiff's image to solicit registrations, a use which appears to be commercial.

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE TSENG, ALEXANDRA OVERTON and ALICIA NOLEN, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>               Defendant. | Case No. 3:20-cv-09203<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE § 3344, CAL. BUS. & PROF. CODE § 17200, AND CALIFORNIA UNJUST ENRICHMENT**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

    1.    Plaintiffs WAYNE TSENG, ALEXANDRA OVERTON and ALICIA NOLEN, by and through their attorneys, make the following allegations on information and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

### INTRODUCTION

    2.    Plaintiffs bring this class action complaint against PEOPLECONNECT, INC. ("Classmates") for knowingly misappropriating the names, photographs, and likenesses of Plaintiffs and the class; knowingly using those names, photographs, and likenesses to advertise its products and services, including subscription memberships to the website Classmates.com;

and knowingly using those names, photographs, and likenesses on and in the website
Classmates.com, without obtaining prior consent from Plaintiffs and the class.

3.      Classmates' business model relies on extracting personal information from
school yearbooks, including names, photographs, schools attended, and other biographical
information. Classmates aggregates the extracted information into digital records that identify
specific individuals by name, photograph, and other personal information, and stores the digital
records in a massive online database. Classmates provides free access to some of the personal
information in its database in order to drive users to purchase a paid product – a monthly
subscription to Classmates.com that retails for up to $3 per month – and to gather registered
users, from whom Classmates profits by selling targeted ads.

4.      According to the Classmates.com website, Classmates' Yearbook Collection
contains records copied from over 400 thousand yearbooks. While Classmates does not publish
figures about the total number of records in the Collection or a breakdown by state, it is likely
the Collection contains records corresponding to millions of Californians.

5.      Classmates has not received consent from, given notice to, or provided
compensation to the millions of Californians whose names, photographs, biographical
information, and identities appear in its Classmates Yearbook Collection.

6.      The names, photographs, cities of residence, schools attended, likenesses, and
identities contained in the Classmates Yearbook Collection uniquely identify specific
individuals.

7.      Classmates knowingly uses the names, photographs, cities of residence, schools
attended, likenesses, and identities in its Classmates Yearbook Collection to advertise, sell, and
solicit the purchase of its "CM+" subscription membership, which retails for up to $3 per
month.

8.      Classmates knowingly uses the names, photographs, cities of residence, schools
attended, likenesses, and identities in its Classmates Yearbook Collection to advertise the free
version of its website, which is available to both unregistered users and registered non-paying
users. Classmates derives profit from the free version of its website by (1) selling targeted ads;

(2) driving users of the free version to purchase its paid products and services; and (3) on information and belief, selling the personal information it collects from registered and unregistered users to third parties.

9.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection on and in its products and services, by (1) selling access to the records to paying subscribers via its CM+ online membership plan; and (2) including these records on the free version of its website that is available to unregistered users and registered non-paying users, which Classmates distributes for free to the public as a means of advertising its services and attracting paying subscribers.

10.      By misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, Classmates has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, infringing their intellectual property without compensation, and disturbing their peace of mind. Classmates has also earned ill-gotten profits and been unjustly enriched.

11.      These practices, as further detailed in this complaint, violate the California right to publicity as codified in Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; and California Unjust Enrichment law.

**JURISDICTION AND VENUE**

12.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, defendant PeopleConnect Inc. is incorporated in Delaware and has its principal place of business in Seattle, Washington. The class members are residents of California. (B) The proposed class consists of at least 100 members. Classmates advertises that its Classmates Yearbook Collection comprises records collected from "over 400,000 yearbooks."  While Classmates does not publish statistics concerning the total number of records in each yearbook, or a breakdown by state, a conservative estimate would place the number of individual records

corresponding to Californians in the millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for damages equal to the greater of $750 per violation, the actual damages suffered by Plaintiffs, or the profits earned by Defendants attributable to the unauthorized use. Given millions of likely records in California, the amount in controversy is well over the jurisdictional amount.

13.     This Court has personal jurisdiction over the claims of Plaintiffs and the non-named class members. Classmates maintains substantial connections to the state of California and this district. Classmates maintains an office in Woodland Hills, California. Classmates advertises its products and services to prospective customers in this state and district, provides its products and services to existing customers in this state and district, and uses the misappropriated names, photographs, likenesses, images, and identities of residents of this state and district as described in this complaint.

14.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiffs Lawrence Geoffrey Abraham, Alice Zhang, Wayne Tseng, and Jamaal Carney reside in this district.

**INTRADISTRICT VENUE**

15.     Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco County and because the named Plaintiffs live in this District.

**PARTIES**

**Defendant Classmates**

16.     Defendant PEOPLECONNECT, INC. is a Delaware corporation with its headquarters in Seattle, Washington. It conducts business under the brand names "Classmates.com," "Classmates," and other brand names associated with the various website and services it owns and operates. It conducts business throughout this district, California, and the United States. PeopleConnect, Inc. owns and operates the website Classmates.com.

**Plaintiff Wayne Tseng**

17.     Plaintiff Wayne Tseng is a resident of El Sobrante, California, in Contra Costa County. Mr. Tseng is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

18.     Mr. Tseng has never provided consent to Classmates, written or otherwise, for the commercial use of his name, photograph, or likeness.

19.     Classmates has never notified, requested consent from, or provided compensation to Mr. Tseng for its misappropriation and commercial exploitation of his name, photograph, and likeness.

20.     There is no agreement to arbitrate between Mr. Tseng and Classmates or PeopleConnect. At no time has Mr. Tseng believed any agreement between himself and Classmates or PeopleConnect exists or existed.

21.     Mr. Tseng hereby expressly repudiates any agreement to arbitrate that Classmates or PeopleConnect may contend exists or existed.

22.     Mr. Tseng instructed his attorneys to pursue a claim against Classmates in federal court. Mr. Tseng has never authorized, and does not authorize, his attorneys to agree to arbitration on his behalf.

23.     Mr. Tseng is not aware of any agreements between any of his attorneys and Classmates/PeopleConnect.

24.     Mr. Tseng is not aware of any accounts on Classmates.com created by his attorneys.

25.     Mr. Tseng did not instruct his attorneys to investigate the Classmates.com website. Mr. Tseng did not instruct his attorneys to register for an account or agree to a Terms of Service.

26.     To confirm the presence of Mr. Tseng's photograph on Classmates.com and collect the single screenshot shown in the Complaint below, a non-attorney staff member of Turke & Strauss LLP searched for Mr. Tseng's name on the publicly available portion of the Classmates.com website. At the time she performed the search, the publicly available portion of

the Classmates.com website did not require agreement to any TOS. The staff member never saw a TOS and did not agree to any TOS.

27.     None of Mr. Tseng's attorneys or their staff visited any portion of the Classmates.com website that requires agreement to a TOS to gather information related to his claim.

28.     All the information supporting Mr. Tseng's complaint is publicly available without agreeing to any TOS. That Mr. Tseng's photograph is on Classmates.com is verifiable by searching for his name on portions of the site that do not require agreeing to the TOS. The advertising flow Classmates uses to promote website subscriptions is described in detail in publicly available documents, including the initial Complaint filed in this case. That Classmates publicly displays a version of the advertising flow that incorporates Mr. Tseng's photograph is reasonably alleged on information and belief, because Classmates uses all student yearbook photographs in the same way.

**Plaintiff Alexandra Overton**

29.     Plaintiff Alexandra Overton is a resident of Ventura, California, in Ventura County. Ms. Overton is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

30.     Ms. Overton has never visited, used, or subscribed to the website Classmates.com.

31.     Ms. Overton attended Villanova Preparatory School in Ojai, California, from which she graduated in 2019.

32.     Ms. Overton's claims are functionally identical to the claims Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed before this Court on December 18, 2020. Ms. Overton is a member of the Class Ms. Callahan and Mr. Abraham alleged in their complaint. *See* Dkt. 2. Accordingly, the statute of limitations was tolled for Ms. Overton at least from the time Ms. Callahan and Mr. Abraham filed their Complaint. Ms. Overton's claims are therefore timely.

33.     Even if tolling did not apply, Ms. Overton's claims would still be timely because

1    she could not have discovered her claim prior to December 18, 2020.

2        34.     Even if tolling did not apply, and even if the discovery rule did not apply, Ms.

3 Overton's claims would still be timely because, on information and belief, PeopleConnect first

4 uploaded her photograph to www.classmates.com less than two years prior to the date on which

5 Ms. Overton brought her claim.

6        35.     Prior to filing her Complaint, Ms. Overton requested through her counsel that

7 PeopleConnect inform her when it first uploaded her photograph. PeopleConnect refused to

8 provide her this information.

9        36.     Ms. Overton has never provided consent to Classmates, written or otherwise, for

10 the commercial use of her name, photograph, or identity.

11        37.     Classmates has never notified, requested consent from, or provided

12 compensation to Ms. Overton for its misappropriation and commercial exploitation of her

13 name, photograph, and identity.

14        38.     There is no agreement to arbitrate between Ms. Overton and PeopleConnect.

15 Ms. Overton has never visited the Classmates.com website and has never seen or agreed to any

16 PeopleConnect or Classmates Terms of Service. At no time has Ms. Overton believed any

17 agreement between herself and PeopleConnect exists or existed.

18        39.     Counsel on behalf of Ms. Overton sent a letter to PeopleConnect's counsel on

19 February 14, 2023. **Ex. 1**. Counsel wrote that "Ms. Overton and Ms. Nolen do not agree, and

20 have never agreed, to arbitrate their claims against PeopleConnect. Ms. Overton and Ms. Nolen

21 expressly disclaim and repudiate any purported agreement to arbitrate." *Id.* The letter also

22 stated that "to ensure that PeopleConnect does not misrepresent or misunderstand Ms.

23 Overton's, Ms. Nolen's, and their counsel's unequivocal intentions **not** to enter any agreement

24 to arbitrate, Ms. Overton and Ms. Nolen both signed" Acknowledgements attached to the letter.

25 *Id.* (Emphasis in original.).

26        40.     In her signed Acknowledgment attached to the February 14 letter, Ms. Overton

27 acknowledged and confirmed that: (1) she "expressly disclaims and repudiates any purported

28 agreement to arbitrate"; (2) she "has never seen or agreed to any terms of service or any other

agreement" with PeopleConnect; (3) she "has no knowledge of any terms, material or otherwise, that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) she "does not believe any agreement to arbitrate exists" between herself and PeopleConnect; (5) she "does not believe [she] is bound by any agreement to arbitrate that may exist between [PeopleConnect] and any other person," including her attorneys. **Ex. 2**.

41.     Ms. Overton also acknowledged and confirmed that she "instructed her [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [her] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [her] behalf that [she] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [her] behalf that [she] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id.*

42.     Ms. Overton hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

43.     None of the allegations in this Complaint relating to PeopleConnect's use of Ms. Overton's name and photograph to advertise are based on any information gathered from www.classmates.com. Rather, Ms. Overton's allegations are based on the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Ms. Overton, including the prior complaints filed in this case.

44.     Ms. Overton highly values her personal privacy and intellectual property. She highly values the ability to control and prevent the commercial use of her identity without consent.

45.     PeopleConnect uses Ms. Overton's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Ms. Overton it uses for this purpose, which it appropriated without her

permission from his yearbook from Villanova Preparatory School.

46.    44.    PeopleConnect incorporates Ms. Overton's photograph in advertisements for website subscriptions as described below. This allegation, and the succeeding allegations related to PeopleConnect's use of Ms. Overton's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

47.    PeopleConnect's legal posturing in this case forced Ms. Overton to prepare her Complaint without referring to any portion of the Classmates website that requires account creation. PeopleConnect has asserted that anyone who creates an account for any reason – including for the purpose of investigating a potential legal claim – has thereby expressly consented to PeopleConnect's use of their name and likeness to advertise. PeopleConnect has also asserted that any attorney or other agent who creates an account to investigate someone else's potential legal claim has also thereby expressly consented to PeopleConnect's use of their client's name and likeness on that client's behalf. As a result, according to PeopleConnect, neither Ms. Overton nor her counsel can visit any portion of the website that requires agreement to the Terms without thereby sacrificing Ms. Overton's right to sue.

48.    PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Ms. Overton and other Class members.

49.    Users who searched for Ms. Overton received in response a list of results, which include low-resolution photographs depicting Ms. Overton as a child.

50.    Users who clicked on Ms. Overton's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Overton's photographs.

51.    After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

52.    PeopleConnect's sole purpose in using Ms. Overton's photograph, name, and

identity on the free version of its website is to solicit the purchase of paid subscriptions to www.classmates.com.

53.     Ms. Overton does not know how PeopleConnect obtained her photographs as a child. On information and belief, it is likely PeopleConnect obtained her photographs by paying a licensing fee to a third party in exchange for digitized copies of Ms. Overton's photographs and the right to make commercial use of those copies.

54.     PeopleConnect misappropriated Ms. Overton photographs without permission from Ms. Overton, the photographer who took her pictures, the authors who created her yearbooks, or the publishers of her yearbooks.

55.     PeopleConnect does not hold a copyright in yearbooks from Ms. Overton's school, nor does it have permission from the copyright holder the republish or distribute the yearbooks or the photographs contained therein.

56.     Ms. Overton has intellectual property and privacy interests in her photographs, name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

57.     PeopleConnect has injured Ms. Overton by taking her intellectual property without compensation; by invading her privacy rights protected by statute; by unlawfully profiting from its exploitation of her personal information; and by disturbing her peace of mind.

58.     Ms. Overton is upset and disturbed by PeopleConnect's commercial use of her name, photograph, and persona without her consent. Ms. Overton believes her persona is rightly hers to control. Ms. Overton does not support or endorse the website www.classmates.com. She finds it offensive to her dignity that PeopleConnect is using her name and photograph without her permission to advertise a product of which she does not approve.

59.     PeopleConnect's illegal use of her name and photograph has left Ms. Overton worried and uncertain about her inability to control how her name and personality are used.

60.     Ms. Overton is deeply uncomfortable in the knowledge that PeopleConnect is using her name and photographs as a minor to promote a service she does not support.

61.     PeopleConnect deliberately concealed its commercial use of Ms. Overton's photograph from Ms. Overton. She could not have discovered PeopleConnect's illegal use of her name and photograph without the assistance of her counsel.

62.     PeopleConnect's advertisements incorporating Ms. Overton's name and likeness do not solicit paid subscriptions until <u>after</u> the user has created an account agreed to the Terms. Accordingly, Ms. Overton could not have discovered PeopleConnect's commercial use of her name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

63.     Even had Ms. Overton visited the public portion of the Classmates.com website and discovered the low-resolution versions of her photographs, she would not have created an account or agreed to the Terms.

64.     Account registration requires that the user share their name and email address with PeopleConnect. Ms. Overton did not and does not wish to share this information with PeopleConnect. Ms. Overton does not want PeopleConnect to profit from or use her personal information in any way. Nor does she trust that PeopleConnect would properly safeguard her name and email address.

65.     Ms. Overton's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/

66.     Account registration also requires that the user agree to the Terms. Although Ms. Overton has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Ms. Overton that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Ms. Overton visited www.classmates.com for the purpose of investigating a potential legal claim, she would not have agreed to any restrictions on her ability to bring suit. Accordingly, she would not have agreed to the Terms.

67.     Because Ms. Overton would not have been willing to create an account on

www.classmates.com, she could not have learned that PeopleConnect uses her low-resolution photographs to promote subscriptions. By placing the solicitation webpage behind the page requiring account creation and agreement to the Terms, PeopleConnect concealed Ms. Overton's cause of action from Ms. Overton.

68.     PeopleConnect also concealed Ms. Overton's cause of action from her counsel by deliberately impeding their investigation of her claim.

69.     PeopleConnect's affirmative actions aimed at concealing Ms. Overton cause of action from her counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

**Plaintiff Alicia Nolen**

70.     Plaintiff Alicia Nolen is a resident of Tulare, California, in Tulare County. Ms. Nolen is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

71.     Ms. Nolen has never visited, used, or subscribed to the website Classmates.com.

72.     Ms. Nolen attended Tulare Union High School in Tulare, California, from which she graduated in 2019.

73.     Ms. Nolen's claims are functionally identical to the claims Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed before this Court on December 18, 2020. Ms. Overton is a member of the Class Ms. Callahan and Mr. Abraham alleged in their complaint. *See* Dkt. 2. Accordingly, the statute of limitations was tolled for Ms. Nolen at least from the time Ms. Callahan and Mr. Abraham filed their Complaint. Ms. Nolen's claims are therefore timely.

74.     Even if tolling did not apply, Ms. Nolen's claims would still be timely because she could not have discovered her claim prior to December 18, 2020.

75.     Even if tolling did not apply, and even if the discovery rule did not apply, Ms. Nolen's claims would still be timely because, on information and belief, PeopleConnect first uploaded her photograph to www.classmates.com less than two years prior to the date on which Ms. Nolen brought her claim.

76.     Prior to filing her Complaint, Ms. Nolen requested through her counsel that PeopleConnect inform her when it first uploaded her photograph. PeopleConnect refused to provide her this information.

77.     Ms. Nolen has never provided consent to Classmates, written or otherwise, for the commercial use of her name, photograph, or identity.

78.     Classmates has never notified, requested consent from, or provided compensation to Ms. Nolen for its misappropriation and commercial exploitation of her name, photograph, and identity.

79.     There is no agreement to arbitrate between Ms. Nolen and PeopleConnect. Ms. Nolen has never visited the Classmates.com website and has never seen or agreed to any PeopleConnect or Classmates Terms of Service. At no time has Ms. Nolen believed any agreement between herself and PeopleConnect exists or existed.

80.     Counsel on behalf of Ms. Nolen sent a letter to PeopleConnect's counsel on February 14, 2023. **Ex. 3**. Counsel wrote that "Ms. Overton and Ms. Nolen do not agree, and have never agreed, to arbitrate their claims against PeopleConnect. Ms. Overton and Ms. Nolen expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated that "to ensure that PeopleConnect does not misrepresent or misunderstand Ms. Overton's, Ms. Nolen's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Ms. Overton and Ms. Nolen both signed" Acknowledgements attached to the letter. *Id.* (Emphasis in original.).

81.     In her signed Acknowledgment attached to the February 14 letter, Ms. Nolen acknowledged and confirmed that: (1) she "expressly disclaims and repudiates any purported agreement to arbitrate"; (2) she "has never seen or agreed to any terms of service or any other agreement" with PeopleConnect; (3) she "has no knowledge of any terms, material or otherwise,

that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) she "does not believe any agreement to arbitrate exists" between herself and PeopleConnect; (5) she "does not believe [she] is bound by any agreement to arbitrate that may exist between [PeopleConnect] and any other person," including her attorneys. **Ex. 4**.

82.     Ms. Nolen also acknowledged and confirmed that she "instructed her [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [her] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [her] behalf that [she] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [her] behalf that [she] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id.*

83.     Ms. Nolen hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

84.     None of the allegations in this Complaint relating to PeopleConnect's use of Ms. Nolen's name and photograph are based on any information gathered from www.classmates.com. Rather, Ms. Nolen's allegations are based on the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Ms. Nolen, including the prior complaints filed in this case.

85.     Ms. Nolen highly values her personal privacy and intellectual property. She highly values the ability to control and prevent the commercial use of her identity without consent.

86.     PeopleConnect uses Ms. Nolen's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Ms. Nolen it uses for this purpose, which it appropriated without her permission from his yearbook from Tulare Union High School.

87.   44.   PeopleConnect incorporates Ms. Nolen's photograph in advertisements for website subscriptions as described below. This allegation, and the succeeding allegations related to PeopleConnect's use of Ms. Nolen's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

88.   PeopleConnect's legal posturing in this case forced Ms. Nolen to prepare her Complaint without referring to any portion of the Classmates website that requires account creation. PeopleConnect has asserted that anyone who creates an account for any reason – including for the purpose of investigating a potential legal claim – has thereby expressly consented to PeopleConnect's use of their name and likeness to advertise. PeopleConnect has also asserted that any attorney or other agent who creates an account to investigate someone else's potential legal claim has also thereby expressly consented to PeopleConnect's use of their client's name and likeness on that client's behalf. As a result, according to PeopleConnect, neither Ms. Nolen nor her counsel can visit any portion of the website that requires agreement to the Terms without thereby sacrificing Ms. Nolen's right to sue.

89.   PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Ms. Nolen and other Class members.

90.   Users who searched for Ms. Nolen received in response a list of results, which include low-resolution photographs depicting Ms. Nolen as a child.

91.   Users who clicked on Ms. Nolen's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Nolen's photographs.

92.   After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

93.   PeopleConnect's sole purpose in using Ms. Nolen's photograph, name, and identity on the free version of its website is to solicit the purchase of paid subscriptions to

www.classmates.com.

94.   Ms. Nolen does not know how PeopleConnect obtained her photographs as a child. On information and belief, it is likely PeopleConnect obtained her photographs by paying a licensing fee to a third party in exchange for digitized copies of Ms. Nolen's photographs and the right to make commercial use of those copies.

95.   PeopleConnect misappropriated Ms. Nolen photographs without permission from Ms. Nolen, the photographer who took her pictures, the authors who created her yearbooks, or the publishers of her yearbooks.

96.   PeopleConnect does not hold a copyright in yearbooks from Ms. Nolen's school, nor does it have permission from the copyright holder the republish or distribute the yearbooks or the photographs contained therein.

97.   Ms. Nolen has intellectual property and privacy interests in her photographs, name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

98.   PeopleConnect has injured Ms. Nolen by taking her intellectual property without compensation; by invading her privacy rights protected by statute; by unlawfully profiting from its exploitation of her personal information; and by disturbing her peace of mind.

99.   Ms. Nolen is upset and disturbed by PeopleConnect's commercial use of her name, photograph, and persona without her consent. Ms. Nolen believes her persona is rightly hers to control. Ms. Nolen does not support or endorse the website www.classmates.com. She finds it offensive to her dignity that PeopleConnect is using her name and photograph without her permission to advertise a product of which she does not approve.

100.   PeopleConnect's illegal use of her name and photograph has left Ms. Nolen worried and uncertain about her inability to control how her name and personality are used.

101.   Ms. Nolen is deeply uncomfortable in the knowledge that PeopleConnect is using her name and photographs as a minor to promote a service she does not support.

102.   PeopleConnect deliberately concealed its commercial use of Ms. Nolen's

photograph from Ms. Nolen. She could not have discovered PeopleConnect's illegal use of her name and photograph without the assistance of her counsel.

103.   PeopleConnect's advertisements incorporating Ms. Nolen's name and likeness do not solicit paid subscriptions until <u>after</u> the user has created an account agreed to the Terms. Accordingly, Ms. Nolen could not have discovered PeopleConnect's commercial use of her name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

104.   Even had Ms. Nolen visited the public portion of the Classmates.com website and discovered the low-resolution versions of her photographs, she would not have created an account or agreed to the Terms.

105.   Account registration requires that the user share their name and email address with PeopleConnect. Ms. Nolen did not and does not wish to share this information with PeopleConnect. Ms. Nolen does not want PeopleConnect to profit from or use her personal information in any way. Nor does she trust that PeopleConnect would properly safeguard her name and email address.

106.   Ms. Nolen's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/

107.   Account registration also requires that the user agree to the Terms. Although Ms. Nolen has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Ms. Nolen that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Ms. Nolen visited www.classmates.com for the purpose of investigating a potential legal claim, she would not have agreed to any restrictions on her ability to bring suit. Accordingly, she would not have agreed to the Terms.

108.   Because Ms. Nolen would not have been willing to create an account on www.classmates.com, she could not have learned that PeopleConnect uses her low-resolution

photographs to promote subscriptions. By placing the solicitation webpage behind the page requiring account creation and agreement to the Terms, PeopleConnect concealed Ms. Nolen's cause of action from Ms. Nolen.

109.    PeopleConnect also concealed Ms. Nolen's cause of action from her counsel by deliberately impeding their investigation of her claim.

110.    PeopleConnect's affirmative actions aimed at concealing Ms. Nolen's cause of action from her counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

## NAMED PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Wayne Tseng**

111.    Plaintiff Wayne Tseng is a private individual who has no relationship with Classmates or PeopleConnect. He has never visited, used, or subscribed to Classmates.com.

112.    Mr. Tseng did not give consent to Classmates to use his photographs, likeness, name, or persona in any way. Had Classmates requested his consent, Mr. Tseng would not have provided it.

113.    Mr. Tseng highly values his personal privacy and his ability to control and prevent the commercial use of his likeness without his consent.

114.    Classmates uses Mr. Tseng's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Mr. Tseng it uses for this purpose, which it misappropriated without his permission from Mr. Tseng's yearbook from Albany High School in Albany, California.

115.    A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Mr. Tseng's photograph appears below. For Mr. Tseng's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Mr. Tseng's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.



116.    Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Mr. Tseng by name and location.

117.    Users who search for Mr. Tseng receive in response a list of results, which include a low-resolution version of the photograph depicting Mr. Tseng as a minor.

118.    Users who click on Mr. Tseng's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Mr. Tseng's photograph.

119.    Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

120.    Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Mr. Tseng's photograph.

121.    As shown above, Classmates' uses Mr. Tseng's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting

subscriptions.

122.    Mr. Tseng does not know how Classmates obtained his name and photograph as a child. It appears to have been misappropriated from his high school yearbook.

123.    On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Mr. Tseng's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

124.    On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Mr. Tseng's photograph, or the yearbook's copyright holder prior to incorporating Mr. Tseng's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Mr. Tseng's yearbook or his photograph.

125.    Mr. Tseng has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his likeness without his consent.

126.    Classmates has injured Mr. Tseng by profiting from its use of his name and likeness without compensating him; by misappropriating and infringing his intellectual property rights without compensation; by violating his statutorily protected right to control the commercial use of his name and likeness; and by disturbing his peace of mind.

127.    Classmates' illegal actions caused Mr. Tseng mental anguish and harmed his peace of mind. Upon learning about Classmates' actions, Mr. Tseng was upset and disturbed by Classmates' use of his name and photograph without his consent. Mr. Tseng believes his likeness is rightly his to control. Classmates' illegal use has left him worried and uncertain about his inability to control how his name and likeness is used. Mr. Tseng feels that Classmates' use of his photograph represents an alarming invasion of his privacy. Mr. Tseng feels deeply uncomfortable in the knowledge that Classmates is using his name and likeness to advertise a subscription product he does not endorse or approve of.

**Plaintiff Alexandra Overton**

128.    Plaintiff Alexandra Overton is a private individual who has no relationship with

Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

129.   Ms. Overton did not give consent to Classmates to use her photographs, likeness, name, or persona in any way. Had Classmates requested her consent, Ms. Overton would not have provided it.

130.   Ms. Overton highly values her personal privacy and her ability to control and prevent the commercial use of her likeness without her consent.

131.   Classmates uses Ms. Overton's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Ms. Overton it uses for this purpose, which it misappropriated without her permission from Ms. Overton's yearbook from Villanova Preparatory School in Ojai, California.

132.   Ms. Overton is not able to include a screenshot showing the yearbook page from which Classmates extracted her photograph because, at some point after Ms. Overton informed Classmates of her claim and before her counsel prepared this Complaint, it appears Classmates removed her yearbook from its website. Counsel anticipate discovery will reveal Classmates did so for the express purpose of preventing Ms. Overton from investigating her claim and preparing her Complaint.

133.   Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Ms. Overton by name and location.

134.   Users who search for Ms. Overton receive in response a list of results, which include a low-resolution version of the photograph depicting Ms. Overton as a minor.

135.   Users who click on Ms. Overton 's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Ms. Overton's photograph.

136.   Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

137.   Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Overton's photograph.

138. As shown above, Classmates' uses Ms. Overton's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

139. Ms. Overton does not know how Classmates obtained her name and photograph as a child. It appears to have been misappropriated from her high school yearbook.

140. On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Ms. Overton's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

141. On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Ms. Overton's photograph, or the yearbook's copyright holder prior to incorporating Ms. Overton's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Ms. Overton's yearbook or her photograph.

142. Ms. Overton has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of his likeness without his consent.

143. Classmates has injured Ms. Overton by profiting from its use of her name and likeness without compensating her; by misappropriating and infringing her intellectual property rights without compensation; by violating her statutorily protected right to control the commercial use of her name and likeness; and by disturbing her peace of mind.

144. Classmates' illegal actions caused Ms. Overton mental anguish and harmed her peace of mind. Upon learning about Classmates' actions, Ms. Overton was upset and disturbed by Classmates' use of her name and photograph without her consent. Ms. Overton believes her likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about her inability to control how her name and likeness is used. Ms. Overton feels that Classmates' use of his photograph represents an alarming invasion of her privacy. Ms. Overton feels deeply uncomfortable in the knowledge that Classmates is using her name and likeness to advertise a subscription product she does not endorse or approve of.

**Plaintiff Alicia Nolen**

145.   Plaintiff Alicia Nolen is a private individual who has no relationship with Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

146.   Ms. Nolen did not give consent to Classmates to use her photographs, likeness, name, or persona in any way. Had Classmates requested her consent, Ms. Nolen would not have provided it.

147.   Ms. Nolen highly values her personal privacy and her ability to control and prevent the commercial use of her likeness without her consent.

148.   Classmates uses Ms. Nolen's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Ms. Nolen it uses for this purpose, which it misappropriated without her permission from Ms. Nolen's yearbook from Tulare Union High School in Tulare, California.

149.   A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Ms. Nolen's photograph appears below. For Ms. Nolen's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Ms. Nolen's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.



150.   Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Ms. Nolen by name and location.

151.     Users who search for Ms. Nolen receive in response a list of results, which include a low-resolution version of the photograph depicting Ms. Nolen as a minor.

152.     Users who click on Ms. Nolen 's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Ms. Nolen's photograph.

153.     Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

154.     Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Nolen's photograph.

155.     Classmates uses Ms. Nolen's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

156.     Ms. Nolen does not know how Classmates obtained her name and photograph as a child. It appears to have been misappropriated from her high school yearbook.

157.     On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Ms. Nolen's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

158.     On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Ms. Nolen's photograph, or the yearbook's copyright holder prior to incorporating Ms. Nolen's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Ms. Nolen's yearbook or her photograph.

159.     Ms. Nolen has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of his likeness without his consent.

160.     Classmates has injured Ms. Nolen by profiting from its use of her name and likeness without compensating her; by misappropriating and infringing her intellectual property rights without compensation; by violating her statutorily protected right to control the commercial use of her name and likeness; and by disturbing her peace of mind.

161.     Classmates' illegal actions caused Ms. Nolen mental anguish and harmed her peace of mind. Upon learning about Classmates' actions, Ms. Nolen was upset and disturbed by Classmates' use of her name and photograph without her consent. Ms. Nolen believes her likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about her inability to control how her name and likeness is used. Ms. Nolen feels that Classmates' use of his photograph represents an alarming invasion of her privacy. Ms. Nolen feels deeply uncomfortable in the knowledge that Classmates is using her name and likeness to advertise a subscription product she does not endorse or approve of.

**STATEMENT OF COMMON FACTS**

162.     Classmates' business model relies on collecting personal information from hundreds of thousands of school yearbooks. Classmates scans yearbooks into a digital format, then extracts personal information including names, photographs, schools attended, years of attendance, cities of residence, and biographical details. Classmates aggregates the extracted information into digital records associated with specific individuals. Classmates then uses the records to advertise and sell its products and services. Those products and services include memberships to the website Classmates.com, which Classmates sells for up to $3 per month.

163.     According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the class includes millions of Californians whose names, photographs, and likenesses appear in the Classmates Yearbook Collection.

164.     Classmates did not ask consent from, given notice to, or provide compensation to Plaintiffs or the class before using their names, photographs, and biographical information.

165.     The names, photographs, cities of residence, likeness, and identities that Classmates aggregates into individual records uniquely identify specific individuals.

166.     Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its products and services, including (1) its "CM+" subscription membership; and (2) the free version of its website, from which

Classmates profits by selling targeted advertisements and driving users to its paid products and subscriptions.

167.    Classmates employs a variety of advertising techniques through which it exploits the names, photographs, and likenesses of Plaintiffs and the class, many of which are detailed in the Plaintiff-specific portion of this complaint. Across all of the advertising techniques it uses, Classmates seeks to translate its users' interest in seeing pictures of and learning personal details about Plaintiffs and the class, into the purchase of a Classmates product or service (or the use of a website from which Classmates drives profit).

168.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the Class on and in its products and services by including the records it has created about Plaintiffs and the Class on its website.

169.    On information and belief, Classmates makes no attempt to contact or gain the consent of the people whose names, photographs, likenesses, biographical information, and identities it uses to advertise website subscriptions.

170.    On information and belief, Classmates has received no indication that the authors, publishers, or copyright holders of the yearbooks in its database intended the yearbooks to be published on the Internet or used to promote paid subscriptions.

171.    The vast majority of people whose personal information Classmates has digitally extracted and aggregated in its Classmates Yearbook Collection have no business relationship with Classmates, are not Classmates subscribers, and are not subject to a Terms of Service or any other agreement with Classmates.

172.    Through its actions, Classmates has caused harm to Plaintiffs and the Class by depriving them the fair economic value of their likenesses; violating their exclusive rights to control their likenesses; infringing their intellectual property without compensation; and disturbing their peace of mind. Classmates has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, and likenesses of Plaintiffs and the class.

173.    Classmates knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal

information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; and California Unjust Enrichment law.

## CLASS ALLEGATIONS

174.    Plaintiffs bring this complaint on behalf of themselves and a Class of all California residents who (a) are not currently subscribers of any Classmates services, (b) have never donated a yearbook to Classmates, and (c) whose names, photographs, and/or likenesses were extracted from yearbooks by Classmates and placed on the Classmates website as part of its Yearbook Collection, without Classmates obtaining their consent. Excluded from the class are (a) Plaintiffs' counsel; (b) Classmates, its officers and directors, counsel, successors and assigns; (c) any entity in which Classmates has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

175.    The members of the proposed class are so numerous that joinder of individual claims is impracticable. Classmates represents that its Yearbook Collection contains records from over 400,000 yearbooks in the United States. Each yearbook contains the names and likeness of hundreds, sometimes thousands of individuals. Even accounting for the fact that only a portion of the yearbooks are from California, that some individuals in Classmates' database are deceased or no longer reside in California, and that the class excludes current Classmates subscribers (Classmates has about 4 million subscribers worldwide), the class likely numbers in the millions.

176.    There are significant questions of fact and law common to the members of the class. These issues include:

   a.  Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interest and hobbies, in its Classmates Yearbook Collection, and selling of that information via paid subscription plans, constitute the knowing use of another's name, photograph, or likeness, in any manner, on or in products, merchandise or goods within the

meaning of Cal. Civ. Code § 3344;

b. Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interests and hobbies, and use of that information in the advertising techniques described in this complaint, constitutes the knowing use of another's name, photograph, or likeness for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

c. Whether Plaintiffs and the class consented to the use of their names, photographs, and likenesses in Classmates products and advertisements;

d. Whether Classmates' use of names, photographs, and likeness constitutes a use in connection with news or public affairs for which consent is not required;

e. Whether Classmates' conduct as described in this complaint violated California's Unfair Competition Law;

f. Whether Classmates was unjustly enriched as a result of the conduct described in this complaint; and

g. Whether Plaintiffs and members of the class are entitled to injunctive, declaratory and monetary relief as a result of Classmates' conduct as described in this complaint.

177. Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by Classmates misappropriation and misuse of their names, likenesses, photographs, and other personal information.

178. The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the class, and they are represented by qualified counsel experienced in class action litigation of this nature.

179. A class action is superior to other available methods for the fair and efficient

adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Classmates' common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

180.    The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Classmates has acted on ground generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the class as a whole.

181.    The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION
### (Cal. Civ. Code § 3344)

182.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

183.    California's Right of Publicity Statute, California Civil Code § 3344, prohibits and provides damages for the knowing misappropriation of a name, voice, signature, photograph, or likeness in advertising or soliciting without prior consent.

184.    By engaging in the forgoing acts and omissions, Classmates knowingly used class members' names, photographs, and likenesses in its products and services for the purpose of advertising and selling its services, without class members' consent.

185.    Each use of a class member's name, photograph, or likeness is a separate and

distinct violation of California Civil Code § 3344 giving rise to damages.

186.     Plaintiffs seek declaratory, injunctive, and monetary damages for themselves and on behalf of each member of the proposed class as provided for in California Civil Code § 3344, including statutory damages equal to the greater of $750 per violation, actual damages, or profits from Classmates' illegal actions, punitive damages, and the award of attorneys' fees and costs in the event Plaintiffs prevail in this action.

187.     Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294.  The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

### SECOND CAUSE OF ACTION
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

188.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

189.     Classmates has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq.* ("UCL").

190.     As described in this complaint, Classmates' misappropriation and use without consent of Plaintiffs' and class members' names, photographs, likenesses, and personal information is a violation of California's Right to Publicity Statute, Cal. Civ. Code § 3344.

191.     By engaging in the conduct described in this complaint and violating California law, Classmates engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

192.     As a result of Classmates' actions, Plaintiffs and the class have been injured. Plaintiffs and members of the class each lost the economic value of their likenesses, their exclusive right to control their likenesses, their right to the value of their intellectual property, and their right to freedom from intrusion on their peace of mind. Plaintiffs and members of the

class also lost the right to refuse consent and protect their privacy, as guaranteed by California law.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

193.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

194.    Plaintiffs and members of the class have conferred an unwarranted benefit on Classmates. Classmates' business model centers around using personal information that rightfully belongs to Plaintiffs and members of the class to sell its products and services. Classmates uses the personal information it misappropriated without consent. Each "CM+" subscription sold to users who then gain access to records that rightfully belong to class members, and all advertising revenue collected from the delivery of ads on pages displaying records that rightfully belong to class members, represents an unwarranted benefit conferred upon Classmates by the class.

195.    Under principles of equity and good conscience, Classmates should not be permitted to retain the benefits it gained by its actions.

196.    Plaintiffs and members of the class have suffered loss as a direct result of Classmates' conduct.

197.    Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class members, seek the imposition of a constructive trust and restitution of proceeds Classmates received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest pursuant to Cal. Civ. Proc. Code § 1021.5.

### PRAYER FOR RELIEF

198.    WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situation, hereby demand judgment against Defendant Classmates as follows:

    (a) For an order certifying the proposed class and appointing Plaintiffs and their
        counsel to represent the class;

    (b) For a declaration that Classmates' acts and omissions constitute a knowing

misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of California law;

(c) For preliminary and permanent injunctive relief enjoining and preventing Classmates from continuing to operate its Classmates website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(d) For an order enjoining Classmates from continuing the unlawful and unfair conduct described in this complaint;

(e) For restitution for Plaintiffs and members the class for the value that Defendants derived from misappropriating their likenesses;

(f) For an award of damages, including without limitation damages for actual harm, profits earned by Classmates, and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(h) For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated: March 23, 2023                    By: */s/ Raina C. Borrelli*
                                              Raina Borrelli (*pro hac vice*)
                                              raina@turkestrauss.com
                                              Sam Strauss (*pro hac vice*)
                                              sam@turkestrauss.com
                                              TURKE & STRAUSS LLP
                                              613 Williamson St., Suite 201
                                              Madison, Wisconsin 53703-3515
                                              Telephone: (608) 237-1775
                                              Facsimile: (608) 509 4423

                                              Michael F. Ram (SBN 104805)
                                              mram@forthepeople.com
                                              Marie N. Appel (SBN 187483)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*pro hac vice*)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 23rd day of March, 2023.

By: */s/ Raina C. Borrelli*
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423

**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:     628 267-6800
Facsimile:     628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:     312 222-9350
Facsimile:     312 527-0484

*Attorneys for Defendant PeopleConnect, Inc.*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWRENCE GEOFFREY ABRAHAM, ALICE ZHANG, WAYNE TSENG, and JAMAAL CARNEY, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs.<br><br>         v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>                              Defendant. | Case No.3:20-cv-09203-EMC<br><br>**ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE § 3344, CAL. BUS. & PROF. CODE § 17200, AND CALIFORNIA UNJUST ENRICHMENT** |

1   Plaintiffs Jamaal Carney and Alice Zhang voluntarily dismissed their individual claims in this action on

2   December 30, 2022 and Plaintiff Lawrence Geoffrey Abraham voluntarily dismissed his claims in this

3   action on January 10, 2023. As such, no answer to allegations regarding Mr. Carney, Ms. Zhang, or Mr.

4   Abraham is required. Answering further, PeopleConnect states as follows:

5       1.      Plaintiffs LAWRENCE GEOFFREY ABRAHAM, ALICE ZHANG, WAYNE TSENG, and

6   JAMAAL CARNEY, by and through their attorneys, make the following allegations on information and

7   belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

8       **ANSWER:**   As to Plaintiff Wayne Tseng ("Plaintiff"), PeopleConnect lacks sufficient

9   knowledge to form a belief as to the truth of the allegations in paragraph 1 that pertain to him and on that

10  basis denies those allegations. As to former Plaintiffs Alice Zhang, Jamaal Carney, and Lawrence Geoffrey

11  Abraham, no answer is required.

12                                    **INTRODUCTION**

13      2.      Plaintiffs bring this class action complaint against PEOPLECONNECT, INC.

14  ("Classmates") for knowingly misappropriating the names, photographs, and likenesses of Plaintiffs and

15  the class; knowingly using those names, photographs, and likenesses to advertise its products and services,

16  including subscription memberships to the website Classmates.com; and knowingly using those names,

17  photographs, and likenesses on and in the website Classmates.com, without obtaining prior consent from

18  Plaintiffs and the class.

19      **ANSWER:**   PeopleConnect admits that Plaintiff brings this Complaint styled as a putative class

20  action against PeopleConnect. Unless expressly admitted here, PeopleConnect denies the remaining

21  allegations of paragraph 2.

22      3.      Classmates' business model relies on extracting personal information from school

23  yearbooks, including names, photographs, schools attended, and other biographical information.

24  Classmates aggregates the extracted information into digital records that identify specific individuals by

25  name, photograph, and other personal information, and stores the digital records in a massive online

26  database. Classmates provides free access to some of the personal information in its database in order to

27

28

drive users to purchase a paid product — a monthly subscription to Classmates.com that retails for up to $3 per month — and to gather registered users, from whom Classmates profits by selling targeted ads.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 3.

4.   According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the Collection contains records corresponding to millions of Californians.

**ANSWER:**   PeopleConnect admits the Classmates.com website provides access to over 400,000 yearbooks. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 4.

5.   Classmates has not received consent from, given notice to, or provided compensation to the millions of Californians whose names, photographs, biographical information, and identities appear in its Classmates Yearbook Collection.

**ANSWER:**   The allegations of paragraph 5 consist of legal conclusions and as such, no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 5. Answering further, PeopleConnect denies that it must obtain consent from Californians whose names, photographs, biographical information, and identities appear in its Classmates Yearbook Collection or that those Californians are entitled to notice or compensation.

6.   The names, photographs, cities of residence, schools attended, likenesses, and identities contained in the Classmates Yearbook Collection uniquely identify specific individuals.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 6.

7.   Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise, sell, and solicit the purchase of its "CM+" subscription membership, which retails for up to $3 per month.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 7.

8.   Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise the free version of its website,

which is available to both unregistered users and registered non-paying users. Classmates derives profit from the free version of its website by (1) selling targeted ads; (2) driving users of the free version to purchase its paid products and services; and (3) on information and belief, selling the personal information it collects from registered and unregistered users to third parties.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 8.

9.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection on and in its products and services, by (1) selling access to the records to paying subscribers via its CM+ online membership plan; and (2) including these records on the free version of its website that is available to unregistered users and registered non-paying users, which Classmates distributes for free to the public as a means of advertising its services and attracting paying subscribers.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 9.

10.      By misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, Classmates has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, infringing their intellectual property without compensation, and disturbing their peace of mind. Classmates has also earned ill-gotten profits and been unjustly enriched.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 10.

11.      These practices, as further detailed in this complaint, violate the California right to publicity as codified in Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof Code § 17200 *et seq*.; and California Unjust Enrichment law.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 11.

### JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, defendant PeopleConnect Inc. is incorporated in Delaware and has its principal place of business in Seattle, Washington. The class members are residents

of California. (B) The proposed class consists of at least 100 members. Classmates advertises that its Classmates Yearbook Collection comprises records collected from **"over 400,000 yearbooks."** While Classmates does not publish statistics concerning the total number of records in each yearbook, or a breakdown by state, a conservative estimate would place the number of individual records corresponding to Californians in the millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code **§** 3344 provides for damages equal to the greater of $750 per violation, the actual damages suffered by Plaintiffs, or the profits earned by Defendants attributable to the unauthorized use. Given millions of likely records in California, the amount in controversy is well over the jurisdictional amount.

**ANSWER:**    The allegations contained in paragraph 12 consist of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect admits only that the Complaint purports to allow the Court to exercise jurisdiction under 28 U.S.C. § 1332(d), that PeopleConnect, Inc. is incorporated in Delaware and has its principal place of business in Washington, and that the Classmates.com website provides access to hundreds of thousands of yearbooks. PeopleConnect lacks knowledge or information sufficient to form a belief about the citizenships of the Plaintiff and most members of the putative class. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 12.

13.    This Court has personal jurisdiction over the claims of Plaintiffs and the non-named class members. Classmates maintains substantial connections to the state of California and this district. Classmates maintains an office in Woodland Hills, California. Classmates advertises its products and services to prospective customers in this state and district, provides its products and services to existing customers in this state and district, and uses the misappropriated names, photographs, likenesses, images, and identities of residents of this state and district as described in this complaint.

**ANSWER:**    The allegations of paragraph 13 consist of a legal conclusion to which no response is required and refer to a dismissed defendant unrelated to PeopleConnect, Inc., so no response is required. To the extent a response is required, PeopleConnect admits that it conducts business in California and otherwise denies the allegations of paragraph 13.

14.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiffs Lawrence Geoffrey Abraham, Alice Zhang, Wayne Tseng, and Jamaal Carney reside in this district.

**ANSWER:**     Paragraph 14 contains legal conclusions to which no response is required. To the extent a response is required, PeopleConnect lacks sufficient knowledge to form a belief as to the true residency of Plaintiff Wayne Tseng or other putative class members and on that basis denies those allegations. As Plaintiffs Jamaal Carney, Alice Zhang, and Lawrence Geoffrey Abraham have been dismissed from this lawsuit, no answer to allegations regarding their true residency is required. PeopleConnect denies the remaining allegations of paragraph 14.

<div align="center"><b>INTRADISTRICT VENUE</b></div>

15.      Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco County and because the named Plaintiffs live in this District.

**ANSWER:**     Paragraph 15 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 15.

<div align="center"><b>PARTIES</b></div>

**Defendant Classmates**

16.      Defendant PEOPLECONNECT, INC. is a Delaware corporation with its headquarters in Seattle, Washington. It conducts business under the brand names **"Classmates.com," "Classmates,"** and other brand names associated with the various website and services it owns and operates. It conducts business throughout this district, California, and the United States. PeopleConnect, Inc. owns and operates the website Classmates.com.

**ANSWER:**     PeopleConnect admits that PeopleConnect, Inc. is a Delaware corporation with its headquarters in Washington and that it owns and operates Classmates.com. PeopleConnect denies the remaining allegations of paragraph 16.

<div align="center">ANSWER TO FIRST AMENDED COMPLAINT<br>Case No. 3:20-cv-09023-EMC</div>

**Plaintiff Lawrence Geoffrey Abraham**

17.     Plaintiff Lawrence Geoffrey Abraham is a resident of San Francisco, California. Mr. Abraham is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

**ANSWER:**     As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 17 is required.

18.     Mr. Abraham has never provided consent to Classmates, written or otherwise, for the use of his name, photograph, or likeness.

**ANSWER:**     As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 18 is required.

19.     Classmates has never notified, requested consent from, or provided compensation to Mr. Abraham for its appropriation of his name, photograph, and likeness. Mr. Abraham first became aware that his personal information and photographs are being used by Classmates through the investigation of this lawsuit.

**ANSWER:**     As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 19 is required.

**Plaintiff Alice Zhang**

20.     Plaintiff Alice Zhang is a resident of Berkeley, California, in Alameda County. Ms. Zhang has never visited or used the website Classmates.com. Ms. Zhang is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 20 is required.

21.     Ms. Zhang has never provided consent to Classmates, written or otherwise, for the commercial use of her name, photograph, or likeness.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 21 is required.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

22.     Classmates has never notified, requested consent from, or provided compensation to Ms. Zhang for its misappropriation and commercial exploitation of her name, photograph, and likeness.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 22 is required.

23.     There is no agreement to arbitrate between Ms. Zhang and Classmates or PeopleConnect. At no time has Ms. Zhang believed any agreement between herself and Classmates or PeopleConnect exists or existed.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 23 is required.

24.     Ms. Zhang hereby expressly repudiates any agreement to arbitrate that Classmates or PeopleConnect may contend exists or existed.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 24 is required.

25.     Ms. Zhang instructed her attorneys to pursue a claim against Classmates in federal court. Ms. Zhang has never authorized, and does not authorize, her attorneys to agree to arbitration on her behalf.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 25 is required.

26.     Ms. Zhang is not aware of any agreements between any of her attorneys and Classmates/PeopleConnect.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 26 is required.

27.     Ms. Zhang is not aware of any accounts on Classmates.com created by her attorneys.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 27 is required.

28.     Ms. Zhang did not instruct her attorneys to investigate the Classmates.com website. Ms. Zhang did not instruct her attorneys to register for an account or agree to a Terms of Service.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**ANSWER:** As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 28 is required.

29. To confirm the presence of Ms. Zhang's photograph on Classmates.com and collect the single screenshot shown in the Complaint below, a non-attorney staff member of Turke & Strauss LLP searched for Ms. Zhang's name on the publicly available portion of the Classmates.com website. At the time she performed the search, the publicly available portion of the Classmates.com website did not require agreement to any TOS. The staff member never saw a TOS and did not agree to any TOS.

**ANSWER:** As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 29 is required.

30. None of Ms. Zhang's attorneys or their staff visited any portion of the Classmates.com website that requires agreement to a TOS to gather information related to her claim.

**ANSWER:** As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 30 is required.

31. All the information supporting Ms. Zhang's complaint is publicly available without agreeing to any TOS. That Ms. Zhang's photograph is on Classmates.com is verifiable by searching for her name on portions of the site that do not require agreeing to the TOS. The advertising flow Classmates uses to promote website subscriptions is described in detail in publicly available documents, including the initial Complaint filed in this case. That Classmates publicly displays a version of the advertising flow that incorporates Ms. Zhang's photograph is reasonably alleged on information and belief, because Classmates uses all student yearbook photographs in the same way.

**ANSWER:** As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 31 is required.

**Plaintiff Wayne Tseng**

32. Plaintiff Wayne Tseng is a resident of El Sobrante, California, in Contra Costa County. Mr. Tseng is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

3-ER-321

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to whether Mr. Tseng is a resident of El Sobrante, California, in Contra Costa County, or whether he is a subscriber of any Classmates products or services or whether he is subject to any of the Terms of Service and on that basis denies those allegations. PeopleConnect denies the remaining allegations of paragraph 32.

33.   Mr. Tseng has never provided consent to Classmates, written or otherwise, for the commercial use of his name, photograph, or likeness.

**ANSWER:**   Paragraph 33 contains a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 33.

34.   Classmates has never notified, requested consent from, or provided compensation to Mr. Tseng for its misappropriation and commercial exploitation of his name, photograph, and likeness.

**ANSWER:**   Paragraph 34 contains a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 34. Answering further, PeopleConnect denies that it must obtain consent from Californians whose names, photographs, or likenesses appear in its Classmates Yearbook Collection or that those Californians are entitled to notice or compensation.

35.   There is no agreement to arbitrate between Mr. Tseng and Classmates or PeopleConnect. At no time has Mr. Tseng believed any agreement between himself and Classmates or PeopleConnect exists or existed.

**ANSWER:**   Paragraph 35 contains a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect lacks sufficient knowledge to form a belief as to whether there is an agreement to arbitrate between Mr. Tseng and Classmates or PeopleConnect or whether Mr. Tseng believes there was any agreement between himself and Classmates or PeopleConnect and on that basis denies those allegations.

36.   Mr. Tseng hereby expressly repudiates any agreement to arbitrate that Classmates or PeopleConnect may contend exists or existed.

**ANSWER:**   Paragraph 36 contains a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 36. Answering further,

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

PeopleConnect states that the Classmates.com TOS provides specific instructions that must be followed in order for an opt-out of the arbitration provisions in the TOS to be effective. Neither Mr. Tseng nor anyone acting on his behalf has done so. Moreover, Mr. Tseng cannot retain the benefit of such an agreement while purporting to repudiate it.

37.     Mr. Tseng instructed his attorneys to pursue a claim against Classmates in federal court. Mr. Tseng has never authorized, and does not authorize, his attorneys to agree to arbitration on his behalf

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to the truth of the allegations of paragraph 37 and on that basis denies the allegations.

38.     Mr. Tseng is not aware of any agreements between any of his attorneys and Classmates/PeopleConnect.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to the truth of the allegation in paragraph 38 and on that basis denies the allegation.

39.     Mr. Tseng is not aware of any accounts on Classmates.com created by his attorneys.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to the truth of the allegation in paragraph 39 and on that basis denies the allegation.

40.     Mr. Tseng did not instruct his attorneys to investigate the Classmates.com website. Mr. Tseng did not instruct his attorneys to register for an account or agree to a Terms of Service.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to the truth of the allegations in paragraph 40 and on that basis denies the allegations.

41.     To confirm the presence of Mr. Tseng's photograph on Classmates.com and collect the single screenshot shown in the Complaint below, a non-attorney staff member of Turke & Strauss LLP searched for Mr. Tseng's name on the publicly available portion of the Classmates.com website. At the time she performed the search, the publicly available portion of the Classmates.com website did not require agreement to any TOS. The staff member never saw a TOS and did not agree to any TOS.

**ANSWER:**   PeopleConnect lacks sufficient knowledge to form a belief as to the truth of the allegations in paragraph 41 and on that basis denies the allegations.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

42.     None of Mr. Tseng's attorneys or their staff visited any portion of the Classmates.com website that requires agreement to a TOS to gather information related to his claim.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 42. Answering further, PeopleConnect states that Mr. Tseng's counsel have admitted that they visited portions of the Classmates.com website "to gather the facts needed" to file this lawsuit.

43.     All the information supporting Mr. Tseng's complaint is publicly available without agreeing to any TOS. That Mr. Tseng's photograph is on Classmates.com is verifiable by searching for his name on portions of the site that do not require agreeing to the TOS. The advertising flow Classmates uses to promote website subscriptions is described in detail in publicly available documents, including the initial Complaint filed in this case. That Classmates publicly displays a version of the advertising flow that incorporates Mr. Tseng's photograph is reasonably alleged on information and belief, because Classmates uses all student yearbook photographs in the same way.

**ANSWER:**     PeopleConnect admits that when Mr. Tseng's photograph was still on Classmates.com, a person could verify that Mr. Tseng's photograph was on Classmates by searching for Mr. Tseng's name on portions of the site that do not require agreeing to the TOS.  Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 43.

**Plaintiff Jamaal Carney**

44.     Plaintiff Jamaal Carney is a resident of Berkeley, California, in Alameda County. Mr. Carney is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 44 is required.

45.     Mr. Carney has never provided consent to Classmates, written or otherwise, for the commercial use of his name photograph, or likeness.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 45 is required.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

46.     Classmates has never notified, requested consent from, or provided compensation to Mr. Carney for its misappropriation and commercial exploitation of his name, photograph, and likeness.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 46 is required.

47.     There is no agreement to arbitrate between Mr. Carney and Classmates or PeopleConnect. At no time has Mr. Carney believed any agreement between himself and Classmates or PeopleConnect exists or existed.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 47 is required.

48.     Mr. Carney hereby expressly repudiates any agreement to arbitrate that Classmates or PeopleConnect may contend exists or existed.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 48 is required.

49.     Mr. Carney instructed his attorneys to pursue a claim against Classmates in federal court. Mr. Carney has never authorized, and does not authorize, his attorneys to agree to arbitration on his behalf.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 49 is required.

50.     Mr. Carney is not aware of any agreements between any of his attorneys and Classmates/PeopleConnect.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 50 is required.

51.     Mr. Careny [sic] is not aware of any accounts on Classmates.com created by his attorneys.

**ANSWER:**     As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 51 is required.

52.     Mr. Carney did not instruct his attorneys to investigate the Classmates.com website. Mr. Carney did not instruct his attorneys to register for an account or agree to a Terms of Service.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

1    **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

2    paragraph 52 is required.

3    53.    To confirm the presence of Mr. Carney's photograph on Classmates.com and collect the

4    single screenshot shown in the Complaint below, a non-attorney staff member of Turke & Strauss LLP

5    searched for Mr. Carney's name on the publicly available portion of the Classmates.com website. At the

6    time she performed the search, the publicly available portion of the Classmates.com website did not require

7    agreement to any TOS. The staff member never saw a TOS and did not agree to any TOS.

8    **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

9    paragraph 53 is required.

10    54.    None of Mr. Carney's attorneys or their staff visited any portion of the Classmates.com

11    website that requires agreement to a TOS to gather information related to his claim.

12    **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

13    paragraph 54 is required.

14    55.    All the information supporting Mr. Carney's complaint is publicly available without

15    agreeing to any TOS. That Mr. Carney's photograph is on Classmates.com is verifiable by searching for

16    his name on portions of the site that do not require agreeing to the TOS. The advertising flow Classmates

17    uses to promote website subscriptions is described in detail in publicly available documents, including the

18    initial Complaint filed in this case. That Classmates publicly displays a version of the advertising flow that

19    incorporates Mr. Carney's photograph is reasonably alleged on information and belief, because Classmates

20    uses all student yearbook photographs in the same way.

21    **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

22    paragraph 55 is required.

23    <div align="center">**NAMED PLAINTIFFS' FACTUAL ALLEGATIONS**</div>

24    **Plaintiff Abraham**

25    56.    Classmates' Yearbook Collection contains sixteen unique records corresponding to Mr.

26    Abraham, all from yearbooks between the years of 1998 and 2004 from Albuquerque Academy in

27    Albuquerque, New Mexico, where Mr. Abraham attended school. The records uniquely identify Mr.

28

Abraham. All sixteen records include his full name and clearly identify his place of residence and school he attended. Eleven of the records include photographs in which Mr. Abraham's face is plainly visible and identifiable. Various of the records identify Mr. Abraham's participation in school activities such as track, cross country, and chess club. A representative sample of the photographs from three of these records appear as screen captures below:





ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC



**ANSWER:** As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 56 is required.

57. Classmates has and continues to knowingly use the records containing Mr. Abraham's name, photograph, and likeness to advertise, sell, and solicit the purchase of website subscriptions. Users of the Classmates.com website are encouraged to enter the names of people they may know into a search bar. The search bar is indicated by an arrow labeled **"Start your search here!"**.



**ANSWER:** As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 57 is required.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

58.     Users who enter Mr. Abraham's name receive in response a list of the sixteen records in Classmates' Yearbook Collection corresponding to Mr. Abraham. All Classmates users may search for Mr. Abraham's name and view this list, including unregistered users, registered non-paying users, and paying subscribers.



**ANSWER:**     As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 58 is required.

59.     Classmates has and continues to knowingly use the sixteen records containing Mr. Abraham's name, photograph, and likeness to advertise, sell, and solicit the purchase of paid subscriptions to its "CM+" membership plan. Users may search for and view records containing Mr. Abraham's name, photograph, and likeness. For unregistered users and registered non-paying users, Classmates displays both the requested records and at least two forms of advertisement designed to solicit the purchase of a paid subscription to Classmates for a price ranging from $1.50 to $3 per month. First, adjacent to the list of records containing Mr. Abraham's name, photograph, and likeness, Classmates displays an advertisement prompting the user that "It's time to upgrade!" and promising several benefits to paying subscribers, including discounted prices on yearbook reprints. Users who click the link are brought to a page soliciting the purchase of a paid subscription membership.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC



**ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 59 is required.

60.    Second, unregistered users are initially shown a low-resolution version of Mr. Abraham's photograph. Unregistered users who click on Mr. Abraham's photograph looking for a higher-resolution version are shown a pop-up asking them to register in order to view **"full-size yearbooks."**



**ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations of paragraph 60 is required.

61.    Once users have entered the requested information, Classmates displays a second screen soliciting the purchase of a paid subscription plan, for prices ranging from $1.50 to $3. Although users do

Case 3:20-cv-09203-EMC   Document 154   Filed 01/30/23   Page 19 of 56

1  not have to pay for a subscription to view full-resolution records, Classmates does everything in its power
2  to obscure this and make the user believe they must pay to continue. The screen is visually dominated by
3  prompts asking users to select a paid plan and enter credit card or other payment information. A link titled
4  **"No thanks"** written in miniscule font at the far top right corner of the page is the only indication users
5  may proceed without paying money.



15  **ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations
16  of paragraph 61 is required.

17  62.    Classmates has and continues to knowingly use the sixteen records containing Mr.
18  Abraham's name, photograph, and likeness to advertise registered memberships on its website. Registered
19  memberships are free of charge, but registered users must provide personal information including their
20  high school, year of graduation, name, and email address. Classmates earns money from registered
21  members by displaying targeted ads on its website. Upon information and belief, Classmates also earns
22  money from registered members by selling their personal information to third parties.

23  **ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations
24  of paragraph 62 is required.

25  63.    Users may search for and view records containing Mr. Abraham's name, photograph, and
26  likeness. Unregistered users are initially shown low-resolution versions of Mr. Abraham's photographs.
27  Unregistered users who click on a photograph of Mr. Abraham looking for a **"zoomed-in"** higher-resolution

28

19
ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**3-ER-331**

1   version are shown a pop-up soliciting them to register and promising that registration will bring benefits

2   including **"access to all yearbooks"** and the ability to view **"full-sized yearbooks."** As shown in paragraph

3   61 above, users who register are shown a promotional screen promoting the purchase of a subscription

4   immediately after they register.

5       **ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations

6   of paragraph 63 is required.

7       64.    Classmates' purpose in appropriating and providing access to Mr. Abraham's name,

8   photograph, and likeness on its website is to advertise, sell, and solicit the purchase of its products and

9   services, including its paid subscription **"CM+"** membership plan and its non¬paying registered

10   membership plan.

11       **ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations

12   of paragraph 64 is required.

13       65.    Classmates has and continues to knowingly use the sixteen records containing Mr.

14   Abraham's name, photograph, and likeness on and in its products and services by (1) selling access to

15   online records containing Mr. Abraham's name, photograph, and likeness to paying subscribers of its CM+

16   membership plan; and (2) including online records containing Mr. Abraham's name, photograph, and

17   likeness on the free version of its website available to unregistered users and registered non-paying users.

18       **ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations

19   of paragraph 65 is required.

20       66.    Through its actions, Classmates has caused harm to Mr. Abraham by depriving him the fair

21   economic value of his likeness; violating his exclusive right to control his likeness; infringing his

22   intellectual property without compensation; and disturbing his peace of mind. Classmates has earned ill-

23   gotten profits and been unjustly enriched through its use of Mr. Abraham's name, photograph, and likeness.

24       **ANSWER:**    As Mr. Abraham has been dismissed from this lawsuit, no answer to the allegations

25   of paragraph 66 is required.

26

27

28

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**Plaintiff Alice Zhang**

67.     Plaintiff Alice Zhang is a private individual who has no relationship with Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 67 is required.

68.     Ms. Zhang did not give consent to Classmates to use her photographs, likeness, name, or persona in any way. Had Classmates requested her consent, Ms. Zhang would not have provided it.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 68 is required.

69.     Ms. Zhang highly values her personal privacy and her ability to control and prevent the commercial use of her likeness without her consent.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 69 is required.

70.     Classmates uses Ms. Zhang's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Ms. Zhang it uses for this purpose, which it misappropriated without her permission from Ms. Zhang's yearbook from Albany High School in Albany, California.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 70 is required.

71.     A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Ms. Zhang's photograph appears below. For Ms. Zhang's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Ms. Zhang's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC



**ANSWER:**   As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 71 is required.

72.   Classmates incorporates Ms. Zhang's photograph in advertisements for website subscriptions in the same way it incorporates Mr. Abraham's photographs. *See* ¶¶56-65 *above*.

**ANSWER:**   As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 72 is required.

73.   Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Ms. Zhang by name and location. *See* ¶57.

**ANSWER:**   As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 73 is required.

74.   Users who search for Ms. Zhang receive in response a list of results, which include a low-resolution version of the photograph depicting Ms. Zhang as a minor. *See* ¶¶58-59.

**ANSWER:**   As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 74 is required.

75.   Users who click on Ms. Zhang's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Ms. Zhang's photograph. *See* ¶60.

**ANSWER:**   As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 75 is required.

76.   Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com. *See* ¶61.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 76 is required.

77.     Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Zhang's photograph. *See* ¶¶58-59.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 77 is required.

78.     As shown above, Classmates' uses Ms. Zhang's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 78 is required.

79.     Ms. Zhang does not know how Classmates obtained her name and photograph as a child. It appears to have been misappropriated from her high school yearbook.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 79 is required.

80.     On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Ms. Zhang's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 80 is required.

81.     On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Ms. Zhang's photograph, or the yearbook's copyright holder prior to incorporating Ms. Zhang's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Ms. Zhang's yearbook or her photograph.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 81 is required.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

82.     Ms. Zhang has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her likeness without her consent.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 82 is required.

83.     Classmates has injured Ms. Zhang by profiting from its use of her name and likeness without compensating her; by misappropriating and infringing her intellectual property rights without compensation; by violating her statutorily protected right to control the commercial use of her name and likeness; and by disturbing her peace of mind.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 83 is required.

84.     Ms. Zhang is indignant and disgusted by Classmates' violation of her privacy while profiting from the illegal use of her photos as a minor. Ms. Zhang is deeply disturbed by Classmates' use of her name and photographs without her consent. She believes her likeness is rightly hers to control. Classmates' illegal use has left her worried about her inability to control how her name and likeness is used. Ms. Zhang feels that Classmates' use of her photographs, revealing intimate moments of her during her high school years, represents an alarming invasion of her privacy and render her vulnerable to identity theft. She believes Classmates' use of her photos as an adolescent in ads to promote subscriptions encourages and enables stalking and pedophilic behaviors.

**ANSWER:**     As Ms. Zhang has been dismissed from this lawsuit, no answer to the allegations of paragraph 84 is required.

**Plaintiff Wayne Tseng**

85.     Plaintiff Wayne Tseng is a private individual who has no relationship with Classmates or PeopleConnect. He has never visited, used, or subscribed to Classmates.com.

**ANSWER:**     PeopleConnect lacks sufficient knowledge to form a belief as to whether Mr. Tseng has a relationship with Classmates or PeopleConnect and on that basis denies the allegation. PeopleConnect denies the remaining allegations of paragraph 85.

24

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**3-ER-336**

86.     Mr. Tseng did not give consent to Classmates to use his photographs, likeness, name, or persona in any way. Had Classmates requested his consent, Mr. Tseng would not have provided it.

**ANSWER:**    The allegation in the first sentence of paragraph 86 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegation in the first sentence of  paragraph 86. PeopleConnect lacks sufficient knowledge to form a belief as to the allegation in the second sentence of paragraph 86 of whether Mr. Tseng would have provided consent to Classmates and on that basis denies the allegation.

87.     Mr. Tseng highly values his personal privacy and his ability to control and prevent the commercial use of his likeness without his consent.

**ANSWER:**    PeopleConnect lacks sufficient knowledge to form a belief as to how Mr. Tseng values his ability to control and prevent the commercial use of his likeness without his consent and on that basis denies the allegation. PeopleConnect denies the remaining allegations of paragraph 87.

88.     Classmates uses Mr. Tseng's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Mr. Tseng it uses for this purpose, which it misappropriated without his permission from Mr. Tseng's yearbook from Albany High School in Albany, California.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 88.

89.     A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Mr. Tseng's photograph appears below. For Mr. Tseng's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Mr. Tseng's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.

**ANSWER:** PeopleConnect admits that the screenshot depicted in paragraph 89 could have been captured from the Classmates website. Answering further, PeopleConnect lacks sufficient knowledge to form a belief as to whether the screenshot was collected by a staff member at Turke & Strauss from a part of the Classmates website that does not require assent to the TOS to access or whether the staff member did not see and did not agree to a TOS and on that basis denies those allegations. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph 89. PeopleConnect also states that Mr. Tseng's counsel could have only taken a low-resolution screenshot, regardless of whether the low-resolution format was done in the interest of Mr. Tseng's privacy or the privacy of others. Individuals who do not have an account on the Classmates.com website and have not agreed to the website's TOS can only access the first four to five pages of the yearbook in high-resolution format. They can only see the rest of the images in that yearbook in a low-resolution format.

90. Classmates incorporates Mr. Tseng's photograph in advertisements for website subscriptions in the same way it incorporates Mr. Abraham's photographs. *See* ¶¶56-65 *above*.

**ANSWER:** PeopleConnect denies the allegations of paragraph 90. Furthermore, no answer is required with respect to paragraphs 56–65, which solely relate to Mr. Abraham who has been dismissed from this lawsuit.

91. Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Mr. Tseng by name and location. *See* ¶57.

**ANSWER:** PeopleConnect admits that it has a publicly available landing page at Classmates.com. Unless expressly admitted here, PeopleConnect denies the remaining allegations of

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

paragraph 91. Furthermore, no answer is required with respect to paragraph 57, which solely relates to Mr. Abraham who has been dismissed from this lawsuit.

92.     Users who search for Mr. Tseng receive in response a list of results, which include a low-resolution version of the photograph depicting Mr. Tseng as a minor. *See* ¶¶58¬59.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 92. Furthermore, no answer is required with respect to paragraphs 58–59, which solely relate to Mr. Abraham who has been dismissed from this lawsuit.

93.     Users who click on Mr. Tseng's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com **"to view full-size yearbooks."** The user must interact with the pop-up to continue viewing Mr. Tseng's photograph. *See* ¶60.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 93. Furthermore, no answer is required with respect to paragraph 60, which solely relates to Mr. Abraham who has been dismissed from this lawsuit.

94.     Once users have clicked **"Submit"** on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com. *See* ¶61.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 94. Furthermore, no answer is required with respect to paragraph 61, which solely relates to Mr. Abraham who has been dismissed from this lawsuit.

95.     Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Mr. Tseng's photograph. *See* ¶¶58-59.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 95. Furthermore, no answer is required with respect to paragraphs 58–59, which solely relate to Mr. Abraham who has been dismissed from this lawsuit.

96.     As shown above, Classmates' uses Mr. Tseng's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 96.

97.     Mr. Tseng does not know how Classmates obtained his name and photograph as a child. It appears to have been misappropriated from his high school yearbook.

**ANSWER:**     PeopleConnect lacks sufficient knowledge to form a belief as to whether Mr. Tseng knows how Classmates obtained his name and photograph and on that basis denies the allegation. PeopleConnect denies the remaining the allegations of paragraph 97.

98.     On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Mr. Tseng's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

**ANSWER:**     PeopleConnect denies the allegations of paragraph 98.

99.     On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Mr. Tseng's photograph, or the yearbook's copyright holder prior to incorporating Mr. Tseng's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Mr. Tseng's yearbook or his photograph.

**ANSWER:**     Paragraph 99 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 99. Answering further, PeopleConnect denies that it is required to obtain permission from the yearbooks' authors, the photographer who took Mr. Tseng's photograph, or the yearbook's copyright holder, or hold the copyright in Mr. Tseng's yearbook or photograph.

100.     Mr. Tseng has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his likeness without his consent.

**ANSWER:**     Paragraph 100 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 100.

101.     Classmates has injured Mr. Tseng by profiting from its use of his name and likeness without compensating him; by misappropriating and infringing his intellectual property rights without compensation; by violating his statutorily protected right to control the commercial use of his name and likeness; and by disturbing his peace of mind.

1    **ANSWER:**    PeopleConnect denies the allegations of paragraph 101.

2    102.    Classmates' illegal actions caused Mr. Tseng mental anguish and harmed his peace of mind.

3    Upon learning about Classmates' actions, Mr. Tseng was upset and disturbed by Classmates' use of his

4    name and photograph without his consent. Mr. Tseng believes his likeness is rightly his to control.

5    Classmates' illegal use has left him worried and uncertain about his inability to control how his name and

6    likeness is used. Mr. Tseng feels that Classmates' use of his photograph represents an alarming invasion of

7    his privacy. Mr. Tseng feels deeply uncomfortable in the knowledge that Classmates is using his name and

8    likeness to advertise a subscription product he does not endorse or approve of

9    **ANSWER:**    PeopleConnect lacks sufficient knowledge to form a belief as to Mr. Tseng's

10   feelings and emotions that are allegedly caused by Classmates' actions and on that basis denies those

11   allegations. PeopleConnect denies the remaining allegations of paragraph 102.

12   **Plaintiff Jamaal Carney**

13   103.    Plaintiff Jamaal Carney is a private individual who has no relationship with Classmates or

14   PeopleConnect. He has never visited, used, or subscribed to Classmates.com.

15   **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

16   paragraph 103 is required.

17   104.    Mr. Carney did not give consent to Classmates to use his photographs, likeness, name, or

18   persona in any way. Had Classmates requested his consent, Mr. Carney would not have provided it.

19   **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

20   paragraph 104 is required.

21   105.    Mr. Carney highly values his personal privacy and his ability to control and prevent the

22   commercial use of his likeness without his consent.

23   **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of

24   paragraph 105 is required.

25   106.    Classmates uses Mr. Carney's yearbook photograph as a minor child in advertisements

26   promoting website subscriptions. Classmates possesses at least one photograph of Mr. Carney it uses for

27

28

this purpose, which it misappropriated without his permission from Mr. Carney's yearbook from San Leandro High School in San Leandro, California.

**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 106 is required.

107.    A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Mr. Carney's photograph appears below. For Mr. Carney's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Mr. Carney's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.



**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 107 is required.

108.    Classmates incorporates Mr. Carney's photograph in advertisements for website subscriptions in the same way it incorporates Mr. Abraham's photographs. *See* ¶¶56-65 *above*.

**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 108 is required.

109.    Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Mr. Carney by name and location. *See* ¶57.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**3-ER-342**

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 109 is required.

110.   Users who search for Mr. Carney receive in response a list of results, which include a low-resolution version of the photograph depicting Mr. Carney as a minor. *See* ¶¶58¬59.

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 110 is required.

111.   Users who click on Mr. Carney's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Mr. Carney's photograph. *See* ¶60.

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 111 is required.

112.   Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com. *See* ¶61.

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 112 is required.

113.   Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Carney's photograph. *See* ¶¶58-59.

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 113 is required.

114.   As shown above, Classmates' uses Mr. Carney's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 114 is required.

115.   Mr. Carney does not know how Classmates obtained his name and photograph as a child. It appears to have been misappropriated from his high school yearbook.

**ANSWER:**   As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 115 is required.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

116.    On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Mr. Carney's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 116 is required.

117.    On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Mr. Carney's photograph, or the yearbook's copyright holder prior to incorporating Mr. Carney's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Mr. Carney's yearbook or his photograph.

**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 117 is required.

118.    Mr. Carney has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his likeness without his consent.

**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 118 is required.

119.    Classmates has injured Mr. Carney by profiting from its use of his name and likeness without compensating him; by misappropriating and infringing his intellectual property rights without compensation; by violating his statutorily protected right to control the commercial use of his name and likeness; and by disturbing his peace of mind.

**ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of paragraph 119 is required.

120.    Classmates' illegal actions caused Mr. Carney mental anguish and harmed his peace of mind. Upon learning about Classmates' actions, Mr. Carney was upset and disturbed by Classmates' use of his name and photograph without his consent. Mr. Carney believes his likeness is rightly his to control. Classmates' illegal use has left him worried and uncertain about his inability to control how his name and likeness is used. Mr. Carney feels that Classmates' use of his photograph represents an alarming invasion

1  of his privacy. Mr. Carney feels deeply uncomfortable in the knowledge that Classmates is using his name
2  and likeness to advertise a subscription product he does not endorse or approve of

3  **ANSWER:**    As Mr. Carney has been dismissed from this lawsuit, no answer to the allegations of
4  paragraph 120 is required.

5  <div align="center">**STATEMENT OF COMMON FACTS**</div>

6  121.    Classmates' business model relies on collecting personal information from hundreds of
7  thousands of school yearbooks. Classmates scans yearbooks into a digital format, then extracts personal
8  information including names, photographs, schools attended, years of attendance, cities of residence, and
9  biographical details. Classmates aggregates the extracted information into digital records associated with
10 specific individuals. Classmates then uses the records to advertise and sell its products and services. Those
11 products and services include memberships to the website Classmates.com, which Classmates sells for up
12 to $3 per month.

13 **ANSWER:**    PeopleConnect denies the allegations of paragraph 121.

14 122.    According to the Classmates.com website, Classmates' Yearbook Collection contains
15 records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the
16 total number of records in the Collection or a breakdown by state, it is likely the class includes millions of
17 Californians whose names, photographs, and likenesses appear in the Classmates Yearbook Collection.

18 **ANSWER:**    PeopleConnect admits the Classmates.com website provides access to over 400,000
19 yearbooks. Unless expressly admitted here, PeopleConnect denies the remaining allegations of paragraph
20 122.

21 123.    Classmates did not ask consent from, given notice to, or provide compensation to Plaintiffs
22 or the class before using their names, photographs, and biographical information.

23 **ANSWER:**    The allegations of paragraph 123 consist of legal conclusions to which no response
24 is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 123.
25 Answering further, to the extent Plaintiff refers to information contained in yearbook previews,
26 PeopleConnect denies any characterization that the information is "their[s]" as it implies ownership over
27 publicly available information, which cannot be owned as a matter of law. PeopleConnect further denies

28

<div align="center">33

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC</div>

**3-ER-345**

that consent or notice is necessary or that Plaintiff is entitled to any sum of money and, therefore, denies the allegations of paragraph 123.

124.    The names, photographs, cities of residence, likeness, and identities that Classmates aggregates into individual records uniquely identify specific individuals.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 124.

125.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its products and services, including (1) its **"CM+"** subscription membership; and (2) the free version of its website, from which Classmates profits by selling targeted advertisements and driving users to its paid products and subscriptions.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 125.

126.    Classmates employs a variety of advertising techniques through which it exploits the names, photographs, and likenesses of Plaintiffs and the class, many of which are detailed in the Plaintiff-specific portion of this complaint. Across all of the advertising techniques it uses, Classmates seeks to translate its users' interest in seeing pictures of and learning personal details about Plaintiffs and the class, into the purchase of a Classmates product or service (or the use of a website from which Classmates drives profit).

**ANSWER:**    PeopleConnect denies the allegations of paragraph 126.

127.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the Class on and in its products and services by including the records it has created about Plaintiffs and the Class on its website.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 127.

128.    On information and belief, Classmates makes no attempt to contact or gain the consent of the people whose names, photographs, likenesses, biographical information, and identities it uses to advertise website subscriptions.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 128. Answering further, PeopleConnect denies that it must obtain consent from Californians whose names, photographs, and biographical information appear in its Classmates Yearbook Collection.

129.   On information and belief, Classmates has received no indication that the authors, publishers, or copyright holders of the yearbooks in its database intended the yearbooks to be published on the Internet or used to promote paid subscriptions.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 129.

130.   The vast majority of people whose personal information Classmates has digitally extracted and aggregated in its Classmates Yearbook Collection have no business relationship with Classmates, are not Classmates subscribers, and are not subject to a Terms of Service or any other agreement with Classmates.

**ANSWER:**   PeopleConnect denies the allegations of paragraph 130.

131.   Through its actions, Classmates has caused harm to Plaintiffs and the Class by depriving them the fair economic value of their likenesses; violating their exclusive rights to control their likenesses; infringing their intellectual property without compensation; and disturbing their peace of mind. Classmates has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, and likenesses of Plaintiffs and the class.

**ANSWER:**   Paragraph 131 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 131.

132.   Classmates knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof Code § 17200 *et seq.*; and California Unjust Enrichment law.

**ANSWER:**   Paragraph 132 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 132.

## CLASS ALLEGATIONS

133.   Plaintiffs bring this complaint on behalf of themselves and a Class of all California residents who (a) are not currently subscribers of any Classmates services, (b) have never donated a yearbook to Classmates, and (c) whose names, photographs, and/or likenesses were extracted from yearbooks by

35

1  Classmates and placed on the Classmates website as part of its Yearbook Collection, without Classmates

2  obtaining their consent. Excluded from the class are (a) Plaintiffs' counsel; (b) Classmates, its officers and

3  directors, counsel, successors and assigns; (c) any entity in which Classmates has a controlling interest;

4  and (d) the judge to whom this case is assigned and the judge's immediate family.

5        **ANSWER:**    PeopleConnect admits only that Plaintiff purports to bring this complaint on behalf

6  of a class and that Plaintiff claims to define this class as set forth in paragraph 133. Unless expressly

7  admitted here, PeopleConnect denies the remaining allegations of paragraph 133.

8        134.    The members of the proposed class are so numerous that joinder of individual claims is

9  impracticable. Classmates represents that its Yearbook Collection contains records from over 400,000

10  yearbooks in the United States. Each yearbook contains the names and likeness of hundreds, sometimes

11  thousands of individuals. Even accounting for the fact that only a portion of the yearbooks are from

12  California, that some individuals in Classmates' database are deceased or no longer reside in California,

13  and that the class excludes current Classmates subscribers (Classmates has about 4 million subscribers

14  worldwide), the class likely numbers in the millions.

15        **ANSWER:**    Paragraph 134 consists of a legal conclusion to which no response is required. To

16  the extent a response is required, PeopleConnect denies the allegations of paragraph 134.

17        135.    There are significant questions of fact and law common to the members of the class. These

18  issues include:

19          a.    Whether Classmates' extraction and aggregation of personal information about

20              Plaintiffs and the class members, including names, yearbook photographs, yearbook

21              years, cities of residence, schools attended, and interest and hobbies, in its

22              Classmates Yearbook Collection, and selling of that information via paid

23              subscription plans, constitute the knowing use of another's name, photograph, or

24              likeness, in any manner, on or in products, merchandise or goods within the meaning

25              of Cal. Civ. Code § 3344;

26          b.    Whether Classmates' extraction and aggregation of personal information about

27              Plaintiffs and the class members, including names, yearbook photographs, yearbook

28

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

years, cities of residence, schools attended, and interests and hobbies, and use of that information in the advertising techniques described in this complaint, constitutes the knowing use of another's name, photograph, or likeness for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

c.   Whether Plaintiffs and the class consented to the use of their names, photographs, and likenesses in Classmates products and advertisements;

d.   Whether Classmates' use of names, photographs, and likeness constitutes a use in connection with news or public affairs for which consent is not required;

e.   Whether Classmates' conduct as described in this complaint violated California's Unfair Competition Law;

f.   Whether Classmates was unjustly enriched as a result of the conduct described in this complaint; and

g.   Whether Plaintiffs and members of the class are entitled to injunctive, declaratory and monetary relief as a result of Classmates' conduct as described in this complaint.

**ANSWER:**   Paragraph 135 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 135, including subparts a through g.

136.   Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by Classmates misappropriation and misuse of their names, likenesses, photographs, and other personal information.

**ANSWER:**   Paragraph 136 consists of a legal conclusion to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 136.

137.   The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the class, and they are represented by qualified counsel experienced in class action litigation of this nature.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

1       **ANSWER:**     Paragraph 137 consists of a legal conclusion to which no response is required. To

2    the extent a response is required, PeopleConnect denies the allegations of paragraph 137.

3       138.    A class action is superior to other available methods for the fair and efficient adjudication

4    of these claims because individual joinder of the claims of all members of the proposed class is

5    impracticable. Many members of the class do not have the financial resources necessary to pursue this

6    claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost

7    of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in

8    which individualized cases would proceed. Individual litigation would greatly increase the time and

9    expense needed to resolve a dispute concerning Classmates' common actions towards an entire group.

10    Class action procedures allow for the benefits of unitary adjudication, economy of scale, and

11    comprehensive supervision of the controversy by a single court.

12       **ANSWER:**     Paragraph 138 consists of a legal conclusion to which no response is required. To

13    the extent a response is required, PeopleConnect denies the allegations of paragraph 138.

14       139.    The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules

15    of Civil Procedure. Classmates has acted on ground generally applicable to the proposed class, such that

16    final injunctive and declaratory relief is appropriate with respect to the class as a whole.

17       **ANSWER:**     Paragraph 139 consists of a legal conclusion to which no response is required. To

18    the extent a response is required, PeopleConnect denies the allegations of paragraph 139.

19       140.    The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and

20    fact common to class members predominate over questions affecting individual members, and a class

21    action is superior to other available methods for fairly and efficiency adjudicating the controversy.

22       **ANSWER:**     Paragraph 140 consists of a legal conclusion to which no response is required. To

23    the extent a response is required, PeopleConnect denies the allegations of paragraph 140.

24                        **FIRST CAUSE OF ACTION**

25                        **(Cal. Civ. Code § 3344)**

26       141.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of

27    this complaint.

28

---

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**ANSWER:** PeopleConnect admits that Plaintiff purports to incorporate by reference the allegations contained in all preceding paragraphs of this complaint, and PeopleConnect repeats and incorporates by reference its responses to each of the preceding paragraphs as if fully set out here.

142. California's Right of Publicity Statute, California Civil Code § 3344, prohibits and provides damages for the knowing misappropriation of a name, voice, signature, photograph, or likeness in advertising or soliciting without prior consent.

**ANSWER:** Paragraph 142 does not contain allegations of fact and, as such, no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 142 as an incomplete description of the statute. PeopleConnect refers to that statute for its true meaning and effect.

143. By engaging in the forgoing acts and omissions, Classmates knowingly used class members' names, photographs, and likenesses in its products and services for the purpose of advertising and selling its services, without class members' consent.

**ANSWER:** Paragraph 143 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 143.

144. Each use of a class member's name, photograph, or likeness is a separate and distinct violation of California Civil Code § 3344 giving rise to damages.

**ANSWER:** Paragraph 144 consists of legal conclusions to which no response is required. To the extent a response is required, PeopleConnect denies the allegations of paragraph 144.

145. Plaintiffs seek declaratory, injunctive, and monetary damages for themselves and on behalf of each member of the proposed class as provided for in California Civil Code § 3344, including statutory damages equal to the greater of $750 per violation, actual damages, or profits from Classmates' illegal actions, punitive damages, and the award of attorneys' fees and costs in the event Plaintiffs prevail in this action.

**ANSWER:** PeopleConnect admits that Plaintiff purports to seek declaratory, injunctive, and monetary damages for themselves and on behalf of each member of the proposed class, but denies that such relief is appropriate.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

146.    Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294. The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

**ANSWER:**    PeopleConnect denies the allegations of paragraph 146. Answering further, there is only one Defendant in this above-captioned case, PeopleConnect.

## SECOND CAUSE OF ACTION

### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

147.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

**ANSWER:**    No response is required to paragraph 147 to the extent this cause of action is "based on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a response is required, PeopleConnect denies such allegations. For remaining allegations, PeopleConnect admits that Plaintiff purports to incorporate by reference the allegations contained in all preceding paragraphs of this complaint, and PeopleConnect repeats and incorporates by reference its responses to each of the preceding paragraphs as if fully set out here.

148.    Classmates has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof Code. § 17200 *et seq.* ("UCL").

**ANSWER:**    No response is required to paragraph 80 to the extent this cause of action is "based on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a response is required, PeopleConnect denies such allegations. PeopleConnect denies the remaining allegations of paragraph 148.

149.    As described in this complaint, Classmates' misappropriation and use without consent of Plaintiffs' and class members' names, photographs, likenesses, and personal information is a violation of California's Right to Publicity Statute, Cal. Civ. Code § 3344.

**ANSWER:**    No response is required to paragraph 149 to the extent this cause of action is "based on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a

40

1   response is required, PeopleConnect denies such allegations. PeopleConnect denies the remaining
2   allegations of paragraph 149.

3       150.   By engaging in the conduct described in this complaint and violating California law,
4   Classmates engaged in and continues to engage in **"unlawful"** business acts and practices prohibited by
5   the UCL.

6       **ANSWER:**   No response is required to paragraph 150 to the extent this cause of action is "based
7   on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a
8   response is required, PeopleConnect denies such allegations. PeopleConnect denies the remaining
9   allegations of paragraph 150.

10       151.   As a result of Classmates**'** actions, Plaintiffs and the class have been injured. Plaintiffs and
11   members of the class each lost the economic value of their likenesses, their exclusive right to control their
12   likenesses, their right to the value of their intellectual property, and their right to freedom from intrusion
13   on their peace of mind. Plaintiffs and members of the class also lost the right to refuse consent and protect
14   their privacy, as guaranteed by California law.

15       **ANSWER:**   No response is required to paragraph 151 to the extent this cause of action is "based
16   on unfairness," because the Court found the "17200 claim based on unfairness waived." To the extent a
17   response is required, PeopleConnect denies such allegations. PeopleConnect denies the remaining
18   allegations of paragraph 151.

19                       **THIRD CAUSE OF ACTION**
20                       **(Unjust Enrichment)**

21       152.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of
22   this complaint.

23       **ANSWER:**   PeopleConnect admits that Plaintiff purports to incorporate by reference the
24   allegations contained in all preceding paragraphs of this complaint, and PeopleConnect repeats and
25   incorporates by reference its responses to each of the preceding paragraphs as if fully set out here.

26       153.   Plaintiffs and members of the class have conferred an unwarranted benefit on Classmates.
27   Classmates**'** business model centers around using personal information that rightfully belongs to Plaintiffs

28

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

and members of the class to sell its products and services. Classmates uses the personal information it misappropriated without consent. Each **"CM+"** subscription sold to users who then gain access to records that rightfully belong to class members, and all advertising revenue collected from the delivery of ads on pages displaying records that rightfully belong to class members, represents an unwarranted benefit conferred upon Classmates by the class.

> **ANSWER:**   PeopleConnect denies the allegations of paragraph 153.

154.   Under principles of equity and good conscience, Classmates should not be permitted to retain the benefits it gained by its actions.

> **ANSWER:**   PeopleConnect denies the allegations of paragraph 154.

155.   Plaintiffs and members of the class have suffered loss as a direct result of Classmates' conduct.

> **ANSWER:**   PeopleConnect denies the allegations of paragraph 155.

156.   Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class members, seek the imposition of a constructive trust and restitution of proceeds Classmates received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest pursuant to Cal. Civ. Proc. Code § 1021.5.

> **ANSWER:**   PeopleConnect admits that Plaintiffs purport to seek the imposition of a constructive trust and restitution and attorneys' fees, cost, and interest, on behalf of the entire proposed class, but denies that such relief is appropriate.

### PRAYER FOR RELIEF

157.   WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situation, hereby demand judgment against Defendant Classmates as follows:

(a)   For an order certifying the proposed class and appointing Plaintiffs and their counsel to represent the class;

(b)   For a declaration that Classmates' acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of California law;

(c)     For preliminary and permanent injunctive relief enjoining and preventing Classmates from continuing to operate its Classmates website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(d)     For an order enjoining Classmates from continuing the unlawful and unfair conduct described in this complaint;

(e)     For restitution for Plaintiffs and members the class for the value that Defendants derived from misappropriating their likenesses;

(f)     For an award of damages, including without limitation damages for actual harm, profits earned by Classmates, and statutory damages;

(g)     For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(h)     For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

**ANSWER:**   PeopleConnect denies that Plaintiff is entitled to any relief, including class certification or any of the other requested relief. PeopleConnect denies any remaining allegations not previously addressed in this Answer.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

**ANSWER:**   PeopleConnect admits only that Plaintiff has requested a jury trial. PeopleConnect demands a jury trial for all individual and Class claims so triable.

### STATEMENT OF AFFIRMATIVE AND OTHER DEFENSES

PeopleConnect incorporates by reference the above answers as though fully set forth herein and, in further answer to the Complaint, asserts the following affirmative and other defenses, which do not relieve the Plaintiff of the burden of proof for each and every element of their claims, for damages to which Plaintiff alleges they are entitled, or for any other matter upon which Plaintiff bears the burden of proof as a matter of law. PeopleConnect does not intend to characterize any particular defense as "affirmative."

Additional facts and evidence in support of the following defenses will be developed during discovery and presented in a motion for summary judgment and/or opposition to any motion by Plaintiff for class certification.

## FIRST DEFENSE (STATUTES OF LIMITATIONS)

1.     Plaintiff's and certain proposed class members' claims are barred in whole or in part by the applicable statutes of limitations.

2.     A two-year statute of limitations applies to Plaintiff's right of publicity claim under § 3344 and unjust enrichment claim. Cal. Code Civ. Proc. § 339(1).

3.     Plaintiff filed their Complaint on December 18, 2020. Wayne Tseng first became a plaintiff in this case when he filed the First Amended Complaint on August 4, 2022.

4.     Plaintiff's and certain proposed class members' right of publicity claims are time-barred if their claims accrued at least by December 18, 2018, including if their names and images first appeared on Classmates.com at least by to December 18, 2018.

5.     Classmates.com has included yearbooks since 2010. Individuals, including Plaintiff and certain proposed class members, knew or should have known that yearbooks containing their names and images appeared on the website.

6.     Plaintiff Wayne Tseng attended Albany High School in Albany, California from 1997 to 2001.

7.     Mr. Tseng appeared in Albany High School yearbooks that were published between 1997 and 2001.

8.     The Albany High School yearbooks published between 1997 and 2001 were added to the Classmates website on June 14, 2014 and therefore, became available to view by anyone who visited website.

9.     Mr. Tseng's name and images in those yearbooks existed in the same form since they were added to the Classmates.com website.

10.     Prior to the filing of this lawsuit, PeopleConnect did not change or alter the way in which Mr. Tseng's name or images were displayed on the Classmates.com website.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

11.     Following the filing of the Amended Complaint, PeopleConnect suppressed Mr. Tseng's name and images on the Classmates.com website.

12.     Prior to the suppression of Mr. Tseng's name and images on the Classmates.com website, a non-registered user, as an individual who has not created an account on the Classmates.com website and has not agreed to the website's Terms of Service, could use the websites search function to search for Mr. Tseng.

13.     As a consequence, Plaintiff Tseng's claim is time-barred, including because yearbooks containing his name were added to and available on Classmates.com more than two years before the Complaint was filed and more than two years before Mr. Tseng filed the First Amended Complaint.

**SECOND DEFENSE (LACK OF ACTIONABLE INJURY AND STATUTORY STANDING)**

14.     Plaintiff's and proposed class members' claims are barred in whole or in part because Plaintiff and purported class members have suffered no actionable injury, including the loss of money or property.

**THIRD DEFENSE (UNJUST ENRICHMENT)**

15.     Plaintiff's and proposed class members' claims are barred in whole or in part because Plaintiff would be unjustly enriched by any recovery from PeopleConnect.

16.     Plaintiff and proposed class members seek relief from PeopleConnect in the form of actual damages, statutory damages, and profits as a result of PeopleConnect's alleged use of their names and images on Classmates.com

17.     PeopleConnect has conferred substantial benefits on Plaintiff and proposed class members.

18.     Through its website Classmates.com, PeopleConnect provides access to a collection of over 400,000 yearbooks from across the country. This collection provides substantial personal benefit to individuals in that it allows individuals to look up their old yearbooks or yearbooks of their friends and relatives, relive old memories, and reconnect with former schoolmates.

19.     The collection also provides substantial benefit to the public at large. Yearbooks serve an important function as primary-source documents memorializing a community's activity in a given year and inform the works of historians, archivists, journalists, genealogists and other scholars.

20.     PeopleConnect also provides substantial benefits to users who register on Classmates.com. These users are given access to tools that enable them to communicate with old schoolmates, share memories, and plan reunions among other features. Each of these features provide substantial benefit to Plaintiff and proposed class members who use Classmates.com.

21.     Awarding Plaintiff and the proposed class members, including Plaintiff and proposed class members who have used Classmates.com, the relief they seek would be unjust in light of the substantial benefits PeopleConnect has conferred upon them.

## FOURTH DEFENSE (§ 3344(D) EXEMPTION)

22.     Plaintiff's and proposed class members' claims are barred in whole or in part by California Civil Code Section 3344 ("§ 3344")'s "public affairs" statutory exemption. Cal Civ. Code § 3344(d).

23.     Classmates.com provides access to a collection of over 400,000 yearbooks from across the country.

24.     PeopleConnect presents the yearbooks for educational, amusement, and enlightenment purposes.

25.     Through its online collection of high school yearbooks, PeopleConnect makes available information related to real-life events that are an area of interest to many people, from looking up relatives and family members to reliving long lost memories.

26.     Yearbooks serve an important function as primary-source documents memorializing a community's activity in a given year and inform the works of historians, archivists, genealogists, journalists, and other scholars.

27.     The public's interest in the information on Classmates.com is also reflected by the fact that news outlets report on yearbooks and their content.

28.     Accordingly, Plaintiff's and proposed class members' claims premised on the information PeopleConnect publishes in its online yearbook collection are barred by the "public affairs" exception of § 3344.

## FIFTH DEFENSE (CONSENT)

29.     Plaintiff's and proposed class members' claims are barred in whole or in part because they

consented to the use of their identities in yearbooks in various ways.

30.     Plaintiff and certain proposed class members may have provided a blanket consent to their schools, either directly or through their guardians, regarding the use of their information and any photographs taken of them related to school.

31.     Plaintiff and certain proposed class members also may have provided a blanket consent to the yearbook publishers, either directly or through their guardians, in order for their names and their photographs to be included in the yearbook at the time they sat for the yearbook photographs.

32.     Plaintiff and certain proposed class members also may have consented to the use of their information through their use of third-party websites, many of which contain terms of service that require consent to the unlimited use of any information available on or provided to the website.

33.     Plaintiff and proposed class members may have also registered for an account, donated yearbooks, or used Classmates.com on or after September 1, 2021, thereby consenting to the use of their information on the website by searching for themselves on the website or authorizing another person to search for them.

**SIXTH DEFENSE (LACHES)**

34.     Plaintiff's and certain proposed class members' claims are barred in whole or in part by the doctrine of laches.

35.     Plaintiff filed their Complaint on December 18, 2020, in which they allege that PeopleConnect uses their names and images on Classmates.com without their consent.

36.     Classmates.com has included yearbooks since 2010.

37.     Individuals, including Plaintiff and certain proposed class members, knew or should have known that yearbooks containing their names and images appeared on the website for years prior to the filing of the Complaint.

38.     Plaintiff and certain proposed class members unreasonably and inexcusably delayed in seeking relief or asserting any claims related to the use of their names and images on Classmates.com. Plaintiff Tseng unreasonably delayed in bringing his claims against PeopleConnect because he did not file his complaint until August 4, 2022, more than six years after his name and image appeared on

---

47

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

Classmates.com.

39.     PeopleConnect has been prejudiced by Plaintiff's and certain proposed class members' unreasonable delay in asserting their claims, including because relevant evidence has been lost, such as testimony that may no longer be available because memories have faded.

40.     Under the circumstances, laches bars Plaintiff's and certain proposed class members' claims because it would be inequitable to allow them to recover anything in light of their unreasonable delay and prejudice to PeopleConnect.

### SEVENTH DEFENSE (FIRST AMENDMENT)

41.     Plaintiff's and proposed class members' claims are barred in whole or in part by the First Amendment and Fourteenth Amendment of the U.S. Constitution.

42.     Classmates.com provides access to a collection of over 400,000 yearbooks from across the country.

43.     The publication of yearbooks, including publicly available information, is newsworthy, informational, noncommercial speech that is entitled to First Amendment protection, regardless of whether the yearbooks are sold for profit.

44.     PeopleConnect's online collection of yearbooks serves both informative and cultural purposes, making available information related to real-life events that are an area of interest to many people, from looking up relatives and family members to reliving long lost memories.

45.     PeopleConnect's online collection of yearbooks allows for dissemination of information among the general public and school communities.

46.     Yearbooks serve an important function as primary-source documents memorializing a community's activity in a given year and inform the works of historians, archivists, genealogists, journalists, and other scholars.

### EIGHTH DEFENSE (OVERBREADTH)

47.     Plaintiff's and proposed class members' claims are barred in whole or in part by the First and Fourteenth Amendments of the U.S. Constitution because Plaintiff's theories of liability are unconstitutionally overbroad in that they prohibit constitutionally protected speech, including publicly

1  available, newsworthy information about people.

2      48.    Classmates.com provides access to a collection of over 400,000 yearbooks from across the

3  country.

4      49.    Plaintiff alleges that PeopleConnect has violated § 3344 by maintaining this collection of

5  yearbooks and purportedly displaying Plaintiff's and proposed class members' names and photographs on

6  Classmates.com without their consent.

7      50.    PeopleConnect's online collection of yearbooks serves both informative and cultural

8  purposes that are protected by the First Amendment, making available information related to real-life

9  events that are an area of interest to many people, from looking up relatives and family members, to reliving

10  long lost memories.

11      51.    PeopleConnect's online collection of yearbooks allows for dissemination of information

12  among the general public and school communities, which is core speech protected by the First Amendment.

13      52.    Yearbooks serve an important function as primary-source documents memorializing a

14  community's activity in a given year and inform the works of historians, archivists, genealogists,

15  journalists, and other scholars.

16  **NINTH DEFENSE (STATUTORY DAMAGES BARRED)**

17      53.    Plaintiff's and proposed class members' claims are barred in whole or in part because the

18  statutory damages provision of § 3344 violates the Due Process Clause of the Fourteenth Amendment of

19  the U.S. Constitution in that statutory damages are excessive, severe, and wholly disproportionate to the

20  harm allegedly suffered by Plaintiff and/or any putative class member.

21  **TENTH DEFENSE (PUNITIVE DAMAGES BARRED)**

22      54.    Plaintiff's and proposed class members' claim for punitive damages is barred in whole or

23  in part because it would violate PeopleConnect's guarantees of due process, equal protection, protection

24  against excessive fines, and protection against multiple punishments under the U.S. Constitution. An award

25  of punitive damages in this case would grossly exceed any legitimate interest in punishment and deterrence

26  for the publication of publicly available, newsworthy information.

27

28

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**ELEVENTH DEFENSE (COMMUNICATIONS DECENCY ACT)**

55.     Plaintiff's and proposed class members' claims are barred in whole or in part by the Communications Decency Act, 47 U.S.C. § 230, because PeopleConnect is an interactive computer service provider that is immune from liability for the information about people available through its website. In addition, PeopleConnect displays information about people created by and provided by third party data providers.

**TWELTH DEFENSE (COPYRIGHT ACT)**

56.     Plaintiff's and proposed class members' claims are preempted in whole or in part by the Copyright Act because yearbooks are copyrightable works, and federal copyright law would be the exclusive means of redress if Plaintiff allegedly suffered a harm from their dissemination.

**THIRTEENTH DEFENSE (DORMANT COMMERCE CLAUSE)**

57.     Article I, Section 8, Clause 3 of the United States Constitution bars Plaintiff's claims in whole or in part.

58.     PeopleConnect is incorporated in Delaware with its principal place of business in Bellevue, Washington.

59.     Users of Classmates.com are located in every state.

60.     Because the yearbook collection on Classmates.com is available through the internet, PeopleConnect transmits information across state lines through the internet every hour of every day.

61.     The online collection of yearbooks includes yearbooks from schools in every state.

62.     Plaintiff's theories of liability would regulate conduct relating to the design and technical operation of an internet website occurring entirely outside of California.

63.     Plaintiff's theories of liability would regulate the transmission of information occurring in whole or in part outside of California.

64.     Plaintiff's theories of liability would prevent users located in states other than California from accessing the complete collection of yearbooks on Classmates.com.

65.     Plaintiff's theories of liability would substantially burden interstate commerce in excess of any putative local benefits.

ANSWER TO FIRST AMENDED COMPLAINT
Case No. 3:20-cv-09023-EMC

**FOURTEENTH DEFENSE (EXTRATERRITORIALITY DOCTRINE)**

66.    Plaintiff's and proposed class members' claims are barred in whole or in part by California's extraterritoriality doctrine.

67.    PeopleConnect is incorporated in Delaware with its principal place of business in Bellevue, Washington.

68.    Users of Classmates.com are located in every state.

69.    Plaintiff's theories of liability would regulate conduct relating to the design and technical operation of an internet website occurring entirely outside of California.

70.    Plaintiff's theories of liability would regulate the transmission of information occurring entirely outside of California.

71.    Plaintiff's theories of liability would prevent users located in states other than California from accessing the complete collection of yearbooks on Classmates.com.

**FIFTEENTH DEFENSE (OPT-OUT)**

72.    The injunctive relief sought by Plaintiff and proposed class members is barred because they cannot establish irreparable harm.

73.    A person can request their name or photograph be suppressed from Classmates.com by phone or by sending a letter or email to PeopleConnect.

74.    PeopleConnect also will suppress names and photographs from Classmates.com if it is aware of a request to do so that was posted on certain third-party websites, such as on the Better Business Bureau's website, and the request provided enough information to facilitate the suppression.

75.    Once received, PeopleConnect honors all requests to suppress names and images from Classmates.com.

**SIXTEENTH DEFENSE (INCIDENTAL USE)**

76.    Plaintiff's and proposed class members' claims are barred by §3344(c) because the use of their names, images, and likenesses on Classmates.com is incidental and not essential to the website.

77.    Plaintiff's and proposed class members' names and images that appear in the yearbooks displayed on Classmates.com have no unique value that would result in commercial profit to

51

1  PeopleConnect. The full collection of yearbooks on Classmates.com can be searched and viewed by any

2  registered Classmates.com user, regardless of whether they have a free or paid membership.

3      78.      The names and images of Plaintiff and proposed class members are also not prominently

4  displayed on Classmates.com. For example, names, images, or likenesses of specific individuals are only

5  viewable on Classmates.com if a user specifically searches for them or views a specific yearbook page on

6  which that information appears.

7                          **SEVENTEENTH DEFENSE (CLASS ACTION INAPPROPRIATE)**

8      79.      The proposed putative class fails to meet the requirements of Fed. R. Civ. P. 23 and thus

9  this lawsuit cannot be maintained as a class action.

10                          **EIGHTEENTH DEFENSE (ARBITRATION)**

11      80.      Plaintiff's and certain proposed class members' claims may be barred by an arbitration

12  provision that prohibits Plaintiff's claims from being brought in this forum.

13      81.      Classmates.com is governed by a Terms of Service (the "TOS").

14      82.      The TOS is accessible to each user of Classmates.com via a hyperlink in the website's

15  persistent footer and on the non-registered user homepage.

16      83.      When a user of Classmates.com registers for an account on the website, they are directed to

17  a screen which states the following: "By clicking Submit, you agree to the Terms of Service and Privacy

18  Policy." The phrase "Terms of Service" is hyperlinked to a copy of the current TOS.

19      84.      The TOS informs users that by accessing and using Classmates.com, they agree to the TOS.

20      85.      Since January 10, 2014, the TOS has included an arbitration provision that requires a

21  Classmates.com user and PeopleConnect to arbitrate their claims relating to the website.

22      86.      Users of Classmates.com may opt out of the arbitration provision by following the

23  procedure set forth in the TOS. The current version of the opt-out provision provides:

24          ARBITRATION OPT-OUT. You have the right to opt-out, for yourself and on behalf of
25      anyone for whom you are acting as an agent, and not be bound by this arbitration provision
        by sending written notice of your decision to opt-out to: PeopleConnect, Inc. dba
26      Classmates.com Arbitration Opt-Out, 1687 114th Ave SE, Suite 200, Bellevue, WA 98004.
        If opting out for yourself, this notice must be sent within thirty (30) days of your first use
27      of the Services or, if you are already a user of the Services upon initial posting of this
28      arbitration provision, within thirty (30) days of our email notice to you of this arbitration

provision. If opting out as an agent for another user, this notice must be sent within (30) days of that other user's first use of the Services or, if already a user of the Services upon initial posting of this arbitration provision, within thirty (30) days of our email notice to them of this arbitration provision. Any opt out exercised, by you for yourself or as the agent for another, within thirty (30) days of our email notice of this arbitration provision, shall only apply to claims that have arisen since the posting of this arbitration provision.

The opt-out notice must state that you do not agree to this agreement to arbitrate and must include your name, address, phone number and email address(es) used to register with or use the Services, as well as the name, address, phone number and email address(es) of any person for whom you are opting out as their agent. You and any persons for whom you are opting out as an agent on their behalf must sign the opt-out notice for it be effective. Any opt-out not received within the applicable thirty (30) day period set forth above will not be valid.

If you opt-out of the agreement to arbitrate, you and the PeopleConnect Entities agree that any Disputes will be resolved by a state or federal court located in King County, Washington, and you consent to the jurisdiction and venue of such court. Further, if you opt out of the agreement to arbitrate, you will remain bound by the Separate Class Action Waiver set forth below

87.     Plaintiff and certain proposed class members are bound by the arbitration provision in the TOS and cannot pursue their claims in this forum if they or their agents agreed to the TOS by registering for a Classmates.com account or using the website on or after January 10, 2014 and did not opt out of arbitration.

**NINETEENTH DEFENSE (WAIVER)**

88.     Plaintiff's and certain proposed class members' claims may be barred by waiver because they have intentionally relinquished their purported rights to relief against PeopleConnect.

89.     Classmates.com is governed by the TOS.

90.     The TOS is accessible to each user of Classmates.com via a hyperlink in the website's persistent footer and on the non-registered user homepage.

91.     When a user of Classmates.com registers for an account on the website, they are directed to a screen which states the following: "By clicking Submit, you agree to the Terms of Service and Privacy Policy." The phrase "Terms of Service" is hyperlinked to a copy of the current TOS.

92.     The TOS informs users that by accessing and using Classmates.com, they agree to the TOS.

93.     Plaintiff's and certain proposed class members' claims against PeopleConnect are barred

1   by waiver if they intentionally relinquished their rights by agreeing to the TOS.

2   94.   Since September 1, 2021, the TOS has included a section stating that a Classmates.com user

3   expressly consents to the use and display of their information on the website if they search for themselves

4   on Classmates.com or if they authorized another person to search for them on Classmates.com.

5   95.   Plaintiff and certain purported class members voluntarily relinquished any purported right

6   to assert claims against PeopleConnect based on the alleged use of their names and images on

7   Classmates.com by expressly consenting to that use if they registered for a Classmates.com account or

8   used the website on or after September 1, 2021 and searched for themselves on Classmates.com or

9   authorized another person to search for them on Classmates.com.

10   96.   Plaintiff and certain proposed class members voluntarily relinquished any purported right

11   to assert claims against PeopleConnect based on the alleged use of their names and images on

12   Classmates.com if they provided a blanket consent to their schools, either directly or through their

13   guardians, regarding the use of their information and any photographs taken of them related to school.

14   97.   Plaintiff and certain proposed class members voluntarily relinquished any purported right

15   to assert claims against PeopleConnect based on the alleged use of their names and images on

16   Classmates.com if they provided a blanket consent to the yearbook publishers, either directly or through

17   their guardians, in order for their names and images to be included in the yearbook at the time they sat for

18   the yearbook photographs.

19   98.   Plaintiff and certain proposed class members could have voluntarily relinquished any

20   purported right to assert claims against PeopleConnect based on the alleged use of their information on

21   Classmates.com through their use of third-party websites, many of which contain terms of service that

22   require consent to the unlimited use of any information available on or provided to the website.

23   **TWENTIETH DEFENSE (CLASS ACTION BAR)**

24   99.   Plaintiff's and certain proposed class members' claims may be barred by a class action

25   waiver to the extent they purport to bring class claims.

26   100.   Classmates.com is governed by the TOS.

27   101.   The TOS is accessible to each user of Classmates.com via a hyperlink in the website's

28

persistent footer and on the non-registered user homepage.

102.    When a user of Classmates.com registers for an account on the website, they are directed to a screen which states the following: "By clicking Submit, you agree to the Terms of Service and Privacy Policy." The phrase "Terms of Service" is hyperlinked to a copy of the current TOS.

103.    Since January 10, 2014, the TOS has included a class action waiver, under which users agree to pursue claims against PeopleConnect only in an individual capacity and not as a plaintiff or class member in any purported class action or representative proceeding.

104.    Plaintiff and certain purported class members cannot assert class claims against PeopleConnect if they agreed to the TOS by registering for a Classmates.com account or using the website on or after January 10, 2014.

105.    Thus, if they agreed to the TOS on or after January 10, 2014, Plaintiff's and certain proposed class members' claims must be brought solely in their individual capacities and may not be brought in a representative or consolidated capacity.

WHEREFORE, PeopleConnect respectfully requests that this Court enter judgment in its favor and against Plaintiff, dismiss the claims against PeopleConnect with prejudice, award all costs, expenses, and attorneys' fees to PeopleConnect as the prevailing party under Cal. Civ. Code § 3344(a), and grant PeopleConnect such other relief as the Court deems just and appropriate.

Dated: January 30, 2023

JENNER & BLOCK LLP

By: /s/Debbie L. Berman

Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone:      312 222-9350
Facsimile:      312 527-0484

Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:      628 267-6800
Facsimile:      628 267-6859

Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:      213 239-5100
Facsimile:      213 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWRENCE GEOFFREY ABRAHAM and WAYNE TSENG individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>        Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF LAWRENCE GEOFFREY ABRAHAM** |

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiffs Lawrence Geoffrey Abraham and Wayne Tseng, and Defendant PeopleConnect, Inc., by and through their undersigned counsel, hereby stipulate and agree that Plaintiff Lawrence Geoffrey Abraham dismisses his individual claims against Defendant in their entirety, with prejudice as to his individual claims and without prejudice as to the putative class. All parties shall bear their own costs and attorneys' fees as to the dismissed claims.

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF LAWRENCE GEOFFREY ABRAHAM
Case No: 3:20-cv-09203 – 1

1    Pursuant to Fed. R. Civ. P. 41(a)(1)(a)(ii), no Court order is required in connection with

2  this stipulation of dismissal.

3    IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

4  Dated: January 10, 2023

5  By: /s/ Raina C. Borrelli                                    By: /s/ Debbie L. Berman

6      Raina Borrelli (*pro hac vice*)                          Debbie L. Berman (*pro hac vice*)
       raina@turkestrauss.com                                   dberman@jenner.com
7      Sam Strauss (*pro hac vice*)                             Wade A. Thomson (*pro hac vice*)
       sam@turkestrauss.com                                     wthomson@jenner.com
8      TURKE & STRAUSS LLP                                      JENNER & BLOCK LLP
       613 Williamson St., Suite 201                            353 North Clark Street
9      Madison, Wisconsin 53703-3515                            Chicago, Illinois 60654
       Telephone: (608) 237-1775                                Telephone: (312) 222-9350
10     Facsimile: (608) 509-4423                                Facsimile: (312) 527-0484

11
       Michael F. Ram (SBN 104805)                              Kate T. Spelman (Cal. Bar. No. 269109)
12     mram@forthepeople.com                                    kspelman@jenner.com
       Marie N. Appel (SBN 187483)                              JENNER & BLOCK LLP
13     mappel@forthepeople.com                                  515 S. Flower Street, Suite 3300
       MORGAN & MORGAN                                          Los Angeles, California 90071
14     COMPLEX LITIGATION GROUP                                 Telephone: (213) 239-5100
       711 Van Ness Avenue, Suite 500                           Facsimile: (213) 239-5199
15     San Francisco, CA 94102
       Telephone: (415) 358-6913
16     Facsimile: (415) 358-6923                                Benjamin T. Halbig (Cal. Bar. No.
17                                                              321523)
                                                                bhalbig@jenner.com
18     Benjamin R. Osborn (*pro hac vice*)                      JENNER & BLOCK LLP
       ben@benosbornlaw.com                                     455 Market Street, Suite 2100
19     LAW OFFICE OF BENJAMIN R.                                San Francisco, California 94105
       OSBORN                                                   Telephone: (628) 267-6800
20     102 Bergen St.                                           Facsimile: (628) 267-6859
       Brooklyn, NY 11201
21     Telephone: (347) 645-0464

22                                                              *Attorneys for Defendant PeopleConnect, Inc.*
23  *Attorneys for Plaintiffs and the Proposed*
    *Class*
24

25

26

27

28

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF LAWRENCE GEOFFREY ABRAHAM
Case No: 3:20-cv-09203 – 2

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

Dated: January 10, 2023

*/s/ Raina Borrelli*  
Raina Borrelli

---

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF LAWRENCE GEOFFREY ABRAHAM  
Case No: 3:20-cv-09203 – 3

## CERTIFICATE OF SERVICE

I, Raina Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 10th day of January, 2023.

TURKE & STRAUSS LLP

By:  /s/ Raina C. Borrelli
       Raina Borrelli (*pro hac vice*)
       raina@turkestrauss.com
       TURKE & STRAUSS LLP
       613 Williamson St., Suite 201
       Madison, Wisconsin 53703-3515
       Telephone: (608) 237-1775
       Facsimile: (608) 509-4423

1  Michael F. Ram (SBN 104805)
2  mram@forthepeople.com
   Marie N. Appel (SBN 187483)
3  mappel@forthepeople.com
   MORGAN & MORGAN
4  COMPLEX LITIGATION GROUP
5  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
6  Telephone: (415) 358-6913
   Facsimile: (415) 358-6293
7
8  *Attorneys for Plaintiffs and the Proposed Class*

9  [Additional Counsel Listed on Signature Page]

10

11              **THE UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14  LAWRENCE GEOFFREY ABRAHAM,        Case No. 3:20-cv-09203-EMC
15  ALICE ZHANG, WAYNE TSENG, and
    JAMAAL CARNEY individually and on behalf   **NOTICE OF VOLUNTARY DISMISSAL**
16  of all others similarly situated,          **WITHOUT PREJUDICE OF PLAINTIFFS**
                                               **ALICE ZHANG AND JAMAAL CARNEY**
17          Plaintiffs,

18  vs.

19
    PEOPLECONNECT, INC., a Delaware
20  Corporation,

21
            Defendant.
22

23          Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiffs Alice

24  Zhang and Jamaal Carney hereby voluntarily dismiss, without prejudice, their individual claims

25  in this action.

26

27  Dated: December 30, 2022         By:  */s/ Raina C. Borrelli*
                                          Raina Borrelli (*pro hac vice*)
28                                        raina@turkestrauss.com

---

NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE
Case No: 3:20-cv-09203 – 1

Sam Strauss (*pro hac vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*pro hac vice*)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiffs and the Proposed Class*

NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE
Case No: 3:20-cv-09203 – 2

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 30th day of December, 2022.

By:  */s/ Raina C. Borrelli*
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE
Case No: 3:20-cv-09203 – 3

1   Michael F. Ram (SBN 104805)
    mram@forthepeople.com
2   Marie N. Appel (SBN 187483)
    mappel@forthepeople.com
3   MORGAN & MORGAN
    COMPLEX LITIGATION GROUP
4   711 Van Ness Avenue, Suite 500
    San Francisco, CA 94102
5   Telephone: (415) 358-6913
    Facsimile: (415) 358-6293
6
7   *Attorneys for Plaintiffs and the Proposed Class*
8   [Additional Counsel Listed on Signature Page]
9
10  Kate T. Spelman (SBN 269109)
    kspelman@jenner.com
11  JENNER & BLOCK LLP
    515 S. Flower Street, Suite 3300
12  Los Angeles, California 90071
    Telephone: (213) 239-5100
13  Facsimile: (213) 239-5199
14
    *Attorneys for Defendant PeopleConnect, Inc.*
15
    [Additional Counsel Listed on Signature Page]
16

### THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN and LAWRENCE GEOFFREY ABRAHAM, individually and on behalf of all others similarly situated, | Case No. 3:20-cv-09203-EMC |
| Plaintiffs, | **STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF MEREDITH CALLAHAN** |
| vs. | |
| PEOPLECONNECT, INC., a Delaware Corporation, | |
| Defendant. | |

---

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF MEREDITH CALLAHAN
Case No: 3:20-cv-09203 – 1

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Meredith Callahan, Lawrence Geoffrey Abraham and Defendant PeopleConnect, Inc., by and through their undersigned counsel, hereby stipulate and agree that Plaintiff Meredith Callahan dismisses her individual claims against Defendant in their entirety, with prejudice as to her individual claims and without prejudice as to the putative class. All parties shall bear their own costs and attorneys' fees as to the dismissed claims.

Pursuant to Fed. R. Civ. P. 41(a)(1)(a)(ii), no Court order is required in connection with this stipulation of dismissal.

IT IS SO STIPUALTED, THROUGH COUNSEL OF RECORD.

Dated: July 13, 2022

By: */s/ Raina C. Borrelli*           By: */s/ Debbie L. Berman*
Raina Borrelli (*pro hac vice*)         Debbie L. Berman (*pro hac vice*)
raina@turkestrauss.com             dberman@jenner.com
Sam Strauss (*pro hac vice*)         Wade A. Thomson (*pro hac vice*)
sam@turkestrauss.com              wthomson@jenner.com
TURKE & STRAUSS LLP         JENNER & BLOCK LLP
613 Williamson St., Suite 201      353 North Clark Street
Madison, Wisconsin 53703-3515    Chicago, Illinois 60654
Telephone: (608) 237-1775        Telephone: (312) 222-9350

Michael F. Ram (SBN 104805)      Kate T. Spelman (Cal. Bar. No. 269109)
mram@forthepeople.com           kspelman@jenner.com
Marie N. Appel (SBN 187483)      JENNER & BLOCK LLP
mappel@forthepeople.com         515 S. Flower Street, Suite 3300
MORGAN & MORGAN            Los Angeles, California 90071
COMPLEX LITIGATION GROUP    Telephone: (213) 239-5100
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102         Benjamin T. Halbig (Cal. Bar. No. 321523)
Telephone: (415) 358-6913        bhalbig@jenner.com
                                   JENNER & BLOCK LLP
Benjamin R. Osborn (*pro hac vice*)    455 Market Street, Suite 2100
LAW OFFICE OF BENJAMIN R. OSBORN   San Francisco, California 94105
102 Bergen St.                      Telephone: (628) 267-6800
Brooklyn, NY 11201
Telephone: (347) 645-0464        *Attorneys for Defendant PeopleConnect, Inc.*
Email: ben@benosbornlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

---

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF MEREDITH CALLAHAN
Case No: 3:20-cv-09203 – 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

Dated: July 12, 2022                    _/s/ Raina C. Borrelli_
                                                     Raina C. Borrelli

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF MEREDITH CALLAHAN
Case No: 3:20-cv-09203 – 3

3-ER-378

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 13th day of July, 2022.

TURKE & STRAUSS LLP

By:   */s/ Raina C. Borrelli*
Raina C. Borrelli (*Pro Hac Vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

---

STIPULATION OF DISMISSAL WITH PREJUDICE OF PLAINTIFF MEREDITH CALLAHAN
Case No: 3:20-cv-09203 – 4

United States District Court
Northern District of California

1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7    MEREDITH CALLAHAN, et al.,            Case No.  20-cv-09203-EMC

8                   Plaintiffs,            **ORDER DENYING DEFENDANT'S**
                                           **MOTION TO STAY PENDING**
9           v.                             **APPEAL; GRANTING IN PART AND**
                                           **DENYING IN PART DEFENDANT'S**
10   PEOPLECONNECT, INC.,                  **MOTION TO DISMISS AND STRIKE;**
                                           **AND DENYING DEFENDANT'S**
11                 Defendant.              **MOTION TO STAY DISCOVERY**

12                                         Docket Nos. 26, 28, 49

13

14

15          Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham have filed a class action

16   against Defendant PeopleConnect, Inc.[1]  According to Plaintiffs, PeopleConnect misappropriated

17   Plaintiffs' names, photographs, and likenesses and used the same in advertising its products and

18   services, "including reprinted yearbooks and subscription memberships to the website

19   Classmates.com."  Compl. ¶ 2.  Currently pending before the Court are three motions filed by

20   PeopleConnect: (1) a motion to stay pending appeal; (2) a motion to dismiss and strike[2]; and (3) a

21   motion to stay discovery.  Having considered the parties' briefs and accompanying submissions,

22   as well as the oral argument of counsel, the Court hereby **DENIES** the motion to stay pending

23   appeal; **GRANTS** in part and **DENIES** in part the motion to dismiss and strike; and **DENIES** the

24   motion to stay discovery.

25

26   _____

27   [1] Plaintiffs initially sued three affiliated entities but subsequently they voluntarily dismissed two of
     the companies, thus leaving PeopleConnect as the sole defendant.

28   [2] The Court grants the parties' motions for leave to file additional briefs related to the motion to
     dismiss and strike.  *See* Docket Nos. 60, 64, 71 (motions).

**3-ER-380**

## I.  FACTUAL & PROCEDURAL BACKGROUND

In their complaint, Plaintiffs allege as follows.

PeopleConnect is a company that collects yearbooks, scans the yearbooks, and extracts information from the yearbooks (such as names, photographs, schools attended, and so forth) to be put into a database. *See* Compl. ¶ 53.  It "aggregates the extracted information into digital records associated with specific individuals," and then the digital records are exploited commercially – to promote and sell PeopleConnect's products – but without the individuals' consent.  Compl. ¶ 53. PeopleConnect sells products through its website (Classmates.com).  The products sold on the website are (1) reprinted yearbooks and (2) a subscription membership.

Plaintiffs give examples of how PeopleConnect has allegedly exploited their names, likenesses, and so forth for commercial purposes.  For example, Plaintiffs allege as follows regarding Geoffrey Abraham.  PeopleConnect has digital records related to Mr. Abraham that come from yearbooks.  *See* Compl. ¶ 22.  Users of Classmates.com can type Mr. Abraham's name into a search bar.  *See* Compl. ¶ 23.  The search results provide a list of sixteen records associated with Mr. Abraham.  *See* Compl. ¶ 24.  "When users click to view any of the records corresponding to Mr. Abraham, . . . Classmates displays a page showing the photograph of Mr. Abraham and his name, accompanied by a link marked 'Own this yearbook today,' which leads to a page soliciting the purchase of the yearbook for $99.95."  Compl. ¶ 25.

As another example, when the search results provide the records associated with Mr. Abraham, "adjacent to the list of records containing [his] name, photograph, and likeness" is an advertisement promoting the subscription membership.  Compl. ¶ 27.

According to Plaintiffs, "[b]y misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, [PeopleConnect] has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, and violating their right to seclusion.  [PeopleConnect] has also earned ill-gotten profits and been unjustly enriched."  Compl. ¶ 10.

Plaintiffs have asserted the following claim for relief:

(1) Violation of California Civil Code § 3344 (*i.e.*, the right of publicity).  *See* Cal.

United States District Court
Northern District of California

2

Civ. Code § 3344(a) (providing that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof").

(2) Violation of California Business & Professions Code § 17200 (both the unlawful and unfair prongs).

(3) Intrusion upon seclusion.

(4) Unjust enrichment.

## II. MOTION TO STAY PENDING APPEAL

Previously, PeopleConnect moved to compel the instant case to arbitration, but the Court denied the motion. *See* Docket No. 40 (order, filed on May 18, 2021). PeopleConnect has since appealed that decision. *See* Docket No. 47 (notice of appeal). Now, PeopleConnect moves to stay proceedings pending the Ninth Circuit's disposition of that appeal.

### A. Legal Standard

> [A] district court faced with a motion to stay a case pending an appeal of a denial to compel arbitration has discretion to grant or deny the stay "depend[ing] on the case's particular facts [and] circumstances." "In making this decision, many lower courts have applied the traditional test that is used to determine whether there should be a stay pending an appeal." This test involves four factors:
>
> > (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[[3]]
>
> The first two factors are the most critical.
>
> In weighing these factors, the Ninth Circuit has applied a "sliding scale" approach whereby the factors are balanced "so that a stronger showing of one . . . may offset a weaker showing of another."

[3] *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

> Under this sliding scale approach, a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where he shows that his appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success." However, a party satisfying this lower threshold . . . "must then demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor."

*Jimenez v. Menzies Aviation Inc.*, No. 15-cv-02392-WHO, 2015 U.S. Dist. LEXIS 127875, at *3-5 (N.D. Cal. Sep. 23, 2015); *see also Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) (stating that the "Federal Arbitration Act allows the district court to evaluate the merits of the movant's claim, and if, for instance, the court finds that the motion presents a *substantial question*, to stay the proceedings pending an appeal from its refusal to compel arbitration") (emphasis added).

The Court concludes that, in the instant case, PeopleConnect has failed to show a likelihood of success on the merits. Although PeopleConnect has cited two federal district court cases in support of its position, neither addressed *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396 (1985).

Furthermore, even if the two cases were enough to raise serious questions on the merits, PeopleConnect would still have to show that the balance of hardships tips sharply in its favor in order for a stay to be justified. PeopleConnect has failed to make that showing. For example, PeopleConnect asserts that, if the Court were to deny a stay and proceed to rule on its motion to dismiss and strike, that would be an adjudication on the merits; then, if the Ninth Circuit were to reverse on the arbitration decision, this Court's order on the motion to dismiss and strike "would either become a non-binding advisory opinion or prejudice PeopleConnect's position in arbitration." Reply at 1. Although PeopleConnect's argument is not without any merit, it is not persuasive. Even assuming that the Court were to deny the motion to dismiss and strike in its entirety, that would not *deprive* PeopleConnect of the arbitral forum. The denial of the motion to dismiss would not resolve the case or obviate an arbitration should it be so ordered. PeopleConnect therefore would not suffer irreparable harm warranting a stay.

Accordingly, PeopleConnect's motion to stay pending appeal is denied.

United States District Court
Northern District of California

4

### III.     MOTION TO DISMISS AND STRIKE

Because the Court denies the motion to stay pending appeal, it addresses PeopleConnect's motion to dismiss and strike on the merits.  In the motion to dismiss, PeopleConnect argues that: (1) Plaintiffs' claims are barred by federal law (specifically, the Communications Decency Act and the Copyright Act); (2) Plaintiffs have failed to state a claim for relief for all four causes of action; and (3) PeopleConnect's conduct is protected by the First Amendment.  In the motion to strike, PeopleConnect argues that the California anti-SLAPP statute bars Plaintiffs' complaint. The Court addresses PeopleConnect's arguments below.

A.     Immunity Under the Communications Decency Act

As noted above, Plaintiffs have asserted four causes of action: (1) violation of § 3344 (the right of publicity); (2) violation of § 17200 (unlawful and unfair prongs); (3) intrusion on seclusion; and (4) unjust enrichment.  According to PeopleConnect, all claims are barred by the Communications Decency Act ("CDA").

The CDA provides in relevant part as follows: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The Ninth Circuit has explained that the statute "'immunizes providers of interactive computer services against liability arising from content created by third parties.'"  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016). That is, the statute "'protects from liability (1) a provider or user of an interactive computer service[4] (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'"  *Id.* at 1268. "Information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

1.     Collateral Estoppel

In the instant case, PeopleConnect relies heavily on decisions issued by Judge Beeler in

---

[4] "'[T]he most common interactive computer services are websites.'"  *Kimzey*, 836 F.3d at 1268.

1    *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, to support its claim of CDA immunity.  *See*

2    *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, 2021 U.S. Dist. LEXIS 37811 (N.D. Cal.

3    Mar. 1, 2021) (hereinafter "*Ancestry I*"); *Callahan v. Ancestry*, No. 20-cv-08437-LB, 2021 U.S.

4    Dist. LEXIS 112036 (N.D. Cal. June 15, 2021) (hereinafter "*Ancestry II*").  In fact, PeopleConnect

5    contends that the Court must give Judge Beeler's decisions collateral estoppel effect because the

6    plaintiffs in the *Ancestry* case are the same as Plaintiffs herein.  *See generally Collins v. D.R.*

7    *Horton, Inc.*, 505 F.3d 874, 884 (9th Cir. 2007) (stating that defensive collateral estoppel "'occurs

8    when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously

9    litigated and lost against another defendant'").

10           The Court rejects the collateral estoppel argument.  Judge Beeler's *Ancestry* case was a

11   federal court case, but predicated on diversity jurisdiction.  "'[F]ederal common law governs the

12   claim-preclusive effect of' a judgment rendered 'by a federal court sitting in diversity.'"  *NTCH-*

13   *WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) (quoting *Semtek Int'l Inc. v. Lockheed*

14   *Martin Corp.*, 531 U.S. 497, 508 (2001)).  However, under the federal common law, where the

15   prior judgment was predicated on diversity jurisdiction, state law on preclusion applies rather than

16   federal law because "there is no need for a uniform federal rule."  *Semtek*, 531 U.S. at 508 (stating

17   that, "indeed, nationwide uniformity in the substance of the matter is better served by having the

18   same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state

19   or a federal court"); *see also Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th

20   Cir. 2009) (stating that "[f]ederal common law requires application of 'the law that would be

21   applied by state courts in the State in which the federal diversity court sits'").  Under California

22   law, "a judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by

23   appeal." *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 787 (1994).  In the instant

24   case, there is no dispute that the *Ancestry* plaintiffs have appealed Judge Beeler's decisions to the

25   Ninth Circuit; therefore, collateral estoppel cannot apply under California law because there is no

26   final judgment.

27           In its papers, PeopleConnect protests the application of California law on collateral

28   estoppel.  It notes that, in *Semtek*, the Supreme Court explicitly stated that the "federal reference to

6

state law will not obtain . . . in situations in which the state law is incompatible with federal interests." *Semtek*, 531 U.S. at 508. The Supreme Court provided an example: "If . . . state law did not accord claim-preclusive effect to dismissals for willful violation of discovery orders, federal courts' interest in the integrity of their own processes might justify a contrary federal rule." *Id.* PeopleConnect contends that "this is a case where federal interests compel the application of federal preclusion principles," apparently because a federal issue – CDA immunity – is at stake. Docket No. 60-2 (Def.'s Supp. Br. at 5). The Court is not persuaded. State collateral estoppel law cannot be said to be incompatible with federal interests here, particularly as CDA immunity is not an issue on which only federal courts can opine. *See, e.g.*, *Prager Univ. v. Google Llc*, 2019 Cal. Super. LEXIS 2034, at *19 (Cal. Sup. Ct. Nov. 19, 2019) (addressing CDA immunity). The Court acknowledges the authority cited by PeopleConnect, *see, e.g.*, *Dow Agrosciences, LLC v. Bates*, No. 5:01-CV-331-C, 2003 U.S. Dist. LEXIS 20389, at *57-58 (N.D. Tex. Oct. 14, 2003) (applying federal preclusion law in determining whether a federal court judgment based on diversity jurisdiction should be given preclusive effect; indicating that there are federal interests in applying federal preclusion law because the federal court judgment was based on federal preemption of state law claims – *i.e.*, there is an interest in "a nationally uniform policy enforcing a federal preemptive regime"), but it is not binding authority and the Court does not find it persuasive. Application of state law on collateral estoppel (in particular to the finality requirement) will not impair in any systemic way the application of CDA immunity.

As to the merits, Plaintiffs argues persuasively that *Ancestry* should not be given preclusive effect given that other district courts have reached differing conclusions on CDA immunity in similar cases. *See, e.g.*, *Knapke v. Peopleconnect Inc.*, No. C21-262 MJP, 2021 U.S. Dist. LEXIS 150249, at *10-11 (W.D. Wash Aug. 10, 2021) (concluding that PeopleConnect's "customized advertisement" involving the use of a yearbook photograph was not protected by the CDA; PeopleConnect was not just the publisher of content provided by someone else but rather was "the publisher of its own content, which is unprotected by the CDA")[5]; *Sessa v. Ancestry.com*

---

[5] Initially, Plaintiffs argued that the Court should give collateral estoppel effect to *Knapke* on the CDA immunity issue, *see generally* Docket No. 68 (opposition), but, subsequently, they modified

7

1    *Ops. Inc.*, No. 2:20-cv-02292-GMN-BNW, 2021 U.S. Dist. LEXIS 177337, at \*29-32 (D. Nev.

2    Sept. 16, 2021) (concluding that defendant acted as information content provider and adding that,

3    even if it were not, "the Court cannot grant dismissal based on the facts alleged in the Complaint

4    because it is unclear whether the yearbook providers [*i.e.*, publishers] – the 'information content

5    providers' who are 'responsible . . . for the creation or development' of the yearbooks – consented

6    to the information's publication on the internet").

7           In other words, "'[e]ven where the technical requirements are all met, the doctrine is to be

8    applied "only where such application comports with fairness and sound public policy."'" *Direct*

9    *Shopping Network, LLC v. James*, 206 Cal. App. 4th 1551, 1562 (2012).  In *Parklane Hosiery Co.*

10   *v. Shore*, 439 U.S. 322 (1979), the Supreme Court stated, in addressing offensive collateral

11   estoppel,  that a trial court has discretion to determine when the doctrine should be applied and

12   that a trial court should not allow the use of offensive collateral estoppel where application would

13   be unfair to the defendant – *e.g.*, "if the judgment relied upon as a basis for the estoppel is itself

14   inconsistent with one or more previous judgments in favor of the defendant." *Id.* at 330.  A

15   California state court has noted that, even though Parklane involved a federal court trial, "we

16   believe the principles articulated therein concerning the effect of inconsistent verdicts on the

17   application of collateral estoppel are equally pertinent to state court actions." *Sandoval v.*

18   *Superior Court*, 140 Cal. App. 3d 932, 944 (1983) (addressing offensive collateral estoppel).

19   Similar concerns should inform defensive collateral estoppel as well.  *See, e.g.*, *Missud v. City &*

20   *Cty. of S.F.*, No. 15-cv-05596-JCS, 2017 U.S. Dist. LEXIS 40799, at \*56 (N.D. Cal. Mar. 21,

21   2017) (stating that a factor that "may be considered to determine whether the assertion of

22   defensive collateral estoppel is equitable [is] the potential for inconsistent outcomes"); Restat. 2d

23   of Judgments, § 29(4) (providing that "[a] party precluded from relitigating an issue with an

24   opposing party . . . is also precluded from doing so with another person unless . . . circumstances

25   justify affording him an opportunity to relitigate the issue" – *e.g.*, "[t]he determination relied on as

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     their position.  *See* Docket No. 71-1 (Reply at 3) (stating that, "because *Ancestry II* and *Knapke*

28   conflict, it would be inequitable to apply either offensive or defensive collateral estoppel with
     respect to the CDA").

United States District Court
Northern District of California

8

1  preclusive was itself inconsistent with another determination of the same issue"); id., comment (f)

2  (stating that "[g]iving a prior determination of an issue conclusive effect in subsequent litigation is

3  justified not merely as avoiding further costs of litigation but also by underlying confidence that

4  the result reached is substantially correct," but, "[w]here a determination relied on as preclusive is

5  itself inconsistent with some other adjudication of the same issue, that confidence is generally

6  unwarranted"; "[t]hat such a doubtful determination has been given effect in the action in which it

7  was reached does not require that it be given effect against the party in litigation against another

8  adversary").

9          2.      *Batzel*

10         Turning to the merits of PeopleConnect's CDA argument, the Court finds that it is not

11  persuasive.  As noted above, the CDA "'protects from liability (1) a provider or user of an

12  interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action,

13  as a publisher or speaker (3) of information provided by another information content provider.'"

14  *Id.* at 1268.  The third element has two subcomponents: (a) the information at issue must come

15  from an "information content provider" and (b) the information must be "provided by" the

16  information contention provider.

17         Regarding the first subcomponent, the CDA defines "information content provider" as

18  "any person or entity that is responsible, in whole or in part, for the creation or development of

19  information provided through the Internet or any other interactive computer service."  47 U.S.C. §

20  230(f)(3).  Here, the information at issue consists of the yearbooks.  And the only third parties

21  who are plausibly creators or developers of the yearbooks are the yearbook authors/publishers.

22  *See Sessa*, 2021 U.S. Dist. LEXIS 177337, at *31 (holding that "the yearbook publishers, not

23  those who sent Ancestry yearbooks, are the relevant information content providers").  Yearbooks

24  users/purchasers clearly do not create the yearbooks.  Nor can they be said to be developers of the

25  yearbooks given the plain meaning of the term "develop" as well as the construction that the Ninth

26  Circuit has endorsed in addressing whether a service provider is also an information content

27  provider.  *Cf., e.g.*, *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir.

28  2008) (indicating that a person or entity does not "develop" content simply by "augmenting the

United States District Court
Northern District of California

9

3-ER-388

1    content generally"; rather, the person or entity must "materially contribut[e]" to the content).

2         As for the term "provided by," the Ninth Circuit gave important guidance for the term in

3    *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). The Ninth Circuit stated that the term

> suggests, at least, some *active* role by the "provider" in supplying
> the material . . . . One would not say, for example, that the author of
> a magazine article "provided" it to an interactive computer service
> provider or user by allowing the article to be published in hard copy
> off-line. Although such an article is available to anyone with access
> to a library or a newsstand, it is not "provided" for use on the
> Internet.

8    *Id.* at 1032-33 (emphasis added). The Ninth Circuit recognized, however, that a website operator

9    could be chilled from posting information if it "could not tell whether posting was contemplated"

10   by the provider. *Id.* To address this concern, the court held that

> the focus should be not on the information provider's intentions or
> knowledge when transmitting content but, instead, on the service
> provider's or user's reasonable perception of those intentions or
> knowledge. We therefore hold that a service provider or user is
> immune from liability under § 230(c)(1) *when a third person or
> entity that created or developed the information in question
> furnished it to the provider or user under circumstances in which a
> reasonable person in the position of the service provider or user
> would conclude that the information was provided for publication
> on the Internet or other "interactive computer service."*

17   *Id.*; *see also Roommates.com, LLC*, 521 F.3d at 1171 (stating that, under *Batzel*, "if the editor

18   publishes material that he does not believe was tendered to him for posting online, then he is the

19   one making the affirmative decision to publish, and so he contributes materially to its allegedly

20   unlawful dissemination[;] [he] is thus properly deemed a developer and not entitled to CDA

21   immunity"). In *Batzel* itself, the court noted that further development of the record might be

22   needed "to determine whether, under all the circumstances, a reasonable person in [the

23   defendant's] position would conclude that the information was sent for internet publication, or

24   whether at least a triable issue of fact is presented on that issue." *Batzel*, 333 F.3d at 1035.

25        In the instant case, the Court concludes that, at the very least, there is a question of fact as

26   to whether a reasonable person in the position of PeopleConnect (the service provider) would

27   conclude that the yearbook authors/publishers (the information content providers) intended the

28   yearbooks to be published on the internet. As Plaintiffs point out, the yearbooks at issue were

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  published in the 1990s and early 2000s when "[t]he Internet was in its infancy and social media

2  did not exist." Opp'n at 5. Moreover, there is a difference between publishing a yearbook for a

3  school or local community and publishing a yearbook on the internet where the audience is far

4  broader. Thus, it would be hard to conclude that, as a matter of law, PeopleConnect is a publisher

5  of information provided by another information content provider and is thus entitled to immunity

6  under the CDA.

7       PeopleConnect's reliance on Judge Beeler's *Ancestry* decisions is unavailing. In *Ancestry*

8  *II*, Judge Beeler indicated that, under *Batzel*, it was reasonable for Ancestry to believe that the

9  yearbooks at issue were being provided to it for publication on the Internet, but Judge Beeler's

10  ruling appears to turn on her view that an information content provider could be people or entities

11  *other* than the yearbook author/publisher. *See Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at *17-

12  18 (stating that, "whether the yearbooks were donated by other former students or obtained from

13  other sources, Ancestry is demonstrably not the content creator and instead is publishing third-

14  party content provided to it for publication"; "[n]othing in *Batzel* requires the original creator's

15  permission for publication"). But that view is not consistent with the express definition of

16  "information content provider" under the CDA; an information content provider is one who

17  created or developed the information at issue. In the instant case, the yearbook authors/publishers

18  are the only ones who meet that criteria.

19       At the hearing, PeopleConnect suggested that a service provider should be allowed to

20  assume that the person or entity who provided the information to the service provider was the

21  creator or developer of the information.[6] Such an approach, however, would be contrary to *Batzel*

22  which focuses on the reasonable perception of the service provider. PeopleConnect fails to

23  
_____

24  [6] At the hearing, PeopleConnect cited *Caraccioli v. Facebook*, 700 F. App'x 588 (9th Cir. 2017),
     in support of its position. But *Caraccioli* is not on point. In *Caraccioli*, the plaintiff brought suit
25  against the defendant for its refusal to remove private images and videos of the plaintiff posted on
     its website by a third party. *See id.* at 589 (noting that claims brought by the plaintiff included
26  defamation, public disclosure of private facts, and intentional and negligent infliction of emotional
     distress). The Ninth Circuit held that the defendant had CDA immunity because it was a
27  republisher of material posted by the third party; the defendant did not become an information
     content provider simply by reviewing the content of the third party's account and deciding not to
28  remove the content. The court did not address the issue of whether the third party was properly
     deemed the creator or developer of the images and videos in the first instance.

1   explain why a service provider should not be held accountable if, *e.g.*, it is *obvious* that the person

2   or entity providing information to the service provider is not the creator or developer of the

3   information.  In such a situation, if it is obvious that the person or entity providing the information

4   is not the creator or developer of the information, then the service provider "is the one making the

5   affirmative decision to publish, and so . . . contributes materially to [the] allegedly unlawful

6   dissemination" of the information[;] [it] is thus properly deemed a developer and not entitled to

7   CDA immunity." *Roommates.com*, 521 F.3d at 1171.

8        In the instant case, it is obvious that the yearbook users/purchasers were not the creators or

9   developers of the yearbooks.  Instead, the yearbook authors/publishers were the content providers.

10  PeopleConnect cannot claim the benefit of CDA immunity, absent a reasonable basis to believe

11  that the yearbook authors/publishers intended for there to be publication on the Internet.  This

12  presents a question of fact that cannot be resolved at the 12(b)(6) phase of proceedings.[7]

13  B.   Copyright Preemption

14       According to PeopleConnect, even if there is a question of fact on CDA immunity, the

15  Copyright Act bars most of Plaintiffs' claims – in particular, their § 3344, § 17200, and unjust

16  enrichment claims (but not their intrusion-on-seclusion claim).

17       1.   Collateral Estoppel

18       Plaintiffs argue first that PeopleConnect is precluded from raising the copyright

19  preemption defense based on a decision from a Washington district court in *Knapke*.  In *Knapke* –

20  where PeopleConnect was sued for the same basic conduct as that at issue in the case at bar – the

21  court rejected the copyright preemption defense because "'a publicity-right claim is not preempted

22  when it targets nonconsensual use of one's name or likeness *on merchandise or in advertising*.'"

23

24  _____

[7] There would also appear to be a question of fact as to whether PeopleConnect should be deemed a developer of information itself – *i.e.*, not just a mere service provider – to the extent it was not
25  simply republishing yearbook photographs and/or information.  *See Knapke*, 2021 U.S. Dist. LEXIS 150249, at *10-11 (holding that PeopleConnect was not protected by CDA immunity
26  because it was the publisher of its own content in creating an advertisement); *Cf. Lukis v. Whitepages, Inc.*, 454 F. Supp. 746, 763 (N.D. Ill. 2020) (stating that, "[i]n the present record,
27  Whitepages did not act as a mere passive transmitter or publisher of information that was 'provided by another information content provider'[;] [r]ather, it is alleged to have actively
28  compiled and collated, from several sources, information regarding Lukis [and therefore] [t]he CDA . . . does not shield Whitepages from liability").

United States District Court
Northern District of California

1      *Id.* at \*12 (emphasis added).

2           In its papers, PeopleConnect contends first that *Knapke* should not be given collateral

3      estoppel effect because federal law on collateral estoppel should apply.  That argument, like the

4      one above, is not persuasive.  State courts often opine on copyright preemption even though it is a

5      federal defense, and the application of state law on collateral estoppel is not incompatible with

6      federal interests.

7           PeopleConnect asserts that *Knapke* cannot be given collateral estoppel effect because no

8      final judgment has been reached in that case.  In response, Plaintiffs contend that a final judgment

9      need not be a formal final judgment closing the case in its entirety; rather, the question is whether

10     the *Knapke* court essentially reached a final decision in rejecting copyright preemption.  Plaintiffs

11     are correct that a formal final judgment or decision is not necessary.  *See, e.g.*, *Ensley v. Pitcher*,

12     152 Wash. App. 891, 901 (2009) ("While the record does not include an entry of final judgment

13     under CR 54(b) as to the summary judgment dismissing Red Onion, there are no other indicia in

14     the record that the summary judgment decision was not final as a practical matter."); *Lee v.*

15     *Ferryman*, 88 Wash. App. 613, 622 (1997) ("The second requirement is also satisfied because a

16     grant of summary judgment in favor of Ferryman in the Oregon action constitutes a final judgment

17     on the merits and has the same preclusive effect as a full trial of the issue.   As one court noted,

18     '[i]t would be strange indeed if a summary judgment could not have collateral estoppel effect.

19     This would reduce the utility of this modern device to zero.'").  However, Plaintiffs have not

20     pointed to any Washington state court authority holding that a decision made at the pleadings

21     stage is sufficiently final to give rise to a preclusive effect.  (Plaintiffs primarily relied on a

22     Seventh Circuit case, *Gilldorn Savings Ass'n v. Commerce Savings Ass'n*, 804 F.2d 390, 393 (7th

23     Cir. 1986) (applying federal law on collateral estoppel).)  More important, even though it is clear

24     that the *Knapke* court rejected the copyright preemption defense in its decision, it is not clear that

25     the court was thereby foreclosing PeopleConnect from raising the defense again (*i.e.*, after

26     discovery has been taken and a factual record has been developed).  The Court, therefore, declines

27     to apply collateral estoppel and considers the merits of PeopleConnect's copyright preemption

28     argument.

United States District Court
Northern District of California

13

2.   <u>"Standing" to Assert Copyright Preemption</u>

According to Plaintiffs, putting collateral estoppel aside, PeopleConnect still cannot invoke copyright preemption because only a copyright holder or licensee has "standing" to assert copyright preemption. *See* Opp'n at 8. (There is no dispute that PeopleConnect does not own the copyrights to the yearbooks at issue, nor is it a licensee of the yearbooks.) In support of this position, Plaintiffs rely on a California state case, *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000). In *KNB*, the plaintiff owned the copyright to certain erotic photographs. The photographs were displayed without authorization on the defendant's website. The plaintiff did not sue for copyright infringement but rather asserted a violation of § 3344 because the models in the photographs had assigned their § 3344 rights to the plaintiff. *See id.* at 364-65. The issue for the court was "whether the noncelebrity models' section 3344 claims, which plaintiff asserts by right of assignment, are preempted by federal copyright law." *Id.* at 368. The court concluded that there was no preemption, noting, in relevant part, that "this [was] not a situation where the models are asserting a right of publicity claim against the exclusive copyright holder in an effort to halt the authorized distribution of their photographs. . . . [Rather,] plaintiff is asserting the models' statutory right of publicity claim to halt the *un*authorized display of the photographs." *Id.* at 372-73 (emphasis in original). "We do not believe a section 3344 claim is preempted . . . where, as here, *the defendant has no legal right to publish the copyrighted work*." *Id.* at 374 (emphasis added).

Plaintiffs acknowledge that, in *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010), the Ninth Circuit expressed disagreement with this part of *KNB*, stating as follows:

> Whether a claim is preempted . . . does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright. The question is whether the rights are works of authorship fixed in a tangible medium of expression and come within the subject matter of the Copyright Act. If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired.

*Id.* at 1154-55. Nevertheless, Plaintiffs contend that *Jordan* is distinguishable because, there, the

14

3-ER-393

plaintiff *did* own copyrights in the copied DVDs.  In other words, under Plaintiffs' position, a defense of copyright preemption may be raised only when (1) the defendant is a copyright owner or licensee or (2) the plaintiff is.  *See* Opp'n at 8 (arguing that, "in this case, neither Plaintiffs nor [PeopleConnect] own copyright[s] in Plaintiffs' yearbooks[;] Plaintiffs do not and could not obtain redress of their injuries by asserting a copyright claim").

The problem for Plaintiffs is that the language from *Jordan* above does not focus on the *status* of the plaintiff but rather on the *rights* being asserted by the plaintiff.  Furthermore, at least one court – admittedly, a state court – has rejected a similar argument

> Plaintiff disagrees that federal copyright law preempts claims asserted by anyone other than the copyright holder.  It cites *Silvers v. Sony Pictures Entertainment, Inc.* (9th Cir. 2005) 402 F.3d 881 at page 884, which includes the following quote from a treatise on commercial litigation in federal court: "'If a claimant is not a proper owner of copyright rights, then it cannot invoke copyright protection stemming from the exclusive rights belonging to the owner, including infringement of the copyright.'"  (*Accord*, *Smith v. Jackson* (9th Cir. 1996) 84 F.3d 1213, 1218 ["To establish a successful copyright infringement claim, a plaintiff must show that (1) she owns the copyright, and (2) defendant copied protected elements of the copyrighted work."].)
>
> The fact that one may not *successfully* sue for copyright infringement because he or she is not the copyright holder does not mean he or she is not preempted from attempting to sue on a claim that amounts to copyright infringement.  As argued by the Youssefi defendants, it is the nature of the action not the identity of the plaintiff that controls.  If one sues another for making unauthorized copies of a protected work, and the alleged basis for precluding such copying is that the work is protected by copyright, then that action is subject to copyright preemption.  The federal court has exclusive jurisdiction to decide who is entitled to enforce the copyright.

*Civic Partners Stockton, LLC v. Youssefi*, 218 Cal. App. 4th 1005, 1016-17 (2013) (emphasis in original).[8]

Finally, Plaintiffs' position – taken to the extreme – suggests that, even if it were clear that a claim would be preempted if brought by the copyright holder, that claim could still escape preemption if brought by someone else.  That result would seem to make little sense as that would be "a de facto veto over the [copyright holder's] rights under the Copyright Act."  *Maloney v.*

---

[8] The court ultimately held that the plaintiff's claim did "not fall within the exclusive ambit of federal copyright law" but for different reasons.  *Civic Partners*, 218 Cal. App. 4th at 1017.

United States District Court
Northern District of California

15

1   *T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017).

2        3.   <u>Use of Name or Likeness in Advertising</u>

3        Plaintiffs contend next that, even if the Court finds in favor of PeopleConnect on the issue

4   of "standing," they should still ultimately prevail on the issue of copyright preemption because a

5   publicity-right claim is not subject to preemption where a "photograph [is used] as part of an

6   advertising scheme."  Opp'n at 9.

7        On this argument, the critical case is *Maloney*.  The plaintiffs in *Maloney* were former

8   NCAA student athletes.  The NCAA owned or controlled the copyright to certain photographs

9   depicting the plaintiffs playing basketball.  The NCAA licensed the photographs to the defendant.

10  The defendant made the photographs available on its website where a person could "obtain for $20

11  to $30 a non-exclusive license permitting them to download a copy of a chosen photograph" for

12  noncommercial use.  *Id.* at 1007.  The plaintiffs asserted, *inter alia*, claims for violation of the

13  right to publicity (both statutory and common law).

14       The Ninth Circuit began its preemption analysis by noting that

15      "[w]e have adopted a two-part test," in accordance with [17 U.S.C.]
16      section 301, "to determine whether a state law claim is preempted by
        the Act."  First, we decide "whether the 'subject matter' of the state
17      law claim falls within the subject matter of copyright as described in
        17 U.S.C. §§ 102 and 103."  Second, assuming it does, we determine
18      "whether the rights asserted under state law are equivalent to the
        rights contained in 17 U.S.C. § 106, which articulates the exclusive
19      rights of copyright holders."

20  *Id.* at 1010.

21       The issue in *Maloney* was whether the subject matter of the state law claims fell within the

22  subject matter of copyright.  The court held that it did.

23      Here, the publicity-right claims arise from the licensing of
        photographs, which plaintiffs concede are expressive "pictorial"
24      works to which "[a] photographer contributes some original
        elements."  There is also no doubt that a photograph is "sufficiently
25      permanent" to permit it to be perceived "for more than transitory
        duration."  The "'subject matter' of the state law claim[s] – the
26      photographs – therefore appears to fall within the subject matter of
        copyright.

27

28  *Id.* at 1011.

United States District Court
Northern District of California

The Ninth Circuit acknowledged the plaintiffs' contention that there could not be copyright preemption because they were simply challenging the defendant's exploitation of their likeness or persona – "attributes [that] 'exist independent of any single photograph.'" *Id.*  Nevertheless, the court was not persuaded.  "Contrary to plaintiffs' argument, [we have not] mint[ed] a categorical rule that publicity-right claims 'relating to a likeness in a photograph' are not subject to preemption." *Id.* at 1012.  Instead, the court explained, "preemption turns on *how* a copyrighted photograph is used." *Id.* at 1013 (emphasis in original).

> [A] publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness on merchandise or in advertising.  But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act.

*Id.* at 1011.  The court added:

> The fact that the non-exclusive licenses were sold [by the defendant] for profit and their price does not alter our analysis. . . . [The defendant's] decision to license expressive works for a fee does not change the fact that the publicity-right claims target the *display* and *distribution* of copyrighted photographs for personal use.  Moreover, copyright holders are allowed to commercially exploit their copyrights by exercising their exclusive rights under the Copyright Act.

*Id.* at 1016 n.9 (emphasis in original).

Under the criteria above, the Ninth Circuit confirmed that the subject matter of the plaintiff's claims in *Maloney* fell within the subject matter of copyright.

> [The plaintiffs] Maloney and Judge do not allege that their names and likenesses were ever used in connection with the sale of any merchandise.  Nor do they contend that their likenesses were ever used in any advertising.  Instead, the copyrighted images *themselves* were licensed to individuals for "non-commercial art use."  Moreover, the licensees of the Maloney and Judge photos did not obtain "any right or license to use the name or likeness of any individual . . . in connection with or as an express or implied endorsement of any product or service."
>
> Plaintiffs' publicity-right claims and the derivative UCL claim challenge "control of the *artistic work itself*." . . . [T]he subject matter of the state law claims therefore falls within the subject matter of copyright.

17

> We believe that our holding strikes the right balance by permitting athletes to control the use of their names or likenesses on merchandise or in advertising, while permitting photographers, the visual content licensing industry, art print services, the media, and the public, to use these culturally important images for expressive purposes. Plaintiffs' position, by contrast, would give the subject of every photograph a de facto veto over the artist's rights under the Copyright Act, and destroy the exclusivity of rights that Congress sought to protect by enacting the Copyright Act.

*Id.* at 1018-19 (emphasis added).

The question is how *Maloney* should be applied in the instant case. In their opposition, Plaintiffs argue that there is no preemption because PeopleConnect is using their names and likenesses for advertising purposes – *i.e.*, to advertise reprinted yearbooks and the subscription membership. Part of Plaintiffs' argument has merit. Specifically, Plaintiffs' argument has merit to the extent they have alleged that PeopleConnect is using their names and likenesses to advertise the subscription membership. Indeed, PeopleConnect does not appear to have addressed this part of Plaintiffs' argument, either in its opening brief or in its reply. *Cf. Sessa*, 2021 U.S. Dist. LEXIS 177337, at *44-45 (declining to find copyright preemption because defendant did not simply "display[] or publish[] photographs depicting Plaintiffs"; "[w]here, as here, the platform containing a plaintiff's photograph sells information about the plaintiff and not limited rights to his image alone, the Copyright Act will not preempt a claim concerning the use of the image").

However, Plaintiffs' argument is problematic to the extent they contend no preemption where PeopleConnect was using their names and likenesses from the reprinted yearbooks to advertise those yearbooks. Plaintiffs seem to be of the view that, once *any* advertising is implicated – even advertising of the copyrighted work or a portion thereof – there can no preemption. Although a close call, the Court concludes that case law weighs against Plaintiffs' position that a defendant's *advertising of the copyrighted work itself* would take the plaintiff's § 3344 claim outside of copyright preemption. At bottom, a portion of the copyright work itself is being displayed, a fundamental attribute of a copyright.

This point is illustrated in *Jordan*, where the plaintiffs were an adult movie company and the owner of that company (as well as an actor in the company's movies). The plaintiffs sued the defendants for copying and selling counterfeits of the plaintiffs' copyrighted adult DVDs. In the

18

attempt to avoid copyright preemption, the plaintiff argued "for the first time" that his right to publicity was violated because his name and likeness were used on the *covers* of the counterfeit DVDs. *Jordan*, 617 F.3d at 1154. But the Ninth Circuit found the argument "misguided" because "the pictures on the covers of the DVDs are 'still shots' of the copyrighted video performance." *Id.* In so holding, the Ninth Circuit implicitly held that using a portion of the copyrighted work to promote the copyrighted work does not take a publicity-right claim outside of copyright preemption. *Cf.* 17 U.S.C. § 106 (providing that a copyright owner has the exclusive right to display the copyrighted work publicly "in the case of literary, musical, dramatic, and choreographic works . . . , including the individual images of a motion picture or other audiovisual work").[9]

The Ninth Circuit indicated as much in *Maloney*, describing *Jordan* as follows: "the actor was objecting to the unauthorized distribution and republication of a copyrighted work, not the exploitation of his likeness *on an unrelated product* [*i.e.*, a product different from the copyrighted work] or in advertising." *Maloney*, 853 F.3d at 1016 (emphasis added); *see also In re Jackson*, 972 F.3d 25, 48-49 (2d Cir. 2020) (asking whether "the defendant's use of a work involving the plaintiff's likeness seeks advantage for the defendant on the basis of the plaintiff's identity . . . which argues against preemption – or whether . . . the advantage sought by the defendant flows from the reproduction or dissemination of the work itself (as opposed to the persona of the plaintiff), which argues in favor of preemption"); *Dent v. Renaissance Mktg. Corp.*, No. 14 C 02999, 2015 U.S. Dist. LEXIS 70248, at *12 (N.D. Ill. June 1, 2015) (noting that "[c]ourts have held that right-of-publicity claims are not preempted by the Copyright Act when the alleged unauthorized use of the plaintiff's identity extends *beyond* the copyrighted work[;] [i]n some of these cases, the copyrighted work is used to advertise *another* product or service") (emphasis

---

[9] *See also Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1914-15, 1920 n.6 (1996) (where CBS released a film on videotape in which plaintiffs were actors, stating that "[i]t is unclear" whether plaintiffs were claiming "CBS wrongly used stills from the motion picture for advertising or promotional purposes"; "[i]f so, we note that section 106 specifically gives to the holder of the copyright the right to display publicly 'individual images of a motion picture'"). Neither the *Knapke* court nor the *Sessa* court addressed this aspect of *Jordan* in their copyright preemption analysis.

1   added); *cf. Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (stating that, if a

2   publication is protected by the First Amendment, "[c]onstitutional protection extends to the

3   truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the

4   protected publication and promotes only the protected publication").

5        As indicated above, there is a two-part test to determine whether a state law claim is

6   preempted by the Copyright Act: (1) does the subject matter of the state law claim fall within the

7   subject matter of copyright as described in 17 U.S.C. §§ 102 and 103, and (2) if so, are the rights

8   asserted under state law equivalent to the rights contained in § 106, which articulates the exclusive

9   rights of copyright holders? *See Laws v. Sony Music*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).

10   The parties have focused on the first part of the test only.  Plaintiffs have not challenged the

11   second part of the test.  Even if they had, their position would lack merit based on *Laws*.  *See* at

12   1143-44 (in discussing the second part of the test, stating that the "mere presence of an additional

13   element ('commercial use') in section 3344 is not enough to qualitatively distinguish [plaintiff's]

14   right of publicity claim from a claim in copyright" because "[t]he extra element must transform

15   the nature of the action" and, "[a]lthough the elements of [the] state law claims may not be

16   identical to the elements in a copyright action, the underlying nature of [the] state law claims is

17   part and parcel of a copyright claim"); *accord Jackson*, 972 F.3d at 52-53 (noting that

18   "commercial interests have always played an enormous role in copyright law" and therefore,

19   "[e]ven if a commercial purpose is a necessary element of a Connecticut right of publicity claim,

20   this does not necessarily take the right of publicity outside of equivalency with the 'rights within

21   the general scope of copyright'").  Here, the display of the photos from the yearbook – the

22   copyrighted work – requires no new transformative element to satisfy Plaintiffs' § 3344, § 17200,

23   and unjust enrichment claims.

24        Accordingly, the Court concludes that Plaintiffs' § 3344, § 17200, and unjust enrichment

25   claims are preempted by the Copyright Act, but only in part.  The § 3344, § 17200, and unjust

26   enrichment claims are preempted to the extent they are based on the use of Plaintiffs' names and

27   likenesses taken from the yearbooks themselves to advertise those reprinted yearbooks.  To the

28   extent those claims are based on the use of Plaintiffs' names and likenesses to advertise the

United States District Court
Northern District of California

20

subscription membership, there is no preemption.

C.     Failure to State a Claim for Relief

PeopleConnect argues that, for the remaining claims, dismissal is warranted for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

1.     Violation of § 3344

Section 3344 is a statutory publicity-right claim.  It provides in relevant part as follows:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.  In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty

21

1    dollars ($750) or the actual damages suffered by him or her as a
     result of the unauthorized use, and any profits from the unauthorized
2    use that are attributable to the use and are not taken into account in
     computing the actual damages.  In establishing such profits, the
3    injured party or parties are required to present proof only of the
     gross revenue attributable to such use, and the person who violated
4    this section is required to prove his or her deductible expenses.
     Punitive damages may also be awarded to the injured party or
5    parties.  The prevailing party in any action under this section shall
     also be entitled to attorney's fees and costs.

6    Cal. Civ. Code § 3344(a).

7         PeopleConnect challenges the § 3344 claim on various grounds: (1) that Plaintiffs have

8    failed to plead an injury; (2) that Plaintiffs have failed to plead unlawful advertising; and (3) that

9    the "public affairs" exception applies.

10              a.      Injury

11        Injury is clearly an element of a § 3344 claim.  The statute itself refers to liability to

12   "person or persons injured" or to "injured party or parties."  Case law also recognizes injury as an

13   element.  *See Maloney*, 853 F.3d at 1008 n.2 (noting that a § 3344 claim includes as an element

14   "resulting injury").

15        PeopleConnect argues that, although Plaintiffs have asserted an economic injury, *see, e.g.*,

16   Compl. ¶ 10 (alleging that PeopleConnect has denied Plaintiffs "the economic value of their

17   likenesses"), there are no facts alleged to support the claim that their names and likenesses have

18   economic value.  PeopleConnect acknowledges that statutory damages are a remedy specified in §

19   3344 but maintains that statutory damages are *not* awarded in the situation where the plaintiff is

20   not able to prove economic value; rather, according to PeopleConnect, statutory damages are

21   awarded only when a plaintiff asserts, instead of an economic injury, an emotional injury.

22              i.      Economic Injury

23        PeopleConnect's first argument is, in essence, that Plaintiffs have pled economic injury in

24   conclusory terms only.  The argument is without merit.  If a defendant uses a plaintiff's name

25   and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has

26   some economic value, even if small.  And PeopleConnect does not dispute that a § 3344 claim can

27   be brought even by noncelebrities.  *See KNB*, 78 Cal. App. 4th at 367 (noting that the

28   appropriation of an "obscure plaintiff's" name or likeness "would not inflict as great an economic

22

injury as would be suffered by a celebrity plaintiff" but § 3344 "is not limited to celebrity

plaintiffs"); *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 808 (N.D. Cal. 2011) (Koh, J.)

(recognizing that "previous non-celebrity plaintiffs have typically been models, entertainers, or

other professionals who have cultivated some commercially exploitable value through their own

endeavors," but "find[ing] nothing requiring that a plaintiff's commercially exploitable value be a

result of his own talents or efforts in order to state a claim for damages under § 3344").

Judge Koh's *Fraley* decision also supports Plaintiffs. There, the plaintiffs claimed

"economic injury because they were not compensated for Facebook's commercial use of their

names and likenesses in targeted advertisements to their Facebook friends." *Id.* at 806. The

defendant argued that, because the plaintiffs were not celebrities, they had to "demonstrate some

preexisting commercial value to their names and likenesses, such as allegations that they

'previously received remuneration for the use of their name or likeness, or that they have ever

sought obtain such remuneration.'" *Id.* Judge Koh rejected the defendant's position:

> [N]othing in the text of the statute or in case law . . . supports
> Defendant's interpretation of § 3344 as requiring a plaintiff pleading
> economic injury to provide proof of preexisting commercial value
> and efforts to capitalize on such value in order to survive a motion to
> dismiss. The plain text of § 3344 provides simply that "[a]ny person
> who knowingly uses another's name, voice, signature, photograph,
> or likeness, in any manner ... for purposes of advertising or selling . .
> . without such person's consent . . . shall be liable for any damages
> sustained by the person or persons injured as a result thereof." Cal.
> Civ. Code § 3344. The statutory text makes no mention of
> preexisting value, and in fact can be read to presume that a person
> whose name, photograph, or likeness is used by another for
> commercial purposes without their consent is "injured as a result
> thereof." . . .
>
> Nor does the Court find any reason to impose a higher pleading
> standard on non-celebrities than on celebrities. California courts
> have clearly held that "the statutory right of publicity exists for
> celebrity and non-celebrity plaintiffs alike." *KNB Enterprises*, 78
> Cal. App. 4th at 373 n. 12. As the Ninth Circuit recognized long
> ago, although "[g]enerally, the greater the fame or notoriety of the
> identity appropriated, the greater will be the extent of the economic
> injury suffered . . . the appropriation of the identity of a relatively
> unknown person may result in economic injury *or may itself create
> economic value in what was previously valueless.*"
> *Motschenbacher*, 498 F.2d at 825 n. 11 (emphasis added). Thus,
> courts have long recognized that a person's "name, likeness, or other
> attribute of identity can have commercial value," even if the
> individual is relatively obscure. *Id.* at 825 n. 10.

23

1  *Id.* at 806-07 (emphasis added).

2       The Court acknowledges that there are some authorities to support PeopleConnect's

3  position.  *See, e.g.*, *Cohen v. Facebook, Inc.*, 798 F. Supp. 1090, 1097 (N.D. Cal. 2011)

4  (Seeborg, J.) (stating that "'[r]esulting injury is the sine qua non of a cause of action for

5  misappropriation of name'" and, "[h]ere, plaintiffs' sole allegation relating to injury is the

6  conclusory assertion, repeated at least twice in the complaint, that they 'have suffered injury-in-

7  fact by having the name[s] and likeness[es] misappropriated without their knowledge or

8  consent'"); *Ancestry I*, 2021 U.S. Dist. LEXIS 37811, at *13 (Beeler, J.) (in discussing standing,

9  holding that plaintiffs did not adequately plead an injury in fact – *e.g.*, plaintiffs "did not show that

10  they had a commercial interest in their images that precluded [the defendant's] use of them").

11  Nevertheless, it finds the authorities cited above more persuasive.  Economic value may

12  reasonably be inferred from PeopleConnect's use of the images to advertise, and this is sufficient

13  to defeat a motion under Rule 12(b)(6).

<center>ii.      Statutory Damages</center>

15       Because Plaintiffs have adequately alleged an economic injury, the Court need not address

16  PeopleConnect's second argument, which concerns statutory damages.  However, because the

17  issue is likely to arise again in the future, the Court addresses it now.  PeopleConnect argues

18  statutory damages are available only where a plaintiff claims mental anguish, as opposed to

19  economic injury.

20       Although the argument seems strained on its face, there is authority to support it, including

21  decisions from Judge Seeborg and Judge Koh.  *See Cohen*, 798 F. Supp. 2d at 1097 (Seeborg, J.)

22  (indicating that, to get statutory damages, a plaintiff must show some harm; "'statutory minimum

23  damages were meant to compensate non-celebrity plaintiffs who suffer . . . mental anguish yet no

24  discernible commercial loss'") (emphasis omitted); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d

25  1222, 1242 (N.D. Cal. 2014) (Koh, J.) (recognizing that "[t]he text of section 3344 . . . contains no

26  express requirement that a plaintiff plead mental harm in order to claim the minimum statutory

27  damages figure" but a state appellate court "has inferred such a requirement from section 3344's

28  legislative history"; adding that "[t]his Court should follow *Miller*'s interpretation of a California

<div style="text-align:left">United States District Court<br>Northern District of California</div>

<center>24</center>

1    statute absent convincing evidence 'that the California Supreme Court would reject it'").  Judge

2    Seeborg and Judge Koh's decisions relied primarily on *Miller v. Collectors Universe, Inc.*, 159

3    Cal. App. 4th 988 (2008).

4        In *Miller*, the state appellate court noted as follows:

5        The statute's legislative history reveals section 3344(a) was intended

6        to fill "a gap which exist[ed] in the common law tort of invasion of
         privacy" as applied to noncelebrity plaintiffs whose names lacked
         "commercial value on the open market."  (Assemblymember

7        Vasconcellos, letter to Governor Reagan, re Assem. Bill No. 826
         (1971 Reg. Sess.) Nov. 10, 1971, p. 1.)  Unlike an entertainment or

8        sports star, noncelebrity plaintiffs often could not prove damages
         under the common law; therefore, section 3344(a) as originally

9        enacted in 1971 "established a concrete remedy for the little man
         with a minimum of $ 300 payment," "a simple, civil remedy for the

10       injured individual."  (Letter to Gov. Reagan, supra, at pp. 1-2.)  A
         legislative analysis of the bill quotes the following passage from

11       *Fairfield*, *supra*, 138 Cal. App. 2d at pages 86-87: "Unlike [an]
         action for defamation, 'The gist of the cause of action in a privacy

12       case is not injury to the character or reputation, but a direct wrong of
         a personal character resulting in injury to the feelings without regard

13       to any effect which the publication may have on the  property,
         business, pecuniary interest, or the standing of the individual in the

14       community. . . . The right of privacy concerns one's own peace of
         mind, while the right of freedom from defamation concerns

15       primarily one's reputation. . . . The injury is mental and subjective.
         It impairs the mental peace and comfort of the person and may cause

16       suffering much more acute than that caused by a bodily injury . . .
         .'" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 826

17       (1971 Reg. Sess.) June 14, 1971, p. 1.)  Thus, by enacting section
         3344(a), the Legislature provided a practical remedy for a

18       noncelebrity plaintiff whose damages are difficult to prove and who
         suffers primarily mental harm from the commercial

19       misappropriation of his or her name.

20   *Id.* at 1002.

21       Plaintiffs' response to *Miller* is that, although the case "recognizes statutory damages in §

22   3344 were meant to compensate plaintiffs who suffer mental anguish, nothing in *Miller* or § 3344

23   suggests statutory damages are available *exclusively* for that purpose."  Opp'n at 12 (emphasis

24   added).  The Court agrees with Plaintiffs.  Section 3344 on its face does not require that a plaintiff

25   have suffered mental anguish in order to be awarded statutory damages.  Nevertheless, § 3344

26   does require that a plaintiff have suffered injury in order to be awarded damages, including

27   statutory.  Thus, as a practical matter, it is not difficult to imagine that a plaintiff seeking statutory

28   damages will often have to rely on mental anguish as the hook for statutory damages, assuming

25

that she cannot prove actual damages or at least actual damages in excess of $750.  *Cf. Perkins*, 53

F. Supp. 3d at 1246 (stating that "the real injury compensated in *Miller* was not the reputational

harm itself; it was the effect of that reputational harm on Miller's feelings and mental well-

being").

### b.    Advertising

PeopleConnect argues that another deficiency with the § 3344 claim is Plaintiffs' failure to

adequately allege unlawful advertising.  According to PeopleConnect, there is unlawful

advertising only where (1) the advertisement implies that the plaintiff *endorses* the product

advertised and (2) the name and likeness of the plaintiff is actually *part* of the advertisement, and

not just next to a separate advertisement (which would not imply an endorsement or use to

enhance the advertisement).

The first argument lacks merit.  Nothing in the text of the statute suggests that endorsement

is required – only that the name or likeness be used.  Case law also weighs against

PeopleConnect's position.  *See, e.g.*, *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 418-19

(1983) (stating that "California law has not imposed any requirement that the unauthorized use or

publication of a person's name or picture be suggestive of an indorsement or association with the

injured person"; adding that "the appearance of an 'indorsement' is not the *sine qua non* of a claim

for commercial appropriation"); *see also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778

F.3d 1059, 1072 (9th Cir. 2015) (noting that "[s]tate publicity right claims protect a plaintiff when

the defendant uses the plaintiff's identity for commercial advantage, without permission").

In its reply, PeopleConnect seems to backtrack somewhat.  According to PeopleConnect, it

is *not* arguing that "endorsement is required for each type of § 3344 claim"; instead, it is simply

contending that endorsement is necessary "where a § 3344 claim contests use of a likeness in

advertising or solicitation."  Reply at 9.  But all § 3344 claims seem to involve an advertising

element (*i.e.*, promotional aspect).  *See* Cal. Civ. Code § 3344 (referring to a "person who

knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in

products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases

of, products, merchandise, goods or services, without such person's prior consent").

United States District Court
Northern District of California

1    Furthermore, the cases that PeopleConnect has cited in support – *i.e.*, *Local TV, LLC v.*

2    *Superior Court*, 3 Cal. App. 5th 1 (2016), and cases cited therein – are distinguishable.  These

3    cases involve a different factual scenario: where a *news organization* is advertising to promote

4    itself.  *See, e.g.*, *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (stating that

5    "[a]dvertising to promote a news medium . . . is not actionable under an appropriation or publicity

6    theory so long as the advertising does not falsely claim that the public figure endorses that news

7    medium"); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 797 (1995) (noting

8    that newspaper sold posters to advertise its quality and content, that the posters contained exact

9    reproductions of pages from the newspaper, that the posters did not contain any other information

10   not included on the newspaper pages themselves, and that the posters did not "state or imply that

11   [football player] Montana endorsed the newspaper").  This line of authority is more relevant to a

12   different argument made by PeopleConnect – *i.e.*, regarding the public affairs exception.  *See*

13   *infra*.

14    As for PeopleConnect's second argument, it raises at most a factual dispute – *i.e.*, were

15   Plaintiffs' names and likenesses sufficiently a part of the advertisements for PeopleConnect's

16   products, or were they separate from and simply "next to" these advertisements (and thus implied

17   no endorsement or connection thereto).  *See generally Cross v. Facebook, Inc.*, 14 Cal. App. 5th

18   190, 211 (2017) (where Facebook page was created by persons critical of plaintiff and used

19   plaintiff's name and likeness on the page, and where Facebook displayed ads on the page, court

20   rejected plaintiff's publicity-right claim; "the evidence [plaintiff] submitted . . . demonstrated

21   either that no advertisements appeared alongside the pages at issue, or that the advertisements that

22   did appear adjacent to the content posted by third parties made no use of his name or likeness").

23    c.    Public Affairs Exception

24    Finally, PeopleConnect argues that Plaintiffs do not have a viable § 3344 claim because the

25   statute contains an exception for public affairs.  Section 3344(d) provides as follows: "For

26   purposes of this section, a use of a name, voice, signature, photograph or likeness in connection

27   with any news, public affairs, or sports broadcast or account, or any political campaign, shall not

28   constitute a use for which consent is required under subdivision (a)."  Cal. Civ. Code § 3344(d).

*United States District Court*
*Northern District of California*

27

The Ninth Circuit has noted that the exception is "based on First Amendment concerns" but is "not coextensive with [the First Amendment]." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1282 (9th Cir. 2013).  The exception "is designed to avoid First Amendment questions . . . by providing extra breathing space for the use of a person's name in connection with matters of public interest." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992).  There is a distinction between "news" and "public affairs" for purposes of the statute.

> Civil Code Section 3344, subdivision (d) distinguishes between news and public affairs.  We presume that the Legislature intended that the category of public affairs would include things that would not necessarily be considered news.  Otherwise, the appearance of one of those terms in the subsection would be superfluous, a reading we are not entitled to give to the statute.  We also presume that the term "public affairs" was intended to mean something less important than news.  Public affairs must be related to real-life occurrences.  As has been established in the cases involving common law privacy and appropriation, the public is interested in and constitutionally entitled to know about things, people, and events that affect it.  For that reason, we cannot limit the term "public affairs" to topics that might be covered on public television or public radio.  To do so would be to jeopardize society's right to know, because publishers and broadcasters could be sued for use of name and likeness in documentaries on subjects that do not relate to politics or public policy, and may not even be important, but are of interest.

*Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545-46 (1993).

As an initial matter, the Court takes note this argument is applicable only to the extent PeopleConnect has used Plaintiffs' names and likenesses to promote reprinted yearbooks – and *not* the subscription membership.  In other words, only reprinted yearbooks potentially have a public affairs connection; the subscription membership clearly does not.  *Cf. Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760-61 (N.D. Ill. 2020) (in addressing a claim brought against Whitepages pursuant to the Illinois Right of Publicity Act, noting that "Whitepages used Lukis's identity to advertise not a background report regarding Lukis, but a monthly subscription service giving the purchaser access to background reports on anybody in Whitepages's database").  And in fact, PeopleConnect does not seem to address the subscription membership in its papers.  Because the Court has held that there is copyright preemption for the § 3344 claim based on reprinted yearbooks, it is not necessary for the Court to address the public affairs argument.

28

d.     Summary

Plaintiffs have adequately stated a § 3344 claim based on PeopleConnect's use of their names and likenesses to (allegedly) promote its subscription membership: (1) Plaintiffs have sufficiently alleged an economic injury; (2) they need not allege that the advertising suggested they endorsed the product; (3) it is a question of fact as to whether their names and likenesses were used to advertise the subscription membership; and (4) the public affairs exception has no application to the subscription membership.

2.     Violation of § 17200

In their complaint, Plaintiffs asserted a violation of § 17200 based on unlawful conduct and on unfair conduct. PeopleConnect argues in its motion to dismiss that both theories are not viable. In their opposition, Plaintiffs do not make any argument in response to PeopleConnect's contention that there is no unfair conduct. *See* Opp'n at 17. Accordingly, the Court finds the § 17200 claim based on unfairness waived and focuses only on the unlawfulness claim.

The unlawfulness claim is derivative of the § 3344 claim. However, the unlawfulness claim is not exactly the same as the § 3344 claim because the statutory scheme related to § 17200 requires that a plaintiff who brings such a claim must have "suffered an injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. &. Prof. Code § 17204. Section 17204 is, in essence, a statutory standing requirement. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 313, 320-21 (2011). To satisfy the standing requirement, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 322 (emphasis omitted). On the first element, the California Supreme Court has noted that

> [t]here are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of

29

"lost money or property," nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm.  It suffices to say that, in sharp contrast to the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered such harm.

*Id.* at 323.

In the instant case, PeopleConnect argues that Plaintiffs have failed to allege a loss of money or property because personal information does not qualify as "property."  *See, e.g.*, *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 n.10 (N.D. Cal. 2011) (Ware, J.) (noting that plaintiffs did not offer authority to support the argument that personal information "is a form of property" or that "'unauthorized release of personal information constitutes a loss of property'").  But as Plaintiffs point out, their names and likenesses are intellectual property, and the underlying point of § 17204 is to make sure that a plaintiff has suffered an economic injury for purposes of standing.  Here, Plaintiffs have alleged an economic injury; they were not paid – implicitly, by PeopleConnect – for the use of their names and likenesses.  *Cf.* Opp'n at 17 (asserting that "[t]he theft of intellectual property leading to a loss of potential income is a loss of 'money or property'").  In reply, PeopleConnect argues that Plaintiffs "offer only speculative and conclusory allegations that the use of the yearbook excerpts caused them to lose 'potential' income."  Reply at 11.  But PeopleConnect does not explain how there is speculation if Plaintiffs are simply asserting that PeopleConnect should have paid them for use of their names and likenesses.[10]  As noted above, a reasonable inference may be made that Plaintiffs' names and likeness had value in advertising the subscription services.

    3.    Intrusion Upon Seclusion

PeopleConnect challenges the claim for intrusion upon seclusion.  "[T]he action for intrusion [on seclusion] has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  On the first element, "the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to

---

[10] PeopleConnect has argued only that Plaintiffs lack standing for their § 17200 claim.  They have not made any argument as to what relief Plaintiffs might be able to obtain for a § 17200 violation.

data about, the plaintiff.  The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* at 232.  On the second element, "all the circumstances of an intrusion, including the motives or justification of the intruder, are pertinent to the offensiveness element.  Motivation or justification becomes particularly important when the intrusion is by a member of the print or broadcast press in the pursuit of news material." *Id.* at 236.  In the instant case, PeopleConnect argues that Plaintiffs cannot plausibly plead either element.

Whether Plaintiffs have sufficiently pled the first element presents a close call. PeopleConnect understandably argues that Plaintiffs could not have a reasonable expectation of privacy because their names and likenesses were used in yearbooks which (1) were clearly intended for public distribution and (2) ultimately had no restrictions on their dissemination.  But, as Plaintiffs point out, the California Supreme Court has never "stated that an expectation of privacy, in order to be reasonable for purposes of the intrusion tort, must be of *absolute* or *complete* privacy." *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 915 (1999) (emphasis in original).  "[P]rivacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic.  [Rather,] [t]here are degrees and nuances to societal recognition of our expectations of privacy," and "the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Id.* at 916.  Thus, *e.g.*, in *In re Facebook, Inc.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), Judge Chhabria rejected Facebook's argument that, "once you make information available to your friends on social media, you completely relinquish any privacy interest in that information." *Id.* at 782.  In the instant case, publication of an image in a hardbound yearbook with limited distribution is one thing, but publication on the Internet for the world to see may be something else.  Thus, this element would appear to raise a question of fact.

The Court need not resolve the issue, however, because, on the second element, Plaintiffs have failed to plead sufficient allegations.  According to Plaintiffs, there is a question of fact as to whether the intrusion took place in a manner highly offensive to a reasonable person.  Plaintiffs assert that a reasonable jury could find PeopleConnect's conduct highly offensive because their

United States District Court
Northern District of California

1    information was disclosed "to a worldwide audience comprising millions of users" and at least

2    some of the information was "highly sensitive, including photographs of Plaintiffs as minors and

3    information about where they grew up and attended school."  Opp'n at 18.  But Plaintiffs'

4    arguments are not compelling.  First, it is entirely speculative that Plaintiffs' information was

5    actually disclosed to millions.  Plaintiffs' complaint indicates that Plaintiffs' information would

6    typically be located only when specific searches would be made for them.  Second, Plaintiffs'

7    claim that "highly sensitive" information was disclosed is hyperbolic.  Plaintiffs suggest that their

8    case is analogous to *Facebook* but the facts underlying that case are far different.  There, the

9    plaintiffs alleged that Facebook "disclosed to tens of thousands of app developers and business

10   partners sensitive information . . . , including their photos, religious preferences, video-watching

11   habits, relationships, and information that could reveal location.  It even allegedly disclosed the

12   contents of communications between two people on Facebook's ostensibly private messenger

13   system."  *Facebook*, 402 F. Supp. 3d at 797.  The images and personal information here appear far

14   more limited.

15          Accordingly, the Court dismisses the intrusion-on-seclusion claim.  The dismissal is

16   without prejudice but, at this juncture, without leave to amend.  If Plaintiffs, through discovery,

17   find additional facts suggesting a good faith basis to support the intrusion-upon-seclusion claim,

18   then they may file a motion for leave to amend.

19          4.    Unjust Enrichment

20          Finally, PeopleConnect argues that, under the Ninth Circuit's decision in *Astiana v. Hain*

21   *Celestial Group*, 783 F.3d 753 (9th Cir. 2015), the unjust enrichment claim should be dismissed.

22   In *Astiana*, the Ninth Circuit stated as follows:

23                  [I]n California, there is not a standalone cause of action for "unjust
                enrichment," which is synonymous with "restitution."  *Durell v.*
24              *Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010); *Jogani v.*
                *Superior Court*, 165 Cal. App. 4th 901 (2008).  However, unjust
25              enrichment and restitution are not irrelevant in California law.
                Rather, they describe the theory underlying a claim that a defendant
26              has been unjustly conferred a benefit "through mistake, fraud,
                coercion, or request."  55 Cal. Jur. 3d Restitution § 2.  The return of
27              that benefit is the remedy "typically sought in a quasi-contract cause
                of action."  *Id.*; *see Munoz v. MacMillan*, 195 Cal. App. 4th 648
28              (2011) ("Common law principles of restitution require a party to

United States District Court
Northern District of California

return a benefit when the retention of such benefit would unjustly
enrich the recipient; a typical cause of action involving such remedy
is 'quasi-contract.'").  When a plaintiff alleges unjust enrichment, a
court may "construe the cause of action as a quasi-contract claim
seeking restitution."  *Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014).

*Id.* at 762.  Based on *Astiana*, PeopleConnect contends that (1) Plaintiffs' claim for unjust

enrichment claim may be considered a quasi-contract claim seeking restitution, but (2) Plaintiffs

must then allege that PeopleConnect was unjustly conferred a benefit through mistake, fraud,

coercion, or request – which Plaintiffs have not done.

PeopleConnect's interpretation of *Astiana*, however, may be too rigid.  In a post-*Astiana*

case, the Ninth Circuit noted as follows:

Some California courts allow a plaintiff to state a cause of action for
unjust enrichment, while others have maintained that California has
no such cause of action.  *Compare Prakashpalan*, 223 Cal. App. 4th
at 1132 (allowing plaintiffs to state a cause of action for unjust
enrichment) *with Durell v. Sharp Healthcare*, 183 Cal. App. 4th
1350, 1370 (2010) ("There is no cause of action in California for
unjust enrichment.") (internal quotation marks and citation omitted).
While California case law appears unsettled on the availability of
such a cause of action, this Circuit has construed the common law to
allow an unjust enrichment cause of action through quasi-contract.
*See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.
2015) ("When a plaintiff alleges unjust enrichment, a court may
'construe the cause of action as a quasi-contract claim seeking
restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221, 231 (2014)).  We therefore allow the cause
of action, as we believe it states a claim for relief as an independent
cause of action *or* as a quasi-contract claim for restitution.

*ESG Capital Partners, Ltd. Partnership v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016),

(emphasis added).

The Court shall allow Plaintiffs to proceed with the theory of unjust conferral of a benefit

through, in effect, misappropriation.  *Cf. Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009)

(stating that "[t]he doctrine [of unjust enrichment] applies where the plaintiffs, while having no

enforceable contract, nonetheless have conferred a benefit on the defendant which the defendant

has knowingly accepted under circumstances that make it inequitable for the defendant to retain

the benefit without paying for its value").

D.    <u>First Amendment and California's Anti-SLAPP Statute</u>

Finally, PeopleConnect argues that Plaintiffs' claims are barred by the First Amendment

33

1  and should be stricken under California's anti-SLAPP statute – essentially making an argument

2  similar to the public affairs argument discussed above (in conjunction with the § 3344 claim).  As

3  discussed above, it is unnecessary for the Court to address these issues because the § 3344, §

4  17200, and unjust enrichment claims are preempted to the extent the claims are based on

5  PeopleConnect's reprinting of yearbooks and advertising of the yearbooks.  PeopleConnect has

6  failed to make a First Amendment and anti-SLAPP argument with respect to any claims based on

7  the use of the images and likenesses in advertising its subscription membership.[11]

8  **IV.  <u>MOTION TO STAY DISCOVERY</u>**

9  In its motion to stay discovery, PeopleConnect asks the Court to stay discovery pending

10  resolution of its motion to dismiss and strike.  This stay motion is moot as (1) this order has now

11  issued and (2) a significant part of Plaintiffs' case has survived the motion to dismiss and strike.

12  **V.  <u>CONCLUSION</u>**

13  For the foregoing reasons, the Court denies the motion to stay pending appeal, grants in

14  part and denies in part the motion to dismiss and strike, and denies the motion to stay discovery.

15  The § 3344, § 17200, and unjust enrichment claims are preempted in part by the Copyright Act.

16  The intrusion-upon-seclusion claim is dismissed without prejudice but, at this juncture, without

17  leave to amend.  Plaintiffs' case may otherwise proceed.  PeopleConnect shall file a response to

18  the complaint within thirty (30) days of the date of this order.

19  This order disposes of Docket Nos. 26, 28, and 49, as well as Docket Nos. 60, 64, and 71.

20

21  **IT IS SO ORDERED**.

22

23  Dated: November 1, 2021

24  _____

25  EDWARD M. CHEN
    United States District Judge

26

27  _____

28  [11] To the extent Plaintiffs argue that the Court should give collateral estoppel effect to the *Knapke* court's First Amendment analysis, the Court's discussion on issue preclusion as to copyright preemption is applicable here as well.

*United States District Court*
*Northern District of California*

34

1 | Michael F. Ram (SBN 104805)
mram@forthepeople.com
2 | Marie N. Appel (SBN 187483)
mappel@forthepeople.com
3 | MORGAN & MORGAN
4 | COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
5 | San Francisco, CA 94102
Telephone: (415) 358-6913
6 | Facsimile: (415) 358-6293
7 |
8 | Benjamin R. Osborn (*Pro Hac Vice* application pending)
102 Bergen St.
9 | Brooklyn, NY 11201
Telephone: (347) 645-0464
10 | Email: ben@benosbornlaw.com
11 | *Attorneys for Plaintiffs*
*and the Proposed Class*
12 |

13 | THE UNITED STATES DISTRICT COURT

14 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

15 | SAN FRANCISCO DIVISION

16 | MEREDITH CALLAHAN AND LAWRENCE
GEOFFREY ABRAHAM, on behalf of
17 | themselves and all others similarly situated,

Case No.

CLASS ACTION COMPLAINT FOR
VIOLATION OF CAL. CIV. CODE § 3344,
AND CAL. BUS. & PROF. CODE § 17200,
INTRUSION UPON SECLUSION, UNJUST
ENRICHMENT

18 | Plaintiffs,

19 |
20 | v.

21 | PEOPLECONNECT, INC., a Delaware
Corporation; PEOPLECONNECT INC., a
22 | California Corporation; CLASSMATES
MEDIA CORPORATION, a Delaware
23 | Corporation; and DOES 1 through 50, inclusive,

CLASS ACTION

**JURY TRIAL DEMANDED**

24 | Defendants.

25 |
26 |
27 |
28 |

CLASS ACTION COMPLAINT                    1

1.      Plaintiffs MEREDITH CALLAHAN and LAWRENCE GEOFFREY ABRAHAM, by and through their attorneys, make the following allegations on information and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

## INTRODUCTION

2.      Plaintiffs bring this class action complaint against PEOPLECONNECT, INC.; PEOPLECONNECT INC.; CLASSMATES MEDIA CORPORATION; and DOES 1 through 50, inclusive (collectively, "Classmates") for knowingly misappropriating the names, photographs, and likenesses of Plaintiffs and the class; knowingly using those names, photographs, and likenesses to advertise its products and services, including reprinted yearbooks and subscription memberships to the website Classmates.com; and knowingly using those names, photographs, and likenesses on and in reprinted yearbooks and the website Classmates.com, without obtaining prior consent from Plaintiffs and the class.

3.      Classmates' business model relies on extracting personal information from school yearbooks, including names, photographs, schools attended, and other biographical information. Classmates aggregates the extracted information into digital records that identify specific individuals by name, photograph, and other personal information, and stores the digital records in a massive online database. Classmates provides free access to some of the personal information in its database in order to drive users to purchase its two paid products – reprinted yearbooks that retail for up to $99.95, and a monthly subscription to Classmates.com that retails for up to $3 per month – and to gather registered users, from whom Classmates profits by selling targeted ads.

4.      According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the Collection contains records corresponding to millions of Californians.

5.      Classmates has not received consent from, given notice to, or provided compensation to the millions of Californians whose names, photographs, biographical

---

CLASS ACTION COMPLAINT          2

information, and identities appear in its Classmates Yearbook Collection.

6.      The names, photographs, cities of residence, schools attended, likenesses, and identities contained in the Classmates Yearbook Collection uniquely identify specific individuals.

7.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise, sell, and solicit the purchase of reprinted yearbooks, which retail for up to $99.95, and its "CM+" subscription membership, which retails for up to $3 per month.

8.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise the free version of its website, which is available to both unregistered users and registered non-paying users. Classmates derives profit from the free version of its website by (1) selling targeted ads; (2) driving users of the free version to purchase its paid products and services; and (3) on information and belief, selling the personal information it collects from registered and unregistered users to third parties.

9.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection on and in its products and services, by (1) selling reprinted yearbooks that contain the records; (2) selling access to the records to paying subscribers via its CM+ online membership plan; and (3) including these records on the free version of its website that is available to unregistered users and registered non-paying users.

10.     By misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, Classmates has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, and violating their right to seclusion. Classmates has also earned ill-gotten profits and been unjustly enriched.

11.     These practices, as further detailed in this complaint, violate the California right to publicity as codified in Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal.

---

CLASS ACTION COMPLAINT            3

1  Bus. & Prof. Code § 17200 *et seq.*; California's common law right protecting against Intrusion
2  upon Seclusion; and California Unjust Enrichment law.

3  <div align="center">**JURISDICTION AND VENUE**</div>

4       12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the
5  Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens
6  of a state different from at least one defendant. According to available public records,
7  defendant PeopleConnect Inc. is incorporated in Delaware and has its principal place of
8  business in Seattle, Washington. The class members are residents of California. (B) The
9  proposed class consists of at least 100 members. Classmates advertises that its Classmates
10  Yearbook Collection comprises records collected from "over 400,000 yearbooks."  While
11  Classmates does not publish statistics concerning the total number of records in each yearbook,
12  or a breakdown by state, a conservative estimate would place the number of individual records
13  corresponding to Californians in the millions. And (C) the amount in controversy exceeds
14  $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for damages equal
15  to the greater of $750 per violation, the actual damages suffered by Plaintiffs, or the profits
16  earned by Defendants attributable to the unauthorized use. Given millions of likely records in
17  California, the amount in controversy is well over the jurisdictional amount.

18       13.    This Court has personal jurisdiction over the claims of Plaintiffs and the non-
19  named class members. Classmates maintains substantial connections to the state of California
20  and this district. Classmates maintains an office in Woodland Hills, California. Classmates
21  advertises its products and services to prospective customers in this state and district, provides
22  its products and services to existing customers in this state and district, and uses the
23  misappropriated names, photographs, likenesses, images, and identities of residents of this state
24  and district as described in this complaint.

25       14.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of
26  the events and conduct giving rise to the violations alleged in this complaint occurred in this
27  district. A substantial portion of the class members reside in this state and district. Named
28  Plaintiff Lawrence Geoffrey Abraham resides in this district.

---

CLASS ACTION COMPLAINT     4

**3-ER-417**

**INTRADISTRICT VENUE**

15.     Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco County and because Plaintiff Lawrence Geoffrey Abraham lives in San Francisco.

**PARTIES**

**Defendant Classmates**

16.     Defendant PEOPLECONNECT, INC. is a Delaware corporation with its headquarters in Seattle, Washington. It conducts business under the brand names "Classmates.com," "Classmates," and other brand names associated with the various website and services it owns and operates. It conducts business throughout this district, California, and the United States. PeopleConnect, Inc. owns and operates the website Classmates.com.

17.     Defendant PEOPLECONNECT INC. is a California corporation with its headquarters in Seattle, Washington. Defendant CLASSMATES MEDIA CORPORATION is a Delaware corporation with its headquarters in Woodland Hills, California.

18.     There are many related entities associated with the Classmates.com website. Plaintiffs are ignorant of which additional related entities were involved in the wrongdoing alleged herein. Plaintiffs therefore sues these Doe Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously named Doe Defendants when they are ascertained. Each of the fictitiously named Doe Defendants is responsible for the conduct alleged in this Complaint and Plaintiffs' damages were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

**Plaintiff Lawrence Geoffrey Abraham**

19.     Plaintiff Lawrence Geoffrey Abraham is a resident of San Francisco, California. Mr. Abraham is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

20.     Mr. Abraham has never provided consent to Classmates, written or otherwise, for the use of his name, photograph, or likeness.

21.     Classmates has never notified, requested consent, or provided compensation to

Mr. Abraham for its appropriation of his name, photograph, and likeness. Mr. Abraham first became aware that his personal information and photographs are being used by Classmates through the investigation of this lawsuit.

22.     Classmates' Yearbook Collection contains sixteen unique records corresponding to Mr. Abraham, all from yearbooks between the years of 1998 and 2004 from Albuquerque Academy in Albuquerque, New Mexico, where Mr. Abraham attended school. The records uniquely identify Mr. Abraham. All sixteen records include his full name and clearly identify his place of residence and school he attended. Eleven of the records include photographs in which Mr. Abraham's face is plainly visible and identifiable. Various of the records identify Mr. Abraham's participation in school activities such as track, cross country, and chess club. A representative sample of the photographs from three of these records appear as screen captures below:



CLASS ACTION COMPLAINT                6





CLASS ACTION COMPLAINT              7

23.     Classmates has and continues to knowingly use the records containing Mr. Abraham's name, photograph, and likeness to advertise, sell, and solicit the purchase of reprinted yearbooks. Users of the Classmates.com website are encouraged to enter the names of people they may know into a search bar. The search bar is indicated by an arrow labeled "Start your search here!" and promises promotional pricing on reprinted yearbooks that contain a relative, significant other, or friend.



CLASS ACTION COMPLAINT                    8

24. Users who enter Mr. Abraham's name receive in response a list of the sixteen records in Classmates' Yearbook Collection corresponding to Mr. Abraham. All Classmates users may search for Mr. Abraham's name and view this list, including unregistered users, registered non-paying users, and paying subscribers.



25. When users click to view any of the records corresponding to Mr. Abraham, Classmates displays at least two forms of advertisement encouraging them to buy a copy of a reprinted yearbook containing Mr. Abraham's name, image, and likeness. First, Classmates displays a page showing the photograph of Mr. Abraham and his name, accompanied by a link marked "Own this yearbook today," which leads to a page soliciting the purchase of the

CLASS ACTION COMPLAINT          9

1  yearbook for $99.95:



25    26.    Second, for users who do not click the link but instead continue to browse

26  through Mr. Abraham's photographs, upon their third attempt to load a photograph, Classmates

27  displays a pop-up window prompting the user to "Buy now" a "Hardcover Reprint" of the

28  yearbook containing Mr. Abraham's name, photograph, and likeness for $99.95.

CLASS ACTION COMPLAINT              10



27.     Classmates has and continues to knowingly use the sixteen records containing Mr. Abraham's name, photograph, and likeness to advertise, sell, and solicit the purchase of paid subscriptions to its "CM+" membership plan. Users may search for and view records containing Mr. Abraham's name, photograph, and likeness. For unregistered users and registered non-paying users, Classmates displays both the requested records and at least two forms of advertisement designed to solicit the purchase of a paid subscription to Classmates for a price ranging from $1.50 to $3 per month. First, adjacent to the list of records containing Mr. Abraham's name, photograph, and likeness, Classmates displays an advertisement prompting the user that "It's time to upgrade!" and promising several benefits to paying subscribers, including discounted prices on yearbook reprints. Users who click the link are brought to a page soliciting the purchase of a paid subscription membership.

CLASS ACTION COMPLAINT           11



28.     Second, unregistered users are initially shown a low-resolution version of Mr. Abraham's photograph. Unregistered users who click on Mr. Abraham's photograph looking for a higher-resolution version are shown a pop-up asking them to register in order to view "full-size yearbooks."



CLASS ACTION COMPLAINT              12

29.     Once users have entered the requested information, Classmates displays a second screen soliciting the purchase of a paid subscription plan, for prices ranging from $1.50 to $3. Although users do not have to pay for a subscription to view full-resolution records, Classmates does everything in its power to obscure this and make the user believe they must pay to continue. The screen is visually dominated by prompts asking users to select a paid plan and enter credit card or other payment information. A link titled "No thanks" written in miniscule font at the far top right corner of the page is the only indication users may proceed without paying money.



30.     Classmates has and continues to knowingly use the sixteen records containing Mr. Abraham's name, photograph, and likeness to advertise registered memberships on its website. Registered memberships are free of charge, but registered users must provide personal information including their high school, year of graduation, name, and email address. Classmates earns money from registered members by displaying targeted ads on its website. Upon information and belief, Classmates also earns money from registered members by selling their personal information to third parties.

CLASS ACTION COMPLAINT          13

31. Users may search for and view records containing Mr. Abraham's name, photograph, and likeness. Unregistered users are initially shown low-resolution versions of Mr. Abraham's photographs. Unregistered users who click on a photograph of Mr. Abraham looking for a "zoomed-in" higher-resolution version are shown a pop-up soliciting them to register and promising that registration will bring benefits including "access to all yearbooks" and the ability to view "full-sized yearbooks."

32. Classmates' purpose in appropriating and providing access to Mr. Abraham's name, photograph, and likeness on its website is to advertise, sell, and solicit the purchase of its products and services, including its yearbook reprints, paid subscription "CM+" membership plan, and non-paying registered membership plan.

33. Classmates has and continues to knowingly use the sixteen records containing Mr. Abraham's name, photograph, and likeness on and in its products and services by (1) selling reprinted yearbooks that contain Mr. Abraham's name, photograph, and likeness; (2) selling access to online records containing Mr. Abraham's name, photograph, and likeness to paying subscribers of its CM+ membership plan; and (3) including online records containing Mr. Abraham's name, photograph, and likeness on the free version of its website available to unregistered users and registered non-paying users.

34. Through its actions, Classmates has caused harm to Mr. Abraham by depriving him the fair economic value of his likeness; violating his exclusive right to control his likeness; and violating his right to freedom from intrusion upon seclusion. Classmates has earned ill-gotten profits and been unjustly enriched through its use of Mr. Abraham's name, photograph, and likeness.

**Plaintiff Meredith Callahan**

35. Plaintiff Meredith Callahan (née Whipple) is a resident of the city of Del Mar in San Diego County, California. Ms. Callahan is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

36. Ms. Callahan has never provided consent to Classmates, written or otherwise, for the use of her name, photograph, or likeness.

CLASS ACTION COMPLAINT                    14

37.     Classmates has never notified, requested consent, or provided compensation to Ms. Callahan for its appropriation of her name, photograph, and likeness. Ms. Callahan first became aware that her personal information and photographs are being used by Classmates through the investigation of this lawsuit.

38.     Ms. Callahan is a published author and runs a coaching and consulting business. The image she presents online contributes to her book sales and forms a significant part of the brand and value of her business. She has a professional interest in maintaining her image and exerting control over how her name and image is used.

39.     Classmates' Yearbook Collection contains thirty-six unique records corresponding to Ms. Callahan, all from yearbooks between the years of 1996 and 1999 from Northern High School in Port Huron, Michigan, where Ms. Callahan attended school. The records uniquely identify Ms. Callahan. All thirty-six records include her full name and clearly identify her place of residence and school she attended. Thirty of the records include photographs in which Ms. Callahan's face is plainly visible and identifiable. Various of the records identify Ms. Callahan's participation in school activities such as ski club, Students Against Drunk Driving, student council, cross country, and quiz bowl. A representative sample of the photographs from three of these records appear as screen captures below:



1

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26



27    40.    Classmates has and continues to knowingly use these records containing Ms.

28    Callahan's name, photograph, and likeness to advertise, sell, and solicit the purchase of

---

CLASS ACTION COMPLAINT                16

1   reprinted yearbooks. Users of the Classmates.com website are encouraged to enter the names of

2   people they may know into a search bar. The search bar is indicated by an arrow labeled "Start

3   your search here!" and promises promotional pricing on reprinted yearbooks that contain a

4   relative, significant other, or friend.

5       41.    Users who enter Ms. Callahan's name receive in response a list of the thirty-six

6   records in Classmates' Yearbook Collection corresponding to Ms. Callahan (the search returns

7   thirty-eight results, but two of those results do not in fact correspond to Ms. Callahan). All

8   Classmates users may search for Ms. Callahan's name and view this list, including unregistered

9   users, registered non-paying users, and paying subscribers. Immediately adjacent to the list of

10  records corresponding to Ms. Callahan, Classmates displays an advertisement soliciting the

11  purchase of a yearbook containing Ms. Callahan's photograph. The advertisement promises

12  "Free shipping on the 1999 Northern High School yearbook."

13
14
15
16
17
18   
19
20
21
22
23
24
25

26      42.    When users click to view any of the records corresponding to Ms. Callahan,

27  Classmates displays at least two additional forms of advertisement encouraging them to buy a

28  copy of a reprinted yearbook containing Ms. Callahan's name, image, and likeness. First,

CLASS ACTION COMPLAINT              17

1  Classmates displays a page showing the photograph of Ms. Callahan and her name,

2  accompanied by a link marked "Own this yearbook today," which leads to a page soliciting the

3  purchase of the yearbook for $99.95:





CLASS ACTION COMPLAINT                    18

43.     Second, for users who do not click the link but instead continue to browse through Mr. Callahan's photographs, upon their third attempt to load a photograph, Classmates displays a pop-up window prompting the user to "Buy now" a "Hardcover Reprint" of the yearbook containing Ms. Callahan's name, photograph, and likeness for $99.95.



44.     Classmates has and continues to knowingly use the thirty-six records containing Ms. Callahan's name, photograph, and likeness to advertise, sell, and solicit the purchase of paid subscriptions to its "CM+" membership plan. Users may search for and view records containing Ms. Callahan's name, photograph, and likeness. For unregistered users and registered non-paying users, Classmates displays both the requested records and at least two forms of advertisement designed to solicit the purchase of a paid subscription to Classmates for a price ranging from $1.50 to $3 per month. First, Classmates displays an advertisement prompting the user that "It's time to upgrade!" and promising several benefits to paying subscribers, including discounted prices on yearbook reprints. Users who click the link are

CLASS ACTION COMPLAINT                    19

brought to a page soliciting the purchase of a paid subscription membership.



45.     In an alternate version of this advertisement, Classmates solicits the purchase of the specific Northern High School Yearbook in which Ms. Callahan's photo appear, identifying the yearbook as a "Northern High School yearbook" and displaying the cover and a page from the interior of the yearbook:



CLASS ACTION COMPLAINT              20

46.     Second, unregistered users are initially shown a low-resolution version of Ms. Callahan's photograph. Unregistered users who click on Ms. Callahan's photograph looking for a higher-resolution version are shown a pop-up asking them to register in order to view "full-size yearbooks."



CLASS ACTION COMPLAINT            21

47.     Once users have entered the requested information, Classmates displays a second screen soliciting the purchase of a paid subscription plan, for prices ranging from $1.50 to $3. Although users do not have to pay for a subscription to view full-resolution records, Classmates does everything in its power to obscure this and make the user believe they must pay to continue. The screen is visually dominated by prompts asking users to select a paid plan and enter credit card or other payment information. A link titled "No thanks" written in miniscule font at the far top right corner of the page is the only indication users may proceed without paying money.



48.     Classmates has and continues to knowingly use the thirty-six records containing Ms. Callahan's name, photograph, and likeness to advertise registered memberships on its website. Registered memberships are free of charge, but registered users must provide personal information including their high school, year of graduation, name, and email address. Classmates earns money from registered members by displaying targeted ads on its website. Upon information and belief, Classmates also earns money from registered members by selling

their personal information to third parties.

49.     Users may search for and view records containing Ms. Callahan's name, photograph, and likeness. Unregistered users are initially shown low-resolution versions of Ms. Callahan's photographs. Unregistered users who click on a photograph of Ms. Callahan looking for a higher-resolution version are shown a pop-up soliciting them to register and promising that registration will bring benefits including "access to all yearbooks" and the ability to view "full-sized yearbooks."

50.     Classmates' purpose in appropriating and providing access to Ms. Callahan's name, photograph, and likeness on its website is to advertise, sell, and solicit the purchase of its products and services, including its yearbook reprints, paid subscription "CM+" membership plan, and non-paying registered membership plan.

51.     Classmates has and continues to knowingly use the records containing Ms. Callahan's name, photograph, and likeness on and in its products and services by (1) selling reprinted yearbooks that contain Ms. Callahan's name, photograph, and likeness; (2) selling access to online records containing Ms. Callahan's name, photograph, and likeness to paying subscribers of its CM+ membership plan; and (3) including online records containing Ms. Callahan's name, photograph, and likeness on the free version of its website available to unregistered users and registered non-paying users.

52.     Through its actions, Classmates has caused harm to Ms. Callahan by depriving her the fair economic value of her likeness; violating her exclusive right to control her likeness; and violating her right to freedom from intrusion upon seclusion. Classmates has earned ill-gotten profits and been unjustly enriched through its use of Ms. Callahan's name, photograph, and likeness.

## STATEMENT OF COMMON FACTS

53.     Classmates' business model relies on collecting personal information from hundreds of thousands of school yearbooks. Classmates scans yearbooks into a digital format, then extracts personal information including names, photographs, schools attended, years of attendance, cities of residence, and biographical details. Classmates aggregates the extracted

---

CLASS ACTION COMPLAINT          23

information into digital records associated with specific individuals. Classmates then uses the records to advertise and sell its products and services. Those products and services include reprinted yearbooks, which Classmates sells for up to $99.95, and subscription memberships to the website Classmates.com, which Classmates sells for up to $3 per month.

54.     According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the class includes millions of Californians whose names, photographs, and likenesses appear in the Classmates Yearbook Collection.

55.     Classmates did not ask consent from, given notice to, or provide compensation to Plaintiffs or the class before using their names, photographs, and biographical information.

56.     The names, photographs, cities of residence, likeness, and identities that Classmates aggregates into individual records uniquely identify specific individuals.

57.     Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its products and services, including (1) reprinted yearbooks; (2) its "CM+" subscription membership; and (3) the free version of its website, from which Classmates profits by selling targeted advertisements and driving users to its paid products and subscriptions.

58.     Classmates employs a variety of advertising techniques through which it exploits the names, photographs, and likenesses of Plaintiffs and the class, many of which are detailed in the Plaintiff-specific portion of this complaint. Across all of the advertising techniques it uses, Classmates seeks to translate its users' interest in seeing pictures of and learning personal details about Plaintiffs and the class, into the purchase of a Classmates product or service (or the use of a website from which Classmates drives profit).

59.     Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the class on and in its products and services by including the records it has created about Plaintiffs and the class in the reprinted yearbooks it sells, and on its website.

60.     Although Classmates does not disclose how it created its Yearbook Collection,

CLASS ACTION COMPLAINT                24

there is a section of the Classmates website encouraging users to donate old yearbooks to Classmates. At least some, and possibly all, of its Yearbook Collection was built via such donations.

61.     With the exception of the implied consent of the donor (who may or may not personally appear in the donated yearbook), Classmates makes no attempt to contact or gain the consent of the people whose names, photographs, likenesses, biographical information, and identifies appear in a donated yearbook. Classmates does not require or even suggest the donor should ask the consent of the people who appear in the yearbook to have their names, photographs, and images digitally extracted and aggregated into records sold and used for advertising by Classmates.

62.     The vast majority of people whose personal information Classmates has digitally extracted and aggregated in its Classmates Yearbook Collection have no business relationship with Classmates, are not Classmates subscribers, and are not subject to a Terms of Service or any other agreement with Classmates.

63.     Through its actions, Classmates has caused harm to Plaintiffs and the class by depriving them the fair economic value of their likenesses; violating their exclusive rights to control their likenesses; and violating their rights to freedom from intrusion upon seclusion. Classmates has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, and likenesses of Plaintiffs and the class.

64.     Classmates knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; California's common law right protecting against Intrusion upon Seclusion; and California Unjust Enrichment law.

### CLASS ALLEGATIONS

65.     Plaintiffs bring this complaint on behalf of themselves and a class of all California residents who (a) are not currently subscribers of any Classmates services, (b) have

---

CLASS ACTION COMPLAINT                 25

never donated a yearbook to Classmates, and (c) whose names, photographs, and/or likenesses were extracted from yearbooks by Classmates and placed on the Classmates website as part of its Yearbook Collection, without Classmates obtaining their consent. Excluded from the class are (a) Plaintiffs' counsel; (b) Classmates, its officers and directors, counsel, successors and assigns; (c) any entity in which Classmates has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

66.     The members of the proposed class are so numerous that joinder of individual claims is impracticable. Classmates represents that its Yearbook Collection contains records from over 400,000 yearbooks in the United States. Each yearbook contains the names and likeness of hundreds, sometimes thousands of individuals. Even accounting for the fact that only a portion of the yearbooks are from California, that some individuals in Classmates' database are deceased or no longer reside in California, and that the class excludes current Classmates subscribers (Classmates has about 4 million subscribers worldwide), the class likely numbers in the millions.

67.     There are significant questions of fact and law common to the members of the class. These issues include:

a. Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interest and hobbies, in its Classmates Yearbook Collection, and selling of that information via reprinted yearbooks and paid subscription plans, constitute the knowing use of another's name, photograph, or likeness, in any manner, on or in products, merchandise or goods within the meaning of Cal. Civ. Code § 3344;

b. Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interests and hobbies, and use of that information in the advertising techniques described in this complaint, constitutes the knowing use of another's name, photograph, or

CLASS ACTION COMPLAINT                    26

likeness for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

c. Whether Plaintiffs and the class consented to the use of their names, photographs, and likenesses in Classmates products and advertisements;

d. Whether Classmates' use of names, photographs, and likeness constitutes a use in connection with news or public affairs for which consent is not required;

e. Whether Classmates' conduct as described in this complaint violated California's Unfair Competition Law;

f. Whether Classmates was unjustly enriched as a result of the conduct described in this complaint; and

g. Whether Plaintiffs and members of the class are entitled to injunctive, declaratory and monetary relief as a result of Classmates' conduct as described in this complaint.

68.     Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by Classmates misappropriation and misuse of their names, likenesses, photographs, and other personal information.

69.     The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the class, and they are represented by qualified counsel experienced in class action litigation of this nature.

70.     A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute

---

CLASS ACTION COMPLAINT                    27

concerning Classmates' common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

71.     The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Classmates has acted on ground generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the class as a whole.

72.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**FIRST CAUSE OF ACTION**
**(Cal. Civ. Code § 3344)**

73.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

74.     California's Right of Publicity Statute, California Civil Code § 3344, prohibits and provides damages for the knowing misappropriation of a name, voice, signature, photograph, or likeness in advertising or soliciting without prior consent.

75.     By engaging in the forgoing acts and omissions, Classmates knowingly used class members' names, photographs, and likenesses in its products and services for the purpose of advertising and selling its services, without class members' consent.

76.     Each use of a class member's name, photograph, or likeness is a separate and distinct violation of California Civil Code § 3344 giving rise to damages.

77.     Plaintiffs seek declaratory, injunctive, and monetary damages for themselves and on behalf of each member of the proposed class as provided for in California Civil Code § 3344, including statutory damages equal to the greater of $750 per violation, actual damages, or profits from Classmates' illegal actions, punitive damages, and the award of attorneys' fees and costs in the event Plaintiffs prevail in this action.

CLASS ACTION COMPLAINT          28

78.     Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294.  The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

\\\

\\\

### SECOND CAUSE OF ACTION
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

79.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Classmates has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq.* ("UCL").

81.     As described in this complaint, Classmates' misappropriation and use without consent of Plaintiffs' and class members' names, photographs, likenesses, and personal information is a violation of California's Right to Publicity Statute, Cal. Civ. Code § 3344.

82.     By engaging in the conduct described in this complaint and violating California law, Classmates engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

83.     By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Classmates engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

84.     As a result of Classmates' actions, Plaintiffs and the class have been injured. Plaintiffs and members of the class each lost the economic value of their likenesses, their exclusive right to control their likenesses, and their freedom from intrusion upon seclusion. Plaintiffs and members of the class also lost the right to refuse consent and protect their privacy, as guaranteed by California law.

---

CLASS ACTION COMPLAINT              29

**3-ER-442**

### THIRD CAUSE OF ACTION
### (Intrusion Upon Seclusion)

85.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiffs and class members have a reasonable expectation of privacy in their personal information, including their photographs and biographical details.

87.     Classmates intentionally intruded on the seclusion of Plaintiffs and the class by appropriating their names, likeness, photographs, and biographical information, and using the appropriated information to advertise and sell online services.

88.     Classmates' misuse of personal information reveals private facts in which a reasonable person would expect privacy. It maintains, sells, and advertises using records that reveal intimate details about subjects' private lives, including ages, locations, biographical details, and photographs.

89.     Plaintiffs and members of the class were harmed by Classmates' intrusion into their private affairs as detailed in the compliant.

90.     Among other remedies, Plaintiffs and members of the class seek damages, including punitive damages in light of Classmates' conscious disregard of Plaintiffs' and class members privacy rights and exploitation of their personal information for profit.

91.     Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294. The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

92.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiffs and members of the class have conferred an unwarranted benefit on Classmates. Classmates' business model centers around using personal information that

CLASS ACTION COMPLAINT                    30

3-ER-443

rightfully belongs to Plaintiffs and members of the class to sell its products and services. Classmates uses the personal information it misappropriated without consent. Each sale of a reprinted yearbook that contains records that rightfully belong to class members, each "CM+" subscription sold to users who then gain access to records that rightfully belong to class members, and all advertising revenue collected from the delivery of ads on pages displaying records that rightfully belong to class members, represents an unwarranted benefit conferred upon Classmates by the class.

94. Under principles of equity and good conscience, Classmates should not be permitted to retain the benefits it gained by its actions.

95. Plaintiffs and members of the class have suffered loss as a direct result of Classmates' conduct.

96. Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class members, seek the imposition of a constructive trust and restitution of proceeds Classmates received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest pursuant to Cal. Civ. Proc. Code § 1021.5.

## PRAYER FOR RELIEF

97. WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situation, hereby demand judgment against Defendant Classmates as follows:

(a) For an order certifying the proposed class and appointing Plaintiffs and their counsel to represent the class;

(b) For a declaration that Classmates' acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of California law;

(c) For preliminary and permanent injunctive relief enjoining and preventing Classmates from continuing to operate its Classmates website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

CLASS ACTION COMPLAINT 31

(d) For an order enjoining Classmates from continuing the unlawful and unfair conduct described in this complaint;

(e) For restitution for Plaintiffs and members the class for the value that Defendants derived from misappropriating their likenesses;

(f) For an award of damages, including without limitation damages for actual harm, profits earned by Classmates, and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(h) For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: December 17, 2020                    By:  _____/s/ Michael F. Ram_____
                                                  Michael F. Ram

                                            Michael F. Ram (SBN 104805)
                                            mram@forthepeople.com
                                            Marie N. Appel (SBN 187483)
                                            mappel@forthepeople.com
                                            MORGAN & MORGAN
                                            COMPLEX LITIGATION GROUP
                                            711 Van Ness Avenue, Suite 500
                                            San Francisco, CA 94102
                                            Telephone: (415) 358-6913
                                            Facsimile: (415) 358-6923

                                            Benjamin R. Osborn (To be admitted *Pro
                                            Hac Vice*))
                                            102 Bergen St.
                                            Brooklyn, NY 11201
                                            Telephone: (347) 645-0464
                                            Email: ben@benosbornlaw.com

                                            *Attorneys for Plaintiffs
                                            and the Proposed Class*

CLASS ACTION COMPLAINT            32