REDACTED

No. 24-3894

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ALICIA NOLEN,

Plaintiff-Appellee,

v.

PEOPLECONNECT, INC.,

Defendant-Appellant.

---

On Appeal from December 14, 2023 Sealed Order
and May 20, 2024 Order Granting Class Certification
United States District Court,
Northern District of California
The Honorable Edward M. Chen
Case No. 3:20-cv-09203-EMC

---

## DEFENDANT-APPELLANT'S OPENING BRIEF

---

Clifford W. Berlow
Debbie L. Berman
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
cberlow@jenner.com
dberman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant PeopleConnect, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for Defendant-Appellant PeopleConnect, Inc. ("PeopleConnect") states that PeopleConnect is a wholly owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corporation, and PCHI Parent, Inc., a non-public Delaware corporation.

No publicly held corporation owns 10% or more of PeopleConnect's stock. PeopleConnect has no publicly held affiliates.

Dated: October 15, 2024

_/s/ Ian Heath Gershengorn_
Ian Heath Gershengorn

i

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), Defendant-Appellant PeopleConnect, Inc. respectfully requests oral argument. This appeal presents significant issues regarding the application of Federal Rule of Civil Procedure 23 and the scope of California Civil Code § 3344. PeopleConnect submits that oral argument will assist the Court in resolving this appeal.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................i

STATEMENT REQUESTING ORAL ARGUMENT ................................... ii

TABLE OF AUTHORITIES ................................................................. vii

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ..........................................................4

ISSUES PRESENTED ...........................................................................5

STATEMENT OF THE CASE .................................................................5

I.   Factual Background .....................................................................5

II.  Procedural Background ............................................................11

     A.   Plaintiff's Suit Under Section 3344 ................................11

     B.   Plaintiff's Class Certification Motion ...........................13

          1.   Each Class Member Must Rely On Individualized
               Evidence To Prove PeopleConnect Used Their
               Name. ...................................................................14

          2.   Each Class Member Must Rely On Individualized
               Evidence To Prove They Are Identifiable In Search
               Results. ................................................................16

          3.   Each Class Member Must Rely On Individualized
               Evidence To Prove They Did Not Consent To Use
               Of Their Name On Classmates.com. ....................17

     C.   The Conditional Certification Order ...............................20

     D.   The Final Certification Order ........................................23

SUMMARY OF ARGUMENT ...............................................................23

STANDARD OF REVIEW.............................................................25

STANDARDS FOR CLASS CERTIFICATION .........................26

ARGUMENT.................................................................................27

I.   The District Court Erred In Certifying A Class Without A Workable Winnowing Plan.........................................................27

    A.   When A Class Is Overinclusive, A District Court At The Time Of Certification Must Put Forward A Workable Plan To Cull Members Who Lack Viable Claims........................28

    B.   As PeopleConnect Substantiated And The District Court Recognized, The Class Includes People Who Cannot Prove A Claim Under Section 3344................................................32

       1.   The Class Includes Members Who Cannot Prevail Because They Are Not "Identifiable" As Required By Section 3344. ...............................................................32

       2.   The Class Includes Members Who Cannot Prevail Because They Agreed In Consent Forms To The Use Of Their Names. ...............................................................33

    C.   The District Court Attempted To Exclude Through The Class Definition Other Individuals Who Cannot Prove A Claim But Proposed No Workable Plan To Effectuate That Exclusion. ...................................................................34

       1.   The District Court Excluded From The Class Individuals Who Consented Without A Workable Plan To Do So. ..........................................................35

       2.   The District Court Excluded From The Class Individuals Who Cannot Appear In A Search Result Without A Workable Plan To Do So...................35

    D.   The Certification Order Violates *Van*. ...........................36

iv

1. A Workable Winnowing Plan Is Needed. ..........................37

    a. Whether A Plan Is "Unnecessary" Does Not Depend On The Quantity Of Invalid Claims. ..........37

    b. *Briseno* Is Inapposite Because Individual Issues Must Be Resolved Before Judgment Here. ...............................................................41

2. The District Court Did Not Adopt A Workable Winnowing Plan As *Van* Requires, Nor Is One Possible. ..........................................................42

II. The District Court Improperly Certified A Class Based On Erroneous Constructions Of Multiple Elements Of Section 3344. ....................................................................45

  A. The District Court Erred In Holding That Making Class Members' Names "Searchable" Is A Use With A Direct Connection To Advertising. ...............................47

    1. Section 3344 Requires The Actual Use Of A Class Member's Name, Not The Possibility Of Use. .................48

    2. Section 3344 Requires That The Actual Use Of A Class Member's Name Be In A Specific Advertisement. ...........................................49

    3. Even If The District Court's Definition Of Use Were Accepted, Such A Use Would Be Insufficient Under The Incidental Use Doctrine. ..................53

    4. Common Law Corroborates That Section 3344 Plaintiffs Must Prove Their Names Were In Specific Advertisements. .......................................55

  B. The District Court Erred In Holding That Each Class Member Can Prevail Under A Section 3344 Statutory Damages Claim Without Proving Individual Mental Anguish. ...............................................................58

v

1.  Plaintiff Must Prove Mental Anguish To Recover Statutory Damages. ...................................................59

2.  The District Court's Presumption Of Economic Injury Is Improper. ...................................................63

III.  The District Court Erred In Certifying An Injunctive Relief Class. ...............................................................................65

CONCLUSION ...................................................................67

STATEMENT OF RELATED CASES...............................68

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abdul-Jabbar v. Gen. Motors Corp.,*
  85 F.3d 407 (9th Cir. 1996) ................................................................*passim*

*Aligo v. Time-Life Books, Inc.,*
  1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ..................................................54

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................67

*In re Asacol Antitrust Litig.,*
  907 F.3d 42 (1st Cir. 2018) ..............................................................*passim*

*B.K. ex rel. Tinsley v. Snyder,*
  922 F.3d 957 (9th Cir. 2019) ................................................................25

*Black Lives Matter L.A. v. City of Los Angeles,*
  113 F.4th 1249 (9th Cir. 2024) ..............................................................27

*Bowerman v. Field Asset Servs., Inc.,*
  60 F.4th 459 (9th Cir. 2023) ................................................................30

*Brewer v. Lynch,*
  2015 WL 13604257 (D.D.C. Sept. 30, 2015) ....................................................66

*Briseno v. ConAgra Foods, Inc.,*
  844 F.3d 1121 (9th Cir. 2017) ............................................................41, 42

*Buzinski v. DoAll Co.,*
  175 N.E.2d 577 (Ill. App. Ct. 1961) ........................................................57

*Cohen v. Facebook, Inc.,*
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) ......................................................61

*Colyer v. Richard K. Fox Publ'g Co.,*
  162 A.D. 297 (N.Y. App. Div. 1914) ........................................................58

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ..................................................................42

*Cross v. Facebook, Inc.,*
    14 Cal. App. 5th 190 (2017) ............................................48, 51

*Curtis v. Irwin Industries, Inc.,*
    913 F.3d 1146 (9th Cir. 2019) ...............................................61

*Dancel v. Groupon, Inc.,*
    949 F.3d 999 (7th Cir. 2019) ..................................................44

*Daniels v. FanDuel, Inc.,*
    109 N.E.3d 390 (Ind. 2018) ....................................................48

*Davis v. Elec. Arts Inc.,*
    2017 WL 3335758 (N.D. Cal. Aug. 4, 2017) ............................32

*Fraley v. Facebook, Inc.,*
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .....................................62

*Gautier v. Pro-Football, Inc.,*
    107 N.E.2d 485 (N.Y. 1952) ...........................................56, 57

*Hamilton v. Wal-Mart Stores, Inc.,*
    39 F.4th 575 (9th Cir. 2022) ...................................................26

*Hill v. NCAA,*
    7 Cal. 4th 1 (1994) ..................................................................54

*Huston v. Hearst Commc'ns, Inc.,*
    53 F.4th 1097 (7th Cir. 2022) .................................................48

*Johnson v. Harcourt, Brace, Jovanovich, Inc.,*
    43 Cal. App. 3d 880 (1974) .....................................................54

*Lara v. First Nat'l Ins. Co. of Am.,*
    25 F.4th 1134 (9th Cir. 2022) .................................................30

*Leverton v. Curtis Publ'g Co.,*
    192 F.2d 974 (3d Cir. 1951).....................................................57

*Lightbourne v. Printroom Inc.*,
  307 F.R.D. 593 (C.D. Cal. 2015) ..................................................... 65

*Miller v. Collectors Universe, Inc.*,
  159 Cal. App. 4th 988 (2008) .................................................. 3, 60

*Mullins v. Direct Digit., LLC*,
  795 F.3d 654 (7th Cir. 2015) ................................................. 36, 42

*Nielsen v. Preap*,
  586 U.S. 392 (2019) ......................................................................... 64

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee
    Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ......................................................... 30

*Orthopedic Sys., Inc. v. Schlein*,
  202 Cal. App. 4th 529 (2011) ...................................................... 60

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ................................ 53, 61, 62

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  934 F.3d 619 (D.C. Cir. 2019) ...................................... 2, 28, 31, 43

*SEC v. Jarkesy*,
  144 S. Ct. 2117 (2024) .................................................................... 44

*Talley v. Chanson*,
  2015 WL 11237666 (S.D. Cal. Feb. 25, 2015) ............................... 61

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ........................................................ 31

*Van v. LLR, Inc.*,
  2023 WL 8434456 (D. Alaska Dec. 5, 2023) ................................. 29

*Van v. LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ............................................... *passim*

ix

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................45

*Wallach v. Bacharach*,
    274 A.D. 919 (N.Y. App. Div. 1948) .....................................58

*White v. Symetra Assigned Benefits Serv. Co.*,
    104 F.4th 1182 (9th Cir. 2024) .................25, 26, 27, 29–30

*Yeager v. Cingular Wireless LLC*,
    673 F. Supp. 2d 1089 (E.D. Cal. 2009) .................................54

*Youngevity Int'l v. Smith*,
    350 F. Supp. 3d 919 (S.D. Cal. 2018) ....................................61

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .........................................27, 31

## Statutes and Rules

28 U.S.C. § 1292(e) ...........................................................................4

28 U.S.C. § 1332(d) ...........................................................................4

Cal. Civ. Code § 3344 ...............................................................*passim*

Cal. Civ. Code § 17200 ...................................................................12

Fed. R. Civ. P. 23.......................................................................4, 26

## Other Authorities

1903 N.Y. Sess. Laws, ch. 132, §§ 1–2 ........................................56

Judicial Council of California Civil Jury Instructions (2024 ed.) .......48, 51, 64

Letter to Governor Ronald Reagan (Nov. 10, 1971), *in* Compiled
    Legislature Hist., Reg. Sess. AB 826 (Cal. 1971), Legislative Intent
    Service .......................................................................................57

Prosser & Keeton on Law of Torts (5th ed. 1984)..........................56

*Restatement (Second) of Torts* § 652C (1977)..................................................54

*Restatement (Third) of Unfair Competition* § 46 (1995) .........................33

U.S. Const. amend. VII ...............................................................................43

## INTRODUCTION

The District Court certified a class that indisputably has members who cannot prove their claims. It did so without explaining how it would identify those without valid claims and exclude them before final judgment. Under the law of this and other Circuits, this was error. Compounding the problem, the District Court sidestepped individual liability issues that would otherwise predominate by twisting California's Right of Publicity Statute, California Civil Code § 3344, beyond recognition. It read the statute's "use" and "direct connection" elements to permit right of publicity claims if a class member's name is contained in PeopleConnect's database, even if that class member's name has never been displayed on the website. And it read the injury element to permit statutory damages without proof of mental anguish, notwithstanding controlling California law to the contrary. Certification should be reversed.

*First*, the District Court certified a class without a workable plan to remove members with meritless claims, contrary to this Court's holding in *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023). *Van* requires that "[w]hen a defendant substantiates" an "individualized issue" affecting some class members' ability to prove all the elements of their claims, the district court

1

must determine "whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Id.* at 1069. PeopleConnect demonstrated the necessity of individualized determinations regarding multiple elements of each class member's claim. Plaintiff did not show, and the District Court did not find, otherwise.

The existence of individual issues required the District Court, *before* certifying a class, to put forth a workable plan to winnow individuals lacking viable claims before final judgment. A "workable" plan is one that both ensures that common issues predominate, as Rule 23 requires, and upholds a defendant's Seventh Amendment right to contest individual liability issues to a jury. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019). Under *Van*, a class cannot be certified without such a "workable" plan, yet that is what happened here.

*Second*, the District Court's certification of a class is premised on unsupported expansions of Section 3344's elements that wish away individualized issues that would otherwise predominate. The District Court did so by holding that: (1) the mere presence of a class member's name on a server is a "use" of that class member's name "directly connected" to advertising, even if that name has never actually been displayed on the

website at all, let alone in an advertisement; and (2) a class member does not need to prove mental anguish, which the District Court acknowledged would require individual proof, to prevail on a statutory claim despite California precedent holding otherwise.

The District Court got Section 3344 all wrong, skirting the individual proof each class member must provide. A Section 3344 plaintiff must prove the defendant "knowingly use[d] another's name … for purposes of advertising or selling." That means each class member must individually prove that their name *actually was* in an advertisement, not just that their name is searchable in a database that sits somewhere on a computer server. Otherwise, the right of publicity would bar broad swaths of critical economic activity, including (for example) search engines like Google that likewise profit from facilitating searches of names. Section 3344 also requires plaintiffs to prove they were "injured." As California courts have held, this means class members seeking statutory damages, rather than to recover their actual economic losses, must individually prove their own mental anguish. *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008). And both the District Court and Plaintiff acknowledged that proving mental anguish is a highly individualized inquiry.

3

In short, because individual issues predominate over common issues and Plaintiff has proposed no manageable means of resolving these issues on a classwide basis prior to judgment, this Court should reverse the District Court's certification of a class.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1332(d). The proposed class consists of at least 100 members, the aggregate amount in controversy exceeds $5,000,000, and there is diversity between PeopleConnect and at least one class member. PeopleConnect is a Delaware corporation, headquartered in the State of Washington. 3-ER-281–82 ¶12; 2-ER-80–81 ¶16. Plaintiff is a citizen of California. 2-ER-80–81; 3-ER-290 ¶70.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). The District Court conditionally certified a class on December 14, 2023, 1-ER-11–54; 4-ER-447–90, and PeopleConnect timely sought permission to appeal under Rule 23(f) on December 28, 2023. While that petition was pending, the District Court issued a final certification order on May 20, 2024. 1-ER-2–10. PeopleConnect timely filed a renewed Rule 23(f) petition on May 24, 2024. This Court granted permission to appeal on June 21, 2024. (No. 24-3318, App Dkt. 14).

## ISSUES PRESENTED

1.      Whether the District Court failed to correctly apply *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023), by certifying a Rule 23(b)(3) class that includes individuals who lack viable claims without a workable plan to winnow those individuals from the class before final judgment.

2.      Whether the District Court improperly disregarded the need for individualized determinations of liability for each class member by erroneously interpreting the "use," "direct connection," and "injury" elements of Section 3344.

3.      Whether the District Court erred by certifying a Rule 23(b)(2) class despite the named Plaintiff's lack of imminent risk of future injury.

## STATEMENT OF THE CASE

### I.      Factual Background

PeopleConnect owns and operates Classmates.com, a website with an online library of over 450,000 school yearbooks that allows former schoolmates to reconnect. 3-ER-315. This case concerns a specific website functionality—a "search engine" that can be used to browse the library.

PeopleConnect built the yearbook library through purchases and donations, ███████████████████████████████████████. 5-ER-748–

5

49 ¶¶6, 8–9. When adding a yearbook, PeopleConnect scans the yearbook and runs the scan through an ████████████████████████. 5-ER-757 ¶56. ████████████████████████████████████ ████████████████████████. *Id.* ¶¶55–58.

A user who inputs a search term into the search engine causes the search engine to compare the input to data in the ███████. 5-ER-757 ¶58. So, if a user inputs "John," the search engine will identify yearbook pages on which the letters J-o-h-n appear together, such as John, Johnson, Johnston, etc. *Id.* If a user inputs the word "ball," the search engine will identify pages on which the letters b-a-l-l appear together, such as a person with the last name Ball or the words football, basketball, baseball, etc.

Plaintiff takes issue with the layout of the webpages where search results are displayed, as well as the flow of webpages some users may see after viewing search results. 3-ER-301 ¶149. She contends these pages incorporate class members' names into advertisements for Classmates.com memberships. 5-ER-766–67.

First, Plaintiff takes issue with how search results are shown to Free Members (*i.e.*, users who have registered for a free account on Classmates.com and agreed to the Terms of Service). 4-ER-602–03. As

illustrated below, Free Member search results contain a low-resolution thumbnail of the page on which the responsive text appears, the yearbook publication year, the page number, the name, city and state of the school, and the responsive term in bolded text. 5-ER-679–81 ¶82. The right-hand side of the page contains five boxes. *Id*. Three contain third-party advertisements; two contain information about Classmates.com, such as how to connect with peers. 5-ER-672–74, 676–77, 679–81 ¶¶74, 75, 78, 82.

███████████████████████████████████████████████ 5-ER-682 ¶83.

█████████████████████████████████████████████████

████████████████████████████████████████ 5-ER-676–77, 679–81 ¶¶78, 82. If a Free Member searches on a mobile device, no advertisements are displayed on the search results page. 5-ER-690–91 ¶88. So, it is impossible to know if a search triggered *any* advertisements, let alone an offer to upgrade. In all events, no advertisements use the name of anyone the Free Member searched. 5-ER-679–81 ¶82.



5-ER-682–84 ¶84 (example of offer for paid Classmates.com membership referencing name of Free Member, here Lindsey, circled in red).

Plaintiff also takes issue with the search results shown when Visitors search with the rarely used search engine where the results will be displayed

8

on a separate page that contains *only* search results; there are no advertisements, as illustrated below:



5-ER-646–47 ¶45. Visitors who click on a search result are taken to a page with low-resolution images of the entire yearbook, which has third-party advertisements, but no advertisements for Classmates.com memberships:

9



5-ER-698 ¶109. If a Visitor clicks on any of the images, they will be prompted to register for an account:



5-ER-630, 635–36 ¶¶25, 34. Upon registration, the user will be taken to a page with an optional offer for a paid membership:



5-ER-624 ¶17. *Only* the Visitor's name appears on the offer page (for illustration, the Visitor's name here is "Test"); the name of anyone the Visitor may have searched is *never* displayed. *Id.*

## II.   Procedural Background

### A.   Plaintiff's Suit Under Section 3344

In addition to Plaintiff, there have been six other named plaintiffs in this case. The original plaintiffs, Meredith Callahan and Lawrence Geoffrey Abraham, alleged that PeopleConnect violated Section 3344 by presenting yearbook photographs of them on webpages that included offers to purchase

11

yearbook reprints and/or memberships to Classmates.com.[1] 3-ER-415–17 ¶¶2, 7, 11. But Callahan, as well as three subsequent named plaintiffs (Zhang, Carney, and Overton) voluntarily dismissed their claims after it was determined they were Classmates.com members and had consented to the use of their likenesses under the Terms of Service, even after pleading otherwise. 3-ER-376–79; 3-ER-373–75; 2-ER-260–62.[2]

Section 3344 provides, in relevant part:

> Any person who knowingly uses another's name, … for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent … shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use.

Cal. Civ. Code § 3344(a). Under Section 3344, each class member must prove the elements for common law misappropriation of likeness: "(1) the defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise;

---

[1] In addition to the Section 3344 claim, Plaintiffs pleaded claims pursuant to Cal. Civ. Code § 17200, and for unjust enrichment. The District Court held that these claims are derivative of the Section 3344 claim. 3-ER-408–12.

[2] With respect to the other two former named plaintiffs, Abraham voluntarily dismissed shortly after being served with discovery, 3-ER-369–72, while Tseng's claim was time-barred, 3-ER-264–78.

(3) lack of consent; and (4) resulting injury." *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413–14 (9th Cir. 1996) (quotation omitted). In addition, Section 3344 adds two additional elements: (1) knowing use; and (2) a direct connection between the "use" and "commercial sponsorship" or "paid advertising." Cal. Civ. Code § 3344(a), (e), (f). Courts have confirmed that Section 3344 plaintiffs must therefore prove that a reasonable viewer would know the name used by the defendant refers to that plaintiff specifically. *See, e.g.*, *Abdul-Jabbar*, 85 F.3d at 414.

## B.    Plaintiff's Class Certification Motion

Plaintiff moved to certify a class based on how yearbook *photographs* appear on Classmates.com, claiming they are incorporated into advertisements for "subscriptions to Classmates.com." 5-ER-766–68. Plaintiff's expert estimated a class of over 100,000 members. 5-ER-770. In opposing, PeopleConnect demonstrated *inter alia* that whether individual class members are identifiable from photographs is impacted by, among other things, the photographs' varied sizes and clarity. 5-ER-719–21.

That prompted Plaintiff in her class certification reply brief to change her theory. Her new theory was that PeopleConnect violates Section 3344 by presenting class members' *names* (not their photographs) in search

results. 4-ER-597–98. According to Plaintiff, the search results violate Section 3344 because they display: "(1) the individual's name in clearly legible bold font; (2) the school in clearly legible bold font, and the school's city and state; and (3) the yearbook year in clearly legible large blue font," and "[f]or free members, banner ads inviting the user to subscribe appear adjacent to the search results." *Id.* But this theory too raises significant individual issues among class members. *See* 4-ER-549–64.

### 1. Each Class Member Must Rely On Individualized Evidence To Prove PeopleConnect Used Their Name.

Under Plaintiff's revised theory, each class member must prove their names can be displayed in a search result. But PeopleConnect presented evidence that some of the putative class members' names could not be displayed in a search result because "not all text on a yearbook page is successfully recognized or picked [up] by ███████████." 4-ER-566 ¶4. PeopleConnect provided illustrative examples of this, including an entire yearbook in which no individual names were recorded by the ███████. 4-ER-566–73 ¶¶5–16.

PeopleConnect further showed that even for those whose names may be recorded by the ███████, not all their names can be displayed in

14

search results. First, for any page of a yearbook, only the first three responsive terms for each search result will be shown. 4-ER-577 ¶8. For example, in Plaintiff's yearbook, even though there is a student named Jose Gutierrez in the index, a search for the name "Jose Gutierrez" does not produce results that include that individual. 4-ER-577–80 ¶9. Instead, the search results included pages for other individuals with the first name "Jose" or the last name "Gutierrez," not Jose Gutierrez because there are three other Joses or Gutierrezes before him on those yearbook pages. *Id.* Similarly, David Garcia—an individual whose name appears at least twice in Plaintiff's yearbook—could not be displayed in a search result because there are more than three "Davids" and/or "Garcias" before him on those yearbook pages. 4-ER-581–83 ¶¶10, 11. Second, the search results only list up to "500 different yearbook pages," so if a name, especially a common one, is searched, not all responsive results will be displayed. 4-ER-584–86 ¶¶13, 14.[3] Further, search results are "not static" and ████████████████, so the fact a person

---

[3] PeopleConnect illustrated this issue for "John Smith," for whom there are almost 100,000 hits in California yearbooks alone. 4-ER-584–86 ¶14. Also, such a search would return all school names with the word "John" in it, such as John Adams High School, sometimes to the exclusion of student names.

15

can be displayed in a search result at one point in time does not mean they are or always have been capable of display. 4-ER-587 ¶16.[4]

PeopleConnect also demonstrated there is no mechanical way to determine which names cannot be displayed in search results; the only way to do so is to manually enter each name into the search engine. 4-ER-587–90 ¶¶17–19. Even then, there is ████████████████████████████ ████████████████████████. 4-ER-587 ¶16.

### 2. Each Class Member Must Rely On Individualized Evidence To Prove They Are Identifiable In Search Results.

PeopleConnect also demonstrated that the information in a search result—a name, school name, city and state, and year of the yearbook—does not make every individual *per se* identifiable and that identifiability thus requires individualized proof. *See* 4-ER-560–61.

For example, PeopleConnect demonstrated that in Plaintiff's yearbook alone there were nine instances of individuals with the same names and at least 20 instances of individuals with similar names. 4-ER-587–90 ¶¶17, 19.

---

[4] As PeopleConnect demonstrated, the search results for "John Smith" in California changed from the time Plaintiff's counsel ran a search to when PeopleConnect did, 4-ER-544 & n.2, and again by the time of the hearing. *See* Nov. 16, 2023 Hearing Tr. 4-ER-502:18–25.

To find these examples, PeopleConnect engaged in the time-consuming process of manually reviewing the yearbook index to find the same or similar names and then reviewing each page of the yearbook on which those names appear to confirm there were, in fact, multiple people with the same or similar names. 4-ER-587–88 ¶ 17. And not all individuals are identifiable from this information alone; some class members may have changed names (by marriage or otherwise) or gone by a nickname during their school years that differed from the name in the yearbook. 4-ER-560–61.[5]

Accordingly, PeopleConnect showed that resolving whether each class member can prove they are identifiable from the information included in a search result requires person-by-person review. 4-ER-561.

### 3. Each Class Member Must Rely On Individualized Evidence To Prove They Did Not Consent To Use Of Their Name On Classmates.com.

Each class member also must prove they did not consent to the use of their name on Classmates.com. PeopleConnect identified three ways in

---

[5] The District Court held that identifiability must be proved only by class members who have the same or similar names as others in their yearbook. 4-ER-466–68. That is contrary to this Court's precedent, which holds that all plaintiffs, even celebrities with unique names, must prove they are identifiable by their name alone and that factual determination is for the jury. *Abdul-Jabbar*, 85 F.3d at 413.

which consent can be provided: (1) registering as a Classmates.com member; (2) donating a yearbook to Classmates.com; or (3) consenting through a third-party (typically the school) consent form, which would inure to PeopleConnect. 5-ER-727–28, 732–34.

*First*, PeopleConnect demonstrated it cannot mechanically determine if an individual consented by registering as a Classmates.com member because PeopleConnect does not ███████████████████ ███████ 5-ER-758 ¶61. For example, █ registered members indicated at registration they were part of Plaintiff's senior class, but █ of the names provided at registration do not match any name in the yearbook. *Id.* ¶62. To determine if a class member consented by registering as a member of Classmates.com, PeopleConnect would need discovery into every email address each class member has ever used and to then individually search *all* those email addresses to determine which ones were linked to a membership account. In doing so, PeopleConnect cannot rely solely on class members' self-reporting as to whether they were a member and had consented. In this lawsuit alone, four named plaintiffs dismissed their claims after it was shown that they were members of Classmates.com even though they had alleged they were not. 2-ER-260–62; 3-ER-376–79; 3-ER-373–75.

18

*Second*, PeopleConnect showed there is no mechanical way to determine if an individual consented by donating a yearbook. Again, PeopleConnect does not ██████████████, so it cannot always know who donated a yearbook. 5-ER-749 ¶¶12, 9. But this inquiry is necessary because individuals who donate a yearbook must consent to the use of their likeness as part of the donation process. 5-ER-749–51 ¶¶9, 12, 18.

*Third*, PeopleConnect established there is no mechanical way to determine who consented through their schools. 5-ER-727–28. There is no repository for student consent forms; they must be obtained school-by-school. *See* 2-ER-163 ¶¶2–4. Moreover, because the issue of whether a consent form applies to PeopleConnect varies depending on the terms of each form and as the forms change over time, review must proceed not just school-by-school, but year-by-year. 5-ER-727. Finally, for schools that used a form that applies to PeopleConnect, there must be student-by-student review to identify those who had, in fact, signed the form (or had them signed on their behalf by a parent or guardian). *Id.*

PeopleConnect's challenges to each class member's claim that they did not consent through any of these ways thus will require evidence that varies from member to member. 5-ER-727–28.

## C.  The Conditional Certification Order

The District Court conditionally certified a class, offering only that individualized issues of proof could be resolved "at a later prove-up stage." 4-ER-470.

*First*, the District Court conceded that each class member whose name cannot be displayed in a search result cannot prevail. *Id*. But it did not explain how it would winnow those members from the class before final judgment, stating only that: "[i]f one's identity is not searchable, that person would not be part of the class, an issue that, if necessary, could be determined at a later prove-up stage." *Id*.

*Second*, the District Court acknowledged that each class member must prove they are "identifiable" solely from what appears in a search result—a name; the name, city, and state of a school; and the year of the yearbook. 4-ER-466–67, 469. The District Court also conceded "there may be occasions in which people share the same name or have similar names, and therefore some individualized inquiries will be necessary." 4-ER-471. But it discounted the issue because it did not believe "this problem is so extensive or pervasive that commonality or predominance is threatened." *Id*. Again, it did not resolve how such class members would be removed before final judgment.

20

*Third*, the District Court recognized that although each class member must prove they did not consent to their name appearing on Classmates.com, some putative class members could not do so. 4-ER-472–73. Once more, however, it deemed this no obstacle to class certification. Regarding Classmates.com membership, the District Court concluded that could be addressed through class member "self-identification," even though PeopleConnect cited repeated instances of inaccurate self-identifications in this and similar cases. 4-ER-476–77. The District Court made the same point as to yearbook donations. 4-ER-478–79. Finally, as to third-party consents, the District Court held that although PeopleConnect demonstrated that third-party consent forms could apply to Classmates.com, the issue was not burdensome to resolve because it could be addressed "school by school rather than person by person," even though the class consists of at least 1,000 yearbooks. 4-ER-479–83; 4-ER-607.

For her part, Plaintiff did not put forward a winnowing plan. She submitted with her motion to certify only a proposed "Trial Plan" vaguely promising she would at some future date "present a claims administration protocol for the Court's review." 2-ER-159. In response to questioning at the class certification hearing, Plaintiff acknowledged envisioning a post-

21

judgment, "claims made process" in which each class member would self-identify on a claims form that they were "searchable." 4-ER-535:13-14, 538:21–539:6. And in a later filing regarding an updated class definition, Plaintiff argued it fell to PeopleConnect to identify class members with the same or similar name to other class members, even though it is the class members' burden to prove identifiability, and even though PeopleConnect had demonstrated this would require manual review of the more than 1,000 yearbooks in the class. 4-ER-557–58; 4-ER-607. Then, according to Plaintiff, if a class member challenged those identifications, the District Court would determine if "the [c]lass members in question are uniquely identifiable" without the dispute being submitted to a jury. 2-ER-62–63.

Finally, even though the District Court had previously acknowledged—correctly—in its motion to dismiss ruling that the Section 3344 "injury" element requires class members to prove mental anguish to prevail on a claim for statutory damages, 3-ER-401, 403, it reversed itself in conditionally certifying a class and held that "economic injury alone, without the need to establish physical or mental injury, is sufficient," 4-ER-484. It then held that the existence of economic injury could be proved classwide; in the District Court's view, because the

22

yearbook library has value to PeopleConnect, it could be inferred that everyone whose name is in a yearbook suffered economic loss because they were deprived of the value that their name contributed to the collection. 4-ER-484.

## D.    The Final Certification Order

After Plaintiff submitted a proposed modified class definition in response to the District Court's instruction to conform the definition to her revised theory, the District Court certified the following class:

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar to search a California yearbook made available for viewing on the Classmates.com website, yields at least one record corresponding to the class member from a California yearbook that Classmates.com first made publicly available on or after December 18, 2018.

1-ER-5 (District Court's highlighting omitted). The District Court again did not include any plan for winnowing those who could not prevail.

## SUMMARY OF ARGUMENT

The District Court's certification of a class should be reversed.

*First*, the District Court erred in finding predominance under Rule 23(b)(3). Despite acknowledging both that there are class members

23

with invalid claims and that excluding them would require individual proof, the District Court did not explain how it would cull them from the class. But under *Van*, the District Court could not find predominance without having a "workable" plan to winnow those who lack valid claims *before* final judgment. 61 F.4th at 1069. To be "workable," such that the class is manageable, the plan must protect "defendants' Seventh Amendment and due process rights" and be "administratively feasible." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018) (quotation omitted). Here, no such plan is possible. To address all the individual issues of proof that PeopleConnect substantiated, the District Court would have to resolve on a class-member-by-class-member basis, in a proceeding in which PeopleConnect has the right to a jury, thousands of individual issues.

*Second*, the District Court dodged even more individual inquiries by misconstruing multiple elements of Section 3344. First, the District Court deemed the *possibility* a class member's name *could* be displayed in a search result on Classmates.com an actionable "use" "directly connected" to a "commercial purpose." But that is incorrect as a matter of statutory text, precedent, and legislative history. Second, the District Court held that class members need not prove mental anguish to obtain statutory damages,

24

despite California precedent holding otherwise and, in doing so, *presumed* that all class members suffered personal financial loss because their names are in the Clasmates.com yearbooks database that PeopleConnect benefits from having. That simply cannot be squared with the statutory element requiring that each plaintiff prove their own actual injury.

*Third*, the District Court conducted no independent inquiry into whether certification of a Rule 23(b)(2) injunctive relief class was appropriate. Had it done so, it could not have certified a class because Plaintiff is not an adequate representative of an injunctive relief class given that she has not shown any imminent risk of future harm.

## STANDARD OF REVIEW

This Court reviews the District Court's "class certification decision for abuse of discretion." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024). "An error of law is a per se abuse of discretion." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 965 (9th Cir. 2019). A district court abuses its discretion in certifying a class when "its application of the correct legal rule is based on a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *White*, 104 F.4th at 1191.

25

## STANDARDS FOR CLASS CERTIFICATION

Class certification is improper unless Plaintiff proves that "the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)." *Van*, 61 F.4th at 1062. A damages class under Rule 23(b)(3) therefore cannot be certified unless "questions of law or fact common to the class" exist and those issues "predominate" over individual questions. Fed. R. Civ. P. 23(a)(2), (b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, classwide proof." *White*, 104 F.4th at 1191 (quotation omitted).

In assessing whether common questions predominate, Rule 23(b)(3) directs attention to the practical question of how the class action will be tried. Thus, a court must consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). The manageability requirement "was [] specifically devised to address concerns arising from the aggregation of individual claims for money damages." *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 588 (9th Cir. 2022) (collecting cases). A class is not manageable

26

"[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

It is Plaintiff's burden to "affirmatively demonstrate" compliance with each requirement of Rule 23 by a preponderance of the evidence. *White*, 104 F.4th at 1192 (quotation omitted). She cannot merely identify potentially common questions "in the abstract" while remaining "silent on how [class members] can practically provide common answers to those questions." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1264 (9th Cir. 2024). Where contested facts are relevant to certification, Plaintiff "must actually *prove*—not simply plead—that the[] proposed class satisfies each requirement" of Rule 23. *White*, 104 F.4th at 1192 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)).

## ARGUMENT

### I. The District Court Erred In Certifying A Class Without A Workable Winnowing Plan.

The District Court certified a class it acknowledged includes members who cannot prevail on the merits. Under *Van*, that meant the District Court could not find predominance under Rule 23(b)(3) without

27

a workable winnowing plan to address these individualized issues. Because the District Court failed to do so—and a workable plan is not feasible here—this Court should reverse the certification order.

### A. When A Class Is Overinclusive, A District Court At The Time Of Certification Must Put Forward A Workable Plan To Cull Members Who Lack Viable Claims.

In *Van*, this Court held that when "a defendant substantiates" an "individualized issue" affecting some class members' ability to prove all the elements of their claims, a district court must at the time of certification determine "whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." 61 F.4th at 1069. As the D.C. Circuit has summarized in adopting the same rule, this means at the time of certification there typically must be a "winnowing mechanism" to remove those "class members [who] cannot prevail on the merits." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d at 624–25; *accord In re Asacol Antitrust Litig.*, 907 F.3d at 58.

The facts of *Van* are illustrative. There, a putative class of purchasers alleged that a clothing seller had improperly charged sales tax when no tax was owed. 61 F.4th at 1058–59. Even though the seller refunded the tax, the class sought interest on the refunded amounts and statutory

28

damages for each purchase. *Id.* In opposing class certification, the defendants showed that some putative class members could not prevail because they received a discount on their purchases in an amount greater than or equal to the improperly collected sales tax. *Id.* at 1068.

The district court certified the class, concluding that because the defendant identified only 18 of the 13,680 potentially impacted transactions, the number of putative class members who could not prevail likely was "de minimis." *Id.* This Court vacated, however, explaining that what matters "is not whether a great number of plaintiffs will win or lose at trial on the individualized issue" but "the necessity and manageability of the potential class-member-by-class-member discovery process and trial" of that individualized issue. *Id.* at 1067 n.11. On remand, the district court denied the plaintiff's renewed motion for class certification on predominance grounds. *Van v. LLR, Inc.*, 2023 WL 8434456, at *11–13 (D. Alaska Dec. 5, 2023).

*Van* aligns fully with other precedent recognizing that when a defendant identifies an individualized issue impacting an element of a claim, the court must assess whether "consideration of individualized issues [will] swamp the assertedly common ones." *White*, 104 F.4th at

29

1194. Predominance thus is lacking if "complex, individualized inquiries would be needed to establish [] class members" claims. *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 468–70 (9th Cir. 2023) (reversing certification when "individualized mini-trials" were "required to establish liability and damages" (quotation omitted)); *see Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022) (predominance lacking if "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person").

A workable plan must be in place *before* a class can be certified. That is clear from *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, where this Court explained that if a class might contain uninjured class members, the district court at certification must resolve "whether the possible presence of uninjured class members means that the class definition is fatally overbroad." 31 F.4th 651, 669 & nn.13, 14 (9th Cir. 2022) (en banc). Although the nature of the claims and evidence in *Olean* made a winnowing plan unnecessary, its reasoning tracks longstanding precedent—and the manageability criteria—resolving that a proposed class representative must proffer "a suitable and realistic plan for trial of the class claims" at certification and that the "court cannot rely

merely on assurances of counsel that any problems with predominance or superiority can be overcome." *E.g.*, *Zinser*, 253 F.3d at 1189; *accord Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Other Circuits are in accord. The First Circuit, for instance, vacated certification of a class known to contain "members who could not be presumed to be injured" because the district court had not "at the time of certification offer[ed] a reasonable and workable plan" to winnow those individuals "in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." *In re Asacol Antitrust Litig.*, 907 F.3d at 58. The D.C. Circuit similarly affirmed denial of certification of a class known to include members who suffered no injury because the plaintiff had not proffered a workable "winnowing mechanism" to remove those class members before final judgment. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d at 624–25.

So, the law is settled and clear: If a court knows a putative class contains members who cannot prevail, it cannot certify a Rule 23(b)(3) class without either offering a workable plan to winnow those individuals before final judgment or showing that a plan is unnecessary.

31

B.  **As PeopleConnect Substantiated And The District Court Recognized, The Class Includes People Who Cannot Prove A Claim Under Section 3344.**

1.  **The Class Includes Members Who Cannot Prevail Because They Are Not "Identifiable" As Required By Section 3344.**

The District Court acknowledged that class members who are not "identifiable" from the information in the search results cannot prevail. 4-ER-467, 469–70. Seeking to overcome this barrier to class certification, Plaintiff argued that all class members are *per se* identifiable if their names can be displayed in a Classmates.com search result. PeopleConnect showed this was incorrect.

There are many reasons a class member might not be identifiable from the information in a search result (name, school name, city and state, and year of the yearbook's publication).[6] *See supra* at 16–17 (discussing common names, nicknames, married names, changed names, and other

---

[6] Moreover, precedent establishes that a Section 3344 plaintiff cannot rely on "contextual clues as to the identity of an otherwise ambiguous" depiction of a likeness to establish identifiability, meaning a plaintiff must be individually identifiable from their name alone without regard to additional contextual information supplied in a Classmates.com search result. *Davis v. Elec. Arts Inc.*, 2017 WL 3335758, at *3 (N.D. Cal. Aug. 4, 2017) (discussing *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992)).

issues). And each class member must prove they are identifiable, which is a jury issue evaluated on a case-by-case basis. *See Abdul-Jabbar*, 85 F.3d at 413. Survey evidence specific to each class member likely will be needed. *Restatement (Third) of Unfair Competition* § 46 cmt. d (1995) (relevant evidence of identifiability includes "nature and extent of the identifying characteristics used by the defendant, … evidence of actual identification made by third persons, and surveys and other evidence indicating the perceptions of the audience").

In sum, determining if each class member is identifiable would require evaluation of different evidence for each class member. *See supra* at 16–17. Yet the District Court set forth no plan to address this issue.

### 2. The Class Includes Members Who Cannot Prevail Because They Agreed In Consent Forms To The Use Of Their Names.

PeopleConnect also showed—and the District Court acknowledged—that the class includes members who consented to the use of their names and thus cannot prevail. 4-ER-482–83.

PeopleConnect proved that class members could have consented in at least three ways, including by signing consent forms as students. *See supra* at 17–19. The District Court acknowledged this would necessitate

33

a "school by school" examination as to the scope of any consent form, *see id.* at 21, though more realistically, it would require year-by-year, school-by-school examinations for each of the more than 1,000 yearbooks in the class because forms used by particular schools and school districts change over time, followed by a student-by-student review to determine which class members actually signed releases. *Id.* at 17–19.

### C. The District Court Attempted To Exclude Through The Class Definition Other Individuals Who Cannot Prove A Claim But Proposed No Workable Plan To Effectuate That Exclusion.

In addition to defining the class to *include* class members who cannot prevail, the District Court also defined the class to *exclude* certain individuals from the class. That is, the definition starts with all California residents in yearbooks on Classmates.com and then excludes those who cannot prevail because they consented by becoming Classmates.com members, by donating a yearbook, or because their names cannot be displayed in a search result. *Supra* at 23. In adopting that definition, however, the District Court did not put forward any way to effectuate those exclusions. The class definition thus presents the same problem as in *Van*—it lacks a workable plan to quantify how many people are in the class before entering judgment, resulting in an unmanageable class.

1. **The District Court Excluded From The Class Individuals Who Consented Without A Workable Plan To Do So.**

PeopleConnect substantiated that many individuals consented to the use of their names and likenesses in ways the District Court acknowledged preclude recovery. 4-ER-474–78. First, individuals consent when they register as Classmates.com members. *Supra* at 18. Second, individuals who donate a yearbook to Classmates.com consent during the donation process. *Id*. at 18–19. Because these individuals do not have valid claims, they were defined out of the class. 1-ER-5. Yet neither Plaintiff nor the District Court proposed any way to determine how these people will be excluded from recovery.

2. **The District Court Excluded From The Class Individuals Who Cannot Appear In A Search Result Without A Workable Plan To Do So.**

PeopleConnect also substantiated that there are individuals in yearbooks on Classmates.com whose names cannot be displayed in search results and, therefore, cannot be displayed adjacent to a purported advertisement. *See supra* at 14–16. But rather than propose a way to winnow these individuals from the class before final judgment, the District Court defined them out of the class. 1-ER-2, 5. But as PeopleConnect showed, and

35

the District Court acknowledged, there is no mechanical or classwide way to determine which names can be displayed in a search result—the only way to do so is to manually enter every name into the search engine. *See* 4-ER-470; *see also supra* at 14–16.

Again, the District Court's definitional slight-of-hand supplies no basis for ignoring *Van*, as this issue also implicates PeopleConnect's due process right not to pay more than its total liability. *See Mullins v. Direct Digit., LLC*, 795 F.3d 654, 670–71 (7th Cir. 2015). This case is entirely about per-person statutory damages, which means aggregate damages can be determined only if the District Court quantifies the exact number of class members with valid claims. To do that, it must determine before judgment that every putative class member is searchable, never registered, and never donated a yearbook. As noted above, these issues all require laborious individual inquiries. *Supra* at 14–19. The predominance requirement of *Van* thus cannot be skirted by placing these issues in the class definition without a workable plan to address them.

### D.  The Certification Order Violates *Van*.

Because PeopleConnect substantiated multiple individualized issues that prevent some class members from proving their claims, to

36

find predominance under Rule 23(b)(3) the District Court had to confirm that "a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Van*, 61 F.4th at 1069. Because it did neither, certification should be reversed.

### 1. A Workable Winnowing Plan Is Needed.

#### a. Whether A Plan Is "Unnecessary" Does Not Depend On The Quantity Of Invalid Claims.

The District Court viewed a winnowing plan as "unnecessary" because the individualized issues are not "extensive or pervasive." 4-ER-471; *see* 1-ER-3–4 (quotation omitted). In doing so, it sought to distinguish *Van* by claiming "[i]n *Van*, there was a more significant problem of individualized inquiries compared to that here." 1-ER-4 n.2. That is an incorrect interpretation of *Van* and, in any event, is factually incorrect.

In *Van*, this Court held that focusing on whether individualized issues would result in "a great number of plaintiffs" losing on the merits "rests on a misunderstanding of the Rule 23 inquiry." 61 F.4th at 1067–68, 1067 n.11. The proper focus was instead on "the necessity and manageability of the potential class-member-by-class-member discovery process and trial" to address those individualized issues. *Id.* at 1067 n.11. Accordingly, by

substantiating that some of the class members' transactions were not actionable, the defendant in *Van* established the need for individual review of all the transactions and thus the need for a workable winnowing plan. *Id.* at 1068–69. As noted above, PeopleConnect likewise substantiated that there are individual issues of proof that necessitate person-by-person review of each class member. So, just as in *Van*, a workable winnowing plan is needed.

Moreover, the District Court was simply wrong in asserting that the problem of individualized inquiries in *Van* was more pervasive than in this case. In *Van* the Court held that a winnowing plan was needed because the defendant substantiated that at least 18 of 13,680 transactions were not actionable (*i.e.*, 0.13% of transactions). 61 F.4th at 1068–69; *see id.* at 1069 (emphasizing that this process "could potentially" necessitate "up to 13,680 depositions and months of trial"). Here, PeopleConnect showed a higher rate of potentially invalid claims, spanning a broader range of individual issues, and with a class that is much larger (Plaintiff estimated a class size of over 100,000 individuals, *see* 5-ER-770).

*First*, a class member cannot satisfy the "use" element of Section 3344 without proving they are searchable. This is no minor concern. In

38

Plaintiff's yearbook alone, which lists 1,831 names in its index, PeopleConnect identified at least two individuals whose names cannot be displayed in search results, as well as an entire yearbook where no one is searchable. And this was not an exhaustive list of searchability issues that will require individualized determinations, but instead just examples of this problem. *Id.*

*Second*, to prove Section 3344's "use" element, each class member must also prove they are "identifiable" in a search result—that is, that a reasonable user would know from the search result alone that the name listed refers to that specific class member, not just a person with that name. *See Abdul-Jabbar*, 85 F.3d at 413. PeopleConnect substantiated that many class members likely cannot prove this element. In Plaintiff's yearbook alone, which again lists 1,831 names in its index, there were nine sets of individuals who had the same names and at least 20 sets of individuals who had similar names. *Supra* at 16–17. None of those class members are identifiable solely from the information in a search result. What is more, proving identifiability typically requires survey evidence, which PeopleConnect would be entitled to counter with its own evidence. *See id.* at 33. So, addressing just this issue would require endless mini-trials.

39

*Third*, the lack of consent element requires each class member to address all three ways class members can consent to use of their names. Initially, of the 1,831 names listed in the index to Plaintiff's yearbook, PeopleConnect identified ■ registered members who reported being part of that year's senior class (although in ■ instances the name used at registration does not match a name in the index). *Supra* at 18. So, each class member must be examined to determine if they are a registered Classmates.com member, which is a complicated inquiry; even some prior named plaintiffs apparently forgot they had registered and had to be reminded after a laborious inquiry. *Id.* Also, determining if an individual consented by donating a yearbook is not straightforward given that donors often give inaccurate information. *Supra* at 18–19. And as the District Court acknowledged, the consent form inquiry would require individualized investigation into whether each school had a consent form in the relevant year, its scope, and whether the class member or a guardian signed the form. 4-ER-473–74, 482–83.

These many examples of individualized issues that PeopleConnect substantiated demonstrates the vast scope of the problem. PeopleConnect had to manually review yearbooks, individuals within those yearbooks, and

40

perform countless individualized searches just to identify the examples it presented in opposition to class certification. *See Supra* at 16–19. Because PeopleConnect has demonstrated there are class members with invalid claims, these burdensome inquiries would need to be performed for every class member.

### b. *Briseno* Is Inapposite Because Individual Issues Must Be Resolved Before Judgment Here.

The District Court also suggested a workable winnowing plan was unnecessary under *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). 4-ER-476–77, 488. But this case is like *Van*, not *Briseno*.

In *Briseno*, consumers brought a class action alleging that cooking oil containers were falsely labeled and overpriced. 844 F.3d at 1123–24, 1132. The plaintiffs claimed the court could determine the defendant's "aggregate liability" by "(1) calculating the price premium attributable to the allegedly false statement that appeared on every unit sold during the class period, and (2) multiplying that premium by the total number of units sold during the class period." *Id.* at 1132. In upholding the finding of predominance, this Court explained "[w]here the only question is how to distribute damages, the interests affected are not the defendant's but rather those of the

41

silent class members." *Id.* (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990)).

That is not the situation here. In *Briseno*, total damages were quantifiable in the aggregate, so identification of class members would "not affect a defendant's liability." *Id.* In sharp contrast, because this case involves statutory damages, calculating aggregate damages requires knowing the exact number of class members. So, unlike *Briseno*, the nature of the claims at issue here triggers PeopleConnect's "due process right not to pay in excess of its liability and to present individualized defenses if those defenses affect its liability." *Mullins*, 795 F.3d at 669; *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("[U]nder the proper standard for evaluating certification, [plaintiff's] model falls far short of establishing that damages are capable of measurement on a classwide basis. Without presenting another methodology, [plaintiff] cannot show Rule 23(b)(3) predominance[.]").

### 2. The District Court Did Not Adopt A Workable Winnowing Plan As *Van* Requires, Nor Is One Possible.

A winnowing plan is "workable" only if it protects a defendant's "Seventh Amendment and due process rights" while remaining

"administratively feasible." *In re Asacol Antitrust Litig.*, 907 F.3d at 52 (quotation omitted); *see id.* at 59 (Barron, J., concurring) (noting Seventh Amendment and due process concerns with "mechanism for culling uninjured class members … deployed only 'post-judgment'"); *accord In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d at 625. Because no such plan has been put forward and, indeed, no such plan is possible, certification of the class must be reversed.

Initially, Plaintiff never submitted a winnowing plan. *Supra* at 21–22. She just offered that individual issues could be addressed in the future through a post-judgment, claims-made process in which the *District Court* would "make a final determination as to whether" individual class members are "entitled to recover." 2-ER-62–63. The District Court likewise consigned all individualized issues to an undefined "later prove-up stage" based on a system of "self-identification." *Id*; 4-ER-470. These broad-brush proposals simply do not constitute a winnowing plan. Nor, even if they did, do they constitute a workable plan.

Most of all, they disregard PeopleConnect's Seventh Amendment "right of trial by jury" in "[s]uits at common law." U.S. Const. amend. VII. This right "extends to a particular statutory claim if the claim is 'legal in

43

nature,'" which is true of Plaintiff's claim for money damages, "the prototypical common law remedy." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128–29 (2024) (quotation omitted). Crucial for Seventh Amendment purposes is that each individualized issue PeopleConnect substantiated goes to an *element* each class member must *prove*. PeopleConnect is entitled to have *all* such issues put to a jury, along with a meaningful opportunity for discovery as to the proof each class member presents on each element. *In re Asacol Antitrust Litig.*, 907 F.3d at 52.

As but one example, this Court has held that identifiability, which is part of Section 3344's "use" element, *always* is a jury question, even in cases involving celebrities with unique names. *Abdul-Jabbar*, 85 F.3d at 413; *cf. Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019) (holding users' names are not *per se* identifiable). The notion that a class member unilaterally could prove identifiability through self-identification, with no opportunity for PeopleConnect to submit rebuttal evidence, trammels PeopleConnect's right to a jury trial on the elements. *Abdul-Jabbar*, 85 F.3d at 413. Moreover, the District Court committed the same errors regarding searchability and lack of consent (through registration, donation, or consent forms). 4-ER-472–83.

44

As the First Circuit explained in *Asacol*, a plan built around "[a] 'claims administrator's' review of contested forms completed by [class members] concerning an element of their claims would fail to be 'protective of defendants' Seventh Amendment and due process rights.'" 907 F.3d at 53 (quotation omitted); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (explaining that a "class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims"). As that is all Plaintiff and the District Court proposed, they did not put forward a workable plan. Nor could they have done so, for there is no way to avoid class-member-by-class-member adjudication of the individualized issues PeopleConnect substantiated, including searchability, identifiability, and lack of consent.

The District Court's certification order thus runs afoul of Rule 23 and the Seventh Amendment and should be reversed.

## II. The District Court Improperly Certified A Class Based On Erroneous Constructions Of Multiple Elements Of Section 3344.

The District Court also misconstrued the elements of Section 3344 that each class member must prove to prevail. *First*, it deemed the mere *possibility* a class member's name *could* be displayed in a Classmates.com

search result actionable under Section 3344, notwithstanding that statutory text and precedent require proof of actual "use" in direct connection with a specific advertisement. *Second*, it held that class members could recover under Section 3344 without demonstrating mental anguish, which California precedent holds is *required* for statutory damages.

The District Court's class certification ruling hinges on these erroneous rulings. If the District Court is wrong (it is), and Section 3344 requires that a person's name *actually* be displayed in an advertisement (which it does), then the class cannot go forward because no mechanical, classwide method exists to identify what names have actually been displayed in a Classmates.com search result.[7] *Supra* at 16. If the District Court is wrong (once more, it is) and Section 3344 requires that each class member prove mental anguish (which it does), then the class cannot go forward given that the individualized nature of resolving whether each class member experienced mental anguish would overwhelm the litigation. So, properly construed, Section 3344 requires individualized determinations that foreclose a finding of predominance under Rule 23(b)(3).

---

[7] PeopleConnect does not concede the mere display of a name on a webpage generated via a search engine search violates Section 3344.

A. **The District Court Erred In Holding That Making Class Members' Names "Searchable" Is A Use With A Direct Connection To Advertising.**

The District Court held that PeopleConnect violates Section 3344 "the moment [each class member's name] bec[o]me[s] … publicly *accessible*" on Classmates.com—even for class members whose names have never been displayed in a search result. 2-ER-142 (emphasis added). According to the District Court, the theoretical *possibility* of a name being displayed in a search result violates Section 3344 because the statute "does not require a direct connection between the use of the plaintiff's likeness and particular ads. It requires a direct connection between the use and a 'commercial purpose'." 4-ER-450, 465.

The District Court erred. Section 3344 applies only if a name has *actually* been in an advertisement; the *potential* display of a person's name adjacent to an advertisement is not enough. Indeed, if the theoretical possibility a name *could* one day be displayed on a webpage that also has advertisements violates the statute, then California has opened the floodgates for right of publicity claims involving any commercial website with a search engine that can display a person's name in a search result. If anything, the California Legislature intended the opposite result.

47

1. **Section 3344 Requires The Actual Use Of A Class Member's Name, Not The Possibility Of Use.**

Section 3344 requires each class member to prove that PeopleConnect "uses" their names. Cal. Civ. Code § 3344(a). California courts have held that this means a plaintiff must prove a defendant "actually" used their name. *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017). This requirement is incorporated into the official jury instructions. Judicial Council of California Civil Jury Instructions (2024 ed.), CACI No. 1804A (same, citing and quoting *Cross*).[8] Accordingly, it is not enough for class members to prove PeopleConnect could *theoretically* "use" their names in a search result *potentially* generated in the future. Yet that is all most class members can prove, as many of them have never been—and likely never will be—listed in a search result.

---

[8] Courts applying other states' right of publicity statutes have similarly held that use means actual use, not the possibility of display. *See, e.g.*, *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099, 1101 (7th Cir. 2022) (calling right of publicity claim premised on inclusion of plaintiff's name in list offered for sale, but not in related advertisement, "a nonstarter"); *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 397 (Ind. 2018) (holding that inclusion "of [athletes'] names, pictures, and statistics" in a database for fantasy sports did not constitute "unauthorized use of a personality to advertise or promote a product," as likenesses never appeared in advertising).

The District Court held that class members can prove "use" on a classwide basis because PeopleConnect "used" each class members' name "the moment the [name] became [] publicly accessible" via the search engine. 2-ER-142–43. But this supposed "use"— ████████████████████ ████████ school yearbooks searchable by users—is not a "use" of anyone's name for purposes of Section 3344, which is designed to address unauthorized use of a name for advertising or endorsements. Were that not the case, then the mere presence of a person's name in a searchable online database would be actionable. But surely Google is not liable to every person nationwide because everyone's name is searchable on Google.

Once the use element is properly applied, the class is fatally overbroad. Many members cannot prove the element of "use" because they cannot prove their names have been displayed in a search result, and ████████████ ████████████████████████████████████████ ████████████████████. *See supra* at 14–16.

### 2. Section 3344 Requires That The Actual Use Of A Class Member's Name Be In A Specific Advertisement.

Even if PeopleConnect "uses" class members' names by making them "searchable," both the text of Section 3344 and relevant precedent confirm

this is not enough to satisfy Section 3344's additional "direct connection" element. Cal. Civ. Code § 3344(e).

According to the District Court, making class members' names capable of being displayed in a search result on a for-profit website violates Section 3344 because the "direct connection" element "does not require a direct connection between the use of the plaintiff's likeness and particular ads. It requires a direct connection between the use and a 'commercial purpose.'" 4-ER-465. Section 3344 says otherwise. It requires each class member to prove the use of their name was "directly connected with *the* commercial sponsorship or with *the* paid advertising." Cal. Civ. Code § 3344(e) (emphasis added). It also makes clear "[t]he use of a name, … shall not constitute a use for which consent is required … solely because the material containing such use is commercially sponsored or contains paid advertising." *Id*.

The plain language of Section 3344(e) thus prohibits only the use of a person's name in a specific advertisement without consent—not the *potential* use of a person's name that could perhaps one day be adjacent to an advertisement. This again is confirmed in the official California jury instructions, which require each class member prove that PeopleConnect

50

actually used their name "*to advertise or sell*" a specific product. CACI No. 1804A (emphasis added). Just having a name displayed on a for-profit website is not enough.

California precedent affirms this reading of Section 3344. In *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017), the plaintiff sued Facebook under Section 3344 for selling advertising space on Facebook pages that also included his image. *Id.* at 208–09. The California Court of Appeal affirmed dismissal, explaining that because the plaintiff's images were only "adjacent to" advertisements—not part of them—Facebook did not violate Section 3344. *Id.* at 211. *Cross* thus resolves that every class member must prove there was "commercial sponsorship" or "paid advertising" that *actually* contained their name. In *Cross*, being on the same webpage as an advertisement was not enough. *A fortiori*, merely being searchable—but not ever displayed—cannot suffice.

In holding otherwise, the District Court construed *Cross* as excusing from liability only website publishers who allow likenesses to appear on the same webpages as third-party advertisements, the theory being that a website publisher (there, Facebook) is not responsible for the content of any third-party advertisements. 2-ER-149. So, according to the District Court,

although PeopleConnect's sale of third-party advertisements on the search results page shown to Free Members is not actionable, *Cross* is irrelevant because PeopleConnect displays search results that can potentially include a class member's name on a webpage that also could contain an offer to upgrade to a Classmates.com membership.

This view of *Cross* is unavailing. In *Cross*, the plaintiff's name had *actually* been displayed on a webpage that included advertisements, yet that was insufficient. Here, most class members' names have never been displayed on a webpage advertising Classmates.com memberships, yet the District Court held that the "direct connection" element was satisfied. That incongruity makes no sense, particularly because the "advertisements" the District Court described are generated in response to user-initiated searches, so they do not *exist* until a user takes action on Classmates.com to create the search result. 5-ER-729–30. If a direct connection was lacking in *Cross*, it must be lacking here.

Indeed, the connection between being "searchable" and the purported advertisements for Classmates.com memberships is particularly tenuous. Even if a class member's name was *searched*, that does not guarantee the class member's name could be displayed in a search result, let alone adjacent

to an advertisement for a Classmates.com membership. For one thing, the Free Member search results page frequently does not include a paid membership offer. *Supra* at 7–8. For another, if a search is performed on a mobile device, no advertisements are shown. *Supra* at 7. And PeopleConnect

████████████████████████████████████████████████████████

████. *Id.* All this underscores that whatever theoretical connection exists between being "searchable" and advertisements for Classmates.com memberships is contingent, hypothetical at best—and not "direct," as Section 3344 requires. The District Court's finding of predominance under Rule 23(b)(3) thus also is premised on an analysis that conflicts with the "direct connection" element of Section 3344.

### 3. Even If The District Court's Definition Of Use Were Accepted, Such A Use Would Be Insufficient Under The Incidental Use Doctrine.

Even if making class members' yearbooks "searchable" were a "use" of class members' names in a way that has a "direct connection" to advertising, for class members who are "searchable," but have never been "searched," that use is at most an "incidental use" that "does not give rise to liability." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1254 (N.D. Cal. 2014) (quotation omitted).

An incidental use is one "for purposes other than taking advantage of [the class member's] reputation, prestige, or other value associated with" that class member's name. *Restatement (Second) of Torts* § 652C cmt. d (1977); *see Hill v. NCAA*, 7 Cal. 4th 1, 25, 26 n.6 (1994) (citing *Restatement* Section 652C in analyzing invasion of privacy claim).[9] "A number of factors are relevant" to this inquiry, including: "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication." *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *3 (N.D. Cal. Dec. 19, 1994).

---

[9] California courts have recognized the incidental use doctrine since Section 3344 was enacted. For instance, in 1973 a California appellate court held that including a newspaper article about a plaintiff in a textbook that the defendant sold does not constitute a use "so 'directly' connected with the sale of the textbook that it falls within the purview of section 3344." *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 895 (1974); *accord Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) (reasoning that "an incidental use has no commercial value," and a "plaintiff's name is not appropriated by mere mention of it" (quoting *Restatement (Second) of Torts* § 652C cmt. d)).

Here, the purported "use" of class members' names—again, making ████████████████████████████████████ scanned yearbooks accessible to the public via a search engine—in no sense exploits any class members' reputation, prestige, or personal value. Simply being one of more than 100,000 names in one of those ████████ is the epitome of an inconsequential, incidental use.[10]

### 4. Common Law Corroborates That Section 3344 Plaintiffs Must Prove Their Names Were In Specific Advertisements.

When the California Legislature enacted Section 3344 in 1971, decades of precedent regarding the misappropriation tort established that a plaintiff could not prevail on a misuse in advertising theory if her likeness had never been in an advertisement. Because nothing in the text or legislative history of Section 3344 suggests the California Legislature sought to reverse that settled understanding—indeed, it *retained* the common law elements of the misappropriation tort and *added* additional elements to make it *harder* for

---

[10] The District Court declined to address the incidental use doctrine, labeling it "a merits argument" not "appropriate for class certification purposes." 4-ER-471–72. But the District Court premised its finding of predominance on its view that the "use" element could be proven on a classwide basis because it requires only that a name be "searchable." *See* 4-ER-464–65. Therefore, the incidental use doctrine is directly relevant to class certification.

55

plaintiffs to prove liability, *see Abdul-Jabbar*, 85 F.3d at 414—Section 3344 cannot be read to upend that necessary and commonsense limitation on right of publicity liability.

Almost as soon as the misappropriation tort was codified for the first time in New York in 1903, 1903 N.Y. Sess. Laws, ch. 132, §§ 1–2, "courts were faced … with the obvious fact that newspapers and magazines, to say nothing of radio, television and motion pictures, are by no means philanthropic institutions, but are operated for profit," Prosser & Keeton on Law of Torts § 117, p. 853 (5th ed. 1984). Plaintiffs from the start routinely asserted "that everything published by these agencies must necessarily be for purposes of trade" and therefore constituted impermissible exploitations of individual likenesses. *Id.* Such assertions "compelled" courts to reign in the tort. *Id.* Courts resolved "that there must be some closer and more direct connection" between the use of a person's likeness and an advertisement "beyond the mere fact that the newspaper itself is sold." *Id.*

Illustrative is *Gautier v. Pro-Football, Inc.*, where the New York Court of Appeals rejected a right of publicity claim brought by an animal trainer whose performance was broadcast during halftime of a televised football game on the theory that the television commercials that appeared

56

both before and after his performance exploited his likeness. 107 N.E.2d 485 (N.Y. 1952). The court explained that "the entire program" could not be fairly viewed as "a solicitation for patronage" and so "[u]nless plaintiff's name or picture were in some way connected with the 'commercial,' the mere fact of sponsorship of the telecast" did not give rise to liability. *Id.* at 358. This example is particularly telling given that the California Legislature looked to New York and its statute for guidance when drafting Section 3344. *See* Letter to Governor Ronald Reagan (Nov. 10, 1971), *in* Compiled Legislature Hist., Reg. Sess. AB 826 (Cal. 1971), Legislative Intent Service at A-4 to A-5.

Similar examples abound. An Illinois appellate court in 1961 affirmed that under Illinois law, publishing a plaintiff's picture in a magazine adjacent to advertising material did not invade that person's privacy. *Buzinski v. DoAll Co.*, 175 N.E.2d 577 (Ill. App. Ct. 1961). The Third Circuit in 1951 applied Pennsylvania law to hold that publishing a plaintiff's photograph in a magazine was not misappropriation even though the magazine was available for sale. *Leverton v. Curtis Publ'g Co.*, 192 F.2d 974, 977 (3d Cir. 1951). And New York courts had long held that publishing a plaintiff's name in a commercially sponsored medium adjacent to advertising copy was not

actionable. *Wallach v. Bacharach*, 274 A.D. 919 (N.Y. App. Div. 1948); *accord Colyer v. Richard K. Fox Publ'g Co.*, 162 A.D. 297 (N.Y. App. Div. 1914) (presence of advertising in magazine which included a story using plaintiff's photo did not turn the story into an advertisement).

Given the legal landscape that existed when the California Legislature enacted Section 3344 in 1971, the lack of any indication either in the text of Section 3344 or its legislative history that California sought to depart from the settled understanding as to the reach of right of publicity claims is telling. The District Court's theory that Section 3344 permits recovery by those whose names *could* appear, but have not actually appeared, on a website that also sells subscriptions goes far beyond what the drafters of Section 3344 would have ever anticipated about Section 3344. Because the District Court's finding of predominance hinges on this untenable expansion of Section 3344, class certification must be reversed.

### B. The District Court Erred In Holding That Each Class Member Can Prevail Under A Section 3344 Statutory Damages Claim Without Proving Individual Mental Anguish.

The District Court also erred by holding that class members need not prove mental anguish to prove a claim for statutory damages; instead, it incorrectly held that proof of "economic injury" is "sufficient." 4-ER-484.

The District Court compounded that error by then holding that class members' individual economic injuries are susceptible to common proof because there is "value as a collection [of yearbooks] and thus there is value to its essential components, *i.e.*, each name," and therefore each class member was "injured" by not being compensated for their names being part of that collective. 4-ER-485.

These erroneous takes on the injury element are at the heart of the District Court's certification of a class. If each class member must prove mental anguish, then the resulting discovery and mini-trials on that element would be overwhelming. Likewise, even if class members could prevail on a claim for statutory damages by proving only economic loss, the discovery and mini-trials to prove that each class member suffered at least some economic loss would be no less overwhelming. Either way, the viability of class certification depends entirely on the District Court's interpretation of Section 3344's injury element. And that interpretation is wrong.

### 1. Plaintiff Must Prove Mental Anguish To Recover Statutory Damages.

The District Court acknowledged that its certification order turns on its "conclusion that economic injury alone, without the need to establish

physical or mental injury, is sufficient to recover statutory damages." 4-ER-484. But the controlling California authority, *Miller v. Collectors Universe Inc.*, 159 Cal. App. 4th 988 (2008), rejects that view.

In *Miller*, the defendant authenticated memorabilia and, in doing so, issued certificates that included the names of all authenticators, including the plaintiff. *Id.* at 992–93. When the defendant continued using the plaintiff's name on certificates even after the plaintiff left the company, the plaintiff brought suit under Section 3344. *Id.* at 993. The California appellate court reversed a jury award of statutory damages for the plaintiff because Section 3344's "statutory damages were intended to remedy … the alleged injury to [the plaintiff's] mental feelings and peace of mind," and the plaintiff had not proven any such injury. *Id.* at 1005 (citing *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 86–87 (1955); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993)). In doing so, the court explained that if the plaintiff wanted to recover for a "commercial loss," he had "to prove actual damages like any other plaintiff whose name has commercial value." *Id.* at 1005–06; *accord Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 546–47 (2011).

60

Because federal courts are "bound to follow the rulings of intermediate state courts absent convincing evidence that the California Supreme Court would reject th[ose] interpretation[s]," *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) (quotation omitted) (collecting cases), courts in the Ninth Circuit have adhered to *Miller*. For example, in *Perkins v. LinkedIn Corp.* 53 F. Supp. 3d 1222, 1242 (N.D. Cal. 2014), Judge Koh recognized that she was bound to "follow *Miller*'s interpretation."[11] There, LinkedIn users brought a class action under Section 3344 alleging that the company had misappropriated their names and likenesses by sending emails reminding users' contacts of an invitation to connect on the website. *Id.* at 1225–26. The class sought statutory damages, but did not allege mental anguish, and so, relying on *Miller* and "the legislative history of section 3344," Judge Koh held that statutory damages under Section 3344, "could

---

[11] *Accord Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (stating that "statutory minimum damages were meant to compensate non-celebrity plaintiffs who suffer … mental anguish yet no discernible commercial loss" (quotation and emphasis omitted)); *Youngevity Int'l v. Smith*, 350 F. Supp. 3d 919, 923 (S.D. Cal. 2018) (recognizing mental harm was the type of harm "which § 3344(a)'s statutory damages were intended to remedy"); *Talley v. Chanson*, 2015 WL 11237666, at *4 (S.D. Cal. Feb. 25, 2015) (recognizing that the statutory damages provision is meant to compensate for "mental anguish").

not be recovered by a person as a measure of damages for injury to the commercial value of his or her identity" because "the statutory minimum could be used *only* when a plaintiff seeks damages for injury to mental feeling and peace of mind." *Id.* at 1242–43 (quotation omitted and emphasis added).

In ruling on PeopleConnect's motion to dismiss, the District Court acknowledged that *Perkins* held that class members must prove mental anguish to recover statutory damages. 3-ER-403–05. But at class certification, the District Court read *Miller* to allow non-celebrities to recover statutory damages if they claim *de minimis*, unquantifiable economic losses. 4-ER-483–85. But that misreads *Miller* and ignores that Judge Koh rejected the same argument in *Perkins*. 53 F. Supp. 3d at 1242–43; *see Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806, 809–10 (N.D. Cal. 2011) (Koh, J.) (noting that because the plaintiffs had not alleged "mental anguish" under *Miller*, they could not "simply demand $750 in statutory damages" and instead had to "prove actual damages like any other plaintiff whose name has commercial value" (quotation omitted)).

In short, because Plaintiff "is limiting her request (and that of the putative class) to statutory damages," 4-ER-483, *Miller* controls. And under

62

*Miller*, a class member can prevail on a claim for statutory damages only if they prove mental anguish from the unauthorized use of their name. Because evaluating whether each class member proved mental anguish through individual proof would overwhelm the litigation, a class cannot be certified.

### 2. The District Court's Presumption Of Economic Injury Is Improper.

Having wrongly discarded *Miller*, the District Court compounded the error by erroneously holding that class members can prove economic injury with common proof because it can "be inferred that the[ir] name[s] … [have] some economic value" by the fact that PeopleConnect "uses" their "names." 4-ER-484 (quotation omitted).

*First*, the District Court's reasoning impermissibly collapses two distinct statutory elements: (1) "the appropriation of plaintiff's name … to defendant's advantage, commercially or otherwise"; and (2) "resulting injury." *Abdul-Jabbar*, 85 F.3d at 414 (quotation omitted). In essence, the District Court held that because PeopleConnect was commercially advantaged by having class members' names in its yearbook library, every class member was injured. But this view of the injury element "causes it to duplicate another provision," the advantaging element, and

63

essentially "to have no consequence." *Nielsen v. Preap*, 586 U.S. 392, 969 (2019) (quotation omitted). That is improper.

*Second*, Section 3344 distinguishes a class member's "actual damages" from the "profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Cal. Civ. Code § 3344(a). Moreover, the official jury instructions make it clear that the fact that the defendant earns profits does not mean that the plaintiff has been injured; instead, the plaintiff must show "profits that [the defendant] received from the use of [the plaintiff's name]," not their profits generally. CACI No. 1821. The District Court's approach to the injury element treats proof of overall profits as proof of "actual damages." This conflation is textually impermissible.

*Third*, the District Court's injury theory is based on the unproven premise that inclusion in a search result is compensable. It is not. Plaintiff complains that her and class members' names may appear in search results, yet that is a feature of modern life. Anyone—celebrity or not—may find their name in a search result on a commercial website. Try it on Google. That is not an "injury" for which the law provides a remedy; nor is it a compensable loss. Classmates.com's search engine is no different.

Unsurprisingly, the District Court cited no case that supports its view. Indeed, one of the cases it relied on, *Lightbourne v. Printroom Inc.*, held that Section 3344 requires "individual determinations *even as to statutory damages*" and, therefore, declined to certify a class. 307 F.R.D. 593, 603 (C.D. Cal. 2015) (emphasis added). The problem is that Plaintiff presented no evidence to demonstrate PeopleConnect's commercial benefit from using her name; indeed, when deposed, Plaintiff disavowed having suffered any personal economic loss. *See* 2-ER-246. So, it simply does not follow that the District Court can presume economic loss for Plaintiff (much less for every member of the certified class) when Plaintiff herself has acknowledged she experienced no such out-of-pocket consequence.

In sum, even if proof of economic loss were to suffice for statutory damages, the class still cannot be certified because proof of the fact of economic loss cannot be resolved classwide, and instead would require thousands of mini-trials. Predominance, in short, is lacking.

## III. The District Court Erred In Certifying An Injunctive Relief Class.

The District Court's reason for certifying an injunctive relief class was that "[b]ecause the Court certifies a Rule 23(b)(3) damages class, it follows that certification of a Rule 23(b)(2) injunctive relief class is appropriate as

well." 4-ER-489. The District Court thus conducted no independent analysis of Plaintiff's proposed Rule 23(b)(2) class. Given the flaws embedded in the District Court's Rule 23(b)(3) class certification ruling, its certification of a Rule 23(b)(2) class should likewise be reversed.

Indeed, no injunctive relief class could be certified here. Plaintiff did not and cannot establish a real and immediate threat of her name or likeness being misappropriated in the future. *Brewer v. Lynch*, 2015 WL 13604257, at *10 (D.D.C. Sept. 30, 2015) ("Absent threat of future harm, plaintiff does not share a critical aspect of the claims of other class members for prospective injunctive relief." (quotation omitted)). Although Plaintiff alleges that Classmates.com users "may search, and have searched, for [her] by name," 3-ER-301 ¶150, she made no allegation (and presented no evidence) that *she* faces a real and immediate risk of appearing in a search result in the future. In fact, contrary even to her allegations about past harm, Plaintiff testified during her deposition she has no knowledge of anyone ever searching for her on Classmates.com. 2-ER-173; *see* 5-ER-739. Moreover, Plaintiff's name has been suppressed such that she is no longer searchable. 5-ER-777.

The Supreme Court has resolved that an injunctive relief class may not be certified if the named plaintiff will not "fairly and adequately protect

the interests of the class." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (quoting Fed. R. Civ. P. 23(a)(4)). Here, Plaintiff's failure to establish that she faces an imminent risk of future harm means she does not share the same interest in obtaining injunctive relief as the absent class members. Accordingly, the District Court's certification of a Rule 23(b)(2) class should also be reversed.

## CONCLUSION

The District Court's certification of a class should be reversed.

Date: October 15, 2024                    Respectfully submitted,


                                          /s/ *Ian Heath Gershengorn*
                                          Ian Heath Gershengorn
Clifford W. Berlow                        JENNER & BLOCK LLP
Debbie L. Berman                          1099 New York Avenue, NW
JENNER & BLOCK LLP                        Suite 900
353 North Clark Street                    Washington, DC 20001
Chicago, IL 60654                         (202) 639-6000
(312) 222-9350                            igershengorn@jenner.com
cberlow@jenner.com
dberman@jenner.com


*Attorneys for Defendant-Appellant PeopleConnect, Inc.*

67

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned attorney or self-represented party states the following:

[**X**]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** */s/ Ian Heath Gershengorn*  **Date:** October 15, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-3894

I am the attorney or self-represented party.

**This brief contains 13,202 words,** including 42 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

**Signature** */s/ Ian Heath Gershengorn*       **Date** October 15, 2024