**REDACTED**

**No. 24-3894**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ALICIA NOLEN,

*Plaintiff-Appellee,*

v.

PEOPLECONNECT, INC.,

*Defendant-Appellant.*

---

On Appeal from December 14, 2023 Sealed Order and
May 20, 2024 Order Granting Class Certification
United States District Court, Northern District of California
The Honorable Edward M. Chen
Case No. 3:20-cv-09203-EMC

---

### PLAINTIFF-APPELLEE'S RESPONSE BRIEF

---

Raina C. Borrelli
Samuel J. Strauss
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
sam@straussborrelli.com

Michael F. Ram
Marie N. Appel
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293
mram@forthepeople.com
mappel@forthepeople.com

Benjamin R. Osborn
LAW OFFICE OF BENJAMIN R.
OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY 12455
Telephone: (347) 645-0464
ben@benosbornlaw.com

*Attorneys for Plaintiff-Appellee Alicia Nolen*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel of record for Plaintiff-Appellee Alicia Nolen hereby discloses that:

1.     Alicia Nolen is a natural person and accordingly does not have a parent company or corporation.

2.     As a natural person, Alicia Nolen does not issue stock. Accordingly, no publicly held corporation owns 10% or more of Alicia Nolen's stock.


Dated: January 7, 2025          By: */s/ Raina C. Borrelli*
                                Raina C. Borrelli
                                STRAUSS BORRELLI PLLC
                                One Magnificent Mile
                                980 N Michigan Avenue, Suite 1610
                                Chicago IL, 60611
                                Telephone: (872) 263-1100
                                Facsimile: (872) 263-1109
                                sam@straussborrelli.com

i

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), the undersigned counsel of record for Plaintiff-Appellee Alicia Nolen respectfully requests oral argument. This appeal presents significant issues regarding the application of Federal Rule of Civil Procedure 23(f) and the scope of California Civil Code § 3344. Plaintiff-Appellee submits that oral argument will assist the Court in resolving this appeal.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

STATUTORY AUTHORITIES .............................................................6

ISSUES FOR REVIEW .........................................................................6

CASE STATEMENT ..............................................................................7

   a.   Background facts .....................................................................7

   b.   Procedural history ................................................................12

   c.   The district court's certification orders...........................15

ARGUMENT SUMMARY ...................................................................20

LEGAL STANDARD............................................................................22

ARGUMENT ........................................................................................23

   a.   Common issues predominate................................................23

     i.   PeopleConnect fails to address the common issues that predominate here ...........................................................................25

     ii.   PeopleConnect failed to substantiate the purported individualized issues it identified and ignores the district court's workable plans for resolving them....................................28

     iii.   PeopleConnect ignores the Court's plan to exclude non-class members from recovery ..............................................35

   b.   This Court should Decline PeopleConnect's invitation to step outside the Rule 23 inquiry and read two novel non-textual requirements into a California statute...........................39

   c.   The district court did not err when construing § 3344 ..................................43

     i.   The district court applied § 3344's elements as written and in accord with the caselaw ...............................................43

ii.   Ms. Nolen can claim statutory damages under § 3344 without "mental anguish" ................................................................................................47

d.   PeopleConnect waived or failed to assert the merits and statutory interpretation issues it invokes .......................................................52

e.   The injunction class should remain certified ................................55

CONCLUSION .......................................................................................56

# TABLE OF AUTHORITIES

## Cases

*Abdul-Jabbar v. GMC*,
  85 F.3d 407 (9th Cir. 1996)................................................................32

*Abdullah v. U.S. Sec. Associates, Inc.*,
  731 F.3d 952 (9th Cir. 2013).......................................................... 22, 25

*Adarand Constructors, Inc. v. Slater*,
  528 U.S. 216 (2000)......................................................................55

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)......................................................................25

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)..................................................................39

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017)........................................... 4, 16, 35, 36, 37, 38, 39

*Bruton v. Gerber Prods. Co.*,
  No. 15-15174, U.S. App. LEXIS 12833 (9th Cir. July 17, 2017) .......................35

*Callahan v. PeopleConnect, Inc.*,
  No. 20-cv-09203-EMC, 2021 U.S. Dist. LEXIS 210857 (N.D. Cal. Nov. 1,
  2021),.................................................................................. 48

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ..............................................................44

*Crowley v. Bannister*,
  734 F.3d 967 (9th Cir. 2013)..............................................................40

*Davis v. Electronic Arts Inc.*,
  No. 10-cv-03328-RS, 2018 U.S. Dist. LEXIS 173625 (N.D. Cal. Aug. 17, 2018)
  .................................................................................. 31, 32

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)..................................................................22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ..............................................................................26

*Fischer v. InstantCheckmate*,
2022 U.S. Dist. LEXIS 59143 (N.D. Ill. Mar. 31, 2022)......................... 14, 27, 45

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ..............................................................................55

*Hebrew Univ. v. General Motors LLC*,
903 F. Supp. 2d 932 (C.D. Cal. 2012) ...................................................3

*Huebner v. Radaris*,
2016 U.S. Dist. LEXIS 49844 (N.D. Cal. Apr. 12, 2016) ........................... 14, 27

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2009)..................................................................25

*Kellman v. Spokeo*,
2024 U.S. Dist. LEXIS 95525 (N.D. Cal. May 29, 2024)................. 14, 27, 28, 32

*Knapke v. PeopleConnect, Inc*,
38 F.4th 824 (9th Cir. 2022) ..................................................................45

*KNB Enters. v. Matthews*,
78 Cal. App. 4th 362, 92 Cal. Rptr. 2d 713 (2000)....................... 47, 48

*Leanne Tan v. Quick Box, LLC*,
No. 20-cv-1082-LL-DDL, 2024 U.S. Dist. LEXIS 6935 (S.D. Cal. Jan. 12, 2024)
.................................................................................................................34

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..............................................................................23

*Lukis v. Whitepages Inc.*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) .....................................................45

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ................................................................ 6, 21, 52

*Maloney v. T3 Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2007)...............................................................................45

*Martinez v. ZoomInfo*, No. C21-5725 MJP, 2022 U.S. Dist. LEXIS 66673, at *7.
   ................................................................................................................. 49, 51

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012).................................................................................25

*Melgar v. CSK Auto, Inc.*,
   681 Fed. Appx. 605 (9th Cir. 2017).......................................................................37

*Miller v. Collectors Universe, Inc.*,
   159 Cal. App. 4th 988, 72 Cal. Rptr. 3d 194 (2008).................................... 50, 51

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ..............................................................................................22

*Molski v. Gkich*,
   318 F.3d 937 (9th Cir. 2003).................................................................................22

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
   498 F.2d 821 (9th Cir. 1974).................................................................................48

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .................................................................................27

*Orthopedic Sys., Inc. v. Schlein*,
   202 Cal.App.4th 529 (Cal. Ct. App. 2011) .................................................. 49, 50, 51

*Parra v. Bashas', Inc.*,
   536 F.3d 975 (9th Cir. 2008).................................................................................23

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014).................................................................................24

*People v. Birkett*,
   (1999) 21 Cal.4th 226, [87 Cal. Rptr. 2d 205, 980 P.2d 912]...............................52

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) .......................................................... 47, 51

*Pitts v. Terrible Herbst Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ............................................................................55

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ............................................................................34

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) .............................................................................23

*Stockwell v. City & Cty. of S.F.*,
  749 F.3d 1107 (9th Cir. 2014) .................................................... 21, 22, 26, 40, 42

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
  262 F.3d 134 (2d Cir. 2001) ..............................................................................41

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ........................................................................... 25, 39

*Van v. LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ...................................... 1, 17, 20, 24, 28, 29, 34, 52

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) .............................................................................25

*Willis v. City of Seattle*,
  943 F.3d 882 (9th Cir. 2019) ...................................................................... 23, 27

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ..................................................................... 22, 23

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ..................................................................... 25, 26

**Statutes**

Cal. Civ. Code § 3344..iii, iv, 2, 3, 5, 6, 7, 12, 13, 16, 18, 19, 21, 23, 26, 27, 28, 40, 41, 42, 43, 45, 46, 48, 49, 50, 52, 53, 54

**Rules**

Federal Rules of Civil Procedure, Rule 23 .... 5, 6, 15, 20, 21, 22, 23, 25, 36, 38, 39, 40, 51, 54, 55

## INTRODUCTION

PeopleConnect owns and operates the website www.classmates.com. The website is designed to enable users to identify their friends, classmates, and others. Indeed, PeopleConnect's profitability depends on users recognizing people in whom they are interested, then purchasing a subscription so they can view high-resolution photographs of those people. *See* 1-ER-16-11. To that end, the free version of classmates.com identifies students by name, school, and years of attendance in search results, triggering subscription ads when users click on those results. 1-ER-3. Having designed classmates.com for the express purpose of enabling identification—and thereby attracting subscriptions—PeopleConnect now seeks to insulate itself from this lawsuit by claiming it is impossible to uniquely identify the students who appear in its database. This argument is as misguided as it is ironic.

Alicia Nolen sued PeopleConnect because it uses her name and likeness without her consent to advertise subscriptions, along with the names and likenesses of thousands of other Californians. When Ms. Nolen had her yearbook photograph taken, she expected it would appear in her school's yearbook. She did not expect her photograph would surface years later on a private-equity backed website, used to promote subscriptions to a company she had never heard of. This lawsuit is about turning back the tide against big tech overreach. It is time technology companies like PeopleConnect received the message that they cannot exploit individuals' names and

likenesses with impunity. PeopleConnect's misappropriation and non-consensual commercial use of names and likenesses violates fundamental intellectual property rights that have been recognized at common law for centuries.

PeopleConnect and *amici* compare classmates.com to a directory like the Yellow Pages, in which advertisements for local businesses appear adjacent to directory information about individuals. But even the most cursory examination of the website belies this comparison. On classmates.com, the identities don't just appear adjacent to the advertisements; the identities *are* the advertisements. To entice subscribers, PeopleConnect uses the childhood photographs of people like Ms. Nolen as bait, incorporating their names, photographs, and school information in search results that function as "teasers." 1-ER-16. The teasing starts from the moment visitors land on classmates.com, when PeopleConnect prompts visitors to search for people they know. Free search results show the person's name, school, and a few high-resolution photographs, but additional photographs are hidden "in small size with low resolution." 1-ER-16. To unlock high-resolution photographs, visitors must follow the registration process, which ends in a webpage soliciting a subscription for $3.00/month. 1-ER-17.

This is commercial use to advertise without Ms. Nolen's and the Class's consent. *See* Cal. Civ. Code § 3344. Ms. Nolen sued to prevent PeopleConnect's unjust enrichment from its use of her intellectual property; to receive the

compensation to which she is entitled for the unauthorized commercial use of her name and likeness; and to prevent the dignitary harm from the unauthorized use of her likeness to promote a product with which she has no relationship. *See Hebrew Univ. v. General Motors LLC*, 903 F. Supp. 2d 932, 938-39 (C.D. Cal. 2012).

This is a paradigmatic case for class treatment. Classmates.com displays each Class member's name, school, school years, and low-resolution photographs on webpages that are identical in form and content and that operate identically to solicit subscriptions. Accordingly, as Ms. Nolen proves, or fails to prove, her claim, she will simultaneously do so for the absent Class members as well. If PeopleConnect's use of her name and identity violates § 3344, so too does its use of absent Class members' names and personas, and vice versa. The district correct was correct to grant certification.

To resist certification, PeopleConnect now claims its people-finding website is bad at finding people. After pitching itself to visitors as the service making it "easier than ever to find friends, family, [and] co-workers" with "improved yearbook searching," PeopleConnect backpedals and says the site cannot reliably identify anyone. 3-ER-421. PeopleConnect says its software sometimes errs when scanning yearbooks, preventing the name from being lifted off the page and into the database. In other cases, it claims its software disassociates first and last names, stopping them from appearing in results. And even if a person's name appears with their yearbook

3

photograph, PeopleConnect says the result cannot be taken at face value. For these reasons, PeopleConnect asserts "actual identification" can only be proven with "survey evidence" from experts. Def.'s Br. 27–42.

PeopleConnect's argument ignores the Class definition, which includes only people for whom a search yields "at least one record corresponding" to that person. 1-ER-2. People who do not match the name, school, and yearbook year listed in a search result are not Class members. And those who *are* Class members are readily identifiable via the information in PeopleConnect's possession: "a person is usually readily identifiable by their name, especially when viewed in context of having attended a particular school in a particular year[.]" 1-ER-31.

PeopleConnect's appeal fails for three reasons. ***First***, common issues predominate. PeopleConnect does not dispute that most issues are shared between the Class members. And none of the purported "individualized" issues on which PeopleConnect bases this appeal come close to defeating predominance. The primary issue PeopleConnect invokes relates solely to *non*-Class members, who are easily excluded because their identities do not appear in search results. The "consent" issue was largely un-substantiated before the district court, affects at most a miniscule portion of the Class, and, even if substantiated, would be resolvable on a school-by-school basis. Further, the district court described a workable plan, following *Briseno*, for excluding claimants who arguably consented by registering

accounts on classmates.com or donating yearbooks. Finally, the "duplicate name" or "nickname" issue was wholly unsubstantiated before the district court. PeopleConnect failed to identify a single example of a Class member who cannot be uniquely identified by the combination of their name, school, and years of attendance. *Cf. Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (defendant showed that 13,680 transactions – nearly 20% of the total – would necessitate factual inquiries into the purpose for which a discount was offered).

**Second**, PeopleConnect's appeal delves into merits issues that fall outside the scope of this Rule 23(f) appeal. PeopleConnect asks this Court to read two novel, a-textual elements into § 3344. First, PeopleConnect suggests that the statute's requirement of a "direct connection" between the identity and the service being promoted should instead be read to require that a third party viewed the advertisement. Second, PeopleConnect argues that statutory damages under § 3344 are available only to plaintiffs who demonstrate they suffered "mental anguish," as distinct from economic loss and dignitary harm. As to both, the text contains no such limitations. Setting aside the weakness of these statutory constructions, these arguments fall outside the proper scope of this appeal, which is limited to the certification requirements of Rule 23. Further, PeopleConnect did not present these arguments to the district court as a reason to deny class certification, and has

therefore waived both arguments on appeal. *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1032-33 (9th Cir. 2024).

And ***third***, the Court should preserve the injunctive relief class because PeopleConnect has yet to change its practices to comply with California law.

## STATUTORY AUTHORITIES

California's Right of Publicity law, Cal. Civ. Code § 3344, reads in part:

> Any person who knowingly uses another's name, . . . photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.

## ISSUES FOR REVIEW

1.    Whether the district court correctly found that common issues predominate.

2.    Whether PeopleConnect substantiated the purported individualized issues it identified to the district court.

3.    Whether the merits issues PeopleConnect raises can be considered under Rule 23(f).

4.      Whether the district court correctly rejected PeopleConnect's argument that § 3344's requirement of a "direct connection" between the identity and the service being advertised should be read contra-textually to require that a third party viewed the advertisement.

5.      Whether the district court properly followed the statutory text and the weight of case law in ruling that showing economic injury is sufficient to establish entitlement to the statutory minimum damages provided for under § 3344.

6.      Whether PeopleConnect waived or failed to assert the merits and statutory construction issues it raises on appeal.

7.      Whether PeopleConnect can moot the need for an injunctive relief class by temporarily suppressing Ms. Nolen from appearing on classmates.com.

## CASE STATEMENT

### a. Background facts

In 2015, Alicia Nolen was a freshman at Tulare Union High School. 2-ER-93, ¶ 72; 2-ER-168. She had her photograph taken for the school yearbook. 2-ER-97– 98, 170–71. And while she knew her photograph would appear in the yearbook, she never expected that a private-equity backed big tech company called "PeopleConnect" would obtain a digital copy of that photograph without her knowledge and use it to promote paid subscriptions to a website called "classmates.com." *Id*. No one at Tulare High School warned her PeopleConnect

would user her photograph for commercial purposes; they had no reason to. As the district court found, PeopleConnect does not seek consent from *anyone* before posting yearbook photographs on classmates.com, let alone from the students appearing in them, as the law requires. 1-ER-44.

PeopleConnect's business model is built around buying and selling access to people's information like Ms. Nolen's, including their childhood photographs on classmates.com. PeopleConnect boasts around ████████████████████ with Classmates accounts, ████████████████████. 5-ER-744 ¶ 7. The site's draw is its database of "over 400 thousand yearbooks" from across the country, including California schools. 2-ER-114 ¶ 163. This amounts to a data collection project that has spanned decades, amassing yearbooks "by purchasing them from schools, individuals, or third-party companies" and through "donations"—though only around 7,400 were donated. 5-ER-748–55. Once collected, PeopleConnect harvested their contents, ████████████████████████████████ ████████████████████████████████████████████████ ██████████. 4-ER-566. PeopleConnect then organized the text in blocks that are "searchable" through the website's search features. 5-ER-757 ¶¶ 57–58; 1-ER-28.

From the moment a visitor lands on classmates.com, PeopleConnect structures their searching experience to lead to subscription advertisements. Visitors are encouraged to "Start your search here" with an arrow pointing to the site's search

8

bar, and a banner promoting classmates.com's "Improved yearbook searching" making it "easier than ever to find friends, family, coworkers, or your favorite celebrities." 3-ER-421. And those search features work. Searching a classmate's name will produce results not only showing their name, but pair it with any photographs depicting the classmate, the school they went to, and their attendance year. 4-ER-598–99. For example, in litigation PeopleConnect searched for Ms. Nolen's childhood best friend, ███████, and produced results showing ███████ name, the school she went to, and the yearbook year that she appears in:



As the district court found, that is all that is needed to identify someone like ▮▮▮ "a person is usually identifiable by their name, especially when viewed in context of having attended a particular school in a particular year." 1-ER-3. In other words, the site works as designed, it helps people find—and *identify*—other people.

A first-time visitor landing on classmates.com cannot search for what they want like someone flipping through a phonebook. PeopleConnect requires registration and a subscription to access all features on the site, including its premium service, "Classmates+" or "CM+." 1-ER-11. As a result, unregistered visitors can see "only a few pages of a yearbook in full size with full resolution; the remainder of the yearbook can be seen only in small size with low resolution." 1-ER-16.

The district court recognized this limited access as a "teaser" tactic. *Id*. ("Visitors are induced by the collection of names and images in yearbooks to register and become Free Members. This is done by a kind of teaser"). Because PeopleConnect knows visitors will want to see more than grainy photographs of their classmates, it offers visitors the chance to "see all of the pages of yearbook in full size with full resolution" if they register as a "Free Member." *Id*. And once they register, PeopleConnect peppers their experience with subscription ads offering to enhance their experience again. 1-ER-15–23. Only this time, PeopleConnect uses the people appearing in "full resolution" on the database as "bait" to "attract potential viewers and turn them into customers." 2-ER-146. When the user takes the bait and clicks on a search result depicting a person, PeopleConnect designed the site to trigger pop-ups and banner ads soliciting subscriptions for $1.50 to $3.00 per month. 3-ER-426. The district court found this advertising flow "uses names and photos to

entice Visitors to register and become Free Members who are then induced to subscribe[.]" 1-ER-18. But despite using people's names and likenesses in advertising and for profit, PeopleConnect never sought their consent or paid them for its use.

Commercially using Ms. Nolen's name, photograph, and likeness in this way violates her right of publicity. *See* Cal. Civ. Code § 3344. As Ms. Nolen pleads, she "has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law." 3-ER-302 ¶ 159. For that reason, "[s]he has the right to exclude anyone from making commercial use of" her likeness without consent. *Id*. Because PeopleConnect never sought her consent, it violated her "right to exclude." Ms. Nolen alleges that violation misappropriated her identity and property interest in it, an allegation the district court found was "sufficient to state a claim of economic injury supportive of statutory damages under § 3344[.]" 1-ER-52. And because PeopleConnect violated people's rights *en masse*, Ms. Nolen sued on behalf of a class.

### b. Procedural history

In March 2023, Ms. Nolen filed her Second Amended Complaint asserting the claims at issue here. *See generally* 3-ER-279–311. Her principal cause is under Cal. Civ. Code § 3344. 1-ER-12 (the district court explained Ms. Nolen's other "two claims are essentially derivative of the first [§ 3344] claim"). That statute prohibits

using another person's name, photograph, or likeness in advertising without that person's consent and provides for "actual damages" with a $750 statutory minimum. 3-ER-307; Cal. Civ. Code § 3344. Under the facts above, Ms. Nolen alleged PeopleConnect "knowingly used class members' names, photographs, and likenesses in its products and services for the purpose of advertising and selling its services, without class members' consent" on classmates.com. *Id*. She sought an injunction to stop that misconduct and "$750 per violation" to compensate the class as provided for under § 3344. *Id*. at 308.

PeopleConnect moved to dismiss Ms. Nolen's claim "focus[ing] on a narrow issue" that challenged whether Ms. Nolen "adequately alleged that Defendant used her image for the purpose of advertising." 2-ER-142. At bottom, the motion disputed whether PeopleConnect could have "commercially used" Ms. Nolen's identity if she could not show it ever "visually displayed" her name "in connection with an advertisement following a user's search." *Id*. To PeopleConnect, a person's name must be searched and displayed before § 3344 liability can attach. *Id*.

The district court rejected that view. It held that § 3344 liability turns on "use" for a "commercial purpose." 1-ER-26. And here, PeopleConnect "commercially used Plaintiff's image the moment the image became a publicly accessible part of Defendant's advertising flow." 1-ER-15. *Id*. ("Plaintiff's claim is that as part of a stable of names and images, the availability of one's name and image, along with

13

others, is what drives PeopleConnect's value and advertising flow"). And the district court held that is all that is needed for liability to attach. *Id*. As a result, PeopleConnect's focus on "singular ads and whether they appear proximately to a particular person's name or image myopically loses the forest from the trees of § 3344." 1-ER-29. Indeed, the district court found that imposing a viewership or "visual display" element would be at odds with § 3344, as its text requires none. *See* Cal. Civ. Code § 3344; 2-ER-143.

This reasoning has company among district courts, as this is not the first case to consider the issues above under like facts, nor the first to have a class certified. District courts have certified classes against "people-search" defendants like PeopleConnect in *Kellman v. Spokeo*, 2024 U.S. Dist. LEXIS 95525, at *13 (N.D. Cal. May 29, 2024), *Fischer v. InstantCheckmate*, 2022 U.S. Dist. LEXIS 59143, at *7 (N.D. Ill. Mar. 31, 2022), and *Huebner v. Radaris*, 2016 U.S. Dist. LEXIS 49844, at *3 (N.D. Cal. Apr. 12, 2016). In each, plaintiffs alleged defendants misappropriated their identities on people-finding websites that, like classmates.com, "collect[] data and information about the American adult public from public sources and data vendors" for publication online. *Spokeo*, 2024 U.S. Dist. LEXIS 95525, at *3. And in each, the district courts certified classes because they invoked "common issues" like whether "using and publishing [personal] information without consent is sufficient to constitute use or appropriation of

14

identity under California [law]." *Id*. at *27. No Circuit has invalidated those orders, nor should the Court do so here.

### c. The district court's certification orders

In June 2023, Ms. Nolen renewed her motion to certify the class, leading to the certification orders at issue here. 5-ER-770. The district court certified the class in two steps. In December 2023, the court "conditionally" certified the class in October 2024 over PeopleConnect's objections on commonality, typicality, and superiority grounds. *See generally* 1-ER-11–54. It ordered the parties to meet and confer on its wording to see whether they could agree on a final version. 1-ER-53. Because the parties could not agree on a definition, the district court finally certified the class in May 2024, modifying it to adjust its parameters again. That definition is:

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar to search a California yearbook made available for viewing on the Classmates.com website, yields at least one record corresponding to the class member from a California yearbook that Classmates.com first made publicly available on or after December 18, 2018.

When reaching this definition, the district court noted the "only question presently before the Court is whether the requirements of Rule 23 are met[,]" emphasizing that the case's merits "should not overly cloud the Court's certification analysis." 1-ER-24. That analysis thus focuses on whether the issues at stake are "amenable to class

treatment[,]" not whether Ms. Nolen can prove her case over PeopleConnect's defenses. *Id.*

Under that framework, the district court focused its analysis on commonality and predominance because that is where PeopleConnect focused its objections. 1-ER-25. It recited § 3344's five elements and found Ms. Nolen raised classwide issues on liability and damages. 1-ER-26. On liability, the district court found Ms. Nolen's case depends on proving that classmates.com's advertising flow commercially uses the class's names and likeness without their consent—common contentions that apply to every person that is "searchable" in PeopleConnect's system. 1-ER-28–30. On damages, the district court found Ms. Nolen avoided any "individualized" concerns because all class members would receive the same amount: "Ms. Nolen is not asserting claims that are dependent on the number of times a search yields a person's name and photo; rather, she is seeking statutory damages of $750 per class member[.]" 1-ER-35. And when making claims after a judgment on liability, the Court held that class members could self-identify, just as claimants do in other class actions. 1-ER-40 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017)). Any concern PeopleConnect had about identifying class members through that process went to ascertainability or manageability—concerns unrelated to class certification. 1-ER-38–39.

The district court then addressed PeopleConnect's objections in turn. First, PeopleConnect claimed Ms. Nolen's proposed class was "overinclusive" because it believed some class members consented to appearing on classmates.com. Def.'s Br. 28. But the district court found the record revealed little to substantiate that concern. For example, PeopleConnect was neglecting that users like those were cut from the class under the class definition the district court adopted. 1-ER-5 (only individuals who never "registered" (and thus consented) to appearing on classmates.com are class members). It also never substantiated that students consented to appearing on classmates.com with "consent forms" from their schools. 1-ER-44 ("PeopleConnect has not offered any concrete evidence that yearbook publishers were given broad consents to use. Nor has it offered any concrete evidence that other third parties were given broad consents to use"). And while PeopleConnect now says the court had a responsibility to "determine how these [non-class] people will be excluded from recovery" under *Van*, it is misreading what *Van* requires. Def.'s Br. 35. As explained below, *Van* does *not* require a district court to winnow *non*-class members from recovery, it requires the court to ensure *class members* without valid claims are excluded from recovery. *Van v. LLR, Inc.*, 61 F.4th 1053, 1058 (9th Cir. 2023).

PeopleConnect repeated this error when it said the district court needed to address individuals "whose names cannot be displayed in search results" in a workable plan to remove them from the class. Def.'s Br. 36. But PeopleConnect

forgot then, as it does now, that the Class is limited to those "for whom a search of their name, using the search bar . . . on the Classmates.com website, yields at least one record corresponding to the class member." 1-ER-5. If searching for a person does not produce a record, they are not a Class member. And although PeopleConnect added that sometimes people share the same name, meaning a search could produce records belonging to different people, it again forgot that its website identifies the individuals who appear in search results not only by name and photograph, but also by school and year of attendance. 1-ER-4, 34.

Second, PeopleConnect argued that its search results cannot be taken at face-value, suggesting that no one is "readily identifiable" on classmates.com just by looking at their names, photographs, and school information. 4-ER-540–541. To PeopleConnect, Ms. Nolen could not prove that any person was "identifiable" on classmates.com without "survey results" from third parties agreeing that they did: "you have to have survey evidence. There has to be survey evidence for every single person." *Id*. The district court rejected that contention with common sense: "a person is usually identifiable by their name, especially when viewed in context of having attended a particular school in a particular year." 1-ER-3. In other words, a person appearing on classmates.com need not retain an expert pollster to prove that they did—that their name and photograph appear on the site is enough.

Third, PeopleConnect raised two merits concerns. It rehashed its motion to dismiss theory that § 3344 requires that a person's name or photograph must be "visually displayed" in a search result before liability triggers under the statute. 1-ER-27–29. But at the hearing, PeopleConnect waived the argument: "PeopleConnect conceded that the issue was whether a person was 'searchable' (i.e., could be searched) rather than having been actually 'searched'" and "visually displayed." *Id.* In fact, PeopleConnect's counsel admitted that the "standard is whether someone is *searchable*, as opposed to whether they had to be searched." 4-ER-499 (emphasis added). Even if counsel had not conceded the point (they did), the Court reiterated its holding that a defendant need not "visually display" a person's image to "commercially" use it under § 3344. 1-ER-28–29.

And last, PeopleConnect questioned whether commonality existed under § 3344's injury element. PeopleConnect conceded at the district court that "either emotional distress *or* actual economic injury" can suffice to claim statutory damages under § 3344—never arguing Ms. Nolen could only claim emotional distress, a position PeopleConnect asserts for the first time on appeal. 4-ER-542 (emphasis added); Def.'s Br. 22. The district court agreed with PeopleConnect's earlier concession: "[E]conomic injury alone, without the need to establish physical or mental injury, is sufficient to recover statutory damages [under] § 3344." 1-ER-48. Following the concession, the district court found Ms. Nolen had alleged economic

19

injury because "it can reasonably be inferred that the name and/or likeness has some economic value, even if small." *Id*. And it found Ms. Nolen claimed only the $750 per class member allowed under statute, establishing the class's commonality in damages because they all sought the same remedy. 1-ER-35 ("Ms. Nolen is not asserting claims that are dependent on the number of times a search yields a person's name and photo; rather, she is seeking statutory damages of $750 per class member").

## ARGUMENT SUMMARY

The Court should affirm the district court's orders certifying the class for three reasons. First, the district court found the Class met Rule 23's commonality prong because common issues predominate, while PeopleConnect failed to adequately substantiate the purported "individualized" issues it identified – much less show that they predominate instead. PeopleConnect hinges its brief on *Van*, this Court's decision holding that when a defendant "substantiates" an individualized issue, the district court must develop a "workable plan" to address it at certification. *Van*, 61 F.4th at 1058. But PeopleConnect fails to show the district court violated *Van* at either step. PeopleConnect failed to sufficiently substantiate the purported individualized issues it identified to the district court and, even if it had, the district court described workable plans both for identifying class members and for resolving any potential consent defense on a school-by-school basis. Further, PeopleConnect's

appeal fails to address the common issues that predominate here and fails to explain how the purported individualized issues overwhelm them.

Second, PeopleConnect's appeal raises merits issues of statutory construction that the Court should decline to consider under Rule 23(f)'s "limited" jurisdictional grant. *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1113 (9th Cir. 2014) ("merits inquiries unrelated to certification exceed our limited Rule 23(f) jurisdiction"). Specifically, PeopleConnect urges this Court to read two novel extra-textual elements into § 3344. Even were the Court to wade into issues of statutory construction (it should not), the record shows the district court correctly applied § 3344 according to its elements and caselaw. PeopleConnect also waived these issues on appeal because it did not "fairly present" them for the district court's review at class certification. *Nutramax*, 114 F.4th at 1032-33.

And third, the Court should preserve Ms. Nolen's injunctive class because she alleges PeopleConnect has not adjusted its practices to comply with California law. This is the classic case for injunctive relief, as Ms. Nolen alleges PeopleConnect "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Rule 23(b)(2).

## LEGAL STANDARD

A Rule 23(f) appeal is an exception to the "general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) (citation and quotation omitted). For that reason, the Rule confines the Court's review here to "*only* to class certification decisions[.]" *Stockwell*, 749 F.3d at 1113 (emphasis in original). This means that the Court should avoid considering the merits because they are "unrelated to certification" and exceed the Court's "limited Rule 23(f) jurisdiction, as well as the needs of Rule 23(a)-(b)[.]" *Id*.

Under this limited review, the Court determines whether the district court abused its discretion in certifying or declining to certify a class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) ("We review the district court's decision regarding class certification for abuse of discretion"); *Molski v. Gkich*, 318 F.3d 937, 946 (9th Cir. 2003) ("We limit our review to whether the district court correctly selected and applied Rule 23's criteria"). But the Court does not apply the standard the same way in both instances. When "reviewing a grant of class certification," this Court accords "the district court noticeably *more* deference than when we review a denial of class certification." *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 956 (9th Cir. 2013) (emphasis added) (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010)). The Court will only

reverse the district court's decision if it "relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them." *Parra v. Bashas', Inc.*, 536 F.3d 975, 977-78 (9th Cir. 2008) (internal quotation marks omitted). As to the district court's findings of fact, the Court reviews them for "clear error." *Wolin*, 617 F.3d at 1171. And throughout, the Court must remember that "the 'manner and degree of evidence required' at the preliminary class certification stage is not the same as 'at the successive stages of the litigation'—i.e., at trial." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)).

## ARGUMENT

### a. Common issues predominate

Under Rule 23(a), commonality exists here because the "proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution." *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019). Broadly, the "common contention" is whether PeopleConnect violated class members' publicity rights under § 3344 when it "commercially used" their identities without consent on classmates.com, and whether Class members are entitled to injunctive and monetary relief as a result. Within that contention, class members share inquiries on whether PeopleConnect appropriated their identities to

its advantage without consent, thus injuring class members. 1-ER-26. To answer these questions, "Ms. Nolen will rely on common evidence to show that PeopleConnect used people's names and photos for a commercial purpose[.]" 1-ER-4.

PeopleConnect never disputes these questions are "susceptible to common proof" or that class members share them for Rule 23(a)'s purposes. *See Parsons v. Ryan*, 754 F.3d 657, 683 n.25 (9th Cir. 2014). Instead, it says only that those questions cannot predominate over "individualized" inquiries arising from differences among people saved in its database, claiming the class "indisputably has members who cannot prove their claims." Def.'s Br. 1. As examples, PeopleConnect says some "class members" may not be "searchable" on classmates.com, others may have consented to appearing on the site, and all will need to prove they are "identifiable" in search results with third party "survey evidence" on a case-by-case basis. Def.'s Br. 14–15, 32–33.

The problem with PeopleConnect's objections is threefold. First, while focusing on individualized issues it has not proven, PeopleConnect ignores the common questions the district court found predominate, failing to show how its individualized concerns could overwhelm them. Second, PeopleConnect failed to sufficiently substantiate the purported individualized issues it raised, as required under *Van*. And third, even if PeopleConnect had shown that individualized issues

will arise when identifying class members or resolving any consent defense (it did not), it neglected the district court's plan for resolving them.

      i.    <u>PeopleConnect fails to address the common issues that predominate here</u>

PeopleConnect's appeal never discusses the common issues the district court found exist here, entirely failing to show why they cannot predominate. Commonality requires only "a *single significant* question of law or fact." *Abdullah*, 731 F.3d at 957 (emphasis in original) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). And determining whether common issues predominate in the aggregate does not involve counting them but weighing their significance. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues'"). In addition, the predominance analysis looks to whether adjudicating those issues "will help achieve judicial economy," further efficiency, and "diminish the need for individual inquiry." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting and citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538

(1974)). Last, commonality considers the policy that Rule 23 advances, including the benefit in allowing the class to pursue "small value" disputes all at once. *See Zinser*, 253 F.3d at 1190, amended on denial of reh'g by 273 F.3d 1266 (9th Cir. 2001) ("When damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.") (internal citation omitted); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *id.* at 621 (recognizing the "core" class action policy of "overcom[ing] the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal citation and quotation marks omitted).

This district court found § 3344's five elements present "common" questions under these principles. 1-ER-26–27. As Ms. Nolen argued when moving to certify the class, those questions include asking whether using class members' identities in advertising teasers violates § 3344, whether the advertisements identify them, and whether the class members can prove their losses on a classwide basis. 5-ER-772-773. These are the questions that drove the district court's inquiry because they stem from § 3344's elements. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action") (quoting Fed. R. Civ. P. 23(b)(3)); *see also Stockwell*, 749 F.3d at 1114 ("To assess whether the putative class members share a common question[...] we

must identify the elements of the class members' case-in-chief"). As the district court held, addressing them all at once through certification may benefit PeopleConnect just as much as it may benefit Ms. Nolen. 1-ER-24 ("it may be the case that the defendant, by prevailing on the merits of an issue that is decided on a classwide basis, will benefit from the certification").

The central question is whether PeopleConnect's use of Class members' identities on its webpages without consent constitutes a commercial use in violation of § 3344. *Id*. That question frames the "central issue in the plaintiffs' claim." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022). Answering it will decide "in one stroke" whether PeopleConnect exposed all class members to a "substantial risk of harm." *Willis*, 943 F.3d at 885. The district court found that common contention exists here because PeopleConnect's misconduct affects all class members in the same way, causing the same injury that demands the same relief. Indeed, Ms. Nolen is like anyone else "searchable" on classmates.com—PeopleConnect used her image without her consent in an advertising flow meant to solicit subscriptions from customers. And, like all class members, Ms. Nolen seeks to recover the "economic" injury that violation imposed through § 3344's statutory damages, a uniform request across the class.

This reasoning accords with other district courts that have certified classes under like circumstances, including, *Spokeo*, *InstantCheckmate*, and *Radaris*. 2024

27

U.S. Dist. LEXIS 95525, at *13; 2022 U.S. Dist. LEXIS 59143, at *7; 2016 U.S. Dist. LEXIS 49844, at *3. For instance, in *Spokeo*, the district court certified a class that considered the same questions, including whether "publishing a person's name and home address constitute appropriation and whether the plaintiffs consented[]; "[e]ntitlement to damages";[] "[e]ntitlement to injunctive relief,"[]; [and] whether a profile must be viewed for each claim to lie[.]" *Spokeo*, 2024 U.S. Dist. LEXIS 95525, at *24. Thus, the district court found the same facts from other cases lead to the same result under § 3344, and there is no reason to depart from their reasoning.

ii. PeopleConnect failed to substantiate the purported individualized issues it identified and ignores the district court's workable plans for resolving them.

PeopleConnect's appeal misreads *Van* and its implications. In *Van*, this Court considered a district court's order certifying a class with class members who may never have suffered injury, prompting defendant to dispute the class's commonality. 61 F.4th at 1058. Plaintiffs alleged defendant miscalculated their sales tax depending on where they lived, causing defendant to overcharge around 10,000 customers in 72,000 transactions. *Id*. at 1059. Complicating matters, defendant's retailers gave some class members discounts to address the overcharges, thus obviating any harm those transactions may have caused customers. *Id*. Of the 72,000 transactions, customers received discounts in over 13,000, some of which were expressly intended to compensate for the state sales tax overcharge. *Id*. at 1068. This meant that the

class members for those 13,000 transactions may have lacked a claim, putting around 18% of the transactions at issue in question. *Id*.

This Court reversed certification. *Id*. at 1069. Because plaintiffs defined their class to *include* those who may have received an offsetting discount, the district court needed to find whether "a class-member-by-class-member assessment of the individualized issue [would] be unnecessary or workable." *Id*. This is because defendant "substantiated" that an individualized issue existed when it established around 18% of the transactions may not have harm class members. *Id*. (defendant "invoked an individualized issue—that retailer discounts left some class members uninjured—and provided evidence that at least some class members lack meritorious claims because of this issue, thus summoning the specter of class-member-by-class-member adjudication"). When faced with a substantiated individualized issue that goes to the heart of liability and affects a significant percentage of the class, a district court must describe a "workable" plan to deal with the issue. *Id*. Because the district court in *Van* did neither, this Court vacated and remanded the matter for "further proceedings." *Id*.

This case is unlike *Van*. PeopleConnect failed entirely to substantiate most of the purported individualized issues it identified, and the sole issue for which it even arguably provided some substantiation—potential consent via school forms—can be resolved on a school-by-school basis rather than Class member-by-Class member.

Further, even had PeopleConnect shown these issues affected a significant percentage of the Class (it did not), the district court described workable plans for determining Class membership and resolving the school-form defense.

*First*, PeopleConnect insists classmates.com cannot work as designed to identify Class members. Def.'s Br. 32 ("There are many reasons a class member might not be identifiable from the information in a search result (name, school name, city and state, and year of the yearbook's publication)"). According to PeopleConnect, a person's name, city, state, and attendance at "a particular school in a particular year" are only "contextual clues as to the identity of an otherwise ambiguous depiction of a likeness." *Id.* (quotations and citations omitted); 1-ER-31. PeopleConnect suggests Class members can only prove they are "identifiable" on classmates.com by reference to "survey evidence" from pollsters on a case-by-case basis. *Id.* at 33.

This defies common sense. Ironically, PeopleConnect is suggesting that although it designed classmates.com to find people, no one can take its search results at face value. The district court rejected that contention, because "a person is usually readily identifiable by their name, especially when viewed in context of having attended a particular school in a particular year." 1-ER-31. PeopleConnect did not dispute this information is available for all Class members. And although PeopleConnect claimed that some individuals might not be uniquely identifiable by

the combination of name, school, and year of attendance, it failed to identify a single example to the district court. *See* 1-ER-4 (PeopleConnect "has not demonstrated that any confusion of identity cannot be easily resolved"). At hearing, PeopleConnect could not explain why Ms. Nolen or other Class members would need to produce "survey results" to establish that they are identifiable on classmates.com. The court observed: "Survey evidence to know my name is Ed Chen[?] I don't get it. That I graduated from X school in year X[?]… If that's testified to under, you know, a claims form, perhaps it's under penalty of perjury or some certification, and it says, and I searched and my name came up, and I'm the only name, I don't know what more you need." 4-ER-541.

That Class members are identified by name, school, and year of attendance on PeopleConnect's website distinguishes the law on which PeopleConnect relies. *Davis v. Electronic Arts Inc*. concerned the use of an image alone (in the form of an electronic avatar), without an accompanying name or other identifying information. No. 10-cv-03328-RS, 2018 U.S. Dist. LEXIS 173625 (N.D. Cal. Aug. 17, 2018). In *Davis*, Judge Seeborg's denial of class certification turned on the fact that the NFL players who appeared in the defendant's video game were *not* identified by name. Because "players' names . . . are not displayed to persons playing the game," identifiability would turn on whether "each and every avatar alleged to represent a particular player" was sufficiently detailed to implicate their identity. *Id.*, at *7.

Here, PeopleConnect's search results contain precisely what was missing in *Davis*: written information, including a name, by which the viewer may uniquely identify the individual portrayed. Ms. Nolen is not alleging classmates.com misappropriated her image using a cartoon lookalike or video game avatar. Rather, she is alleging PeopleConnect misappropriated literal photographs of her, along with her name and identifying details. For this reason, the district court in *Spokeo* rejected the same argument. *Kellman v. Spokeo, Inc.*, No. 21-cv-08976-WHO, 2024 U.S. Dist. LEXIS 95525, at *28 (N.D. Cal. May 29, 2024) ("[I]n *Davis* identifiability turned on the individualized inquiry of whether a video game avatar looked like a class member").

Indeed, the reason PeopleConnect provides free search results identifying Class members by name, school, and year, is to assure the user before they purchase a subscription that the person in the low-resolution photo is the person they're looking for. This fact distinguishes *Abdul-Jabbar v. GMC*, 85 F.3d 407 (9th Cir. 1996). In *Abdul-Jabbar*, the offending advertisement sought to associate the defendant's product with the athletic achievements of a famous basketball player. *Id.*, at 409-410. The case therefore turned on whether members of the public would readily identify the player's birth name used in the advertisement—Lew Alcindor— with his later athletic accomplishments under the name Kareem Abdul-Jabbar. *Id.* Here, the commercial value of Class member's names and likenesses does not

depend on their being associated with specific achievements. PeopleConnect is selling subscription access to digitized yearbook records.

**Second**, PeopleConnect claims the Class includes people who implicitly consented to PeopleConnect's commercial use "by signing consent forms as students." Def.'s Br. 33. Although PeopleConnect's brief is deliberately vague on this point, the "consent forms" PeopleConnect produced are *not* forms giving PeopleConnect permission to place students' photographs on its paid website. Rather, the forms in question provide consent with respect to the *school's* use. 4-ER-482. As the district court acknowledged, to succeed on a consent defense with respect to a given form, PeopleConnect will have to demonstrate that the language in the consent is broad enough to encompass *PeopleConnect's* later use of the student's name and childhood photographs on its site. Examining the evidence presented by PeopleConnect, the district court found that "most of the consents are not that broad – *e.g.*, they allow for the district to use the names or photos for district purposes[,]" not PeopleConnect. 1-ER-46.

PeopleConnect failed to establish that such "broad" consent forms were "a widespread practice that this mode of consent [would] require such time-consuming determination as to defeat predominance." *Id*. At most, PeopleConnect produced evidence suggesting that two schools (out of more than a thousand) had forms with consent language that even arguably extended to PeopleConnect's subsequent use.

*Id*; 2-ER-66. Further, the district court outlined a workable plan for resolving the issue by evaluating the consent language "on a group basis – school by school rather than person by person[.]" 1-ER-45. If PeopleConnect succeeds in showing the issue is more widespread than it was able to demonstrate at class certification, PeopleConnect may "seek decertification at the appropriate time." *Id*.

**Third**, PeopleConnect complains that the district court excluded "certain individuals" who "cannot prevail" from the class definition, including those who registered accounts with PeopleConnect, those who donated yearbooks to PeopleConnect, and those whose names do not appear in search results. Def.'s Br. 34. These exclusions are appropriate. Class "definitions *should* be narrowed to exclude uninjured people[.]" *Leanne Tan v. Quick Box, LLC*, No. 20-cv-1082-LL-DDL, 2024 U.S. Dist. LEXIS 6935, at *46 (S.D. Cal. Jan. 12, 2024) (emphasis added) (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016)). PeopleConnect derides these exclusions as "definitional slight-of-hand" meant to circumvent *Van* and thereby avoid developing a "workable plan" to winnow those without valid claims. Def.'s Br. 35–36. In other words, PeopleConnect suggests the district court should have deliberately included people without valid claims in the Class definition, only so that the district court could later winnow them. This makes little sense.

Determining whether someone is a Class member goes to ascertainability, not commonality. And there is no ascertainability requirement at class certification. *Bruton v. Gerber Prods. Co.*, No. 15-15174, U.S. App. LEXIS 12833, at *3 (9th Cir. July 17, 2017) ("ascertainability" or "administrative feasibility" are not factors during class certification). Nevertheless, although not required, here the district described a workable plan for determining who is searchable, who is a registered user, and who previously donated a yearbook.

### iii. PeopleConnect ignores the Court's plan to exclude non-class members from recovery

Using this Court's decision in *Briseno* as a guide, the district court described a workable plan to exclude non-Class members from recovery, using a combination of: (1) attestation forms filled out by claimants who search for their own names on classmates.com; and (2) the information PeopleConnect collects from subscribers and yearbook donators. *See* 1-ER-4; 1-ER-38-42 ("[T]o determine who is part of the class would depend on (1) a person's self-identification . . . and (2) a cross-check by PeopleConnect to see if that person is in its database [of registered users and yearbook donators]."). Individuals seeking to recover would submit a form attesting that they are searchable on classmates.com, and that they have never subscribed to or donated a yearbook to the site. PeopleConnect would have the opportunity to cross-check the attestations by reference to the information in its databases, which includes the names and email addresses of registered users and yearbook donators.

35

1-ER-40 & 42. Should sampling reveal "significant fraud," PeopleConnect could then "move the Court for decertification if it demonstrates that excessive numbers of individualized inquiries are necessary." 1-ER-41.

The viability of this plan finds support in this Court's decision in *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1131 (9th Cir. 2017). There, the defendant disputed that plaintiff's proposed class was "administratively feasible" because it doubted class members could "reliably identify themselves" as customers who bought its product. *Id.* at 1124. The Court rejected the challenge because it found Rule 23 "does not impose a freestanding administrative feasibility prerequisite to class certification." *Id*. at 1126. Imposing one would belie Rule 23's language and defeat some class actions "at the outset," like "inexpensive consumer goods" cases that impact consumers who will not have saved their receipts after purchase. *Id*. at 1128. In so doing, the Court affirmed that district courts can allow class members to identify themselves by "affidavit as proof of class membership." *Id*. at 1132. ("we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made"). Due process mandates no more than that. *Id*. ("The due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a

fair opportunity to present its defenses when putative class members actually come forward") (quotations and citations omitted).

The district court articulated the reasoning above when forecasting that class members would identify themselves by affidavit. 1-ER-4. It repeated that "Rule 23 specifically contemplates the need for . . . individualized claim determinations after a finding of liability." *Id*. (citing *Briseno*, 844 F.3d at 1131). The court explained this was "akin to a separation of liability and damages issues – i.e., Ms. Nolen will rely on common evidence to show that PeopleConnect used people's names and photographs for a commercial purpose; if she is successful, then the only remaining step for a person to claim statutory damages of $750 is to show that their name was readily identifiable[.]" *Id*; see also *Melgar v. CSK Auto, Inc.*, 681 Fed. Appx. 605, 607 (9th Cir. 2017) ("The district court did not abuse its discretion by certifying a class action with a self-certification process. Our recent decision in *Briseno* . . . controls . . . . *Briseno* rejects [defendant's] due process concern with respect to this case . . . ."). Although PeopleConnect said fraud may happen during the identification process, that can happen in any claims process, and it is not a reason to deny certification. 1-ER-41. Rather, PeopleConnect can sample for fraud and move to decertify the class if it "demonstrates that excessive numbers of individualized inquiries are necessary." *Id*. Indeed, PeopleConnect has a much

greater ability to challenge potential fraud than in *Briseno*, because it can refer to the information already contained in its own database.

PeopleConnect attempts to distinguish *Briseno* on the ground that in *Briseno*, the defendant's total aggregate liability was knowable without reference to the number of Class members. Def.'s Br. 36, 42. According to PeopleConnect, *Briseno* stands for the proposition that attestations can only be used to establish Class membership in the narrow case where aggregate liability can be calculated independently from the number of Class members. *See id.* Nothing in *Briseno* supports this reading. While the Court noted that the total aggregate liability could be calculated without reference to the Class size, nothing in the decision suggests that the use of attestations to establish Class membership *depends* on this condition. *See* 844 F.3d 1121. Nor is there any hint in Rule 23 that either the defendant's aggregate liability or the total size of the Class must be known or calculable at the time of certification. *See* Fed. R. Civ. P. 23. PeopleConnect effectively asks this Court to read a non-existent requirement into Rule 23.

Even were PeopleConnect right on the law (it is not), PeopleConnect forgets that Plaintiff introduced expert testimony establishing an estimated class size—an estimate with which PeopleConnect apparently generally agrees. *See* Def.'s Br. 38 (referring to a "class size of over 100,000 individuals"). That is sufficient for PeopleConnect to "generally know" its aggregate exposure. *See Briseno*. 844 F.3d

at 1132. There is nothing unusual about this approach. Indeed, the Supreme Court has expressly endorsed the use of sampling to establish aggregate liability in class cases. *Tyson*, 577 U.S. at 460 (endorsing the use of a "representative sample" to establish aggregate liability when precise records of how much time employees spent doffing and donning were not available). Here, as in *Tyson*, Ms. Nolen relied on an expert report to estimate the size of the Class. That report began "by looking at the number of California yearbooks in PeopleConnect's database." 1-ER-6 (quotation and citation omitted). PeopleConnect may exercise its Due Process rights by challenging Ms. Nolen's expert report (as indeed it already has), and by introducing its own estimate of Class size.

In summary, the district court did not abuse its discretion in describing a plan for Class members to self-identify following judgment on liability, in accord with *Briseno*.

**b. This Court should Decline PeopleConnect's invitation to step outside the Rule 23 inquiry and read two novel non-textual requirements into a California statute.**

Rule 23(f) jurisdiction applies only to class certification issues, not the merits. ("A court of appeals may permit an appeal from an order granting or denying class-action certification"). Fed. R. Civ. P. 23(f). At the district court level, Rule 23 affords "no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

The same rule applies with "special force" at the appellate level, because Rule 23(f) is a special exception to the final judgement rule and therefore affords limited jurisdiction. *Stockwell*, 749 F.3d at 1113 ("The principle that courts must consider merits issues only as necessary to determine a pertinent Rule 23 factor, and not otherwise, has special force at the appellate level where, as here, we review a class certification determination under Rule 23(f)"). As a result, merits inquiries unrelated to certification—such as the issues of statutory construction PeopleConnect raises here—"exceed the Court's limited Rule 23(f) jurisdiction, as well as the needs of Rule 23(a)-(b)." *Id*. This Court has stressed that it must "police the bounds of our jurisdiction vigorously here as elsewhere" to avoid venturing "into merits issues unnecessary to the Rule 23 issue before us." *Id*. (citing *Crowley v. Bannister*, 734 F.3d 967, 974 (9th Cir. 2013) ("we are required to raise issues concerning our appellate jurisdiction sua sponte").

Despite this rule, PeopleConnect urges this Court to direct the district court to read two extra-textual requirements into the California statute underlying Ms. Nolen's claim.[1] First, PeopleConnect argues that the requirement that a person's

---

[1] The issues raised by *Amici* likewise exceed the scope of 23(f) review. *Amici* question whether the webpages on classmates.com constitute commercial use under § 3344; whether PeopleConnect's commercial use qualifies for the "incidental" use defense; and whether PeopleConnect's commercial misappropriation is protected under the First Amendment. *See* Docs. 14.1 and 15.1. These issues are shared in common between all Class members, and thus weigh in *favor* of Class certification.

identity be "directly connected with . . . the paid advertising" should be read to create an implicit third-party viewership requirement. *See* Cal. Civ. Code § 3344. In other words, PeopleConnect argues there is no "direct connection" between a person's identity and a commercial purpose unless and until the advertisement is viewed by a third party. As discussed in more detail below, this argument depends on a tortured misreading of the statute's language. But even were PeopleConnect's argument meritorious, it implicates an issue of statutory construction that falls outside the scope of this appeal. As the district court found, the issue is shared in common among the Class members (1-ER-29), and therefore weighs in favor of certification, regardless of which party ultimately prevails. "Whatever the ultimate merits of the Plaintiff's theory, this is an issue that is subject to class treatment as it involves proof common to the class." *Id*. The same logic applies to all of PeopleConnect's attacks on Ms. Nolen's core liability theory, such as the defense that PeopleConnect's uses qualify for the "incidental" exception under the statute. As the district court found, that contention "seems to be a merits argument, i.e., not an argument appropriate for class certification purposes." 1-ER-36.

---

They are also fact-dependent and therefore unsuited to appellate review at this stage. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 140 (2d Cir. 2001) ("issues… whose ultimate resolution will depend on further factual development will be unlikely candidates for Rule 23(f) appeal").

Second, PeopleConnect points to the statute's damages provision, which awards "an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered . . . and any profits from the unauthorized use." Cal. Civ. Code § 3344. PeopleConnect argues that this provision should be read as if the minimum damages award of $750 is available only to plaintiffs who prove they suffered "mental anguish." As discussed below, this argument fails on the merits, not least because the statutory text provides no support for PeopleConnect's misreading. And again, the merits of PeopleConnect's statutory construction argument are not within the scope of this appeal. Whether Class members are entitled to statutory minimum damages based on their economic damages and loss of control of their intellectual property rights is an issue that affects all Class members equally. "[C]ommonality does not require proof that the putative class will prevail on whatever common questions it identifies." *Stockwell*, 749 F.3d at 1112.

At this stage, what matters is not how § 3344 should be construed, but rather whether the issues affect all Class members equally. This Court should "police the bounds of [its] jurisdiction" and decline to consider PeopleConnect's merits challenges here. *Id*. at 1113.

42

### c. The district court did not err when construing § 3344

Even were the Court to wade into the merits issues PeopleConnect raises here, it should find the district court acted well within its discretion. The district court applied § 3344 as written and in line with the caselaw.

    i.    <u>The district court applied § 3344's elements as written and in accord with the caselaw</u>

PeopleConnect argues that the "direct connection" requirement in § 3344 means something different from what it says. PeopleConnect argues that "direct connection" actually means "display to a third party." In other words, PeopleConnect believes liability under § 3344 should turn not on a defendant's commercial use in publishing an advertisement, but rather on a third parties' choice to view that advertisement. As the district court explained, PeopleConnect "reads this element of § 3344 too narrowly: the element does not require a direct connection between the use of the plaintiff's likeness and particular ads. It requires a direct connection between the use and a 'commercial purpose.'" 1-ER-29. Thus, PeopleConnect's "focus on singular ads and whether they appear proximately to a particular person's name or image myopically loses the forest from the trees of § 3344." *Id*. What matters is that PeopleConnect collected the class's names, photographs, and details "as part of a stable of" information PeopleConnect draws on to solicit subscriptions to classmates.com. *Id*. at 15. That is "use" for a "commercial purpose" because every person in PeopleConnect's database can

43

appear in the advertising flow. 1-ER-28. And the "value of Plaintiff's name and images lies in its contribution to the collection of names and images in a yearbook which entices visitors to become members and subscribers." *Id*. at 15. Nothing in § 3344's language requires that third parties summon and view the specific search results displaying a given Class members' identity. That PeopleConnect makes their identities searchable within its advertising flow is a commercial use requiring consent under the statute.

While PeopleConnect cites caselaw to support its view, it misinterprets what those cases say. PeopleConnect claims *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017) is controlling on whether § 3344 requires third party viewing. But *Cross* is silent on that issue. The case "simply holds that, to be liable, the defendant must be the entity who uses a plaintiff's image." *Nolen*, 2023 WL 4303645, at *6 (discussing *Cross*). The district court analyzed *Cross* in detail, writing that *Cross* "turn[s] on the identity of the publisher—not the viewer." *Id*. The district court distinguished *Cross* because "Plaintiff indisputably alleged that it is Defendant, not a third-party entity, who is using Plaintiff's image in their advertisements, and that these advertisements benefit Defendant." *Id*. PeopleConnect thus misses the mark when it says its search page "is no different" than Google's search engine. Def.'s Br. 64. Google is not incorporating people's names and photographs into advertising

flows that lead to subscription solicitations for its search engine. PeopleConnect *is* because that is what it designed classmates.com to do.

The district court's reasoning accords with other courts evaluating the same issue. *See Nolen*, 2023 WL 4303645, at *4-6 (discussing relevant authority). Because the right of publicity "does not impose a viewership requirement," "how many (if any) . . . users saw a . . . search result . . . is immaterial to whether [the defendant website] violated" the right of publicity. *InstantCheckmate LLC*, 2022 U.S. Dist. LEXIS 59143 at *10-11; *see also id*., at *3 (certifying a contested class and noting that the "Class definition, by its terms, does not require that a class member's profile have been displayed to any third-party user"); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (there is no requirement that "members of the public saw the offending image.") (vacated and remanded on other grounds sub nom. *Knapke v. PeopleConnect, Inc*, 38 F.4th 824 (9th Cir. 2022)); *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 836-38 (N.D. Ill. 2020) (same). In *Maloney v. T3 Media, Inc.*, the Ninth Circuit confirmed that "a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising." 853 F.3d 1004, 1016 (9th Cir. 2007). In short, nothing requires that a person's information must be viewed by a third party under any controlling law.

The district court's reading also accords with the statute's text and purpose. *See Nolen*, 2023 WL 4303645, at *4-6 (analyzing the "text and purpose of Section 3344"). In fact, the reading matches the position PeopleConnect itself took in this litigation when it argued that a plaintiff's § 3344 claim accrued for statute of limitations purposes "when his image became publicly available on the Classmates.com website," not when a third party viewed it. *Id*. at 3 (quoting PeopleConnect's briefing). As the district court observed, "it would be unjust and absurd for Plaintiff's cause of action to accrue—and potentially expire—before she could bring a claim . . . Defendant cannot argue that the statute of limitations accrued in one breath and that Plaintiff's claims are not yet ripe in the next." *Id*. at *4. As a result, the Court should find the district court applied § 3344's elements consistent with its text and caselaw.

Nor does PeopleConnect's contention that the district court misapplied the "incidental" use exception undermine its ruling on class certification. *See* Def.'s Br. 54. Again, the issue has no relevance here because even PeopleConnect frames the defense as a merits-only issue. *Id*. ("Here, the purported 'use' of class members' names—again, ███████████████████████████████████████████ ███████████████████████████████████—in no sense exploits any class members' reputation, prestige, or personal value"). Further, PeopleConnect misunderstands what an "incidental" use is under § 3344. Ms.

Nolen's theory is that PeopleConnect designed its advertising flow to display subscription ads whenever a user searched for a person and clicked on that person's result—an act that is critical to the ad being displayed, not "incidental." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1255 (N.D. Cal. 2014) (declining to apply the doctrine when the "alleged use of Plaintiffs' names and likenesses was critical, not incidental" to the ad itself). By designing its advertising flow this way, PeopleConnect is playing on a user's desire to see the person they are searching for, displaying the ad only after they click on a result. This is why the district court declined to apply the doctrine, as it found "the availability of one's name and image, along with others, is what drives PeopleConnect's value and advertising flow." 1-ER-15.

    ii.    <u>Ms. Nolen can claim statutory damages under § 3344 without "mental anguish"</u>

PeopleConnect again misreads § 3344 when it argues—for the first time on appeal—that the statute's provision for statutory minimum damages should be read to apply only to those plaintiffs who demonstrate they suffered "mental anguish." Not so. Section 3344 allows claimants to recover an "amount equal to the *greater of* seven hundred fifty dollars ($750) *or* the actual damages suffered by him or her as a result of the unauthorized use . . . and any profits from the unauthorized use[.]" Cal. Civ. Code § 3344. The statute is designed to "protect the *economic* value of one's name, voice, signature, photograph, or likeness." *KNB Enters. v. Matthews*, 78 Cal.

47

App. 4th 362, 366, 92 Cal. Rptr. 2d 713, 717 (2000) (emphasis added). That principle applies no matter whether plaintiff is someone with name-recognition or not, as although "the unauthorized appropriation of an obscure plaintiff's name, voice, signature, photograph, or likeness would not inflict as great an economic injury as would be suffered by a celebrity plaintiff, California's appropriation statute is not limited to celebrity plaintiffs." *Id*. This is because the statute's text and purpose focus on *appropriation* of a person's publicity—referring to the value defendants appropriate when they use someone's identity without consent. *Id*. (noting statutes like § 3344 are meant "to discourage such appropriation"). As this Court recognized: "the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 n.11 (9th Cir. 1974). Nothing in the statute's text supports PeopleConnect's reading. *Callahan*, 2021 U.S. Dist. LEXIS 210857, at *46 ("Section 3344 on its face does not require that a plaintiff have suffered mental anguish in order to be awarded statutory damages").

This is why courts have held plaintiffs like Ms. Nolen can claim economic losses against people-searching sites like PeopleConnect. As the district court below put it: "[i]f a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value,

even if small. And PeopleConnect does not dispute that a § 3344 claim can be brought even by noncelebrities." *Callahan v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, U.S. Dist. LEXIS 210857, at *40 (N.D. Cal. Nov. 1, 2021). That matches the reasoning in *ZoomInfo*, upholding plaintiff's claim after "examining the economic nature of a plaintiff's persona and the defendant's use thereof" on defendant's people-finding website. *Martinez v. ZoomInfo*, No. C21-5725 MJP, 2022 U.S. Dist. LEXIS 66673, at *7. Thus, the district court found Ms. Nolen "credibly contends there is common proof of injury. Specifically, Ms. Nolen argues that people's names and/or photos have some economic value[.]" 1-ER-48. That can be inferred from the value PeopleConnect exchanged to collect the class's information and sell it to third parties. *Id.* ("third parties would not pay PeopleConnect a licensing fee for the yearbooks if they had no value").

This reasoning accords with the California appellate authority interpreting § 3344. *See Orthopedic Sys., Inc. v. Schlein*, 202 Cal.App.4th 529 (Cal. Ct. App. 2011). PeopleConnect cites *Schlein* but neglects to discuss its reasoning, perhaps because *Schlein* supports Ms. Nolen's position, not PeopleConnect's. *See*Def.'s Br at 60. *Schlein* held that non-celebrity plaintiffs may recover § 3344's statutory minimum if they show the defendant profited from their likeness in an amount less than $750, regardless of whether they suffered mental anguish. *See Schlein*, 202 Cal. App. 4th at 547. The California Appellate Court's reading was based on the plain

text of the statute, the statute's purposes, and the jury instructions the legislature provided, which state that "[i]f [name of plaintiff] has not proved the above damages, or has proved an amount of damages less than $750, then you must award [him/her] $750." *Id.* at 546. The instructions make no mention of mental anguish, and the reference to "an amount of damages less than $750" would make little sense if, as PeopleConnect contends, the $750 award is only available to those who prove non-monetary injury. In *Schlein*, the plaintiff was an orthopedic surgeon. *Id.*, at 532. He proved only economic injury based on the defendant's unlawful profit, and neither claimed nor proved he suffered mental anguish. *Id.* ("Dr. Schlein cross-complained for breach of contract, conversion, and commercial misappropriation of his name . . . The jury [] awarded Dr. Schlein $750 in statutory damages for his misappropriation claim, and found that OSI earned $1,220,000 in profits attributable to the use of Dr. Schlein's name"). Thus, under *Schlein*, statutory minimum damages are available to non-celebrity plaintiffs so long as they show injury in some form, including purely *economic* injury.

PeopleConnect misreads *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002, 72 Cal. Rptr. 3d 194, 205 (2008). *See* Def.'s Br. 59-60. PeopleConnect cites *Miller* for the proposition that § 3344 *requires* non-celebrities to prove mental anguish before they can claim statutory damages. On the contrary, while *Miller* acknowledges that non-celebrity plaintiffs *may* establish entitlement to

statutory damages based on mental anguish, nothing in the decision suggests or even implies this is the *only* basis, to the exclusion of economic injury. *Miller* observed that § 3344's statutory damages are meant to address the "noncelebrity plaintiff whose damages are difficult to prove and who suffers primarily mental harm from the commercial misappropriation of his or her name[.]" *Miller*,159 Cal. App. 4th at 1002. As *ZoomInfo* noted, "*Miller* focused on the legislative history suggesting that statutory damages were meant to compensate mental injury, [but] it contains no pronouncement that this the only basis for statutory damages." *ZoomInfo*, 2022 U.S. Dist. LEXIS 66673, at *17. And that is the problem with the holding in *Perkins*. 53 F. Supp. 3d 1222, 1242 (holding "the statutory minimum could be used only when a plaintiff seeks damages for injury to mental feeling and peace of mind"). As the district court and *ZoomInfo* held, *Perkins'* interpretation ignores the statute's text and the many courts holding that non-celebrities' personas have economic value, "even if small." 1-ER-28. *See also Schlein*, 202 Cal. App. 4th at 532 (affirming award of statutory damages under § 3344 to non-celebrity plaintiff on the basis of purely economic injury).

PeopleConnect is inviting the Court to legislate from the bench, inserting a new requirement in a California statute where there is none. The Court should decline the invitation. A court "must turn first to the language of the statute, giving the words their ordinary meaning. [Citations.] We must follow the statute's plain

51

meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended." *Schlein*, 202 Cal. App. 4th at 545 (citing *People v. Birkett,* (1999) 21 Cal.4th 226, 231–232 [87 Cal. Rptr. 2d 205, 980 P.2d 912]). Within that rubric, the California Appellate Court has spoken: "We hold that under section 3344(a), an injured party may recover either the amount of damages specified in the statute or actual damages, whichever is greater, as well as profits from the unauthorized use." *Id*. at 547. There is no requirement that litigants must prove mental anguish to recover statutory damages.

### d. PeopleConnect waived or failed to assert the merits and statutory interpretation issues it invokes

To appeal an issue under Rule 23(f), PeopleConnect must have "fairly presented" its challenge for review with the district court. *Nutramax*, 114 F.4th at 1032-33 (citing *Van*, 61 F.4th 1053, 1066 n.9). This is a because a district court cannot abuse its discretion on issues it had no reason to consider: "[s]ince we cannot say that the district court abused its discretion in failing to consider arguments with which it was not presented[...] we focus our analysis on those matters considered by the district court[.]" *Id*. (citing *Van*, 61 F.4th at 1066 n.9 ("An issue cannot form part of the district court's class certification decision if it was never raised at the class certification stage") (cleaned up)). The corollary is that PeopleConnect can only assert on appeal those issues that it "fairly presented to the district court as a basis for denying class certification[.]" *Id*. at 1033.

Despite that standard, PeopleConnect is retooling its arguments on appeal, criticizing the district court for abusing its discretion on issues PeopleConnect either waived or failed to raise below. First, although PeopleConnect argued that a person must be "visually displayed" in an ad before liability arises under § 3344, the district court found PeopleConnect "essentially dropped the argument at the hearing." 1-ER-28. And it did so because PeopleConnect "conceded that the issue was whether a person was 'searchable' (i.e., could be searched) rather than having been actually 'searched'" and "displayed" on the website. *Id*. Indeed, PeopleConnect's counsel said so at hearing: "I also want to be clear, Your Honor, that our opposition assumes that the standard is whether someone is searchable, as opposed to whether they had to be searched." 4-ER-499. In other words, PeopleConnect accepted how Ms. Nolen framed the issue for class certification, admitting that "use" under § 3344 did not turn on whether class members were ever viewed or "displayed" on classmates.com, but whether the potential for display existed because class members were "searchable." As a result, the district court found PeopleConnect had "waived" its direct connection argument in its order certifying the class. 1-ER-28.

Even so, PeopleConnect tries to revive the argument on appeal. Def.'s Br. 47. ("The District Court Erred In Holding That Making Class Members' Names 'Searchable' Is A Use With A Direct Connection To Advertising"). But PeopleConnect cannot un-waive a waived issue. PeopleConnect failed to "fairly

present" that as a reason to deny certification when its counsel was "clear" that PeopleConnect declined to assert the argument, as its "opposition assume[d] that the standard is whether someone is searchable, as opposed to whether they had to be searched." 4-ER-499. For that reason, the Court should decline to find the district court abused its discretion on an issue PeopleConnect waived.

Second, PeopleConnect insists—for the first time on appeal—that Ms. Nolen cannot receive statutory damages under § 3344 unless the proves she suffered "mental anguish." *See* Def.'s Br. 58. PeopleConnect did not make this argument before the district court, and it is therefore waived here. Indeed, at the hearing on Ms. Nolen's motion to certify the class, PeopleConnect conceded that Ms. Nolen could receive damages based on her "economic injury" alone: "[t]his statute says you have to show injury. It's either emotional distress *or* actual economic injury." 4-ER-542 (emphasis added). In its briefing opposing class cert before the district court, PeopleConnect challenged whether Ms. Nolen could *establish* "economic injury" with "common proof," but not whether she could receive statutory minimum damages if and when she showed economic injury in some amount. 5-ER-724. The argument is likewise absent from both of PeopleConnect's Rule 23(f) petitions to this Court. *See* Case Nos. 23-4452 Doc. 1.1 and 24-3318 Doc. 17.1.

In short, PeopleConnect never contested the district court's "conclusion that economic injury alone, without the need to establish physical or mental injury, is

sufficient to recover statutory damages [under] § 3344." 1-ER-48. PeopleConnect cannot credibly claim the district court abused its discretion by failing to consider an argument PeopleConnect raises here for the first time.

### e. The injunction class should remain certified

PeopleConnect cannot avoid an injunction by "suppressing" Ms. Nolen's name from appearing on classmates.com alone while misappropriating every other class members' identity in its advertisements. When a defendant tries to "pick off" a representative plaintiff by deliberately mooting her claim, the claim becomes "transitory by its very nature" and therefore "relate[s] back to the filing of the complaint." *See Pitts v. Terrible Herbst Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011). This rule prevents defendants from "buy[ing] off the individual private claims of the named plaintiffs before the . . . motion for class certification," as it would "contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims." *Id*. (quotations omitted). Indeed, "[v]oluntary cessation of challenged conduct moots a case . . . only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (quotation omitted) (emphasis in original). PeopleConnect cannot carry its "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189

(2000). Absent an injunction, PeopleConnect would be free to "un-suppress" Ms. Nolen's name and photograph. Therefore, Ms. Nolen's request for injunctive relief is not moot. *See Fischer*, 2022 WL 971479, at *14-15 (rejecting similar attempt to moot named plaintiff's claim by "suppressing" his personal information).

As the district court held, "the damages class is the driver of this case, and if a damages class should be certified, then necessarily a Rule 23(b)(2) class should be certified as well." 1-ER-24 (citing Fed. R. Civ. P. 23(b)(2) (a Rule 23(b)(2) class should be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole")). As a result, the Court should preserve Ms. Nolen's injunctive relief class.

## CONCLUSION

For the reasons above, the Court should affirm the district court's orders certifying the Class.

Dated: January 7, 2025      By: */s/ Raina C. Borrelli*
                                                 Raina C. Borrelli
                                                 Samuel J. Strauss
   STRAUSS BORRELLI PLLC
   One Magnificent Mile
   980 N Michigan Avenue, Suite 1610
   Chicago IL, 60611
   Telephone: (872) 263-1100
   Facsimile: (872) 263-1109
   raina@straussborrelli.com
   sam@straussborrelli.com

Michael F. Ram
Marie N. Appel
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293
mram@forthepeople.com
mappel@forthepeople.com

Benjamin R. Osborn
LAW OFFICE OF BENJAMIN R.
OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY 12455
Telephone: (347) 645-0464
ben@benosbornlaw.com

*Attorneys for Plaintiff-Appellee Alicia Nolen*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned attorney or self-represented

party states the following:

☒      I am unaware of any related cases currently pending in this court.

☐      I am unaware of any related cases currently pending in this court other than
the case(s) identified in the initial brief(s) filed by the other party or parties.

☐      I am aware of one or more related cases currently pending in this court. The
case number and name of each related case and its relationship to this case
are:


Dated: January 7, 2025          By: */s/ Raina C. Borrelli*
                                Raina C. Borrelli
                                STRAUSS BORRELLI PLLC
                                One Magnificent Mile
                                980 N Michigan Avenue, Suite 1610
                                Chicago IL, 60611
                                Telephone: (872) 263-1100
                                Facsimile: (872) 263-1109
                                sam@straussborrelli.com