No. 24-3894

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

ALICIA NOLEN,
Plaintiff-Appellee,

v.

PEOPLECONNECT, INC.,
Defendant-Appellant.

---

On Appeal from December 14, 2023 Sealed Order
and May 20, 2024 Order Granting Class Certification
United States District Court,
Northern District of California
The Honorable Edward M. Chen
Case No. 3:20-cv-09203-EMC

---

# DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

---

Clifford W. Berlow
Debbie L. Berman
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
cberlow@jenner.com
dberman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant PeopleConnect, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 8

A. The Panel's Extreme Expansion of *Briseno* Upends Class-Action Law in This Circuit. ..... 8

B. The Panel's Holding Conflicts With Decisions of the First and D.C. Circuits. ..... 14

C. The Panel's Holding Also Nullifies *Van*. ..... 19

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

## Cases

*In re Asacol Antitrust Litigation*,
907 F.3d 42 (1st Cir. 2018) .......................................... 2, 14, 15, 16, 17, 18, 19

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................12

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ................................................13

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).......1, 9, 10, 11

*Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026) ....................................10

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) ..............9, 10, 11

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) ..................................................12

*In re Rail Freight Fuel Surcharge Antitrust Litigation*, 934 F.3d 619 (D.C. Cir. 2019) ..................................................................2, 15, 16, 17, 18

*United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227 (1958) .............................................................................................. 12-13

*Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023) .........................2, 19, 20, 21, 22

## Statutes

Cal. Civ. Code § 3344 ..........................................................................................4

## Other Authorities

Fed. R. App. P. 40(b)(2)(A)...............................................................................3

Fed. R. App. P. 40(b)(2)(C) ...............................................................................3

Fed. R. App. P. 40(b)(2)(D)...............................................................................3

## INTRODUCTION

The panel's decision hands class counsel in this Circuit a blueprint for certifying virtually any damages class. The trick is simple: class counsel can write elements of liability that cannot be proven with common evidence into their class definitions. That scrivener's sleight, the panel held, transforms bona fide disputes over those elements into questions of "class membership" rather than predominance under Rule 23(b)(3)—meaning claimants can simply file affidavits, after a class-wide liability verdict, self-certifying that they win on the merits.

The panel (Berzon, Friedland, Mendoza, JJ.) traced its suspect rule to *Briseno v. ConAgra Foods, Inc.*, but *Briseno* allowed affidavits to divide a fixed pot of damages among the class, a process in which the defendant had no real stake. *See* 844 F.3d 1121, 1132 (9th Cir. 2017). Here, however, each self-serving affidavit adds $750 to PeopleConnect's tab. Claimants' say-so thus will determine not just who shares in the judgment, but also how big that judgment is—to the tune of up to $75 million or more, before fees.

That dramatic expansion of *Briseno* conflicts with decisions of the First and D.C. Circuits, which (1) require a workable plan *at certification* for adjudicating contested liability issues prior to judgment and (2) reject the

precise claims process the panel here approved as inconsistent with due process and the Seventh Amendment. *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019). The panel's sole basis for distinguishing those cases—that they did not involve contested liability elements written into class definitions, so concerned predominance and not "class membership"—turns Rule 23(b)(3)'s rigorous inquiry into an exercise in artful drafting.

So, too, the panel all but interred this Court's decision in *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023). *Van* holds that when defendants substantiate that some class members' claims will fail, courts must resolve *at certification* whether adjudicating such individualized defenses will defeat predominance. Plaintiffs can now evade that requirement simply by drafting the defendant's substantiated defenses into the class definition. And while the panel purported to apply *Van* to two individualized defenses *not* included in this class definition, it adopted reasoning *Van* rejected: that predominance was not implicated because, in its view, PeopleConnect's defenses would succeed only rarely. But that was true in *Van*, and this Court deemed it irrelevant. After the panel's contortions, *Van* is a dead letter.

The panel's ruling will make this Circuit the forum of choice for classes that could be certified nowhere else in the nation. This is a case in point. Plaintiff estimates that some 100,000 Californians' names *could* appear in Classmates.com search results, and says *all* are therefore owed $750 in statutory damages—even if their names have never actually appeared on the website. On that logic, virtually any website with a search function will owe statutory damages to anyone with a name. And under the panel's anything-goes approach to certification, PeopleConnect will have no opportunity to test those claims before a class-wide judgment; claimants need only attest, after trial, that PeopleConnect owes them $750.

This profoundly unfair decision is exceptionally important and creates both intercircuit and intracircuit conflicts. Fed. R. App. P. 40(b)(2)(A), (C), (D). This Court should grant rehearing en banc.

## BACKGROUND

1. PeopleConnect operates Classmates.com, an online library of over 450,000 digitally scanned, text-searchable school yearbooks. Op.5-6. Classmates.com's search engine helps users navigate the library. To illustrate, if a user searches for "John," the engine returns a list of up to 500 yearbook pages on which the scanning software has identified the text string

"J-o-h-n," including individuals with the first name "John," the last name "Johnson," and so on. *E.g.*, 4-ER-468-70.

Individuals can consent to PeopleConnect's use of their names by registering for a Classmates.com account or donating a yearbook; also, some school districts' photo releases extend to districts' "assigns," "transferees," or "successors." Op.5-6, 28.

Plaintiff claims the way Classmates.com sometimes displays search results violates California's right-of-publicity statute, which bars the nonconsensual "use[]" of a person's "name" "for purposes of advertising … without that person's prior consent." Cal. Civ. Code § 3344. Plaintiff says PeopleConnect "uses" a person's name in the relevant sense whenever that name is *searchable*—i.e., whenever a search *could* return the name on a page that *could* contain an advertisement. On Plaintiff's view, it is enough that a search for a name could hypothetically produce a page like the one below, "even if no one has actually *searched* for that name" and no such page has actually been generated. Op.9-10.




5-ER-682-84 ¶84 (search results for "softball" in left-hand column; putative advertisement circled in right-hand column).

2. Lead Plaintiff Alicia Nolen argued that class-wide questions predominate because her "searchability" theory did not require any class member to prove their name had ever appeared as a search result. Op.9-10. The district court agreed, certifying a class of:

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar to search a California yearbook made available for viewing on the Classmates.com website, yields at least one record corresponding to the class member from a California yearbook that Classmates.com first made publicly available on or after December 18, 2018.

1-ER-5.

Each of the definition's enumerated exclusions tracks an element of liability. Registered users and yearbook donors consent to use of their names—a problem that forced four former named plaintiffs to drop their claims. Op.8 n.1; 1-ER-42-43. And on Plaintiff's theory, searchability meets the statute's "use[] … for purposes of advertising" element. Yet no common evidence establishes who meets these criteria: PeopleConnect does not record whether donors' names appear in donated yearbooks, 1-ER-42, and Plaintiff agrees that whether individuals are searchable can be determined only by searching names on Classmates.com one by one, Op.38-39.

The district court also acknowledged that "some individualized inquiries will be necessary" to determine whether class members are identifiable via searches of their names, 1-ER-35, and that whether individuals consented via school releases would likewise "be an

individualized issue," 1-ER-36. But it posited that these issues could be resolved by post-judgment self-certification. 1-ER-40-42.

3. PeopleConnect petitioned for review under Rule 23(f); this Court permitted the appeal. Dkt.2.1 (order of Silverman, Bumatay, JJ.).

The panel affirmed class certification. As relevant, it rejected PeopleConnect's argument that the class could not be certified absent a workable plan for adjudicating which putative members can establish liability. The panel sorted PeopleConnect's individualized issues into two groups. *First*, it held that because "the putative class definition already *excludes*" persons who had registered with or donated to Classmates.com or whose names were not searchable, these questions did not implicate predominance but rather "class membership," Op.26-27 & n.10, 31-40, and so could be resolved via self-certification "after a liability determination," Op.36. *Second*, the panel agreed the individualized issues the class definition did *not* exclude (school releases and identifiability) implicated predominance, Op.26, but held no winnowing plan was needed because, in its view, these issues would arise only "rare[ly]," Op.31; *see* Op.29 (similar).

## ARGUMENT

The panel greenlit a class of an estimated 100,000 people without any plan for resolving individualized questions on central elements of liability. The panel so held by treating those questions as ones of "class membership" that claimants could establish via affidavit after a class-wide verdict. That ruling stretches *Briseno* past its breaking point and will reshape class-action practice in this Circuit. It conflicts with decisions of the First and D.C. Circuits, which require a plan to address such issues at certification and reject the precise post-verdict claims process the panel here approved. And it nullifies this Court's decision in *Van*, which plaintiffs can now easily draft around. For all these reasons, rehearing en banc is warranted.

### A. The Panel's Extreme Expansion of *Briseno* Upends Class-Action Law in This Circuit.

The panel's decision announces a new rule of class-action law that will remake class-action practice in this Circuit, handing class counsel a playbook for circumventing Rule 23(b)(3), the Seventh Amendment, and the Due Process Clause—all in three easy steps. *First*, if a putative class cannot prove an element of liability with common evidence, class counsel can simply define the class to exclude persons who cannot satisfy that element. Op.27 & n.10. *Second*, having done so, counsel can insist that disputes about that

element do not implicate Rule 23(b)(3)'s predominance requirement, but merely involve "class membership." Op.32-34. *Third*, counsel can claim this "membership" question can be resolved *after* a class-wide liability verdict, with each claimant attesting to her membership—even where, as here, each such affidavit increases "the amount of damages that [the] defendant will be ordered to pay in a final judgment." Op.34-35.

That recipe for certification rewrites *Briseno*—on which the panel principally relied, *see* Op.31-38—to all but erase Rule 23's predominance requirement. *Briseno* held that Rule 23 lacks a freestanding mandate that class proponents demonstrate an "administratively feasible" way to identify class members. 844 F.3d at 1133. But that holding presupposed a properly defined class. As explained in *Mullins v. Direct Digital, LLC*—the principal authority on which *Briseno* relied, *see* 844 F.3d at 1131-32—the "key" to a proper class definition is ensuring that "membership does not depend on the liability of the defendant." 795 F.3d 654, 660 (7th Cir. 2015). That was true in *Briseno*, where class membership turned on whether a consumer had purchased Wesson oil, while liability turned on whether ConAgra had falsely labeled that oil "100% Natural." 844 F.3d at 1123-24. And it was true in *Mullins*, where the class comprised individuals who purchased a joint

supplement, and liability turned on whether the supplement was deceptively marketed. *See* 795 F.3d at 658. Moreover, since ConAgra's liability was a fixed sum that did not vary with the class's size, "the identity of particular class members d[id] not implicate [ConAgra]'s due process interest at all." *Briseno*, 844 F.3d at 1132 (citations omitted). In those limited circumstances, where the only question was "how to distribute damages," *Briseno* held that due process did not bar claimants from proving class membership after trial via "self-serving affidavit[s]" attesting to having bought the product. *Id.*[1]

This case has none of those hallmarks. To begin, class "membership" *does* "depend on [PeopleConnect's] liability." *Mullins*, 795 F.3d at 660. Because individuals who are not searchable or who consented via registration or donation are "excluded from the class definition," Op.26, success on Plaintiff's theory of liability is inextricably bound up with proof of class membership. But *Briseno* never approved using post-trial affidavits to prove elements of liability. To the contrary, it underscored that due

[1] As this Court has since held, to the extent *Briseno* purports to "permit[] unnamed class members to go without demonstrating standing at trial or in any later claims process," it is no longer good law. *Healy v. Milliman, Inc.*, 164 F.4th 701, 708-09 (9th Cir. 2026).

process requires that "defendant[s] … receive a fair opportunity to present [their] defenses[.]" 844 F.3d at 1132 (quoting *Mullins*, 795 F.3d at 670).

Moreover, unlike in *Briseno* (where ConAgra's liability was fixed no matter who came forward), PeopleConnect's exposure varies directly with class size: liability equals $750 times the number of successful claimants. Op.34-37. Thus, the claims process here will not determine "how to distribute damages," *Briseno*, 844 F.3d at 1132, but *how much* PeopleConnect owes. In *that* situation, *Mullins* was clear that due process provides defendants "the opportunity to raise individual defenses and to challenge the calculation of damages awards for particular class members." 795 F.3d at 671. The panel's rule, which defers adjudication of individual defenses until *after* judgment so long as they are written into the class definition, flouts that constitutional mandate and drastically departs from *Briseno* and *Mullins*.

Under the panel's rule, any individualized issue that would otherwise defeat predominance can be written into a class definition and thereby left for post-judgment self-certification. Class counsel will not miss the lesson. Classes that could not be certified anywhere else in the country, *see* pp.14-19, *infra*, will be filed here, defined as elastically as needed to make

certification inevitable and exert enormous pressure on defendants to settle, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011).[2]

This case shows how far the panel's rule reaches. Plaintiff says PeopleConnect "used" class members' names "for purposes of advertising" in violation of California's right-of-publicity law because those names could conceivably appear in search results somewhere near an ad—a theory under which every website with a search engine owes $750 to every Californian with a name.[3] The panel held that because the class definition carved out elements that Plaintiff concededly cannot prove with class-wide evidence, proof of those elements for each of roughly 100,000 putative class members could be deferred to post-trial claims administration. The result? If Plaintiff succeeds, the district court will enter a "judgment" that does not tell PeopleConnect how much it owes or to whom. *Contra United States v. F. &*

---

[2] Indeed, under the panel's logic, nothing would stop a district court from certifying a class of "all persons who can establish liability under § 3344" and deferring identification of class members to claims processing. The decision thus clashes with the settled rule against "'fail safe' class[es] that [are] defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc).

[3] The panel separately erred by misconstruing § 3344 to deem the viability of Plaintiff's fanciful "searchability" theory a jury question that could not be resolved at certification. *See* Op.14-20; Opening Br.47-58.

*M. Schaefer Brewing Co.*, 356 U.S. 227, 233-34 (1958) (money judgment "must, at least, determine, or specify the means for determining, the amount"); *cf. Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 & n.5 (1980) (class judgment final where it awards "a sum certain" and defendant's liability is not "contingent upon the presentation of individual claims"). Then, to add $750 to PeopleConnect's bill, each claimant need only "self-certify that she is neither a registered user nor a yearbook donor," Op.32, and "attest to having searched for herself on Classmates.com and having found her name in a search result." Op.39. For its part, PeopleConnect will be left to "cross-check" those attestations one by one against its own records and seek "decertification" if it finds "'significant fraud.'" Op.32. But that process will be futile: to take just one example, PeopleConnect cannot know, from its own records and without discovery, whether the name a claimant found in a search result is *actually* hers.

Even accepting the panel's unfounded assurance that the legitimacy of claimants' attestations "can easily be tested," Op.39, Rule 23(b)(3) and the Seventh Amendment guarantee more than just a post-judgment fraud audit. Rather, because lack of consent and searchability are elements of liability, the Seventh Amendment means each claimant must prove those elements of

her claim *to a jury*. And Rule 23(b)(3), in turn, requires courts to determine, *before certification*, whether the individualized inquiries associated with that proof will defeat predominance. The panel's decision erases both bedrock protections.[4]

Nothing in *Briseno* blesses this absurd result. *Briseno* addressed permissible methods for identifying class members when membership does not affect liability. But the panel remade *Briseno* into carte blanche to certify any class whose individualized liability questions can be drafted into its definition, even where liability varies with class membership. That seismic shift in this Court's cases will destabilize class-action practice. En banc review is warranted.

### B. The Panel's Holding Conflicts With Decisions of the First and D.C. Circuits.

The panel's expansion of *Briseno* places this Court in direct conflict with the First and D.C. Circuits. In those Circuits, when a defendant

[4] The panel declined to address whether PeopleConnect has a Seventh Amendment right to contest affidavits "attesting to class membership (as opposed to an element of liability)," reasoning that PeopleConnect raised the objection too late. Op.35 n.12. But class membership here is *defined by* the elements of liability, so the panel's distinction fails on its own terms. Regardless, PeopleConnect's argument arises not under the Seventh Amendment independently but under Rule 23(b)(3), which itself "protect[s] … the defendant's constitutional rights." *Asacol*, 907 F.3d at 58.

demonstrates that a proposed class includes members who cannot "prove an element of liability," the court at certification must "offer a reasonable and workable plan" for adjudicating those issues in a "manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." *Asacol*, 907 F.3d at 53, 58; *see Rail Freight*, 934 F.3d at 623-25. Two corollaries follow. *First*, "questions about the number and nature of any individualized inquiries that might be necessary to establish liability" must be answered *at certification*, not "defer[red]" until later. *Rail Freight*, 934 F.3d at 626. *Second*, post-judgment review of "contested forms completed by [claimants] concerning an element of their claims" "fail[s]" to adequately protect defendants' due process and Seventh Amendment rights. *Asacol*, 907 F.3d at 53.

Those principles proved decisive in both cases. In *Asacol*, plaintiffs alleged a drug manufacturer unlawfully blocked a cheaper generic from the market. *Id.* at 45. The district court believed the certified class contained members whose claims failed—loyalists who would have chosen the branded drug over any generic. *Id.* at 46-47. But it saw no obstacle to certification, reasoning that a claims administrator could weed out those individuals by reviewing claim forms after trial. *Id.* at 52. The First Circuit reversed

because the proposed process gave defendants "no meaningful opportunity to contest" liability as to each class member. *Id.* at 53. Likewise, in *Rail Freight*—a challenge to an alleged price-fixing scheme—the record revealed that some putative class members paid no overcharges. 934 F.3d at 621-22. The D.C. Circuit rejected certification because plaintiffs had not shown it possible to make a "liability determination" as to each class member without "full-blown, individual trials." *Id.* at 624-25.

The same principles require denying certification here. The panel recognized that individuals who consented to any use of their names (via registration or donation) or whose names are not searchable cannot establish liability. Op.15, 31-40. The panel acknowledged, too, that identifying such claimants would require individual adjudications. Op.32, 37, 39. On those facts, *Asacol* and *Rail Freight* require a workable plan *at certification* for addressing these issues while (1) preventing individualized inquiries from overwhelming common ones, and (2) preserving PeopleConnect's right to contest liability as to each claimant. *Asacol*, 907 F.3d at 53, 58; *Rail Freight*, 934 F.3d at 625-26.[5] No such plan is possible here.

---

[5] *Asacol* and *Rail Freight* also were cases—like this case and unlike *Briseno*—where the defendant's "aggregate" exposure was "the sum of

The panel evaded those requirements via linguistic gymnastics. Per the panel, "unlike the defendants in [*Asacol* and *Rail Freight*], PeopleConnect will not be denied a chance to challenge its liability to particular class members, as the putative class definition already *excludes* registered users and yearbook donors" and those who are not searchable. Op.33, 38-39. In the panel's view, once these elements of liability were baked into the class definition, they morphed into issues of "class membership," not predominance, Op.34, and so could be deferred until "after a liability determination," Op.36 (quotation marks omitted).

That reasoning is circular. If blue-penciling the class definition to limit membership to individuals who meet the claim's elements could fast-track plaintiffs to post-trial claims processing, nothing would survive of *Asacol* and *Rail Freight*. For instance, *Asacol* plaintiffs could have defined their class to include only purchasers who would have switched to generics, thus transforming the class's fatal predominance hurdle into a "membership" question to be resolved post-trial. So, too, *Rail Freight* plaintiffs could have

damages suffered by a number of individuals," and so increased with the class's size. *Asacol*, 907 F.3d at 55; *see Rail Freight*, 934 F.3d at 623-24.

defined their class to exclude those who paid no overcharge. The panel's rule hands class counsel a get-out-of-predominance-free card.

Also circular was the panel's basis for giving short shrift to class-action defendants' constitutional rights. *Asacol* and *Rail Freight* grounded their rules in the Due Process Clause and the Seventh Amendment, as embodied in Rule 23(b)(3). *See* pp.14-15, *supra*. The panel, for its part, "assume[d]" what those cases hold: "that allowing class members to establish an element of liability with affidavits could violate PeopleConnect's due process and jury trial rights." Op.34. Yet the panel found no constitutional problem because the affidavits here would be used only to "determin[e] class membership," *id.*—ignoring that membership was defined, in part, by individuals' ability to prove two elements of their claims.

The rule in these other Circuits is not so hollow. *All* individuals who "cannot prevail on the merits" must be "winnowed away *as part of the liability determination*" in a manner that preserves defendants' constitutional right to contest their liability as to each plaintiff. *Rail Freight*, 934 F.3d at 624 (emphasis added); *see Asacol*, 907 F.3d at 53. Indeed, *Asacol* refused to allow "inadmissible hearsay"—claimant affidavits—"to prove injury to each class member at *or after trial*," because certification "provides

no occasion for jettisoning the rules of evidence and procedure[] [or] the Seventh Amendment." 907 F.3d at 53 (emphasis added). Those principles do not vary based on class counsel's ability to manipulate class definitions. The panel's proposed path—self-certification that putative members satisfy the claim's elements after class-wide judgment—is the precise one *Asacol* and *Rail Freight* rightly rejected. Rehearing en banc is warranted to bring this Circuit back into alignment with those decisions.

### C. The Panel's Holding Also Nullifies *Van*.

Finally, rehearing en banc is warranted because the panel's holding nullifies this Court's decision in *Van*.

In *Van*, a class of purchasers sued a retailer for improperly charging sales tax; meanwhile, the retailer provided examples showing that "at least eighteen" purchasers received discounts offsetting the tax, and so had no viable claim. 61 F.4th at 1059, 1068 & n.13. The district court certified the class, reasoning that the eighteen examples were a "de minimis" share of the 13,680 discounts at issue. *Id.* at 1068-69. This Court vacated. It held—in line with *Asacol* and *Rail Freight*—that when a defendant "substantiates" an "individualized issue" barring recovery for some class members, the district court *must* determine at certification "whether a class-member-by-class-

member assessment of the individualized issue will be unnecessary or workable." *Id.* at 1069. Crucially, that inquiry turns not on "whether a great number of plaintiffs will win or lose at trial on the individualized issue," but rather on "the necessity and manageability of the potential class-member-by-class-member discovery process and trial." *Id.* at 1067 n.11.

The panel's rule lets any plaintiff write around *Van*. On the panel's view, had *Van* plaintiffs defined the class to exclude purchasers who received offsetting discounts, the retailer's substantiated defense would have become a "membership" question resolvable via post-trial affidavit. This case illustrates the absurdity. According to the panel, claimants who consented to the use of their names via school releases raise predominance issues under *Van*, *Asacol*, and *Rail Freight*, but claimants who consented by registering for Classmates.com raise only questions of "class membership." Both cases concern the same liability element: lack of consent. Op.15. The only difference is that the class definition mentions one form of consent and not the other. Going forward, then, any Ninth Circuit class plaintiff can escape *Van* by gerrymandering the defendant's substantiated defenses into a list of exclusions from the class definition.

Even when the panel purported to apply *Van* to two individualized issues *not* encompassed within the class definition, it did so in name only. PeopleConnect showed, for example, that in Nolen's yearbook alone there were nine instances where two students shared the same name, and twenty more where two students had similar names. Op.29-30. Thus, assessing *which* class members were identifiable via searches would require combing through each of over 1,000 yearbooks—just the "class-member-by-class-member discovery process" *Van* warned about, 61 F.4th at 1067 n.11. Yet the panel declined to conduct the *Van* analysis because, in its view, "such coincidences are rare." Op.31.[6]

*Van* rejected that exact reasoning. There, too, the substantiated examples were a sliver of the class: eighteen of 13,680 discounts, a number the district court called "de minimis." 61 F.4th at 1068-69. But whether the defendant offered "two or eighteen examples" was beside the point; what mattered was that the defendant had "substantiated [an] individualized

[6] The panel reasoned similarly with respect to another individualized issue—whether class members consented via school releases. Op.28. Although PeopleConnect substantiated both that such releases exist and that schools regularly donate yearbooks, *e.g.*, D. Ct. Dkt.211, Exs.1-4, the panel refused to apply *Van* because, in its view, there was "no evidence" that "a significant number of students" signed such releases. Op.29.

issue," "thus summoning the spectre of class-member-by-class-member adjudication." *Id.* at 1068 n.13, 1069. So, too, here.

The panel's approach leaves *Van* dead on the books. For that reason, too, rehearing en banc is warranted.

## CONCLUSION

The petition for rehearing en banc should be granted.

Date: November 9, 2026

Respectfully submitted,

/s/ *Ian Heath Gershengorn*

Clifford W. Berlow
Debbie L. Berman
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
cberlow@jenner.com
dberman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant PeopleConnect, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-3894

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

[x] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words: 4,200.** (Petitions and responses must not exceed 4,200 words)

OR

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** *_/s/ Ian Heath Gershengorn_* **Date** _November 9, 2026_
(*use* "s/[typed name] *to sign electronically-filed documents*)

# PANEL OPINION

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALICIA NOLEN,<br><br>*Plaintiff - Appellee*,<br><br>v.<br><br>PEOPLECONNECT, INC.,<br><br>*Defendant - Appellant*. | No. 24-3894<br><br>D.C. No. 3:20-cv-09203-EMC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted May 23, 2025
Submission Withdrawn July 18, 2025
Resubmitted September 24, 2026
San Francisco, California

Filed September 24, 2026

Before: Marsha S. Berzon, Michelle T. Friedland, and Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Berzon

## SUMMARY*

### Class Certification

The panel affirmed the district court's order certifying damages and injunctive classes of individuals whose names PeopleConnect, Inc., the operator of an online library of digitized yearbooks known as Classmates.com, allegedly used in violation of California's right-of-publicity statute, Cal. Civ. Code § 3344.

PeopleConnect challenged the district court's certification order on a host of grounds, falling into two categories: first, that common questions of law or fact do not predominate over individual ones, *see* Fed. R. Civ. P. 23(b)(3); and second, that the lead plaintiff, Alicia Nolen, will not adequately represent the classes, *see* Fed. R. Civ. P. 23(a)(4).

The panel held that predominance was satisfied on the record. First, the panel rejected PeopleConnect's argument that a putative class member does not have a viable §3344 claim absent proof that he or she has actually been searched on Classmates.com, because it goes to the merits of the class's § 3344 claims, not to whether the class can be certified. Second, the panel rejected PeopleConnect's contention that § 3344 requires individualized evidence of injury, because here with respect to class certification, the lead plaintiff has shown that the injury element can be adjudicated without undermining predominance. Third, the panel rejected PeopleConnect's argument that predominance

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was not met where the district court did not identify a "workable winnowing plan" to identify class members not entitled to relief. Applying the proper Rule 23 criteria to the record, the panel could not say that the district court abused its discretion by holding that none of PeopleConnect's four "winnowing plan" arguments defeated certification. In sum, the panel found no basis to reverse certification of the damages class on predominance or manageability grounds.

The panel rejected PeopleConnect's challenges to certification of both the damages and injunctive classes on adequacy grounds. PeopleConnect first argued that the lead plaintiff's decision that the damages class's § 3344 claims proceed solely on her "searchable" theory of liability would create an intraclass conflict, by sacrificing potentially stronger claims of individuals whose names have actually been searched. The panel held that this argument was not raised in the district court, and not properly raised in this appeal, and therefore the panel did not rule on the issue. Because the issue raises a matter of first impression concerning Rule 23's adequacy prong, the panel provided general guidance should the issue be appropriately raised in the district court. The panel also rejected PeopleConnect's argument that the lead plaintiff would not adequately represent the Rule 23(b)(2) injunctive class.

Accordingly, the panel affirmed the district court's certification of the class.

## COUNSEL

Benjamin R. Osborn (argued), Law Office of Benjamin R. Osborn, Margaretville, New York; Michael F. Ram and Marie N. Appel, Morgan & Morgan Complex Litigation Group, San Francisco, California; Raina C. Borrelli and Samuel J. Strauss, Strauss Borrelli PLLC, Chicago, Illinois; for Plaintiff-Appellee.

Ian H. Gershengorn (argued), Jenner & Block LLP, Washington, D.C.; Debbie L. Berman and Clifford W. Berlow, Jenner & Block LLP, Chicago, Illinois; for Defendant-Appellant.

Brian D. Schmalzbach, McGuireWoods LLP, Richmond, Virginia; Jennifer B. Dickey and Christopher J. Walker, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae The Chamber of Commerce of the United States of America.

Rebecca Tushnet, Harvard Law School, Cambridge, Massachusetts, for Amici Curiae Intellectual Property and First Amendment Law Professors.

---

## OPINION

BERZON, Circuit Judge:

For much of the 150-plus-year history of school yearbooks, the embarrassing photographs and cringeworthy anecdotes featured in these annual volumes languished in obscurity, tucked away in basements and closets across the country. That obscurity no longer holds. Companies and libraries now race to digitize old yearbooks, "broadcasting

everyone's acne and terrible haircuts for the whole world to see." Kate Eichhorn, *School Yearbook: The Untold Story of a Cringey Tradition and Its Digital Afterlife* 162 (2025).

This appeal involves Classmates.com, an online library of digitized yearbooks. Defendant-Appellant PeopleConnect, Inc., operates Classmates.com. The district court in this case issued an order certifying damages and injunctive classes of individuals whose names PeopleConnect allegedly used in violation of California's right-of-publicity statute.

The company challenges certification on a host of grounds, falling into two categories: first, that common questions of law or fact do not predominate over individual ones, *see* Fed. R. Civ. P. 23(b)(3); and second, that the lead plaintiff, Alicia Nolen, will not adequately represent the classes, *see* Fed. R. Civ. P. 23(a)(4). We conclude that the district court did not abuse its discretion by certifying the classes.

## I. BACKGROUND

### A. Factual Background

PeopleConnect owns and operates Classmates.com, an online website containing a library of more than 450,000 yearbooks and enabling users to search the yearbooks and connect with their former schoolmates. To build its yearbook collection, PeopleConnect purchases yearbooks and accepts copies donated by individuals and schools. Individuals who donate yearbooks they own must fill out a form authorizing PeopleConnect to use their likenesses on Classmates.com. When it obtains a yearbook, PeopleConnect scans it, uses a program to make the text on each page searchable, and uploads a copy of each page to Classmates.com. Website

users can flip through these digitized pages. They can also search Classmates.com for an individual's name or other keywords to see whether that name or phrase appears within any yearbook.

There are three tiers of user access to Classmates.com. The first, "visitor," is composed of people who interact with the website without registering or providing personal information. Visitors can browse yearbooks and search for names. A visitor typically browses by clicking through a series of menu options to a landing page associated with a particular high school in a specific town and state. The visitor can select an available yearbook and view its first few pages in full-size, high resolution. The rest of the pages in that yearbook appear as low-resolution thumbnails. A visitor can also search for particular names or words in the site's yearbook collection. The search results appear in list form, accompanied by small thumbnails of the corresponding pages. When a visitor clicks on a thumbnail while browsing or searching, Classmates.com prompts the visitor to register for a free user account. Unless she registers, a visitor can only see full-size, high-resolution images of the first few pages of a yearbook and thumbnails of pages on which searched names or words appear.

The second user tier is "free member." To become a free member, a visitor registers for an account on the website and agrees to its terms of service. The terms of service include a provision stating that users who search for themselves on Classmates.com consent to PeopleConnect's "use and display of information" about them. Free members have much greater access than visitors to the site's yearbooks. Unlike visitors, free members are "not limited to viewing high-resolution images of only the first several pages in a yearbook" but instead "can view high-resolution images of

all yearbook pages" on the site. When a free member conducts a search, the results are displayed on a separate page; next to those results there may be an advertisement for a paid Classmates.com subscription. That ad does not itself contain names or photos from yearbooks, but it is displayed alongside search results—which may contain names—and small thumbnails of each responsive page.

The third user tier is paid "subscriber," also known as a "Classmates+ member." Like a free member, a subscriber has registered on the website and agreed to its terms of service. Both free members and subscribers have access to "all yearbooks in full resolution." But subscribers can access more information about the website's registered users, exchange messages with other registered users, and receive a discount when purchasing hardcover yearbook reprints.

Classmates+ subscription advertisements are at the core of the substantive claims in this case. Visitors do not see subscription ads on their screen as they browse or search yearbooks. But if a visitor searches for a particular name and clicks on the small thumbnail next to a search result for that name, she will be prompted to register for a free account. Once she registers, she will immediately receive an ad encouraging her to purchase a subscription. The parties and the district court referred to this series of steps as the "sequence theory" of how individuals' names are connected with PeopleConnect's advertising.

Free members encounter subscription ads in other ways as well, including when they log into their account and when they search Classmates.com's yearbook library for particular individuals. For free members, a subscription ad may appear as one of several banner ads along the side of the search results page. This asserted connection between names and

advertisements has been known in this lawsuit as the "banner theory."

Finally, subscribers do not see Classmates.com subscription ads, as they are already paying members.

## B. Procedural History

The lead plaintiff in the operative complaint is Alicia Nolen, a California resident who graduated from Tulare Union High School in 2019 and whose name and photo are featured in at least one yearbook on Classmates.com.[1] Nolen, on behalf of other individuals featured in yearbooks on Classmates.com, alleged that PeopleConnect violated California's statutory right of publicity, Cal. Civ. Code § 3344,[2] by using their names without consent to advertise

[1] The initial complaint was filed in December 2020. Since then, four previous named plaintiffs voluntarily dismissed their claims. It turned out that those individuals had registered accounts on Classmates.com and thereby consented to the use of their likenesses under the site's terms of service. A fifth former named plaintiff's claim was dismissed as time-barred, and a sixth voluntarily dismissed his claim after being served with discovery. Nolen is now the sole named plaintiff.

[2] Section 3344(a)(1) provides:

> Any person who knowingly uses another's name . . . for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without that person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use,

paid subscriptions to Classmates.com.[3]

Nolen contends that PeopleConnect violated § 3344 by directing visitors who search for names to sign up for free accounts and immediately prompting those users to purchase subscriptions (the sequence theory), as well as by placing subscription ads next to free members' search results for names (the banner theory). Under both theories, she argues, PeopleConnect violated the statute when it included a student's name in the database of terms that could appear in search results—in other words, when it made the name

> and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.

Cal. Civ. Code § 3344(a)(1).

Section 3344(e) provides:

> The use of a name, voice, signature, photograph, or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision (a) solely because the material containing the use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the person's name, voice, signature, photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision (a).

*Id.* § 3344(e).

[3] Nolen also brought claims for unjust enrichment and for violation of California's unfair competition statute. The district court treated these claims as "essentially derivative of" Nolen's § 3344 claim and focused its certification order on § 3344. The parties do not identify any reason why these additional claims should affect the certification analysis. So we likewise concentrate our discussion on § 3344.

*searchable* on Classmates.com—even if no one has actually *searched* for that name. In other words, Nolen's theory of § 3344 liability, and so the fulcrum for its related class certification analyses, is that making individuals' "identities searchable within [PeopleConnect's] advertising flow is a commercial use requiring consent under the statute."

PeopleConnect moved to dismiss Nolen's complaint, arguing that its alleged use of her identity does not, as a matter of law, violate § 3344. Specifically, the company contended that making Nolen's name searchable does not amount to a use of her identity "directly connected" to commercial advertising. Cal. Civ. Code § 3344(e). The district court denied the motion, holding that Nolen had plausibly alleged that PeopleConnect "commercially used" her likeness "the moment the image became a publicly accessible part of [the company's] advertising flow." The court noted that "the strength of the connection between advertisements and plaintiff's [likeness]" was "a question of fact."

Nolen then moved to certify injunctive and damages classes under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). In December 2023, the district court conditionally certified the classes, and in May 2024, it approved the following definition for both:

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar to search a California yearbook made available for viewing on the Classmates.com website,

> yields at least one record corresponding to the class member from a California yearbook that Classmates.com first made publicly available on or after December 18, 2018.

PeopleConnect sought, and we granted, permission to appeal the district court's certification orders under Federal Rule of Civil Procedure 23(f).

## II. DISCUSSION

To ensure that Rule 23's requirements are satisfied, a district court must conduct a "rigorous analysis" before certifying a class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Id.* (brackets omitted) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)). On appeal of a class action certification, we review legal questions de novo, factual questions for clear error, and the district court's ultimate decision to certify a class for abuse of discretion. *Id.* at 663.

PeopleConnect contends that the putative classes do not satisfy two of Rule 23's requirements, predominance and adequacy. We address each requirement in turn.

### A. Predominance

To certify a class under Rule 23(b)(3), the district court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The

predominance requirement "presupposes satisfaction of the commonality requirement of Rule 23(a)(2), which itself tests the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 862 (9th Cir. 2025) (citation modified) (quoting *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025)), *cert. denied*, No. 25-874, 2026 WL 1052179 (U.S. Apr. 20, 2026). Examining further, the predominance question "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)). Accordingly, the predominance requirement "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id.*

An individual question (if a question of fact or mixed question of law and fact) is one that requires "members of a proposed class . . . to present evidence that varies from member to member." *Id.* (quoting *Newberg on Class Actions*, *supra*, § 4:50). By contrast, a common question is one where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (brackets omitted) (quoting *Newberg on Class Actions*, *supra*, § 4:50). "If the plaintiff demonstrates that class issues exist, the defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023). Rule 23(b)(3) is

satisfied if "one or more of the central issues in the action are common to the class and can be said to predominate, . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 577 U.S. at 453 (quoting 7AA *Wright & Miller's Federal Practice and Procedure* § 1778 (3d ed. 2005)).

PeopleConnect contends that the predominance requirement is not met here for three reasons. First, it argues that the district court misconstrued § 3344 as allowing claims based on the searchability of an individual on PeopleConnect's website, whether or not a user has actually searched for that individual. PeopleConnect urges us to construe § 3344 as permitting recovery only by claimants who have been searched and contends that such a showing could be made only through individualized, not common, evidence. Second, in the company's view, the district court misconstrued § 3344 as allowing claimants to obtain a minimum award of statutory damages without presenting individualized evidence of either mental anguish or actual economic harm. Third, PeopleConnect argues, the district court did not identify an adequate "winnowing plan" to exclude claimants ineligible for relief. We disagree with the company on all three grounds and hold predominance satisfied on the record before us.

**1. Whether § 3344 Requires Individualized Evidence That an Individual Has Been Searched**

PeopleConnect first asserts that a putative class member does not have a viable § 3344 claim absent proof that he or she has actually been searched on Classmates.com. The district court rejected this argument at the motion-to-dismiss stage and again in its certification order. Although

PeopleConnect cannot directly challenge the denial of its motion to dismiss in a Rule 23(f) appeal, it contends that, to determine whether predominance is satisfied, we must decide whether § 3344 requires a claimant to have been searched or only to be searchable. If the statute requires being searched, individualized disputes over liability will loom large because (at least on the current record) there is no classwide evidence revealing which individuals have been searched. If the statute only requires being searchable, Nolen can establish that fact using common evidence, including, as the district court noted, by "show[ing] how, generally speaking, a search can be done by a name and that will yield search results with . . . a banner ad promoting the [Classmates+] subscription service."

We reject this predominance challenge because it goes to the merits of the class's § 3344 claims, not to whether the class can be certified. At this stage of the litigation, the district court "is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Noohi*, 146 F.4th at 863 (internal quotation marks omitted) (quoting *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). When deciding "whether the 'common question' prerequisite is met," for example, "a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution." *Olean*, 31 F.4th at 666–67. Similarly, to determine whether predominance is satisfied, the "court must evaluate the method or methods by which plaintiffs propose to use the

class-wide evidence to prove the common question in one stroke." *Lytle*, 114 F.4th at 1023 (citation modified) (quoting *Olean*, 31 F.4th at 666). The commonality and predominance inquiries do not encompass the questions "whether the evidence in fact establishes that plaintiffs would win at trial," *Olean*, 31 F.4th at 667, or "whether the . . . plaintiffs have stated a cause of action," *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). Thus, when "the concern about the proposed class is an alleged failure of proof as to an element of the plaintiffs' cause of action[, ]courts should engage that question as a matter of summary judgment, not class certification." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140 (9th Cir. 2016) (citation modified) (quoting *Tyson*, 577 U.S. at 457).

Whether evidence of searchability is sufficient to sustain a § 3344 claim is the question PeopleConnect asks us to—but that we cannot—answer today. The predominance inquiry "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The elements of a § 3344 claim are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; . . . (4) resulting injury"; (5) "a knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation or purchases"; and (6) "a direct connection . . . between the use and the commercial purpose." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017) (citation modified) (quoting *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996)).

With respect to this sixth element, the statute specifies that "it shall be a question of fact whether or not the use of the person's name . . . was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required." Cal. Civ. Code § 3344(e). So PeopleConnect's core contention—that it does not violate § 3344 simply by making a name searchable—is really an argument that searchability alone is not factually sufficient to establish that the database is "so directly connected" to the company's commercial advertising "as to constitute a use for which consent is required." *Id.* In other words, PeopleConnect asserts an "alleged failure of proof as to an element of the plaintiffs' cause of action." *Ruiz Torres*, 835 F.3d at 1140 (quoting *Tyson*, 577 U.S. at 457).

PeopleConnect may eventually be proven right that the class's claims fail on the merits if they rest on evidence of searchability alone. But "a district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Olean*, 31 F.4th at 667 (citing *Amgen*, 568 U.S. at 459–60).[4] In other words, we must affirm

[4] Where the question is an evidentiary one—whether proffered expert testimony is *probative* of whether an element of the cause of action can be proven by common proof—*Tyson* specified that the district court should deny certification only if "no reasonable juror" could find the evidence "probative" of that element. 577 U.S. at 459; *see, e.g.*, *id.* at 454–60 (holding that an expert's representative sample of the time workers spent donning and doffing protective gear was a permissible means of establishing their hours worked in a wage-and-hour class action); *Olean*, 31 F.4th at 670–80 (holding that an economist's

certification even though a jury may not ultimately consider the proposed common evidence "adequate proof of liability," *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 945 (9th Cir. 2019), or the district court holds that summary judgment is appropriate because there is not a genuine issue of material fact as to the direct connection question. Absent such a determination by the jury or the district court, we will not reverse certification even if we think the merits evidence is weak. *Tyson*, 577 U.S. at 459. "To require an actual weighing, at class certification, of whether plaintiffs' evidence could sustain a jury verdict would collapse the class certification and summary judgment inquiries in precisely the manner *Tyson Foods* warns against." *Lytle*, 114 F.4th at 1028.

Here, the statute defines the "directly connected" issue as a "question of fact." Cal. Civ. Code § 3344(e). The district court held the common evidence of searchability offered by Nolen could sustain a jury verdict of a direct connection between PeopleConnect's use of class members' identities

---

regression model could be used to demonstrate classwide price impact in an antitrust case); *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 945–50 (9th Cir. 2019) (holding that an expert survey could be used to demonstrate hours worked by class members in a wage-and-hour action), *disapproved of on other grounds by Olean*, 31 F.4th 651. Here, however, the factual issue is not an evidentiary one—there is no issue concerning whether the evidence to be offered is "probative." Instead, the factual issue—whether the use of the plaintiff class members' identity in a searchable database is "directly connected" with the commercial sponsorship or advertising—will itself be determinative of the merits of the case as the plaintiff has pleaded it. Under these circumstances, the admonition against deciding the merits of the claim at the certification stage unless necessary—even at the once-removed level of determining what a reasonable jury could find—counsels against further consideration of the question at the certification stage.

and the company's advertising. Effectively, then, PeopleConnect asks us to make a factual finding in the first instance that searchability of class members' names is not "so directly connected" to the company's advertising "as to constitute a use for which consent is required." *Id.* But factfinding is the jury's role, not ours. *See, e.g.*, *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1133 (9th Cir. 1979). PeopleConnect's request defies the Supreme Court's express instruction that when "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." *Tyson*, 577 U.S. at 457.

Our decision in *United Steel Workers* is illustrative of the line between a merits ruling and the class certification inquiry. There, a class of oil workers alleged that their employer violated state law by requiring them to eat meals while "on duty" without the mandatory compensation due for on-duty periods. *United Steel Workers*, 593 F.3d at 804. The plaintiffs' legal theory was that their meal periods were "on duty" within the meaning of state law—and thus should have been compensated—because they were required to be on call while eating. *Id.* at 804 & n.3. The district court held that the class failed Rule 23(b)(3)'s predominance requirement because "if Plaintiffs' 'on duty' theory is rejected . . . the Court will be faced with a case . . . requiring individualized trials on each class member's meal period claims." *Id.* at 805 (alterations in original). We reversed. Rule 23, we explained, required the district court to evaluate predominance as to the "plaintiffs' actual legal theory," even though "there could be no *assurances* that they would prevail on this theory." *Id.* at 808 (citation modified). The

Rule did not permit the district court to "declin[e] certification based on the *possibility* that plaintiffs would not prevail on the merits on their 'on duty' theory." *Id.* After all, "a court can never be *assured* that a plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits." *Id.* at 809.

Like this case, *United Steel Workers* involved a dispute over the sufficiency of the plaintiffs' claims as pleaded and pursued. There, the parties disagreed about whether the plaintiffs took meal periods while "on duty" because they could not leave their units and were subject to interruption. *Id.* at 804. Here, the parties debate whether evidence of searchability is enough under the statute to show a '"direct' connection" between individuals' names and PeopleConnect's commercial advertisements. *Maloney*, 853 F.3d at 1008 n.2 (quoting *Fleet*, 50 Cal. App. 4th at 1918). Although class members' identities are searchable on the Classmates.com website, there is no guarantee that the class will prevail on Nolen's sole legal theory—that they are being used in violation of § 3344. *United Steel Workers* makes clear that what matters under Rule 23(b)(3) is whether the "plaintiffs' *actual* legal theory . . . was one in which common issues of law or fact . . . predominate over individual questions," not whether there are "*assurances* that plaintiffs would prevail on this theory." 593 F.3d at 808 (citation modified). Either the trier of fact will find, based on the evidence of searchability, that PeopleConnect used class members' identities in a manner directly connected to commercial sponsorship or advertising, or the trier of fact will find searchability alone insufficient to prove that element of § 3344. In either scenario, "the class is entirely cohesive: It will prevail or fail in unison." *Amgen*, 568 U.S. at 460. Nolen's counsel so recognized at oral argument,

stating that if evidence of searchability were not enough, then the putative class's claims would simply "fail on the merits." Oral Arg. at 36:45.

Our recent decisions in *Small v. Allianz Life Insurance Co.*, 122 F.4th 1182 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2852 (2025), and *Farley v. Lincoln Benefit Life Co.*, 150 F.4th 1197 (9th Cir. 2025), on which PeopleConnect relies, are not to the contrary. To determine whether Rule 23's requirements were met in those cases, we needed first to determine the required elements of the plaintiffs' statutory claims. *Small*, 122 F.4th at 1191; *Farley*, 150 F.4th at 1201. Only after determining what elements were necessary could we determine whether those elements could be established using common proof, such that common questions would predominate over individual ones. *Small*, 122 F.4th at 1198–1200.

Here, PeopleConnect attempts to frame the statutory issue as whether § 3344 imposes a "third-party viewership requirement." But this case does not involve a dispute over the *elements* of a § 3344 claim. Those elements, which we set forth above, are not in dispute. Instead, the parties dispute whether Nolen's searchability evidence is enough to prove that PeopleConnect's use of class members' names "was so directly connected with" its advertising "as to constitute a use for which consent is required." Cal. Civ. Code § 3344(e). The statute makes that inquiry "a question of fact." *Id.* The only issue before us today is the propriety of class certification. Because § 3344 provides that the "direct connection" element involves a factual determination, allowing the class to proceed under her searchability theory does not pose a predominance problem.

**2. Whether § 3344 Requires Individualized Evidence of Injury**

PeopleConnect next argues that predominance cannot be satisfied because the statutory damages provision of § 3344 requires individualized evidence of mental anguish. PeopleConnect further maintains that if, contrary to its primary position, economic injury does suffice, individualized evidence of economic injury, not common proof, is necessary.

The company did not present to the district court when opposing certification its contention that a § 3344 plaintiff must prove mental anguish. Instead, PeopleConnect argued in its brief that proof of injury "may take one of two forms: 'mental anguish,' . . . or 'economic injury,'" and that there was a failure of common proof as to both forms of injury. And, at the class certification hearing, PeopleConnect's counsel acknowledged that § 3344 "says you have to show injury. It's either emotional distress *or* actual economic injury" (emphasis added).

Where, as here, our authority to review the class certification determination before a final judgment comes from Rule 23(f), "[w]e must police the bounds of our jurisdiction" and may consider merits questions only to the extent they bear on the district court's certification decision. *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014). "An issue cannot form part of the district court's class certification decision if it was never raised at the class certification stage." *Van*, 61 F.4th at 1066

n.9 (citation modified).[5] Because the argument that Plaintiffs must prove mental anguish was not properly raised in the district court, "we cannot say that the district court abused its discretion in failing to consider [an] argument[] with which it was not presented." *Lytle*, 114 F.4th at 1032–33.

We do reach, and reject, PeopleConnect's argument that a showing of economic injury cannot be made without individualized evidence.[6]

The district court held that if PeopleConnect were found to have used each class member's name in direct connection with advertising, "then it can reasonably be inferred that the name . . . has some economic value, even if small." That common-sense inference "falls within a broad range of permissible conclusions" and so is not an abuse of discretion. *Olean*, 31 F.4th at 669 (quoting *Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017)). A company advertises to sell its products or services and thereby to generate revenue.

---

[5] At the motion to dismiss stage, PeopleConnect made, and lost, the argument that individual proof of mental anguish is essential for statutory damages. It did not renew the argument in opposing certification. It did not do so, even though Nolen had made clear that her proposed class would seek statutory damages based on economic harm alone.

[6] To the extent PeopleConnect also argues that putative class members must produce individualized evidence *quantifying* their actual damages, § 3344 does not require a plaintiff seeking statutory damages to provide proof of the value of her economic injury. The statute makes a violator liable for "an amount equal to the greater of seven hundred fifty dollars ($750) *or* the actual damages suffered." Cal. Civ. Code § 3344(a)(1) (emphasis added); *see Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 547 (2011). In other words, "[s]ection 3344 provides for minimum damages of $750, even if no actual damages are proven." *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 367 (2000).

One can reasonably infer that by using an individual's likeness in direct connection with its advertising, the company believes her likeness is valuable.[7] Otherwise, why would the company think using that person's likeness would help increase their bottom line? As we explained long ago, "the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 n.11 (9th Cir. 1974).[8]

PeopleConnect contends that the district court's inference improperly conflates two elements of § 3344: "the appropriation of plaintiff's name . . . to defendant's advantage, commercially or otherwise," and "resulting

---

[7] Once again, whether PeopleConnect actually used class members' names in direct connection to commercial advertising is a factual question we do not resolve today. What matters is our earlier conclusion that this factual question can be answered using common evidence.

[8] This inference is hardly a novel one. *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1276 n.7 (9th Cir. 2013) ("If EA did not think there was value in having an avatar designed to mimic each individual player, it would not go to the lengths it does to achieve realism in this regard."); *McFarland v. Miller*, 14 F.3d 912, 922 (3d Cir. 1994) ("In taking McFarland's name, Miller unfairly sought to capitalize on its value. The very act of taking it for that purpose demonstrates the name itself has worth."); 1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* § 4:17, Westlaw (2d ed. database updated Mar. 2026) (endorsing the "commonsensical" notion that "[i]f defendant uses a relatively unknown person's identity to promote sales, it follows that defendant thought that the identity had commercial value"); *see also KNB Enters.*, 78 Cal. App. 4th at 367 ("Although the unauthorized appropriation of an obscure plaintiff's name, voice, signature, photograph, or likeness would not inflict as great an economic injury as would be suffered by a celebrity plaintiff, [§ 3344] is not limited to celebrity plaintiffs.").

injury." *Maloney*, 853 F.3d at 1008 n.2 (quoting *Fleet*, 50 Cal. App. 4th at 1918). Not so. As just explained, the district court reasonably concluded that a defendant's use of the plaintiff's name for commercial advantage could show the name has economic *value*. Economic *injury* occurs when misappropriation of even a minimally valuable name deprives the plaintiff of compensation for the use of her name or unjustly enriches the defendant. That is why plaintiffs may recover "profits from the unauthorized use that are attributable to the use." Cal. Civ. Code § 3344(a)(1). Although a Joe Schmoe could not command the kind of multi-million-dollar endorsement deal that might be offered to a celebrity, it is reasonable to infer that even an average person whose likeness a company seeks to use in connection with advertising could negotiate at least a nominal licensing fee for such use. A plaintiff deprived of such compensation has suffered a cognizable economic injury under the statute, even if a small one. *See Olive v. Gen. Nutrition Ctrs., Inc.*, 30 Cal. App. 5th 804, 823 (2018).

In short, whether class members' names have some economic value and whether class members suffered an economic injury are distinct questions. Both can be decided on a classwide basis, based on reasonable inferences from the practical circumstances.

Separately, the district court pointed to PeopleConnect's purchasing of yearbooks to build its library and licensing of yearbooks to third parties as classwide evidence that the identities of people listed in yearbooks have monetary value. On appeal, PeopleConnect does not challenge the probative value of this evidence. Even if it had, the district court did not abuse its discretion by relying on these facts. Not every class member may be listed in a yearbook that was purchased or licensed. But the general existence of purchasing and

licensing markets for yearbooks indicates that Nolen could show, on a classwide basis, that the names of individuals within yearbooks have at least nominal value. And as just explained, a reasonable factfinder could also conclude that individuals with even nominally valuable names are injured when their names are nonconsensually used without compensation in connection with advertising.

We emphasize again that a jury may ultimately find Nolen's common evidence of economic injury unpersuasive and thus insufficient to establish PeopleConnect's liability under § 3344. But with respect to certification, Nolen has shown that the injury element can be adjudicated without undermining predominance.[9]

### 3. Whether the District Court Identified a Workable Method to Identify Class Members Eligible for Relief

PeopleConnect's final argument for why predominance is not met is that the district court did not identify a "workable winnowing plan" to identify class members not entitled to relief. The company contends that the class definition includes two categories of individuals—(1) those who signed consent forms authorizing their schools to use their yearbook images and (2) those who are not readily identifiable based on the information that would appear in a search result—whose § 3344 claims are subject to individual defenses. PeopleConnect further maintains that the district

[9] At any rate, the need to resolve individualized questions about injury would not necessarily defeat predominance. Even if we concluded that § 3344's injury element could not be shown with common evidence, we would still have to decide whether at least one common question "predominates over any . . . individualized questions about injury." *Olean*, 31 F.4th at 669.

court did not come up with a manageable method to weed out two categories of individuals excluded from the class definition: (3) those who consented to PeopleConnect's use of their names by registering as Classmates.com members or by donating yearbooks and (4) those whose names are not "searchable" on the website. Culling individuals in these four categories from the pool of eligible claimants, PeopleConnect asserts, will destroy predominance by necessitating thousands of mini trials.

As an initial matter, we note that by framing its challenges around the asserted need for a "workable winnowing plan," PeopleConnect elides an important distinction between two aspects of Rule 23(b)(3).

PeopleConnect's arguments concerning the first two categories of individuals just described go to—but do not determine—predominance: whether the company "provide[d] sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Van*, 61 F.4th at 1067. In conducting this inquiry, we begin by considering whether the defendant has "substantiate[d]" that it has individualized defenses to some putative class members' claims. *Id.* at 1069. If so, we must address whether the need to litigate those individualized questions would overwhelm adjudication of the common questions in the case. *Id.* As the Supreme Court has explained, "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton*, 573 U.S. at 276. So the need to "rely[] on individual testimony to establish the existence of an injury and the amount of damages . . . would not

necessarily . . . doom[] class certification." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023).

PeopleConnect's position concerning the individuals in categories (3) and (4) described above is addressed to Rule 23(b)(3)'s manageability criterion, which requires a court to consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).[10] We have embraced the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 663 (7th Cir. 2015)). Accordingly, we have rejected the notion that "demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Id.* at 1133.

[10] Manageability is a "matter[] pertinent" to the court's evaluation of both predominance and superiority—that is, whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). But when manageability involves the question whether there is an administratively feasible way to weed out claimants not part of the class, we have generally analyzed that issue as one of superiority alone; "[o]ur cases do not additionally task district courts with analyzing, for predominance purposes, the logistical difficulties attendant to identifying plaintiffs who . . . may be entitled to class membership." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 632 (9th Cir. 2020). That approach finds support in the text of the predominance requirement, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual *members*," not *non*-members. Fed. R. Civ. P. 23(b)(3) (emphasis added). In any event, "a district court's class-certification analysis [is] equally sufficient[] regardless of whether the member-identification concern was properly articulated as part of . . . Rule 23(b)(3) predominance[] or Rule 23(b)(3) superiority." *Walker*, 953 F.3d at 632 (citation modified).

Applying the proper Rule 23 criteria to the record before us, we cannot say that the district court abused its discretion by concluding that none of PeopleConnect's four "winnowing plan" arguments defeats certification.

**i. Individuals Who Signed School Consent Forms**

The putative class definition includes individuals who, as students, signed forms authorizing their schools to use their names and photos. PeopleConnect maintains that at least some of these consent forms authorized the company to use the students' names—a circumstance that, if true, would mean those students cannot satisfy § 3344's requirement that a defendant's use of a plaintiff's name be "without that person's prior consent." Cal. Civ. Code § 3344(a)(1). As a result, PeopleConnect argues, adjudication of its liability would require determining whether each class member signed a school consent form that authorizes PeopleConnect to use that individual's name.

To prove that some schools authorized PeopleConnect's use of the likenesses of putative class members, the company submitted a declaration attaching seven sample release forms for different California school districts. Only three of the forms authorized entities other than the school district—referred to as "assigns," "transferees," or "successors"—to use students' names or photos for non-district-related purposes. And PeopleConnect provided no evidence that it is an assignee of, transferee of, or successor to the rights of any of those schools to use students' identities.

The district court rejected PeopleConnect's consent form argument, concluding that the examples of consent forms produced by PeopleConnect did not actually authorize the company to use students' names. That determination was not

an abuse of discretion. "We do not permit a defendant to support its invocation of individualized issues with mere speculation." *Van*, 61 F.4th at 1068. Because there is no evidence that any students, let alone a significant number of students, signed forms consenting to *PeopleConnect*'s use of their names in connection with commercial advertising, we will not vacate certification based on the possibility that such forms may exist.

**ii. Individuals Who Are Not Reasonably Identifiable**

PeopleConnect also contends that some putative class members do not have viable § 3344 claims because they are not reasonably identifiable based on their name, school, city, and yearbook publication year—information that would appear in a search result for an individual's name. According to PeopleConnect, it would be difficult to discern, without individualized evidence, precisely whose identity has purportedly been misappropriated when multiple individuals in the same class share a common name, as well as when an individual's name has changed since graduating. The district court recognized that there might be some instances of students in the same school and class sharing a name, but it found no evidence indicating that such occurrences were "extensive or pervasive." The district court thus held that the occasional need to make individualized identifiability determinations did not defeat predominance.

The district court did not abuse its discretion in reaching this conclusion. For starters, PeopleConnect did not substantiate that changed names pose a non-speculative and predominance-threatening problem with respect to identifiability. PeopleConnect's evidence demonstrated that a handful of individuals in the same yearbook may have the

same or similar names, not that individuals in yearbooks who now go by different names than at the time the yearbooks were produced are not identifiable via their yearbook names. As to individuals with the same name, the district court permissibly determined that the evidence—nine instances in which two students in the same yearbook had the same name, and twenty instances in which two students in that yearbook had similarly spelled names—was not sufficient to prove that an inquiry into the identifiability of every single class member would be required. We find no clear error in the district court's finding that the vast majority of individuals will be "readily identifiable by their name, especially when viewed in context of having attended a particular school in a particular year."[11]

That finding sets this case apart from *Van*. In *Van*, the defendant retailer presented evidence that at least eighteen of 13,680 discounts given to customers were given for the purpose of offsetting improperly collected sales tax. 61 F.4th at 1068. Such customers were ineligible for relief under a state consumer protection law. *Id.* There was no reason to suppose that the instances of refunds for improperly collected sales taxes were unusual. Because there was no

[11] We find no merit in PeopleConnect's suggestion that individuals with unique names would still be required to introduce survey evidence to establish identifiability. As Nolen observes, "PeopleConnect is suggesting that although it designed [C]lassmates.com to find people, no one can take its search results at face value." A plaintiff who is listed by name, high school, city, and yearbook publication year will likely have made a prima facie showing of identifiability. PeopleConnect does not explain when, aside from the occasional instance of two people with the same name who attended the same high school and were included in the same yearbook, it could or would rebut that showing with individualized evidence.

way to determine, without examining each discount, what proportion of the 13,680 discounts were meant to offset sales tax, we concluded that the retailer's evidence as to even a small number of discounts "was sufficient to prove that an inquiry into the circumstances and motivations behind each of the 13,680 discounts might be necessary." *Id.* at 1069.

Here, a person-by-person determination as to whether each of the estimated 100,000 putative class members shares a name with a classmate in the same yearbook would not be necessary. The evidence before us, and common sense, reflect that such coincidences are rare. That PeopleConnect "might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton*, 573 U.S. at 276.

**iii. Individuals Who Registered on Classmates.com or Donated Yearbooks**

Third, PeopleConnect argues that the district court did not set forth an adequate means of culling claims submitted by individuals excluded from the class definition because they consented to PeopleConnect's use of their name, either by registering for a Classmates.com account or by donating a yearbook. As already explained, Rule 23 does not require the lead plaintiff to demonstrate at the certification stage an "administratively feasible" means of identifying whether someone falls within or outside the class definition. *Briseno*, 844 F.3d at 1133. Instead, we evaluate PeopleConnect's argument under the manageability criterion in Rule 23(b)(3)(D). *See id.* at 1128. PeopleConnect has not shown that this is the exceptional case in which manageability concerns suffice to defeat certification. *See id.*

The district court recognized that some individuals who registered for a Classmates.com account or who donated a yearbook might attempt, due to fraud or forgetfulness, to submit a claim. It also noted that some claimants may now use names different than those in PeopleConnect's database. Accounting for these concerns, the district court put forward a two-step plan to identify claimants who fall outside the class definition: First, each claimant would self-certify that she is neither a registered user nor a yearbook donor. The self-certification process would require a claimant to "aver[] that none of the registered email addresses associated with her yearbook ever belonged to her," "provide all names used over the years," and "certify that [she] did not donate a yearbook in which [she] appeared." Second, PeopleConnect would cross-check that claimant's name, email address, and high school against both its database of registered users and the yearbook donation forms that donors are required to fill out. The district court noted that PeopleConnect could conduct sampling to test the self-certifications' accuracy and that, if the company detected "significant fraud," it could move for decertification.

The plan proposed by the district court accords with *Briseno*. We explained in *Briseno* that allowing claimants to prove class membership by affidavit did not violate Rule 23. *See* 844 F.3d at 1132. We also explained that "courts can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to avoid or minimize fraudulent claims." *Id.* at 1130 (citation modified).

PeopleConnect leans heavily on a pair of cases holding that a class with a meaningful number of uninjured members cannot be certified unless those uninjured individuals can

feasibly be identified and their claims denied. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54, 58 (1st Cir. 2018); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019). Those cases held that the means for adjudicating defendants' liability to class members must "preserve the defendants' Seventh Amendment and due process rights to contest every element of liability and to present every colorable defense." *Rail Freight*, 934 F.3d at 625 (citing *Asacol*, 907 F.3d at 51–54). PeopleConnect accordingly argues that it is entitled to put all elements of the cause of action "to a jury, along with a meaningful opportunity for discovery as to the proof each class member presents on each element." In PeopleConnect's view, a self-certification that a claimant has never registered an account or donated a yearbook offers "no opportunity" for the company to "submit rebuttal evidence" and thereby "trammels [its] right to a jury trial on [all] the elements."

This argument proves too much. *Asacol* and *Rail Freight* held that if the only constitutionally compatible means of adjudicating individual defenses to liability would cause "questions affecting only individual members" of the class to overwhelm the "questions . . . common to class members," Fed. R. Civ. P. 23(b)(3), then predominance would not be satisfied. *Asacol*, 907 F.3d at 53–54; *Rail Freight*, 934 F.3d at 625. These decisions straightforwardly applied the predominance requirement to "the particular facts of the cases," *Olean*, 31 F.4th at 669 n.13, and so are consistent with our discussion of predominance. Here, unlike the defendants in those cases, PeopleConnect will not be denied a chance to challenge its liability to particular class members, as the putative class definition already *excludes* registered users and yearbook donors. There is thus no need

for PeopleConnect to litigate individual consent defenses against registered users and yearbook donors, and so no potential predominance problem exists; those individuals are not part of this action to begin with. Indeed, by excluding individuals who have consented in these ways, the class definition does precisely what PeopleConnect asserts it should be doing: winnowing out those who do not have meritorious § 3344 claims.

*Asacol* and *Rail Freight* did not address whether a plaintiff must show an administratively feasible method of identifying *non-members* of the class at the certification stage. *Briseno* did: It explained that this question goes to manageability and answered it in the negative. Thus, even if we assume that allowing class members to establish an element of liability with affidavits could violate PeopleConnect's due process and jury trial rights, the district court's plan for determining class membership does not pose such a problem.

Unable to find support from *Asacol* and *Rail Freight*, PeopleConnect tries to cabin *Briseno*'s holding to cases in which "total damages [a]re quantifiable in the aggregate" regardless of the precise number of class members. It asserts that a class action for statutory damages implicates the company's "due process right not to pay in excess of its liability," *Mullins*, 795 F.3d at 669, because "calculating aggregate damages requires knowing the exact number of class members."

We agree that when the amount of damages that a defendant will be ordered to pay in a final judgment depends on the number of class members who file claims, the mechanism used to determine whether a claimant is a member of the class will implicate the defendant's due

process interests. We disagree that this conclusion prevents the class from being *certified*—the sole issue before us today.[12]

*Briseno* did not purport to jettison an administrative feasibility requirement only from cases in which total damages do not vary based on class size. Quite the opposite. *Briseno* explained that requiring a class representative to "demonstrate that there is an administratively feasible way to determine who is in the class" as a prerequisite to certification would improperly "interpose an additional hurdle into the class certification process delineated in" Rule 23 and "render th[e] manageability criterion largely superfluous." 844 F.3d at 1124, 1126. We further reasoned that "requiring class proponents to satisfy an administrative feasibility prerequisite 'conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns.'" *Id.* at 1128 (quoting *Mullins*, 795 F.3d at 663). *Briseno*'s basis for rejecting an "administrative feasibility" requirement as now sought by PeopleConnect applies across the board.

To be sure, *Briseno* also discussed why concern for the due process rights of class action defendants did not justify

[12] To the extent PeopleConnect suggests it has a Seventh Amendment right to dispute before a jury affidavits attesting to class membership (as opposed to an element of liability), we decline to decide that issue. Nolen's class certification motion proposed relying on claimants' "[s]elf-identification" and "averment" to ascertain class membership. PeopleConnect did not raise any Seventh Amendment concerns with that proposal until after the district court had conditionally certified the class. *See Lytle*, 114 F.4th at 1032–33. We consider PeopleConnect's due process argument as to class membership only because the district court, apparently of its own accord, addressed that due process issue in its certification order.

injecting an extratextual precondition into Rule 23. But PeopleConnect misinterprets our observation that "identification of class members will not affect a defendant's liability in every case" to mean that identification by affidavit is permissible *only* when "the aggregate amount of liability will be determinable even if the identity of all class members is not." *Id.* at 1132. In such a scenario, the precise class size will not affect the defendant's liability or amount of damages owed, so "the identity of particular class members does not implicate the defendant's due process interest *at all*." *Id.* (emphasis added) (quoting *Mullins*, 795 F.3d at 670).

By contrast, due process *is* implicated where, as here, "the total amount of damages cannot be determined in the aggregate, but there is a common method of determining individual damages." *Mullins*, 795 F.3d at 670. Still, as *Briseno* explained, "[t]he due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." 844 F.3d at 1132 (alteration in original) (quoting *Mullins*, 795 F.3d at 670). We noted that such opportunities are available at the claims administration stage, where claim administrators, auditing processes, fraud detection sampling, and other means are commonly used to validate class membership. *Id.* at 1131. Accordingly, even "[i]f the concern is that claimants in cases like this will eventually offer only a 'self-serving affidavit' as proof of class membership," there is "no reason to refuse class certification simply because [a claimant] will present her affidavit in a claims administration process after a liability determination has already been made." *Id.* at 1132. "Whether putative class

members self-identify by affidavits simply does not matter . . . so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process." *Mullins*, 795 F.3d at 671. Put another way, PeopleConnect "may prefer to terminate this litigation in one fell swoop at class certification rather than later challenging each individual class member's claim to recovery, but there is no due process right to 'a *cost-effective* procedure for challenging every individual claim to class membership.'" *Briseno*, 844 F.3d at 1132 (quoting *Mullins*, 795 F.3d at 669).

We stress once again that the question at this stage is whether the class has been properly certified, not whether PeopleConnect's due process rights will be adequately protected at a future stage of the litigation. As the Supreme Court held in *Tyson*, 577 U.S. at 461, the question whether an adequate mechanism existed to prevent uninjured claimants from recovering damages was not "fairly presented" for appellate review where "the damages award has not yet been disbursed, nor does the record indicate how it will be disbursed."

There is one additional reason why the potential need to conduct individualized determinations of class membership after a finding of liability does not trouble us. Generally, the need to resolve individualized issues concerning damages—as opposed to liability—will not defeat certification. *See Olean*, 31 F.4th at 669. As we have explained, "Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability." *Briseno*, 844 F.3d at 1131 (citing Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). The district court did

not abuse its discretion by certifying the class and providing for such determinations to be made in a later phase.[13]

In short, the district court's self-identification and cross-check proposal for determining class membership would allow PeopleConnect to raise individual challenges "if and when [claimants] file claims for damages." *Briseno*, 844 F.3d at 1131. This case is therefore not the rare circumstance in which the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns" has been overcome. *Id.* at 1128 (quoting *Mullins*, 795 F.3d at 663).

**iv. Individuals Who Are Not Searchable**

For similar reasons, we reject PeopleConnect's contention that the district court did not propose a workable plan for identifying claims submitted by individuals whose names are not searchable on Classmates.com and who therefore are excluded from the class. According to PeopleConnect, "there is no mechanical or classwide way to determine which names can be displayed in a search result—the only way to do so is to manually enter every name into the search engine." PeopleConnect also presented evidence

[13] The district court explained that its plan was "akin to a separation of liability and damages issues." It is not uncommon in class actions to bifurcate the liability and damages phases, which can be done without creating constitutional problems and may even help prevent them. *See, e.g.*, *Arthur Young & Co. v. U.S. District Court*, 549 F.2d 686, 697 (9th Cir. 1977) (holding that "separation of the trial on individual damage issues from the class trial in this securities fraud class action is not a novel procedure, nor in contravention of the Seventh Amendment"); *cf. Tyson*, 577 U.S. at 461 (noting that "bifurcating between the liability and damages phases of [a] proceeding" could avert the difficulty of "remov[ing] uninjured individuals from the class after an award is rendered").

that some instances of names listed in yearbooks are not searchable because they are not detected by the automated text-recognition program used when yearbooks are digitized, as well as that search results on Classmates.com will change based on the number of yearbooks in its database and how common an individual's name is. The district court concluded that these technical limitations to the website's search function did not preclude certification. The court explained that "[i]f one's identity is not searchable, that person would not be part of the class, an issue that, if necessary, could be determined at a later prove-up stage."

The district court did not abuse its discretion by deferring individualized searchability challenges to a subsequent phase of the litigation. Again, Rule 23 does not require the district court to identify, as a prerequisite to certification, an administratively feasible means of determining class membership. *See Briseno*, 844 F.3d at 1133. Nor has PeopleConnect substantiated that it would be unmanageable at a later stage to resolve disputes over whether a claimant is searchable. *See id.* at 1127–28. Nolen proposed using self-identification to determine whether a claimant is searchable, explaining that a claimant could attest to having searched for herself on Classmates.com and having found her name in a search result. The district court agreed that this plan was workable. As the court correctly pointed out, "the legitimacy of a self-identification can easily be tested."[14]

[14] Like the district court, we are unpersuaded that imperfections in PeopleConnect's text-recognition technology demonstrate a "significant" barrier to determining class membership. Further, because each class member would be entitled to only a single award of statutory damages regardless of the number of times she appears in search results,

* * *

In sum, on this record, we find no basis to reverse certification of the damages class on predominance or manageability grounds. Should circumstances change or later evidence reveal obstacles to classwide adjudication, PeopleConnect may move to decertify the class. *See United Steel Workers*, 593 F.3d at 809 (noting that "a district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify"); Fed. R. Civ. P. 23(c)(1)(C).

**B. Adequacy**

PeopleConnect challenges certification of both the damages and injunctive classes on adequacy grounds. Under Rule 23, a class may not be certified unless "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Small*, 122 F.4th at 1202 (quoting *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023)).

---

"[o]nce the name of the student is searchable—*e.g.*, through the individual student portraits—the fact that the student appears elsewhere [in a yearbook] does not change the damages sought." We also doubt that a manageability issue would arise from the fact that Classmates.com's search results are limited to the top 500 responsive yearbook pages. As Classmates.com allows users to filter search results by school or yearbook, it is highly unlikely that an individual's name is so common that she will not appear within the first 500 search results for a given school or yearbook.

As to the first question, we have held that a named plaintiff does not adequately represent the class if she has an interest in resolving her own claims in a way that would preclude recovery for viable claims held by a subset of class members. *See Kim*, 87 F.4th at 1000–02; *Hesse v. Sprint Corp.*, 598 F.3d 581, 589, 591 (9th Cir. 2010). As to the second, we have required the named plaintiff to "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978)).

One of PeopleConnect's adequacy arguments, covered in supplemental briefs submitted on the court's request after oral argument, goes to the first question. The company contends in its supplemental brief that Nolen's decision that the damages class's § 3344 claims proceed solely on her "searchable" theory of liability would create an intraclass conflict, by "sacrificing" potentially stronger claims of individuals whose names have actually been searched. PeopleConnect's other adequacy argument goes to the second question. It asserts that Nolen is not similarly situated to other class members, and so is not sufficiently interested in obtaining injunctive relief to represent the injunctive class, because her name is no longer searchable on Classmates.com.

The first adequacy argument was not raised in the district court, so the district court did not address it in its certification order. Nor did PeopleConnect argue in its briefs on appeal that Nolen's decision to proceed solely on a searchable theory would create an intraclass conflict, although it did when the issue was raised during oral argument. *See* Oral Arg. at 54:00–04. Although we requested supplemental briefing on the issue, we ordinarily will not reverse the

district court on grounds not presented by the parties in the first instance. *See, e.g.*, *United States v. Mun*, 928 F.2d 323, 324 (9th Cir. 1991). As *Clark v. Sweeney*, 607 U.S. 7, 9–10 (2025) (per curiam), recently reiterated, under the party-presentation principle, courts are generally limited to deciding the issues that the parties have chosen to raise.

PeopleConnect is free, of course, to raise the conflict argument in the district court as part of an otherwise viable motion to decertify the class. The issue appears to raise a matter of first impression in this circuit concerning Rule 23's adequacy prong. We therefore provide some guidance to the district court with regard to the potential conflict issue as it now stands. We then reject PeopleConnect's remaining adequacy argument as to the injunctive class.

**1. Whether Nolen's Theory of Liability Creates an Intraclass Conflict**

The intraclass conflict argument goes like this: Class members whose names have actually been searched would have stronger (albeit individualized) evidence of a "direct connection" between their names and PeopleConnect's advertising, giving them a better shot of prevailing on a § 3344 claim. Yet as members of the putative class, their claims would proceed based only on Nolen's evidence of searchability, which (though common to the class) would be weaker proof of a "direct connection." If the class were ultimately to lose on their § 3344 claims under Nolen's "searchable" theory, that judgment would likely preclude "searched" members of the class from bringing individual § 3344 claims based on their names having been searched. In short, Nolen would be "sacrificing" supposedly stronger claims that could be brought by "searched" members of the class in favor of weaker "searchable" claims that the entire

class could bring.[15] What's more, individuals with highly valuable likenesses would also lose a chance to recover actual, not just statutory, damages.

Our circuit has never squarely addressed a situation in which a lead plaintiff's strategic choice to pursue one legal theory while forgoing another might create an intraclass conflict. Instead, our past conflict cases have involved class representatives who were induced to settle the class's claims in exchange for releasing additional, potential claims held by certain other class members—claims that the lead plaintiffs did not possess and so were willing to compromise. *See, e.g.*, *Kim*, 87 F.4th at 1001–02; *Hesse*, 598 F.3d at 589. Here, in contrast, Nolen has no intrinsic interest in releasing or sacrificing class members' searched claims in favor of searchable ones. She could still bring a § 3344 claim under a searched theory because, she alleges, she was both searchable and searched. Thus, our prior cases do not directly control the outcome here.

Other circuits, recognizing the potential res judicata consequences of a class judgment, have held that a lead plaintiff's tactical decision to forgo bringing certain claims

---

[15] In connection with its conflict argument, PeopleConnect again asks us to decide, at the certification stage, whether § 3344 requires that a claimant's name actually have been searched. The company argues that if Nolen's searchability evidence is not sufficient to support a judgment in the class's favor, she would create an intraclass conflict by pursuing meritless searchable claims "at the expense of class members' plausible [searched] claims." We disagree. "Class representatives will often need to choose which arguments to pursue, and ordinarily they will not be rendered inadequate simply because they failed to raise an argument that appears strong in hindsight." *Kim*, 87 F.4th at 1003. For the reasons already given, the strength of Nolen's searchable theory is a merits question we cannot decide today.

or advancing certain legal theories warrants scrutiny but does not necessarily render her representation inadequate. We find the Fifth Circuit's decision in *Slade v. Progressive Security Insurance Co.*, 856 F.3d 408 (5th Cir. 2017), particularly instructive. There, the named plaintiff sought to bring a breach of insurance contract action on behalf of a class, alleging that the insurance company had systematically undervalued policyholders' vehicles when paying out claims. *Id.* at 411. The insurance company calculated payouts using two factors: a non-individualized base value from a vehicle database, which the plaintiffs challenged as containing unjustifiably deflated values; and a condition adjustment based on an individualized scoring system, which the plaintiffs did not attack. *Id.* at 411–12. The court explained that by disclaiming any challenge to the individualized condition adjustment scheme, the plaintiffs were trading a potential predominance problem for a potential adequacy problem. "When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class." *Id.* at 412.

The Fifth Circuit identified three factors relevant to determining adequacy in such circumstances: "(1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification)." *Id.* at 413. The Fifth Circuit remanded for the district court to apply these factors in the first instance, but it noted that the risk of preclusion was "smaller than usual" because class members could opt out under Rule 23(b)(3). *Id.* at 414. And "if the number of plaintiffs opting out demonstrated a cogent conflict, the

district court could decertify the class." *Id.* Finally, the Fifth Circuit noted that the district court had several options on remand, including: declining to certify on adequacy grounds; certifying but appropriately tailoring the notice and opt-out procedure to alert class members of the preclusion risk; certifying based on a finding that the preclusion risk was justified by the benefits of proceeding as class; or defining the class to exclude those with potential claims over the condition adjustment. *Id.* at 415.

Also useful is the Seventh Circuit's reasoning in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952–53 (7th Cir. 2006), which rejected the district court's conclusion that the named plaintiff was not an adequate class representative because she had chosen to bring a claim only for statutory, not compensatory, damages. Although compensatory damages required a lower fault showing—negligence, as opposed to willfulness for statutory damages—proceeding on a negligence theory would have made it impossible to satisfy Rule 23's commonality and predominance requirements. *Id.* Yet the record in *Murray* indicated that any individual's actual damages were likely too low to justify suing on her own. *Id.* at 953. Accordingly, the Seventh Circuit explained, "[r]efusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment." *Id.* Class members with substantial, individualized injuries could opt out and litigate on their own. *Id.* But unless "personal injuries are large in relation to statutory damages," the adequacy requirement can be met even though the named plaintiff chooses "to forego claims for compensatory damages in order to achieve class certification." *Id.*

The considerations identified by the Fifth and Seventh Circuits are consistent with our conclusion in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 895 F.3d 597, 606–09 (9th Cir. 2018), that strategic litigation choices will not undermine a representative party's adequacy if those choices inure to the benefit of the assertedly disadvantaged class members. In *Volkswagen*, we affirmed approval of a class settlement that gave more money to current owners of defective VWs than it did to former owners who had sold their cars. On their own, the sellers had "fairly weak" claims and would have "face[d] challenging, if not insurmountable, questions of causation and damages if they litigated their cases against VW." *Id.* at 608. But because their claims had been aggregated with the stronger claims of the owners, the sellers were able to reap the benefits of the owners' strong bargaining power and to secure "generally fair[]" compensation. *Id.* at 609. In other words, the sellers were adequately represented because had they been excluded from the class, they would have been unlikely to recover at all.

In sum, when evaluating under Rule 23(a)(4) a class representative's decision to bring only certain claims or seek only certain types of relief (as opposed to her incentive to release the defendant from claims she never had standing to bring), courts should consider whether such a decision secures the benefits of aggregate litigation, as well as whether it strikes a justifiable balance between the value of any abandoned claims and the value of the relief sought.[16]

---

[16] We do not suggest that these are the only factors district courts may consider when evaluating similar adequacy challenges. Determining

If the district court is asked to decide whether Nolen's decision to proceed solely with her searchable theory creates a serious enough intraclass conflict to render her representation inadequate, it will have to determine whether the evidence demonstrates that the conflict is "actual," not speculative. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). It could ask, for example, whether Nolen's decision to rely on searchability alone may maximize the possibility of recovery for the greatest number of claimants, including those whose names have been searched but who may not have proof of that. Relying on common evidence of searchability could avoid predominance issues and make it easier for individuals to prove class membership. *See supra* Section II-A-1. The district court could also consider whether a searched theory of liability would require plaintiffs to "provide individualized evidence," which could make it difficult to adjudicate the § 3344 claims on a classwide basis. And the court could assess whether most claimants would be able to establish significant actual damages. Absent an ability to do so, it could be financially unfeasible for those claimants individually to bring § 3344 claims on a searched theory, as the only recovery would be $750 in statutory damages.

Further, if the conflict adequacy issue arises, the district court would have to consider whether Nolen's litigation strategy would diminish the value of the relief claimants could recover under either liability theory. A conflict can arise if the interests of class members with high-value claims are "being compromised by a class representative with lesser injuries who may settle more valuable claims cheaply." *In re*

whether a class is adequately represented under Rule 23(a)(4) depends "on the particular facts of the case." *Van*, 61 F.4th at 1067.

*Volkswagen*, 895 F.3d at 607. To determine if Nolen is compromising such interests, the district court would need to address whether virtually every class member would have a negligible chance of recovering damages exceeding the statutory minimum of $750. The district court could also consider that an individual who seeks to prove actual damages higher than the statutory minimum, and for whom litigating individually makes financial sense, could opt out of the class. *See Slade*, 856 F.3d at 414; *Murray*, 434 F.3d at 953.[17]

We reiterate that we are not ruling on the conflict version of the adequacy challenge, as the issue was not properly raised in this appeal. The foregoing discussion is meant as general guidance should the issue be appropriately raised in the district court.[18]

[17] It appears that the plaintiffs began to issue notice of class certification but paused doing so once we granted PeopleConnect permission to appeal under Rule 23(f). Neither party challenges the sufficiency of the notice approved by the district court; the propriety of that notice is in any event not before us because the district court did not sign off on that notice until after PeopleConnect filed its Rule 23(f) petition. If either party believes the approved notice does not adequately protect the interests of class members who may have higher-value claims, *see Slade*, 856 F.3d at 414–15 & n.3, that party could move in the district court to revise the notice.

[18] We also are not ruling on whether it would be procedurally proper for PeopleConnect to move in the district court to decertify the class on the present record, or whether further evidence on the conflict issue would have to be developed. "[P]arties may move a district court to alter or amend an order granting or denying class certification at any time 'before final judgment,'" but "we generally defer to a district court's case-management decisions, including in the class-certification process." *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 963–64 & n.7 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(c)(1)(C)).

### 2. Whether Nolen Will Adequately Represent the Injunctive Class

Finally, PeopleConnect contends that Nolen will not adequately represent the Rule 23(b)(2) injunctive class. The company asserts that Nolen "did not and cannot establish a real and immediate threat of her name or likeness being misappropriated in the future" because she "made no allegation (and presented no evidence) that *she* faces a real and immediate risk of appearing in a search result."

We reject this argument for two reasons. First, once again, Nolen's sole theory of liability requires only that class members' names be searchable, not that their names actually will be searched and will appear in search results as a result of that search. If PeopleConnect is ultimately found liable for violating § 3344 by making her name searchable, then it is of no moment whether Nolen has an "immediate risk" of being searched. Second, although Nolen's name is no longer searchable on Classmates.com, that is only because PeopleConnect suppressed her name from its site after she filed suit. As PeopleConnect may not "pick off" and moot Nolen's claim by remediating her injury after she filed suit, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–92 (9th Cir. 2011) (citation omitted), it follows that the company also may not render Nolen an inadequate representative simply by its "voluntary cessation of challenged conduct" as to her, *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1139 (9th Cir. 2016) (reaffirming *Pitts* and explaining that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted" (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016))). The company makes no effort to bear its "heavy

burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation modified). Accordingly, we will not disturb the district court's certification of the Rule 23(b)(2) class.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's certification of the class.

**AFFIRMED.**